JANET M. HEROLD, Regional Solicitor
IAN H. ELIASOPH, Counsel for ERISA
DONNA F. BOND, Trial Attorney
WA Bar No. 36177
OFFICE OF THE SOLICITOR
U.S. DEPARTMENT OF LABOR
300 Fifth Avenue, Suite 1120
Seattle, WA 98104
Telephone: (206) 757-6751
Facsimile: (206) 757-6761
bond.donna@dol.gov

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF HAWAII

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,<br>　　　Plaintiff,<br><br>v.<br><br>NICHOLAS L. SAAKVITNE, an individual; NICHOLAS L. SAAKVITNE, A LAW CORPORATION, a California corporation; BRIAN J. BOWERS, an individual; DEXTER C. KUBOTA, an individual; BOWERS + KUBOTA CONSULTING, INC., a corporation; BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Defendants. | CASE NO. <u>1:18-cv-155</u><br><br><br><br><br>**COMPLAINT** |

Plaintiff, R. Alexander Acosta, Secretary of Labor, United States Department of Labor ("Plaintiff" or "Secretary"), brings this action against Defendants Nicholas L. Saakvitne, Nicholas L. Saakvitne, A Law Corporation, Brian J. Bowers, Dexter C. Kubota, Bowers + Kubota Consulting, Inc., and Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan and alleges as follows:

1.      The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA"). To protect plan investments, ERISA requires that those who manage the investments act solely, exclusively and prudently in the interests of plan participants, and follow the governing Plan documents. ERISA §§ 404(a)(1)(A),(B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D).

2.      Title I of ERISA also creates per se prohibitions barring conflict of interest transactions between a plan and a party in interest. ERISA §§ 406-408, 29 U.S.C. §§ 1106-1108. Congress concluded that certain transactions present such a grave opportunity for abuse that, except in narrowly-defined circumstances, they should be prohibited. Thus ERISA bars fiduciaries from causing plans to engage in transactions with a party in interest. ERISA § 406(a)(1), 29 U.S.C. §

1106(a)(1). ERISA § 406(a) prohibited transactions are subject to specified exemptions contained in ERISA § 408, 29 U.S.C. § 1108. ERISA also prohibits a fiduciary from dealing with the assets of a plan in his own interest or for his own account, ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), and prohibits a fiduciary from acting in any transaction involving the plan on behalf of a party (or representing a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

3.      When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409(a) and 502(a)(2) & (5), 29 U.S.C. §§ 1109(a) and 1132(a)(2) & (5), to restore plan losses, to recover unjust profits and to obtain other remedial and equitable relief as the court may deem appropriate. The Secretary may also seek injunctions to prevent those who have violated their fiduciary duties from managing or providing services to employee benefit plans in the future.

4.      Not only may fiduciaries be held directly responsible for losses and other relief for their own misconduct, but their co-fiduciaries may also be held liable for losses and other relief when those co-fiduciaries participate in, enable or fail to remedy another fiduciary's breach. ERISA § 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3).

5.      Non-fiduciaries may also be held liable for losses and other relief when they knowingly participate in a prohibited transaction.

6.      Until December 14, 2012, the Brian J. Bowers Trust ("Bowers Trust") and Dexter C. Kubota Trust ("Kubota Trust") were owners of Bowers + Kubota Consulting, Inc. ("Bowers + Kubota" or "the Company"). The trusts owned all of the Company's one million shares of stock, 51% and 49% respectively. The assets of the Brian J. Bowers Trust were controlled by its trustee Defendant Bowers. The assets of the Dexter C. Kubota Trust were controlled by its trustee Defendant Kubota.

7.      This case involves the sale of shares by Brian J. Bowers ("Bowers") and Dexter C. Kubota ("Kubota") to an Employee Stock Ownership Plan for significantly more than those shares were worth on December 14, 2012. For purposes of this stock purchase, Nicholas L. Saakvitne ("Saakvitne" or "Trustee") acted as trustee and the Company acted as Plan Administrator (operating through Bowers and Kubota) to the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan (the "ESOP").

8.      The ESOP paid significantly over fair market value for the Company's shares based on a grossly inaccurate appraisal that Bowers and Kubota obtained before hiring Saakvitne. The appraisal relied on unrealistic projections which Bowers and Kubota supplied, some of which were verifiably

inaccurate at the time of the transaction.  Rather than prudently investigate the

merits of the transaction and the true value of the stock on the ESOP's behalf, as

ERISA requires, Saakvitne, improperly relied on a flawed, inflated valuation of the

stock. The valuation's deficiencies included the application of a control premium

to a valuation method which already included a controlling level of value and in a

situation where no actual change in control was anticipated.  In addition, the

valuation relied on overly optimistic and aggressive revenue projections that were

demonstrably inaccurate at the time of the transaction and which diverged

significantly from the Company's prior performance.  Despite a list of red flags,

Saakvitne did not question the valuation or the assumptions on which it was based.

Saakvitne made minimal and superficial efforts to negotiate the ESOP's purchase

price and quickly accepted the pre-set price presented to him by the selling

shareholders.  As a result of Saakvitne, Bowers, and Kubota's breach of their

fiduciary responsibilities in accepting a valuation resulting from the appraiser's

flawed process and based on unrealistic assumptions, the price the ESOP paid for

the Company far exceeded its fair market value.

## I.    JURISDICTION AND VENUE

9.    Jurisdiction of this action is conferred upon the Court by ERISA

Section 502(e)(1), 29 U.S.C. § 1132(e)(1).

10.      Because the ESOP was administered in Hawaii, the transaction that breached ERISA took place in Hawaii, and several Defendants reside or may be found in Hawaii, venue for this action lies in the United States District Court for the District of Hawaii, pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2).

## II.      PARTIES

11.      The Plaintiff Secretary is vested with authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries and other parties who commit violations of ERISA. ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

12.      Defendant Bowers + Kubota is, and at all times hereinafter mentioned was, a Hawaii corporation engaged in the provision of architecture, engineering, project management, and construction management services within the jurisdiction of this Court with a principal place of business at 94-408 Akoki St., Suite 201-A Waipahu, HI 96797. The Company established the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan (the "ESOP") on December 11, 2012, with a retroactive effective date of January 1, 2012. The Company was named in the ESOP's Plan Document as the Employer, Plan Sponsor, and Plan Administrator to the ESOP.  The Company is named as a defendant pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete

relief can be granted.

13.     The ESOP is, and at all times hereafter mentioned was, an employee

pension benefit plan within the meaning of ERISA Section 3(2), 29 U.S.C. §

1002(2). The ESOP was established by an employer, Bowers + Kubota, engaged

in commerce or in an industry or activity affecting commerce, and is subject to

Title I (including Title I, Part 4) of ERISA pursuant to ERISA Sections 4(a)(1) and

401(a), 29 U.S.C. §§ 1003(a)(1) and 1101(a).  During all times hereinafter

mentioned, the ESOP has been administered in Hawaii, within the jurisdiction of

this Court. The ESOP is named as a defendant pursuant to Rule 19(a) of the

Federal Rules of Civil Procedure solely to assure that complete relief can be

granted.

14.     At all material times, Defendant Bowers was the President of the

Company and Defendant Kubota was the Vice President. Defendants Bowers and

Kubota were also the only members of the Company's Board of Directors.  In

those roles, Bowers and Kubota exercised discretionary authority and control with

respect to the management of the ESOP by, *inter alia*, contracting with service

providers for the Plan including the Plan's attorney and third party administrator,

and by appointing the Trustee.  As such, Bowers and Kubota are fiduciaries within

the meaning of ERISA section 3(21), 29 U.S.C. § 1002(21)(A)(i).  During all

relevant times, Bowers and Kubota lived and conducted their duties concerning

the administration and management of the ESOP in the Honolulu Hawaii area
(except as noted in Paragraph 19 below), within the jurisdiction of this Court.

15.     On November 26, 2012, Bowers and Kubota appointed Nicholas L.
Saakvitne ("Saakvitne") the Initial Trustee and Independent Fiduciary to the future
ESOP.  On December 11, 2012 Bowers and Kubota appointed Saakvitne as
Trustee and Independent Fiduciary.  Saakvitne has served in this capacity since
that time.  At all relevant times, Nicholas L. Saakvitne worked full time, including
with respect to the ESOP, for Nicholas L. Saakvitne, A Law Corporation. As the
Trustee and Independent Fiduciary, Saakvitne was responsible for management
and maintenance of the ESOP assets and is the decision maker with regard to the
ESOP's purchase of Company stock. Thus, as a named Trustee, at all relevant
times, Saakvitne was a fiduciary and a party in interest with respect to the Plan
within the meaning of ERISA Sections 3(14) and 3(21)(A), 29 U.S.C. §§ 1002(14)
and 1002(21)(A). At all relevant times, Nicholas L. Saakvitne lived in California
and Nicholas L. Saakvitne, A Law Corporation ("Saakvitne Law Corporation"),
was incorporated under the laws of California. Saakvitne traveled to Hawaii in the
course of his fiduciary duties and the entirety of the property that is the subject of
this action is situated within the jurisdiction of this Court.

## III.   GENERAL ALLEGATIONS

16.    Bowers and Kubota decided to establish an ESOP as a way to divest themselves and/or their respective trusts as owners of the Company. On December 11, 2012, the ESOP was formed, with a retroactive effective date of January 1, 2012. The ESOP's named trustee was Saakvitne.

17.    In anticipation of creating an ESOP, Defendants Bowers and Kubota met with attorney Gregory M. Hansen ("Hansen") at some point during the summer of 2012.

18.    In anticipation of sponsoring an ESOP, Defendant Bowers solicited a service proposal from American ESOP Advisors, LLC for third-party administration services in approximately October 2017. Bowers signed the resultant service agreement, dated October 17, 2012, on December 5, 2017.

19.    On or about October 21, 2012, Defendants Bowers and Kubota met with Gregory Kniesel ("Kniesel"), principal of valuation firm Libra Valuation Associates ("LVA").  Kniesel flew from New York to Chicago to meet with Bowers and Kubota and conduct "due diligence" in preparation for producing a valuation of the Company.  Subsequent to the meeting, Bowers and Kubota caused additional information about the Company to be forwarded to Kniesel and LVA, including previous valuations of the Company, financial statements, and financial projections.

20.     LVA provided valuation services, first to Bowers and Kubota, and later to the Plan Trustee:

a)     LVA provided Bowers and Kubota a preliminary appraisal report on or about November 21, 2012 regarding the value of the Company as of that date ("Preliminary Valuation Report") which indicated that the aggregate fair market value of the Company "on an ESOP controlling-interest basis" was between $37,090,000 and $41,620,000;

b)     LVA provided Saakvitne an updated appraisal report on or about December 11, 2012, which was substantially the same as the Preliminary Valuation Report ("Updated Valuation Report");

c)     LVA provided Saakvitne a fairness opinion to Saakvitne and Bowers on December 14, 2012, which indicated that the fair market value of the Company as of that date was $40,150,000 ("Fairness Opinion");

d)     LVA issued a final appraisal report to Saakvitne and Bowers on or about June 6, 2013 ("Final Valuation Report"), which concluded that, as of December 14, 2012, the fair market value of the Company was $40,150,000.

21.     The Preliminary Valuation Report, Updated Valuation Report, Fairness Opinion, and Final Valuation Report were obviously defective and significantly overvalued the shares of the Company by, *inter alia*:

a)     Applying a 30% control premium to both the Discounted

Cash Flow ("DCF") and Guideline Public Companies ("GPC") valuation methods, despite the fact that no functional change in control was contemplated or took place, and despite the fact it is inappropriate to apply a control premium to valuation methods ( like DCF and GPC) which already reflect a controlling level of value;

      b)     Using unreasonable revenue projections for 2012 that were stale and verifiably inaccurate by the time of the transaction;

      c)     Using unreasonable revenue projections for 2013 through 2017 that predicted revenue growth far beyond the Company's historical average and were not justified by the circumstances;

      d)     Using unreasonable EBIT margin projections for 2012 that were stale and verifiably inaccurate by the time of the transaction;

      e)     Using unreasonable EBIT margin projections for 2013-2017 that were not justified by the circumstances;

      f)     Failing to consider, adequately consider or articulate, among other things, the change of accounting methods from cash to accrual between fiscal years 2010 and 2011;

      g)     Failing to consider, adequately consider or articulate, among other things, the impact of a proposed Stock Appreciation Rights Plan;

      h)     Overstating the Company's unneeded working capital; and

i)        Relying upon adjustments to income statements which omitted prior years' costs related to contributions to the Company's Profit Sharing Plan.

22.        On November 21, 2012, at the outset of Saakvitne's involvement with the transaction, Hansen emailed Saakvitne listing the price for a 100% sale of the Company as "40 million."

23.        On December 3, 2012, Saakvitne met with Bowers and Kubota in Hawaii. Hansen's agenda for that meeting listed "Valuation: Aprox. 40 million" under the heading "Basis of Deal – General."

24.        On December 10, 2012, Bowers made an offer to Saakvitne to sell 100% of the Company's shares to the ESOP for $41 million dollars, to be financed by the sellers with a 20-year loan at 10% interest.

25.        On December 11, 2012, Kniesel emailed the Updated Valuation Report to Saakvitne at 12:30 p.m. PST, with a promise to discuss it that day at 2:00 p.m.

26.        On December 11, 2012 at 1:41 p.m. PST, after receiving the Updated Valuation, but before discussing it with Kniesel, Saakvitne made a counter offer on behalf of the ESOP to purchase 100% of the Company's stock for $39 million dollars to be financed by the sellers with a 25-year loan at 6% interest.

27.        Hours later, at 4:55 p.m. PST, without waiting for a counter-offer

from the sellers, Saakvitne bargained against the ESOP with an offer of $40

million for 7% interest on the loan.

28.     An hour later, Bowers countered with an 8% interest rate on the loan.

By 9:30 p.m. that evening, they reached an agreement for the ESOP to purchase

the Company's shares for $40 million payable over 25 years at 7% interest.

29.     On December 11, 2012, Bowers and Kubota established the Plan

with a retroactive effective date of January 1, 2012.  The Plan Documents required

that the Company, through its Board of Directors, and the Trustee perform their

duty to administer the Plan solely in the interests of the Participants and their

Beneficiaries.

30.     On December 14, 2012, Saakvitne, Bowers, and Kubota caused the

ESOP to purchase 100% of the Company's one million shares for an aggregate $40

million dollars ("ESOP Transaction").  In order to accomplish the ESOP

Transaction, the Bowers Trust, Kubota Trust, Bowers, Kubota, and the ESOP

entered into the following transactions:

a)      On December 14, 2012, Bowers as Trustee of the Bowers

Trust, Kubota as Trustee of the Kubota Trust, and Saakvitne as Trustee of the

ESOP, entered into an ESOP Stock Purchase Agreement;

b)      On December 14, 2012, Saakvitne, as Trustee of the ESOP,

signed a note promising that the ESOP would pay $20,400,000 to the Bowers

Trust;

        c)      On December 14, 2012, Saakvitne, as Trustee of the ESOP, signed a note promising that the ESOP would pay $19,600,000 to the Kubota Trust.

31.     Kniesel did not provide the Final Valuation Report, containing analyses and schedules fiduciaries would reasonably require to perform good faith deliberations, to Saakvitne until on or about June 4, 2013, which was nearly six months after the transaction.

32.     Defendants Saakvitne, Bowers, and Kubota did not carry out a meaningful review of the LVA Preliminary Valuation Report or Fairness Opinion and did not identify or question LVA regarding the flaws outlined above in Paragraph 21.

33.     Due to the actions or inactions described above, the Defendants knew or should have known that the LVA Preliminary Valuation Report, Updated Valuation Report, and Fairness Opinion should not have been relied upon to justify the ESOP transaction.

34.     All Defendants were aware of the terms of the ESOP Transaction set forth above in Paragraph 30.

## IV.   VIOLATIONS OF ERISA §§ 404(a)(1)(A), (B), and (D) – IMPRUDENCE AND DISLOYALTY
### (Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota)

35.     Paragraphs 1 through 34, above, are incorporated herein.

36.     In relation to the ESOP Transaction, Defendants Saakvitne and Saakvitne Law Corporation failed to discharge Saakvitne's fiduciary duties with respect to the ESOP solely in the interests of the participants and beneficiaries and with the care, skill prudence and diligence under the circumstances prevailing that a prudent person, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and failed to act in accordance with plan documents, in violation of ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) by, among other things:

a)     Causing the ESOP to enter into the purchase of the Company's stock at a price in excess of fair market value which was not in the best interest of the Plan Participants;

b)     Relying on the LVA Preliminary and Updated Valuation Reports that were flawed and significantly overvalued the shares of the Company and without investigating that reliance on the Preliminary and Updated Valuation was reasonably justified under the circumstances;

c)     Relying on the LVA Fairness Opinion without investigating that reliance on the Opinion was reasonably justified under the circumstances; and

d)      Failing to hire, or consider hiring, an independent appraiser who had not already worked directly with the selling shareholders in making a valuation determination.

37.      In relation to the ESOP Transaction, Defendants Bowers and Kubota failed to discharge their fiduciary duties with respect to the ESOP solely in the interests of the participants and beneficiaries and with the care, skill prudence and diligence under the circumstances prevailing that a prudent person, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and failed to act in accordance with plan documents, in violation of ERISA §§ 404(a)(1)(A), (B), and (D), 29 U.S.C. §§ 1104(a)(1)(A), (B), and (D) by, among other things:

a)      Causing unreasonable, inflated revenue projections for 2012 to be forwarded to LVA and failing to supplement with updated, more accurate information before the transaction;

b)      Causing unreasonable, inflated revenue projections for 2013 through 2017 to be forwarded to LVA;

c)      Failing to monitor Saakvitne and assure that he acted in the best interests of the Plan's Participants and Beneficiaries;

d)      Relying on the LVA Preliminary and Updated Valuation Reports that were flawed and significantly overvalued the shares of the Company

without making certain that reliance on the Preliminary and Updated Valuation was reasonably justified under the circumstances;

      e)      Relying on the LVA Fairness Opinion without making certain that reliance on the Opinion was reasonably justified under the circumstances; and

      f)      Causing the ESOP to enter into the purchase of the Company's stock at a price in excess of fair market value which was not solely in the interest of the Plan's participants.

38.      As a result of the foregoing breaches of fiduciary duty, Defendants Saakvitne, the Saakvitne Law Corporation, Bowers, and Kubota caused a loss to the ESOP for which they are personally liable. ERISA § 409(a), 29 U.S.C. § 1109(a).

## V.     VIOLATIONS OF ERISA §§ 405(a)(1)-(3) – CO-FIDUCIARY LIABILITY
### (Defendants Bowers and Kubota)

39.      Paragraphs 1 through 38, above, are incorporated herein.

40.      As set forth above, as ESOP fiduciaries Bowers and Kubota: (a) participated in the others' breach of duty, (b) enabled the others to breach their duties related to the transaction, (c) knew or should have known of the others' breaches of fiduciary duty and failed to take action regarding the transactions, and (d) failed to make reasonable efforts under the circumstances to remedy those breaches of duty. ERISA §§ 405(a)(1)-(3), 502(a)(2) & (5), 29 U.S.C. §§

1105(a)(1)-(3), 1132(a)(2) & (5).

41.     Bowers knew that the financial information he and Kubota provided to Kniesel was not reasonably accurate and he failed to take action to ensure that the information he and Kubota provided to Kniesel was accurate at the time of the transaction.  Bowers knew that Kubota was not taking reasonable steps to monitor Saakvitne and that Kubota was not ensuring that Saakvitne acted solely in the interests of the Plan's participants.

42.     Kubota knew that the financial information he and Bowers provided to Kniesel was not accurate and he failed to take action to ensure that the information he and Bowers provided to Kniesel was accurate.  Kubota knew that Bowers was not taking reasonable steps to monitor Saakvitne and that Bowers was not ensuring that Saakvitne acted solely in the interests of the Plan's participants.

43.     The ESOP Transaction was caused and controlled by Bowers and Kubota at all times, making each responsible for the others' failures to use reasonable care to prevent his co-fiduciary from committing a breach. Accordingly, Bowers and Kubota are also liable as co-fiduciaries for the losses caused by any fiduciary and as  knowing participants. ERISA §§ 405(b)(1)(A), 502(a)(2) & (5), 29 U.S.C. § 1105(b)(1)(A), 1132(a)(2) & (5).

## VI.  VIOLATIONS OF ERISA §§ 406(a)(1)(A) – PROHIBITED TRANSACTIONS
### (Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota)

44.     Paragraphs 1 through 43, above, are incorporated herein.

45.     By authorizing the ESOP to purchase shares of the Company stock for greater than "adequate consideration" (defined as the "fair market value of the asset as determined in good faith by the trustee or named fiduciary") (ERISA § 408(e), 29 U.S.C. § 1108(e); ERISA § 3(18)(B), 29 U.S.C. § 1002(18)(B)), Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota engaged in a non-exempt prohibited transaction under ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A), by causing and/or allowing the ESOP to engage in a transaction that they knew or should have known was a direct sale of property between the Plan and a party in interest.

46.     As a result of the foregoing prohibited transactions, Defendants Bowers and Kubota caused their respective trusts to receive notes for future payment, property, cash, or proceeds from the ESOP as part of the sale or exchange of ESOP shares from them to the ESOP, which they must personally restore to the ESOP under ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

47.     As a result of the foregoing prohibited transactions, Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota caused a loss to the ESOP for which they are jointly and severally liable. ERISA § 409(a), 29 U.S.C. §

1109(a).

## VII.   VIOLATIONS OF ERISA §§ 406(b)(1) and (b)(2) – PROHIBITED TRANSACTIONS
### (Defendants Bowers and Kubota)

48.     Paragraphs 1 through 47, above, are incorporated herein.

49.     Defendants Bowers and Kubota in their capacities as Directors of the Company and fiduciaries in fact, engaged in transactions between the ESOP and the Bowers Trust and Kubota Trust, the sellers of the Company shares, prohibited by ERISA and in violation of:

a)     ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibiting them from dealing with the assets of the ESOP in their own interest and for their own account; and

b)     ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), prohibiting them from acting in any transaction involving the plan on behalf of a party whose interests are adverse to the interests of the plan in their individual or any other capacity.

50.     As a result of the foregoing prohibited transactions, Defendants Bowers and Kubota caused a loss to the ESOP for which each is personally liable. ERISA § 409(a), 29 U.S.C. § 1109(a).

## VIII.   ERISA § 502(a)(5) – KNOWING PARTICIPATION
### (Defendants Bowers and Kubota)

51.     Paragraphs 1 through 50, above, are incorporated herein.

52.     Defendants Bowers and Kubota knowingly participated in a transaction that is prohibited by ERISA because they had both actual and constructive knowledge of the facts that led to Defendants Saakvitne and Saakvitne Law Corporation's fiduciary breaches in this matter.

53.      As a result of the foregoing prohibited transactions, Defendants Bowers and Kubota caused a loss to the ESOP for which each is personally liable. ERISA § 502(a)(5), 29 U.S.C 1132(a)(5).


## IX.    ERISA § 410(a) – IMPROPER INDEMNIFICATION

54.     Paragraphs 1 through 53, above, are incorporated herein.

55.     The ESOP Transaction involved a number of documents which violate ERISA's prohibition on fiduciary indemnification:

a)      The Plan's Trust Agreement purports to indemnify "the Trustee and its officers, directors, employees and agents ('Indemnitees') for any loss, cost, expense or other damage, including attorney's fee, suffered by any of the Indemnitees and resulting from or incurred with respect to any legal proceedings related in any way to the performance of services by anyone or more of the Indemnitees pursuant to this Trust Agreement.";

21

b)      The Plan Documents purport to indemnify the Trustee

"against any personal liability or expense, including reasonable attorney's fees…";

c)      The ESOP Stock Purchase Agreement states that the

Company "shall indemnify, hold harmless, reimburse and if requested by the

Sellers, defend the Sellers (the 'Indemnified Person') for, and will pay to the

Indemnified Person the amount of, any loss, liability, claim, damage (including

incidental and consequential damages), expense (including reasonable costs of

investigation and defense and reasonable attorney's fees), or diminution of

value…"

56.      Provisions which relieve fiduciaries from responsibility or liability

for "any responsibility, obligation, or duty…shall be void as against public policy."

ERISA § 410, 29 U.S.C. § 1110.

## X.     PRAYER FOR RELIEF

**WHEREFORE**, cause having been shown, Plaintiff, Secretary of Labor,

prays that this Court:

1.      Order Defendants Saakvitne, Saakvitne Law Corporation, Bowers,

and Kubota to restore all losses to the ESOP, with interest thereon, resulting from

their breaches of fiduciary obligations and to correct all prohibited transactions in

which they engaged or for which they are liable; except that no restitution beyond

that covered by insurance, if any, may be paid by the Company or the ESOP, as

that would directly or indirectly harm the ESOP or its Participants;

2.      Permanently enjoin Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota from violating, or knowingly participating in violation of, the provisions of ERISA;

3.      Permanently enjoin Defendants Saakvitne, Saakvitne Law Corporation,  Bowers, and Kubota from acting as a fiduciary to the ESOP or any other employee benefit plan covered by ERISA;

4.      Strike, void, and declare invalid the portions of the Plan Documents, Trust Agreement, ESOP Stock Purchase Agreement, and any other agreement which purport to indemnify Defendants at the expense of the Plan or the Company (other than valid insurance policies which do not result in additional expenses to the Plan), and restore all losses to the ESOP which have resulted from said provisions;

5.      Permanently enjoin Defendants Saakvitne, Saakvitne Law Corporation,  Bowers, and Kubota from causing or allowing the Plan or the Company to indemnify them at the expense of the Plan or the Company;

6.      Award Plaintiff costs of this action; and

7.      Provide such other remedial relief as may be appropriate.

Dated this 27th day of April 2018.

Respectfully submitted,

KATE S. O'SCANNLAIN
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

IAN H. ELIASOPH
Counsel for ERISA


By:_____/s/_____
       Donna F. Bond
       Trial Attorney

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff