IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor ) ) ) ) | Civ. No. 18-00155 SOM-RLP ORDER DENYING (1) DEFENDANT |
| Plaintiff, ) | BOWERS + KUBOTA CONSULTING, INC.'S MOTION TO DISMISS AND |
| vs. ) ) | (2) DEFENDANTS BRIAN J. BOWERS AND DEXTER C. KUBOTA'S |
| NICHOLAS L. SAAKVITNE, an individual; NICHOLAS L. SAAKVITNE, A LAW CORPORATION, a California corporation; BRIAN J. BOWERS, an individual; DEXTER C. KUBOTA, an individual; BOWERS + KUBOTA CONSULTING, INC., a corporation; BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN, ) ) ) ) ) ) ) ) ) ) ) ) ) ) | MOTION TO DISMISS |
| Defendants. ) | |
| _____ ) | |


**ORDER DENYING (1) DEFENDANT BOWERS + KUBOTA CONSULTING, INC.'S
MOTION TO DISMISS AND (2) DEFENDANTS BRIAN J. BOWERS
AND DEXTER C. KUBOTA'S MOTION TO DISMISS**

I.      INTRODUCTION.

        Before this court are two motions seeking dismissal of

the Complaint filed by Plaintiff R. Alexander Acosta, the

Secretary of the United States Department of Labor (the

"Secretary"), asserting claims against Defendants under the

Employee Retirement Income Security Act of 1974 ("ERISA").  Both

motions are denied.

        Defendant Bowers + Kubota Consulting, Inc. (the

"Company") moves for dismissal under Rule 12(b)(6) of the

Federal Rules of Civil Procedure, arguing that the Company was improperly joined under Rule 19. ECF No. 26. This court denies the Company's Motion, concluding that the Company's joinder under Rule 19 is necessary and feasible.

Defendants Brian J. Bowers and Dexter C. Kubota move for dismissal under Rule 12(b)(6), arguing that the Complaint fails to sufficiently allege facts demonstrating that they had ERISA fiduciary liability or acted in violation of ERISA. Their motion is denied because the Complaint alleges sufficient facts to support the ERISA claims against Bowers and Kubota.

## II.       BACKGROUND.

On April 27, 2018, the Secretary filed a Complaint alleging that, on December 14, 2012, Nicholas L. Saakvitne, Bowers, and Kubota caused the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan (the "ESOP") to purchase the Company's shares for more than they were worth. *See* ECF No. 1. The Complaint names six Defendants: (1) Saakvitne; (2) Saakvitne's law firm ("Saakvitne Law Corporation"); (3) Bowers; (4) Kubota; (5) the Company; and (6) the ESOP. *See id.* The Complaint states that the Company and the ESOP are named as defendants "pursuant to Rule 19(a) of the Federal Rules of Civil Procedure solely to assure that complete relief can be granted." *Id.*, PageID #s 6-7.

The Secretary alleges the following facts in his Complaint. Bowers, the Company's President, and Kubota, its Vice President, owned the Company through their respective trusts. *See id.* at 4, 7. They met with an attorney in the summer of 2012 to discuss the creation of an ESOP to divest themselves of their ownership interests in the Company. *See id.* at 9. In the fall of 2012, Bowers and Kubota provided information about the Company to the valuation firm Libra Valuation Associates ("LVA").[1] *See id.* LVA produced a preliminary appraisal report that put the Company's value between $37,090,000 and $41,620,000. *See id.* at 10. LVA later produced an updated valuation report and a fairness opinion, both valuing the Company at $40,150,000. *See id.* The Complaint alleges that these LVA valuation reports were flawed in several respects. For example, the reports applied a 30% control premium even though there would be no change in control of the Company, and they used unreasonable revenue projections that went far beyond the Company's historical average. *See id.* at 10-11.

In the meantime, Bowers, Kubota, and their attorney communicated with Saakvitne about appointing Saakvitne the trustee of the ESOP and about the pending sale of the Company.

---

[1] Bowers and Kubota's motion to dismiss states that the correct name for the firm is Libra Valuation Advisors, Inc. ECF No. 7-1, PageID # 43.

*See id.* at 12.  The Complaint alleges that, "at the outset of Saakvitne's involvement with the transaction, [the attorney] emailed Saakvitne listing the price for a 100% sale of the Company as '40 million.'"  *Id.* at 12.  It also alleges that "Saakvitne met with Bowers and Kubota in Hawaii" with a document that "listed 'Valuation: Approx. 40 million' under the heading 'Basis of Deal – General.'"  *Id.*

According to the Complaint, on December 10, 2012, Bowers made an initial offer to Saakvitne to sell the Company's shares to the ESOP for $41 million, payable over 20 years at 10% interest.  *See id.*  After negotiating for a day, Saakvitne, Bowers, and Kubota allegedly agreed that the ESOP would purchase the Company's shares for $40 million payable, over 25 years at 7% interest.  *See id.* at 13.  On December 11, 2012, the ESOP was formed with a retroactive date of January 1, 2012, and Saakvitne was named as its trustee.  *See id.* at 9.  On December 14, 2012, Saakvitne, Bowers, and Kubota allegedly caused the ESOP to purchase the Company's shares for $40 million dollars.  *See id.* at 13.

The Complaint alleges that Saakvitne, Bowers, and Kubota "did not carry out a meaningful review" of the LVA valuation reports, which "were obviously defective and significantly overvalued the shares of the Company," and that they knew or should have known that the reports "should not have

4

been relied upon to justify the ESOP transaction." *Id.* at 10, 14. Bowers and Kubota allegedly provided unreasonable and inflated revenue projections to LVA, knowing that such projections were inaccurate, and allegedly failed to monitor Saakvitne to assure that he acted in the best interests of the ESOP's participants and beneficiaries. *See id.* at 15-18.

Relying on these allegations, the Complaint asserts the following ERISA claims:

(1) Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota failed to discharge fiduciary duties with care, skill, prudence, and diligence in violation of 29 U.S.C. § 1104(a)(1)(A), (B), and (D);

(2) Bowers and Kubota are liable for breaches of fiduciary responsibilities by another fiduciary ("co-fiduciary liability") under 29 U.S.C. § 1105(a)(1)-(3);

(3) Saakvitne, Saakvitne Law Corporation, Bowers, and Kubota engaged in prohibited transactions between a plan and a party in interest in violation of 29 U.S.C. § 1106(a)(1)(A);

(4) Bowers and Kubota engaged in prohibited transactions between a plan and a fiduciary in violation of 29 U.S.C. § 1106(a)(1)(A);

(5) Bowers and Kubota knowingly participated in a transaction prohibited by ERISA under 29 U.S.C. § 1132(a)(5);

(6) Provisions of the ESOP documents are void for improperly

      indemnifying fiduciaries under 29 U.S.C. § 1110.

*Id.* at 15-22. The Secretary seeks restitution for the ESOP, as well as injunctive and declaratory relief. *See id.* at 22-23.

      Bowers and Kubota filed a motion to dismiss on June 12, 2018. ECF No. 7. On September 5, 2018, the Company filed a separate motion to dismiss and joined the motion to dismiss filed by Bowers and Kubota.[2] ECF No. 26. Following the recusal of the district judge originally assigned to this case, the case was reassigned, and a hearing was held on both motions on January 7, 2019.

**III.      STANDARD OF REVIEW.**

      Both motions are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. The court's review is generally limited to the contents of a complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. *Keams v. Tempe Tech. Inst., Inc.*, 110 F.3d 44, 46 (9th Cir. 1997); *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996). However, the court

---

[2] The Company filed its answer on July 10, 2018. ECF No. 19.

may take judicial notice of and consider matters of public record without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1198 (9th Cir. 1988).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell*, 266 F.3d at 988; *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996). Dismissal under Rule 12(b)(6) may be based on either "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988) (citing *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citations omitted); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he pleading standard . . . does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." (internal quotation marks omitted)). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted). A complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

IV.      **ANALYSIS.**

   **A.   The Company's Motion To Dismiss Is Denied Because The Company Was Properly Joined Under Rule 19.**

      The Company seeks dismissal of the Complaint, arguing that it "states no allegations as against [the Company] and seeks no relief as against [the Company.]" ECF No. 26-1, PageID # 312. The Company further argues that it cannot be joined as a nominal defendant or as an indispensable defendant under Rule 19 of the Federal Rules of Civil Procedure because it holds no interest in the subject matter of the litigation. *See id.* at 309-12.

The court determines that the Company was properly joined under Rule 19, which governs compulsory joinder in federal district courts. *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 778 (9th Cir. 2005) ("*Peabody I*"). While the Complaint does not assert any claims against the Company, "joinder of [a defendant] under Rule 19 is not prevented by the fact that the [plaintiff] cannot state a cause of action against [the defendant]." *See id.*

Rule 19(a) provides:

(1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Rule 19(b) provides that if it is not feasible for the court to join a person meeting the requirements of Rule 19(a), the court "must determine whether, in equity and good conscience, the action should proceed among the existing parties

or should be dismissed." The Ninth Circuit, deeming a dismissal to be a determination that the absent person is indispensable, *see Peabody I*, 400 F.3d at 779, provides the following guidance:

> The factors to be considered by the court [in determining whether a party is indispensable] include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*Id.*

The Ninth Circuit interprets Rule 19 as requiring "three successive inquiries." *Id.* "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id.* "If the absentee is a necessary party under Rule 19(a), the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." *Id.*

As explained below, the Company is a necessary party that may be feasibly joined. Having made this determination,

the court need not address whether the Company is an indispensable party. *See Peabody I*, 400 F.3d at 779; *Walter v. Drayson*, 496 F. Supp. 2d 1162, 1178 (D. Haw. 2007).

### 1. The Company Is A Necessary Party.

The Secretary argues that the Company is a necessary party under Rule 19(a)(1)(A) because, in the Company's absence, the court would not be able to accord complete relief if the Secretary prevailed on his ERISA claims. *See* ECF No. 30, PageID #s 324-25. The court agrees.

The Ninth Circuit has explained that the term "necessary" describes "persons to be joined if feasible." *Peabody I*, 400 F.3d at 779 (quoting Fed. R. Civ. P. 19(a)) (brackets omitted). "Necessary" in the ordinary sense is "too strong a word" because "it is still possible under Rule 19(b) for the case to proceed without the joinder of the so-called 'necessary' absentee." *Id.* Rather, "Rule 19(a) 'defines the persons whose joinder in the actions is *desirable*' in the interests of just adjudication." *Id.* (quoting Fed. R. Civ. P. 19 Advisory Committee Note (1966)). Such desirable persons are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act." *Id.* (quoting *Shields v. Barrow*, 58 U.S. 130, 139 (1854)).

Complete relief under Rule 19(a)(1)(A) means "consummate rather than partial or hollow relief" and

11

"preclud[es] multiple lawsuits on the same cause of action."
*Id.* at 780. A plaintiff need not state a direct cause of action
against a party joined under Rule 19. "[B]y definition, parties
to be joined under Rule 19 are those against whom no relief has
formally been sought but who are so situated as a practical
matter as to impair either the effectiveness of relief or their
own or present parties' ability to protect their interests."
*Id.* at 783 (quoting *Eldredge v. Carpenters 46 N. Cal. Ctys.*
*Joint Apprenticeship & Training Comm.*, 440 F. Supp. 506, 518
(N.D. Cal. 1977)). A party "can be joined under Rule 19 in
order to subject it, under principles of res judicata, to the
'minor and ancillary' effects of a judgment." *EEOC v. Peabody*
*W. Coal Co.*, 610 F.3d 1070, 1079 (9th Cir. 2010) ("*Peabody II*")
(quoting *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458
U.S. 375, 399 (1982)).

The Complaint prays for several forms of relief,
including injunctive relief to (1) "[p]ermanently enjoin
Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and
Kubota from acting as a fiduciary to the ESOP"; (2) "[s]trike,
void, and declare invalid the portions of the Plan Documents,
Trust Agreement, ESOP Stock Purchase Agreement, and any other
agreement which purport to indemnify Defendants as the expense
of the Plan or the Company"; and (3) "[p]ermanently enjoin
Defendants Saakvitne, Saakvitne Law Corporation, Bowers, and

Kubota from causing or allowing the Plan or the Company to indemnify them at the expense of the Plan or the Company." ECF No. 1, PageID # 23.

The requested relief appears to require the Company's involvement, given the Company's role in administering the ESOP. *See Solis v. Webb*, 931 F. Supp. 2d 936, 956 (N.D. Cal. 2012) (holding that an ESOP was a necessary party for complete relief because the Secretary's prayers for relief were "likely to impact administration of the ESOP"). The Complaint alleges that the Company is "intimately involved in issues pertaining to the ESOP" because it "created the ESOP, and is the ESOP Employer, Plan Sponsor, Plan Administrator, and signatory to contracts governing the ESOP." ECF No. 30, PageID # 325. The Company would therefore need to be involved in modifying the ESOP's governing documents and restructuring the ESOP's fiduciaries if the Secretary obtained the relief sought.

In its reply, the Company argues that the Secretary may not have the authority under ERISA to seek modification of the ESOP contracts. ECF No. 33, PageID #s 363-64. The Company cites *CIGNA Corp v. Amara*, which states that 29 U.S.C. § 1132(a)(1)(B) "speaks of 'enforc[ing]' the 'terms of the plan,' not of changing them." 563 U.S. 421, 436 (2011) (quoting 29 U.S.C. § 1132(a)(1)(B)). *Amara* does not restrict the Secretary in the manner the Company asserts.

First, the Complaint does not mention § 1132(a)(1)(B) because that subsection applies to civil actions brought "by a participant or beneficiary," not by the Secretary. *See* ECF 1; 29 U.S.C. § 1132(a)(1)(B). Second, *Amara* held that, while an ERISA plan cannot be reformed under § 1132(a)(1)(B), it can be reformed under § 1132(a)(3). *See Amara*, 563 U.S. at 438-42. The Supreme Court reasoned that § 1132(a)(3) permits a court to award "appropriate equitable relief," and "[t]he power to reform contracts . . . is a traditional power of an equity court." *See id.* The Secretary is seeking relief under § 1132(a)(2), which allows a court to award "appropriate relief under section 1109 of this title." ECF No. 1, PageID # 3; 29 U.S.C. § 1132(a)(2). Section 1109 permits "other equitable or remedial relief as the court may deem appropriate." 29 U.S.C. § 1109(a). Thus, *Amara* supports the Secretary's ability to seek modification of the ESOP contracts as a form of equitable relief.

The Company also argues that it need not be joined because the ESOP is already party to the action. *See* ECF No. 33, PageID # 362. The Company says, "The Secretary has not cited a single case in which a company whose stock was the subject of an [ESOP] was held to be a necessary party to an action against the parties who valued or sold the stock to the [ESOP]." *Id.* The Company attempts to distinguish the present case from *Acosta v. Pacific Enterprises*, 950 F.2d 611 (1991),

14

and *Solis v. Webb*, 931 F. Supp. 2d 936 (N.D. Cal 2012), in which
Rule 19 joinder of ERISA plans was permitted.  Although neither
*Acosta* nor *Solis* addressed joinder of an entity like the
Company, neither case suggests that companies cannot be joined
under Rule 19 when their participation is needed to ensure that
complete relief is obtained.  Further, the Company's attempts to
distance itself from the ESOP in this instance are inconsistent
with its position equating itself with the ESOP in arguing that
the Company should not be forced to incur further litigation
expenses.  The Company states, "If the Secretary believes that
the goal should be to protect the [ESOP] from suffering the
expense of a suit, it can start by agreeing to the dismissal of
[the Company], so that no further expenses of litigation are
incurred by [the Company]."  ECF No. 33, PageID # 365.  The
ESOP's ownership of the Company's shares does not, without more,
necessitate the Company's dismissal as a party.

    The court here briefly addresses the argument the
Secretary made at the hearing that the Company is also a
necessary party under Rule 19(a)(1)(B) because the Company may
benefit from any relief awarded.  Rule 19(a)(1)(B) is not
applicable here because joinder under that subsection is
"contingent . . . upon an initial requirement that the absent
party *claim* a legally protected interest relating to the subject
matter of the action."  *Altmann v. Republic of Austria*, 317 F.3d

954, 971 (9th Cir. 2002), *amended by* 327 F.3d 1246 (9th Cir. 2003) (quoting *Northrop Corp. v. McDonnell Douglas Corp.*, 705 F.2d 1030, 1043 (9th Cir. 1983)). The Company has explicitly stated that it claims no such interest in the action. *See* ECF No. 33, PageID # 362 ("[The Company] does not claim any interest relating to the subject matter of this action[.]"). Thus, joinder under Rule 19(a)(1)(B) is not necessary. *See United States v. Bowen*, 172 F.3d 682, 689 (9th Cir. 1999) (holding that joinder was not necessary when a party "was aware of this action and chose not to claim an interest").

The court concludes that the Company is a necessary party under Rule 19(a)(1)(A) for the purposes of according complete relief.

### 2. The Company Can Be Feasibly Joined.

Because the Company is a necessary party, the next inquiry is whether joinder is "feasible" under Rule 19. *See Peabody I*, 400 F.3d at 779; *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999); Fed. R. Civ. P. 19(a)-(b). "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Peabody I*, 400 F.3d at 779 (citing Fed. R. Civ. P. 19(a); *Tick v. Cohen*, 787 F.2d 1490, 1493 (11th Cir. 1986)).

16

The Secretary argues that venue is proper because the Company resides in Hawaii, and that this court has jurisdiction under 29 U.S.C. § 1132(e)(2). ECF No. 30, PageID # 327 (citing *Trustees For Alaska Laborers-Constr. Indus. Health & Sec. Fund v. Ferrell*, 812 F.2d 512, 517 (9th Cir. 1987)). At the hearing, the Company conceded that joinder is feasible. The court therefore concludes that the Company may be feasibly joined under Rule 19.

### 3. The Company's Consent Decree Argument Is Unpersuasive.

Finally, the Company's reply states in a footnote, "To the extent necessary, if it will facilitate its dismissal from this action, [the Company] will agree to be bound by any ruling that this Court may make that so requires it." ECF No. 33, PageID # 365. At the hearing, the Company stated that it was willing to enter into a consent decree binding the Company to any ruling in the case. It did not provide the court with a proposed consent decree.

When the court asked the Company to articulate the scope and effect of this hypothetical consent decree, the Company suggested that it would be confined to the scope of the Complaint. This description invites litigation over whether particular consent decree terms fall within the scope of the Complaint. Complaints do not expressly address all issues that may arise and be ruled on in a case. The Company provided no

citation to a case discussing a consent decree like that described by the Company.

At this stage in the proceeding and without a proposed consent decree to consider, the court has no basis for agreeing with the Company that a consent decree is a feasible alternative to joinder of the Company under Rule 19(a).

**B.    Bowers And Kubota's Motion To Dismiss Is Denied.**

In their motion to dismiss, Bowers and Kubota make five arguments as to why the claims against them should be dismissed.  Each argument fails.

**1.    The Complaint Sufficiently Alleges that Bowers and Kubota were ERISA Fiduciaries for the ESOP's 2012 Purchase of Company Stock.**

Bowers and Kubota argue that they were not ERISA fiduciaries with respect to the ESOP's 2012 purchase of the Company's shares because the allegations in the Complaint go to their alleged conduct before the purchase.  ECF No. 7-1, PageID #s 58-59.  They also argue that the Company delegated responsibility for approving the 2012 purchase to Saakvitne as the ESOP's trustee, which divested the Company, Bowers, and Kubota of "any ERISA fiduciary duty with respect to the sale of the [Company] stock to the ESOP." *Id.* at 60.  Bowers and Kubota highlight the Complaint's failure to allege that their appointment of Saakvitne breached any ERISA fiduciary duty. *Id.* at 61.

18

Bowers and Kubota's concept of ERISA fiduciary status appears too limited. The Ninth Circuit "construe[s] ERISA fiduciary status 'liberally, consistent with ERISA's policies and objectives.'" *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 1997) (quoting *Ariz. State Carpenters Pension Tr. Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir. 1997)); *see also Batchelor v. Oak Hill Med. Grp.*, 870 F.2d 1446, 1449 (9th Cir. 1989) ("ERISA is remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans."). Congress enacted ERISA to establish "minimum standards . . . assuring the equitable character of [benefit] plans and their financial soundness." 29 U.S.C. § 1001(a). ERISA requires that "authority to control and manage the operation and administration of the plan" be vested in one or more named fiduciaries, and that these fiduciaries abide by "standards of conduct, responsibility, and obligation" to protect the plan's participants and beneficiaries. *Id*. §§ 1001(b), 1102(a). These standards include the duties of loyalty and care and a prohibition against self-dealing. *Id*. §§ 1104(a)(1), 1106(b)(1).

ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan." *Couturier*, 572 F.3d at 1076 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993)). ESOP fiduciaries

include "not only those specifically named in the employee
benefit plan, 29 U.S.C. § 1102(a), but also any individual who
'exercises any discretionary authority or discretionary control
respecting management of such plan or exercises any authority or
control respecting management or disposition of its assets.'"
*Id.* (quoting 29 U.S.C. § 1002(21)(A)(i)). Members of an
employer's board of directors are subject to ERISA fiduciary
duties to the extent they have responsibility over the ESOP and
over the management or disposition of its assets. *See id.; see
also* 29 C.F.R. § 2509.75-8(D-4) ("Members of the board of
directors of an employer which maintains an employee benefit
plan will be fiduciaries only to the extent that they have
responsibility for the functions described in [29 U.S.C.
§ 1002(21)(A)]."); 29 U.S.C. § 1002(21)(A) ("a person is a
fiduciary with respect to a plan to the extent (i) he exercises
any discretionary authority or discretionary control respecting
management of such plan or exercises any authority or control
respecting management or disposition of its assets").

　　　　The Complaint alleges that Bowers and Kubota were the
Company's owners and the only members of its Board of Directors,
and that, in those roles, they established the ESOP and
appointed Saakvitne as trustee. ECF No. 1, PageID #s 7-8, 12-
13. The Complaint also alleges that Bowers and Kubota met with
Saakvitne prior to his appointment as trustee and indicated to

20

him that the value of the Company was $40 million.  *Id*. at 12.

Taken together, the allegations in the Complaint sufficiently

plead that Bowers and Kubota exercised discretionary authority

and control over the management of the ESOP and the selection

and retention of Saakvitne.

The ESOP's governing documents, attached to Bowers and

Kubota's motion, support these allegations.[3]  According to these

documents, Bowers and Kubota, as Directors of the Board, had

discretionary control over the management of the ESOP and the

sale of Company stock.  *See* ECF Nos. 7-4; 7-5.  For example,

according to the "Bowers + Kubota Consulting, Inc. Employee

Stock Ownership Plan (Effective As Of January 1, 2012)," the

Board of Directors appoints the ESOP's Trustee to "serve at its

pleasure" and may appoint a committee "to assist in the

---

[3] Bowers and Kubota's motion attached several documents related
to the creation and administration of the ESOP.  *See* ECF Nos. 7-
3, 7-4, 7-5, 7-6, 7-7.  Courts may "consider certain materials--
documents attached to the complaint, documents incorporated by
reference in the complaint, or matters of judicial notice--
without converting the motion to dismiss into a motion for
summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908
(9th Cir. 2003).  Documents whose contents are alleged in a
complaint and whose authenticity is not questioned by any party
may also be considered in ruling on a Rule 12(b)(6) motion to
dismiss.  *See Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir.
1994), *overruled on other grounds by Galbraith v. Cty. of Santa
Clara*, 307 F.3d 1119 (9th Cir. 2002).  The Secretary confirmed
at the hearing that he consents to the court's consideration of
all attachments to Bowers and Kubota's motion to dismiss.  The
court therefore considers the attachments without converting the
motion to one for summary judgment.

administration of the Plan." ECF No. 7-4, PageID # 158. The
Board of Directors also may act to "amend or terminate the Plan
(in whole or in part) and the Trust Agreement at any time." *Id.*
at 166. That document also states that the Trustee can only
sell Company stock with the approval of the Board of Directors:

5.04 – Sales of Company Stock:

> ***With the approval of the Board of Directors,
> the Trustee may sell shares of Company Stock
> to any person (including the Company),
> provided that any such sale must be made at
> a price not less than Fair Market Value as
> of the date of the sale.*** Any decision by
> the Trustee to sell Company Stock under this
> Section 5.04 must comply with the fiduciary
> duties applicable under Section 404(a)(1) of
> ERISA and with the primary benefit rule of
> Section 408(b)(3)(A) of ERISA and Section
> 4975(d)(3)(A) of the Code, if applicable.

*Id.* at 108-09 (emphasis added). Thus, Bowers and Kubota's ERISA
fiduciary duties appear to have extended to the 2012 purchase of
Company stock.

Further, the Complaint's inclusion of allegations
discussing conduct prior to the ESOP's 2012 purchase does not
rid Bowers and Kubota of fiduciary responsibility. Congress
sought to ensure that fiduciaries who fund an ESOP acquire
employer securities for "adequate consideration." 29 U.S.C.
§ 1108(e)(1). When an ESOP is created and managed, "the core
fiduciary duties of loyalty and care as well as the prohibition
against self-dealing remain in effect." *Couturier*, 572 F.3d at
1075-76. Persons acting on behalf of an ESOP are not absolved

of ERISA fiduciary responsibility relating to the purchase of employer securities simply because the ESOP has yet to be funded. *See Webb*, 931 F. Supp. 2d at 945 ("[T]he existence of an ESOP and the vesting of fiduciary duties in respect thereto does not necessarily depend on the date of the ESOP's funding.").

The Complaint alleges facts sufficient to support a claim that Bowers and Kubota exercised discretionary authority and control over the management of the ESOP, including the 2012 purchase of Company stock.

> ### 2. The Complaint Sufficiently Alleges that Bowers and Kubota Breached their Duty to Monitor Saakvitne.

Bowers and Kubota concede that "[a] plan ERISA fiduciary who has the power to and does appoint a trustee (or other fiduciary) is required by ERISA to monitor the performance of the appointee in order to ensure that such appointed person is in compliance with the terms of the plan and statutory standards." ECF No. 7-1, PageID #s 62-63 (citing 29 C.F.R. § 2509.75-8). However, Bowers and Kubota argue that they had no individual duty to monitor Saakvitne because, pursuant to Saakvitne's engagement agreement, the Company appointed Saakvitne as trustee to the ESOP. *Id.* at 63 (citing ECF No. 7-3).

This argument fails under the functional test used to determine fiduciary status. *See Couturier*, 572 F.3d at 1076. Even if it was the Company that formally appointed Saakvitne, the Complaint alleges that Bowers and Kubota were the primary decision-makers as owners of the Company and the sole members of its Board of Directors. According to the Complaint, they communicated with Saakvitne directly or through their attorney to discuss his trustee appointment, and then indicated to him that the valuation of the Company was $40 million. ECF No. 1, PageID #s 12-14. Those who act as "the de facto decision makers of closely held and related entities" also serve as "ERISA fiduciaries with respect to appointment and removal of ESOP trustees." *See Couturier*, 572 F.3d at 1077. And "[i]mplicit within the duty to select and retain fiduciaries is a duty to monitor their performance." *Webb*, 931 F. Supp. 2d at 953; *Carr v. Int'l Game Tech.*, 770 F. Supp. 2d 1080, 1090 (D. Nev. 2011) ("Case law under ERISA indicates that the power to appoint and remove an ERISA fiduciary gives rise to a duty to monitor and results in the appointing and removing party being a de facto fiduciary with respect to such appointment, monitoring and removal.").

Bowers and Kubota next argue that "the Complaint fails to allege conduct inconsistent with ERISA fiduciary responsibilities to the ESOP." ECF No. 7-1, PageID # 65. They

24

assert that the "duty to monitor is understood to involve reviewing the actions of appointees *after* they have been taken" and does not necessitate review of the decision-making process. *See id.* at 65-66. Further, they argue that the duty to monitor does not include a duty to disclose "material information" or information already known to the trustee. *Id.* at 66-67 ("[T]he Secretary fails to allege that Mr. Bowers and Mr. Kubota possessed information regarding [the Company's] financial condition that also was not known to Mr. Saakvitne and/or LVA.").

Bowers and Kubota's view of the duty to monitor is unpersuasive. The Complaint alleges that Bowers and Kubota failed to monitor Saakvitne by knowingly providing him with flawed information about the Company, permitting him to overstate the value of the Company's shares, and permitting him to direct the ESOP to purchase the shares for more than they were worth. ECF No. 1, PageID #s 9-14. Under their definition, a fiduciary need not monitor a trustee's flawed decision-making process, despite the fiduciary's own involvement in the process, simply because the trustee has not yet implemented a decision that will be harmful to the ERISA plan. Nor, according to Bowers and Kubota, would a fiduciary need to provide accurate information to the trustee so long as the fiduciary and trustee had the same, erroneous information.

A proper understanding of the duty to monitor recognizes that a fiduciary may not enable and participate in a trustee's breach of ERISA duties. "A fiduciary with a duty to monitor a trustee is liable for the trustee's fiduciary breach if he 'knew or should have known' about the trustee's misconduct and failed to take steps to remedy the situation." *Solis v. Couturier*, No. 2:08-cv-02732-RRB-GGH, 2009 WL 1748724, at *7 (E.D. Cal. June 19, 2009) (quoting *Henry v. Frontier Indus., Inc.*, 863 F.2d 886, 1988 WL 132577, at *4 (9th Cir. 1988) (unpublished decision)).

The allegations in the Complaint are sufficient to state a claim against Bowers and Kubota for a breach of their duty to monitor Saakvitne.

### 3. The Complaint Sufficiently Alleges that Bowers and Kubota had Co-Fiduciary Liability for Saakvitne's Breach.

Bowers and Kubota argue that the Complaint's claims of co-fiduciary liability must be dismissed because the Complaint fails to allege that they had "actual knowledge" of Saakvitne's alleged breaches of fiduciary duty. ECF No. 7-1, PageID #s 70-72. They note that the Complaint alleges a lesser standard, that Bowers and Kubota "knew or should have known" that the LVA valuation reports were erroneous and that Saakvitne should not rely on them. *See id.* at 72. Further, Bowers and Kubota argue that they could not have had known that the LVA valuation

26

reports contained errors because the Complaint does not allege that they are "trained economists" or have "some specialized expertise in economic forecasting."  *See id.* at 73.

ERISA defines "co-fiduciary liability" in 29 U.S.C. § 1105(a), which provides:

> (a) Circumstances giving rise to liability
>
> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

The Complaint states that Bowers and Kubota violated all three subsections, § 1105(a)(1)-(3).  ECF No. 1, PageID # 17.  Bowers and Kubota are correct that § 1105(a)(1) requires a showing of actual knowledge, but this explanation of § 1105(a) is incomplete.  A different standard applies to each subsection.

To bring a claim under § 1105(a)(1), a plaintiff "must show: (1) that a co-fiduciary breached a duty to the plan, (2) that the fiduciary knowingly participated in the breach or undertook to conceal it, and (3) damages resulting from the breach." *Carr*, 770 F. Supp. 2d at 1096-97 (quoting *In re Touch Am. Holdings, Inc. ERISA Litig.*, No. CV-02-106-BU-SEH, 2006 WL 7137416, at *11 (D. Mont. June 15, 2006)).

A claim under § 1105(a)(2) requires a plaintiff to prove that the fiduciary "failed to comply with its duties under ERISA, and thereby enabled a co-fiduciary to commit a breach." *Id.* at 1097 (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 284 F. Supp. 2d 511, 581 (S.D. Tex. 2003)). Unlike co-fiduciary liability under § 1105(a)(1) and (3), co-fiduciary liability under § 1105(a)(2) does not require a plaintiff to prove knowledge. *Id.*

Under § 1105(a)(3), a plaintiff must show: "(1) that the fiduciary had knowledge of the co-fiduciary's breach, and (2) that the fiduciary failed to make reasonable efforts under the circumstances to remedy the breach." *Id.* (quoting *Silverman v. Mut. Ben. Life. Ins. Co.*, 941 F. Supp. 1327, 1337 (E.D.N.Y. 1996)).

Bowers and Kubota focus on the element of "actual knowledge" and therefore do not appear to dispute the Complaint's claim under § 1105(a)(2). With respect to the

claims under § 1105(a)(1) and § 1105(a)(3), the court concludes that the Complaint sufficiently alleges facts indicating that Bowers and Kubota had actual knowledge of Saakvitne's breach. The Complaint alleges that Saakvitne breached his fiduciary duty to the ESOP by authorizing the purchase of the Company's shares for more than they were worth based on the LVA's flawed valuations. *See* ECF No. 1, PageID #s 9-14, 18. The Complaint further alleges that Bowers and Kubota knew that the valuations were flawed yet proceeded to negotiate with Saakvitne and participate in the sale of the Company's shares to the ESOP. *See id.* The Complaint alleges that neither Bowers nor Kubota made any effort to correct the valuation information or to remedy the breach, which resulted in losses to the ESOP. *See id.*

These allegations support a claim of co-fiduciary liability against Bowers and Kubota. Whether Bowers and Kubota in fact knew that the LVA valuation reports were overstated valuations based on their expertise and understanding of the Company's financial projections is a question beyond the scope of the present motion.

### 4. The Complaint Sufficiently Alleges Non-ERISA Fiduciary Claims Against Bowers and Kubota.

Bowers and Kubota argue that, if the court determines that they are not fiduciaries, the non-ERISA fiduciary claims against them should also be dismissed. ECF No. 7-1, PageID

#s 73-74.  They argue that the Complaint fails to allege the
requisite knowledge of Saakvitne's alleged breach and fails to
"show[] any inaccuracy in the projections or any knowledge of
any inaccuracy by Defendants."  *See id.*; ECF No. 34, PageID
# 388.

A nonfiduciary may be liable under 29 U.S.C.
§ 1132(a)(3) for knowingly participating in a prohibited ERISA
transaction.  *See Harris Tr. & Sav. Bank v. Salomon Smith
Barney, Inc.*, 530 U.S. 238, 246 (2000); 29 U.S.C. § 1106(a)(1).
"Knowing participation" means "actual or constructive knowledge
of the circumstances that rendered the transaction unlawful."
*Id.* at 251.  The nonfiduciary need not have engaged in any
wrongdoing.  It is enough if he had knowledge, based on the
surrounding circumstances, that the fiduciary was engaging in a
prohibited transaction.  *See id.; see also Brock v. Hendershott*,
840 F.2d 339, 342 (6th Cir. 1988) ("[A] nonfiduciary's knowledge
of the breach can be inferred from surrounding circumstances
raising a reasonable inference of knowledge."); *Trs. of Update
N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 131 F. Supp. 3d
103, 131 (S.D.N.Y. 2015) ("The knowledge element of [a
nonfiduciary] cause of action can be broken down into two
elements, namely (1) knowledge of the primary violator's status
as a fiduciary; and (2) knowledge that the primary's conduct
contravenes a fiduciary duty."); *AirTran Airways, Inc. v. Elem*,

771 F. Supp. 2d 1344, 1350 (N.D. Ga. 2011) ("[T]here is no requirement that the attorney himself engage in any wrongdoing. Indeed, all that is required is that the attorney had knowledge of the wrongful transfer.").

The Complaint has sufficient factual allegations going to both actual and constructive knowledge by Bowers and Kubota of actions constituting or resulting in the breach in issue. That is, they had knowledge of Saakvitne's decision to allow the ESOP to purchase the Company's shares, allegedly without a proper valuation and at a price higher than the shares were worth. ECF No. 1, PageID # 21. According to the Complaint, Bowers and Kubota knew that $40 million was too high a price for the Company's shares for several reasons. For example, Bowers and Kubota allegedly knew that control of the Company would not change, yet they did not correct LVA's wrongful application of a 30% control premium to the valuation. *See id.* at 10-13. The Complaint alleges that, in spite of this knowledge, Bowers and Kubota proceeded to communicate the $40 million valuation to Saakvitne before hiring him as a trustee, and then participated in negotiations with Saakvitne before agreeing to sell their shares for $40 million. *See id.*

Bowers and Kubota characterize the Secretary as "argu[ing], without any supporting authority, that it is somehow illegal under ERISA for a seller to state his desired price."

ECF No. 34, PageID # 386.  This misstates the Secretary's claim.
As the court understands it, the Secretary is not asserting that
Bowers and Kubota knowingly participated in Saakvitne's breach
merely by participating in the negotiations and hoping for a
high sales price.  Rather, the Secretary's claims are based on
the allegation that Bowers and Kubota, knowing that Saakvitne
had erroneous valuations for the Company, agreed to an
overstated sales price.  These allegations are sufficient to
state a claim for nonfiduciary liability against Bowers and
Kubota.

Despite having allegedly had intimate involvement in
the ESOP and the 2012 purchase, Bowers and Kubota argue that
they should be presumed to be good faith sellers of the
Company's shares because the shares had more than nominal value.
*See* ECF No. 7-1, PageID #s 74-76.  They quote the burden-
shifting analysis set forth in *Hans v. Tharaldson*, Civ. No.
3:05-cv-115, 2011 WL 7179644 (D.N.D. Oct. 31, 2011), and *Keach
v. U.S. Tr. Co., N.A.*, 256 F. Supp. 2d 818 (C.D. Ill. 2003).
*See id.*  Those cases state, "If a plaintiff meets its burden of
establishing that the purchase of stock by an ESOP constituted a
'prohibited transactions' under § 406, the nonfiduciary
defendants can invoke 'the substantive equivalent of a modified
bona fide purchaser defense by establishing that they gave value
for the trust property.'"  *Hans*, 2011 WL 7179644, at *16

(quoting *Keach*, 256 F. Supp. 2d at 822).  Once defendants establish this, the burden shifts to the plaintiff "to establish the nonfiduciary defendants acted in 'bad faith or had actual or constructive notice of the circumstances that rendered the transaction unlawful.'"  *Id.* (quoting *Keach*, 256 F. Supp. 2d at 822).

In addition to being nonbinding on this court, these cases do not suggest that Bowers and Kubota are entitled to a presumption of good faith.  The standard in *Hans* and *Keach* is essentially a restatement of the standard in *Harris* requiring a nonfiduciary to have had "actual or constructive knowledge of the circumstances that rendered the transaction unlawful." *Harris*, 530 U.S. at 251.  As explained above, the Complaint sufficiently alleges that Bowers and Kubota had the requisite knowledge given their knowledge of the errors in the LVA valuation reports and their subsequent communications with Saakvitne.  The burden-shifting procedure is not a pleading standard; it instead shifts the burdens that must be met at a later stage of litigation.  Even if this court were required to apply the *Hans* and *Keach* burden-shifting analysis, that would not mean the Secretary failed to state a claim.  Bowers and Kubota are not entitled to dismissal based merely on their selling of the Company's shares for more than nominal consideration.

**5. Because the Complaint Sufficiently Alleges ERISA Fiduciary Liability, the Improper Indemnification Claims May Proceed.**

Finally, Bowers and Kubota take issue with the Complaint's claim under 29 U.S.C. § 1110, which asserts that "[t]he ESOP Transaction involved a number of documents which violate ERISA's prohibition on fiduciary indemnification." ECF No. 1, PageID # 21. Bowers and Kubota argue that the Secretary cannot "impose indemnification restrictions on them" because they are not ERISA fiduciaries. ECF No. 7-1, PageID # 77.

Section 1110(a) provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." As stated above, the Complaint sufficiently alleges that Bowers and Kubota were ERISA fiduciaries with respect to the ESOP. Therefore, this court does not dismiss the Complaint's claim that the ESOP's Trust Agreement, Plan Documents, and Stock Purchase Agreement include indemnification clauses that violate § 1110(a).

**V.      CONCLUSION.**

The court denies the Company's motion to dismiss, concluding that the Company was properly joined as a defendant under Rule 19. The court further denies Bowers and Kubota's

motion to dismiss because the Complaint sufficiently pleads

ERISA claims against Bowers and Kubota.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 18, 2019.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

R. Alexander Acosta v. Nicholas L. Saakvitne, et al., Civ. No.
18-00155 SOM-RLP; ORDER DENYING (1) DEFENDANT BOWERS + KUBOTA
CONSULTING, INC.'S MOTION TO DISMISS AND (2) DEFENDANTS BRIAN J.
BOWERS AND DEXTER C. KUBOTA'S MOTION TO DISMISS.