David R. Johanson          (*pro hac vice*)
Douglas A. Rubel          (*pro hac vice*)
HAWKINS PARNELL & YOUNG, LLP
1776 Second Street
Napa, California 94559
Telephone: (707) 299-2470
Facsimile: (707) 581-1704
Email: djohanson@hpylaw.com

William M. Harstad          (8942)
CARLSMITH BALL LLP
1001 Bishop Street, Suite 2100
Honolulu, HI 96813
Telephone: (808) 523-2500
Facsimile: (808) 523-0842
Email: wharstad@carlsmith.com

Attorneys for Defendants
BRIAN J. BOWERS and DEXTER C. KUBOTA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| R. ALEXANDER ACOSTA, Secretary of Labor, United Stated Department of Labor,<br><br>Plaintiff,<br><br>vs.<br><br>SHARON L. HERITAGE, as successor to Nicholas L. Saakvitne, Deceased, *et al.*,<br><br>Defendants. | Civil No. 1:18-cv-155-SOM-WRP<br><br>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS BRIAN J. BOWERS' AND DEXTER C. KUBOTA'S MOTION TO COMPEL DISCOVERY FROM PLAINTIFF ACTING SECRETARY OF LABOR |

# Table of Contents

I.   Introduction .................................................................................................... 7

II.  Background ..................................................................................................... 9

    A.   *The Secretary must produce the "internal" documents, at least in redacted form.* .......... 11

    B.   *The Secretary agreed to and must produce information and documents with respect to the Saakvitne Investigations.* ....................................................................... 16

III.  Legal Discussion ......................................................................................... 23

    A.   *This Court Should Grant This Motion to Compel Under Rules 26 and 37 Because the Secretary Inappropriately and Impermissibly Has Withheld Responsive Discovery.* ........ 23

        1.   The Secretary Failed to Adequately Assert the Claimed Privileges as Required by Rule 26 .......................................................................................... 25

        2.   The Secretary's Assertions of Attorney-Client Privilege are Inadequate .................. 26

        3.   The Secretary Inadequately Asserted the Work Product Doctrine. ........................... 28

        4.   The Secretary Inadequately Asserted Government Privileges Under the Principal of Executive Privilege. .......................................................................... 31

        5.   The Secretary Inadequately Asserted the Deliberative Process Privilege. ................. 32

        6.   The Secretary Inadequately Asserted the Investigative File Privilege. .................... 38

## TABLE OF AUTHORITIES

<u>Authorities</u>

*Binks Mfg. Co. v. Nat'l Presto Industries Inc.*,
    709 F.2d 1109, 1118 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 31

*Brundle v. Wilmington Tr. N.A.*, 919 F.3d 763 (4th Cir. 2019) . . . . . . . . . .   18

*Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017) . . . . .   19

*Brundle v. Wilmington Tr. N.A.*, 258 F. Supp. 3d 647 (E.D. Va. 2017) . . . . .   19

*California Native Plant Soc. v. U.S. E.P.A.*,
    251 F.R.D. 408, 415 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . .   37

*Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002) . . . . . . . . . . .   18

*Cheney v. U.S. Dist. Court*, 542 U.S. 367, 389 (2004) . . . . . . . . . . . . . . .   32

*Chevron U.S.A. v. U.S.*, 80 Fed. Cl. 340, 355-57 (2008) . . . . . . . . . . . . . .   37

*Coastal States Gas Corp. v. Dep't of Energy*,
    199 U.S. App. D.C. 272 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30

*Confidential Informant 59-05071 v. U.S.*,
    108 Fed. Cl. 121, 135 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

*Culinary Foods v. Raychem Corp.*, 150 F.R.D. 122 (N.D. Ill. 1993) . . . .   29, 30

*Desert Survivors v. U.S. Dep't of the Interior*,
    231 F. Supp. 3d 368, 380 (N.D. Cal. 2017) . . . . . . . . . . . . . . . . . . . . .   37

*Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*,
    2001 WL 34079319,*2, (S.D. Fla. Nov. 1, 2001) . . . . . . . . . . . . .   24

*Enviro Tech Int'l, Inc. v. U.S. E.P.A.*,
    371 F.3d 370, 374-75 (7th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . .   34

*F.T.C. v. Warner Communications Inc.*,
    742 F.2d 1156, 1161 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 34, 37

*Henry v. Champlain Enters., Inc.*,
    445 F.3d 610, 618-19 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . .  18

*Hongsermeier v. Comm'r*, 621 F.3d 890, 904 (9th Cir. 2010) . . . . . . . . .  31-32

*Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) . . . . . . . . . . . . . . .  18

*Karnoski v. Trump*, 328 F. Supp. 3d 1156, 1161 (W.D. Wash. 2018) . . . . .  33

*Kerr v. U.S. Dist. Court for Northern Dist. Of California*,
    511 F.2d 192, 198 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . .  38

*Lahr v. National Transp. Safety Bd.*,
    569 F.3d 964, 979 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . .  33

*Landry v. FDIC*, 204 F.3d 1125,
    340 U.S. App. D.C. 237 (D.C. Cir. 2000) . . . . . . . . . . . . . . . . . . . . .  32

*Martin v. Albany Bus. Journal*,
    780 F. Supp. 927, 941 (N.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . .  28

*McLaughlin v. Miles Laboratories, Inc.*,
    124 F.R.D. 629, 630 (N.D. Ind. 1988) . . . . . . . . . . . . . . . . . . . . . . . .  29

*Mead Data Central, Inc. v. U.S. Dep't of the Air Force*,
    184 U.S. App. D.C. 350, 361 n.24 (1977) . . . . . . . . . . . . . . . . . . . . .  27

*Menasha Corp. v. U.S. DOJ*,
    707 F.3d 846, 847 (7th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*McPeek v. Ashcroft*,
    202 F.R.D. 332, 336 (D.D.C. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . .  39

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132, 150, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975) . . . . . . . .  33, 35

*N. Pacifica, LLC v. City of Pacifica*,
    274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) . . . . . . . . . . . . . . . .  33, 37

*Perez v. Bruister*, 823 F.3d 250, 263 (5th Cir. 2016) . . . . . . . . . . . . . . . .  18

*PharMerica, Inc. v. Health Prime, Inc.*,
     2008 WL 779329 (N.D. Ga. March 19, 2008) . . . . . . . . . . . . . . . . .   24

*Scott v. City of Peoria*,
     280 F.R.D. 419, 427 n.1 (C.D. Ill. 2011) . . . . . . . . . . . . . . . . . . . . .   32

*Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v.*
     *U.S. Dep't of Justice*, 823 F.2d 574, 585,
          262 U.S. App. D.C. 166 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . .   22-23

*Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382,
     2014 U.S. Dist. LEXIS 157086, *42 (N.D. Ill. Nov. 4, 2014) . . . . . .   35

*Swidler & Berlin v. U.S.*, 524 U.S. 399, 141 (1998) . . . . . . . . . . . . . . . . .   26

*Thomas v. Cate*, 715 F. Supp. 2d 1012, 1044 (E.D. Cal. 2010) . . . . . . . . .   33-34

*Tuite v. Henry*, 321 U.S. App. D.C. 248 (1996) . . . . . . . . . . . . . . . . . . . . .   40, 41

*United States ex rel. Poehling v. Unitedhealth Grp., Inc.*,
     2018 U.S. Dist. LEXIS 226072, *59, 2018 WL 8459926
     (C.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*U.S. v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000) . . . . . . . . . . . . . .   34

*U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . .   27

*U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . .   26

*U.S. v. Reynolds*, 345 U.S. 1, 7-8, 73 S. Ct. 528, 97 L. Ed. 727 (1953) . . . .   38

*U.S. v. The Corporation*, 974 F.2d 1068, 1070 (9th Cir. 1992) . . . . . . . . . .   26

*U.S. v. Torf (In re Grand Jury Subpoena)*,
     357 F.3d 900, 907 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . .   28, 30

*U.S. v. White*, 950 F.2d 426, 430 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . .   25

*U.S. v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004) . . . . . . . . . . . . . . . . .   26, 35

*Vaughn v. Rosen*, 173 U.S. App. D.C. 187, 1143-44 (1975) . . . . . . . . . . . .   35

*Wood v. Breier*, 54 F.R.D. 7, 12 (E.D. Wis. 1972) . . . . . . . . . . . . . . . . . . .   32

Statues and Rules

Employee Retirement Income Security Act of 1974, as amended,
      29 U.S.C. §§ 1101, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7

Fed. R. Civ. P. 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

Fed. R. Civ. P. 26(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

Fed. R. Civ. P. 26(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   28

Fed. R. Civ. P. 26(b)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   26

Proposed Regulation Relating to the Definition of Adequate
      Consideration, 53 Fed. Reg. 17,632, 17,633
            (proposed May 17, 1988) (to be codified at 29 C.F.R. pt. 2510) . .   18

I.      INTRODUCTION

Plaintiff, Patrick Pizzella, Acting Secretary of the U.S. Department of Labor's (the "Secretary") six-count Complaint herein alleges violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1101, *et seq.* ("ERISA") (Dkt. 1).[1] The transaction alleged here is typical of employee stock ownership plan and trust ("ESOP") transactions. An employer (here, nominal defendant Bowers + Kubota Consulting, Inc. ("B+K")) desiring to set up an ESOP executes a written document to define the terms of, and the rights of beneficiaries under, the ESOP. (29 U.S.C. § 1102(a).) The ESOP plan document must provide for one or more named fiduciaries "to control and manage the operation and administration of the plan". (*Id.*, § 1102(a)(1).) A trust is established to hold the ESOP's assets. (*Id.*, § 1103(a).) The employer may then make tax-deductible contributions to the ESOP's trust in the form of its own stock and/or cash. If cash is contributed, the ESOP trust (the "ESOT") then purchases stock in the sponsoring company, from the company itself and/or from existing shareholders. The purchase, to comply with ERISA's prohibited transaction rules, must be for "not more than adequate consideration" (generally, fair market value). (*Id.* at § 1106.) Unlike other ERISA-covered plans, an ESOT also may borrow in

---

[1] Before suing, the Secretary conducted an over three-year investigation of B+K and the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan and Trust (the "B+K ESOP").

order to invest in the employer's stock. In that event, the employer's cash contributions to the ESOT are used to retire the acquisition debt.

The Complaint alleges that B+K engaged the services of Libra Valuation Advisors, Inc. ("Libra") to perform a valuation of B+K capital stock for a December 14, 2012, sale to the B+K ESOP of the B+K common stock, by two B+K company officers and directors, Mr. Bowers and Mr. Kubota, through their respective trusts (the "2012 ESOT Transaction"). (Dkt.1.) The Complaint alleges that Nicholas L. Saakvitne[2] and Nicholas L. Saakvitne, A Professional Corporation (collectively, "Saakvitne") acted as the Initial Trustee and Independent Fiduciary (the "Trustee") for the B+K ESOP in evaluating the 2012 ESOT Transaction. (*Id.*) The Secretary alleges that Trustee Saakvitne caused the B+K ESOP to pay too much for the B+K common stock that purchased from Defendants on December 14, 2012. (*Id.*)

The Complaint also named Brian J. Bowers and Dexter C. Kubota (collectively, "Defendants"), individually, as defendants and seeks to impose liability upon them under all of the Complaint's causes of action. Those causes of action allege, in relevant part, that Mr. Bowers and Mr. Kubota, as members of the B+K Board of Directors, acted as ERISA fiduciaries with respect to the 2012

---

[2] Mr. Saakvitne died and Plaintiff substituted his grieving widow, Sharon L. Heritage, in his place. (Dkt. 68.)

ESOT Transaction and failed to "monitor" Trustee Saakvitne's actions. Defendants and Saakvitne deny the Secretary's allegations. (Dkts. 67, 18.)

## II.      BACKGROUND

On January 21, 2019, Defendants served their Amended Requests for Production of Documents – Set One – to Plaintiff Secretary of Labor ("First RFPs"). (Dkt. 51.) In response, on February 26, 2019, the Secretary served his formal response and produced a very limited number of *certain* documents. (*See* accompanying Declaration of David R. Johanson in Support of Defendants Brian J. Bowers' and Dexter C. Kubota's Motion to Compel Discovery From Acting Secretary of Labor ("Johanson Decl.") Ex. A.) On March 29, 2019, the Secretary subsequently served his first Privilege Log. (Johanson Decl., Ex. B.) On May 20, 2019, Defendants served their Second Set of Requests for Production of Documents to Plaintiff Secretary of Labor ("Second RFPs"). (Dkt. 92.) On June 20, 2019, the Acting Secretary served his formal response and produced a very limited number of additional documents. (Johanson Decl., ¶ 7, Ex. C.) On July 26, 2019, the Secretary produced additional documents and a First Supplemental Privilege Log. (Johanson Decl., Ex. D.) On August 29, 2019, the Secretary produced a Second Supplemental Privilege Log. (Johanson Decl., Ex. E.) On September 13, 2019, the Secretary served his Supplemental Responses to Defendants' Second RFPs. (Johanson Decl., Ex. F.)

None of the Secretary's document productions or responses, however, have been sufficient. The Secretary has played fast and loose with the discovery rules, refused to produce large numbers of the documents in his possession, custody and control that are responsive to Defendants' discovery requests, inappropriately asserted privileges, and reneged on agreements made during the parties' numerous met and confer conferences. None of the Secretary's assertions of governmental privilege have been supported by a Declaration and Invocation of Privilege. (Johanson Decl., ¶ 30.) Counsel have exchanged numerous letters in an attempt to resolve this discovery dispute. Such correspondence is attached to the Johanson Decl. as Exhibits H through V. (Johanson Decl., ¶ 11-29, Ex. G-V.) Moreover, Defendants' counsel, David R. Johanson, met and conferred via telephonic conference with counsel for the Secretary, Cheryl Adams and either Nisha Parekh and/or Grace Kim, on March 19, 2019, on May 10, 2019, and on July 18, 2019, to attempt to resolve these discovery issues. (Johanson Decl., ¶ 12, 21, 26.) The Secretary refuses to provide Defendants with the necessary additional discovery. (Johanson Decl., Ex. U.)

To summarize this dispute: Defendants seek the identification or production two categories of documents from the Secretary that the Secretary has refused to

provide to Defendants: (i) the Secretary's "internal" form documents[3] with respect to its investigation of Defendants, Mr. Saakvitne, his law firm, and the B+K ESOP setting forth facts material to this litigation; and (ii) documents pertaining to the Secretary's general service-provider investigations of Saakvitne (the "Saakvitne Investigations").

   A. *The Secretary must produce the "internal" documents, at least in redacted form.*

With respect to his internal documents, on July 26, 2019, the Secretary served his First Supplemental Privilege Log (Ex. D), listing thirty-eight documents, thirty-six of which the Secretary entirely withheld and two of which the Secretary redacted. On August 29, 2019, in response to Defendants' counsel's August 12, 2019, letter, the Secretary served his Second Supplemental Privilege Log, withdrawing an inappropriate assertion of the attorney work-product from Items 16-18, 21-26, 32, 35 and 37 on his First Supplemental Privilege Log.

---

[3] With respect to the internal documents, Defendants advised the Secretary that such documents should include: a. Case Opening Forms and Document to Support Case Opening; b. Case Conversion Forms; c. ESOP Checklist/Investigative Plans; d. Bonding Checklists; e. ESOP Loan Checklists; f. Summary Plan Description Checklists; g. Notes (handwritten or otherwise) of Interviews; h. Outlines of Interview Questions; i. Notes, Outlines, and Transcripts of Depositions; j. Memoranda of Informal Conversations with Others Within EBSA, or Regional Offices, or the Washington, D.C. National Office; k. Transmittal Memoranda Recommending Litigation (and any attachments); l. Powerpoint Presentation Slides relating to B+K; m. Adjusted Net Revenue Analysis, Discounted Cash Flow Analysis, and any other analysis performed; n. E-mails to any of the Solicitors from EBSA; o. E-mails from any of the Solicitors to EBSA; p. Internal Regional Office/Solicitor e-mails; q. OE Recovery package; r. Case closing forms and checklists; s. Reports of Investigation; t. Statute of Limitations Analysis; u. Investigator Handwritten notes related to Interviews; v. Report of Records Examinations; w. Audio Recordings of Telephone Calls, Interviews, and Depositions.

Items 1-13 of the Second Supplemental Privilege Log, the Employee Benefits Security Administration's ("EBSA's") Unidentified Expert: The first thirteen withheld documents pertain to an unidentified "expert" apparently retained by EBSA (not the Secretary of Labor's Solicitor's Office) in connection with EBSA's pre-litigation inquiry into the 2012 B+K ESOP Transaction. The Secretary's Second Supplemental Privilege Log asserts "Work Product; Attorney Client; Protected from disclosure by Fed. R. Civ. P. 26(b)". The Second Supplemental Privilege Log, however, fails to identify the so-called expert, fails to disclose in what field he and/or she is an expert, fails to state the nature of the expert services being sought and provided, or what the Secretary was investigating, and fails to summarize or describe the contents of the withheld documents in even the minimal level of detail required for Defendants and this Court to assess the Secretary's assertions of privilege. Moreover, the Secretary's contract with the expert cannot be subject to any privilege, because disclosure of that contract is required for the Secretary to support his claim of privilege.

Remaining documents on the privilege log: As discussed just above, the Secretary's Second Supplemental Privilege Log fails to provide the information required for Defendants and this Court to assess the Secretary's assertions of privilege with respect to items 1-13. The same deficiency applies to every other document listed on the Secretary's second supplemental privilege log.

Item 16, Major Case Submission Form: This item is dated June 16, 2016, even before the Secretary determined to file any litigation or deliberated thereon, and was part of EBSA's investigation. This form sets forth material facts with respect to this matter. The Secretary's Second Supplemental Privilege Log does not assert that the Secretary's Solicitor's office was involved in any way. Rather, the Secretary's Second Supplemental Privilege Log asserts that this was an internal EBSA document produced by EBSA to EBSA, and provides no support whatsoever for the Secretary's assertion of "Deliberative Process; Investigative File and Technique".

Item 17, Memorandum discussing EBSA analysis of the B+K ESOP valuation: This item, dated December 18, 2015, is stated by the Secretary to have been submitted to EBSA's "Case File" by Dorian Hanzich, who is not a lawyer, is not employed by the Secretary's Solicitor's Office, and is a Senior Investigator for EBSA. There is no basis for the Secretary's assertion of "Deliberative Process; Investigative File and Technique" privilege with respect to this item.

Items 18-26, 35 (the Michael Wen-related documents): Item 18, the Case Opening Form, is simply a template form containing facts and listing the documents reviewed. It relevant to Defendants' statute of limitations defenses, among other defenses, and which, as described in the EBSA Enforcement Manual, sets forth pertinent facts. (Johanson Decl., Ex. W.) Item 19, the Statute of

Limitations Matrix, is another EBSA form that sets forth facts pertinent to the six-year and three-year statute of limitations. Such information obviously is relevant to Defendants' statute of limitations defenses and would be admissible in Court as an admission against interest, among other reasons. Moreover, the Second Supplemental Privilege Log fails to identify the individuals involved and, therefore, fails to provide sufficient information to support any privilege claim.

Michael Wen, EBSA's lead investigator in the B+K ESOP inquiry, is almost certain to be a trial witness for the Secretary. The Secretary disclosed Michael Wen in the Secretary's March 15, 2019, Initial Disclosures as a key witness, describing him as follows:

> "The following U.S. Department of Labor, Employee Benefit Security Administration Investigator has knowledge of the alleged ERISA violations. Such knowledge includes, but is not necessarily limited to: the organization and administration of the Plan; information regarding the fiduciaries of the Plan and their duties; the alleged ERISA violations with respect to the Plan; information regarding aspects of the ESOP transaction; information regarding aspects of the valuation of the Company prior to the ESOP transaction; and the fiduciary status and liability of Defendants for the alleged ERISA violations".

Items 21 through 26, Mr. Wen's questions for various interviews, are obviously relevant to this litigation given that the Secretary has produced the "reports of interviews" themselves (DOL 551-556 (Saakvitne); DOL 590-596 (Bowers); DOL 689-694 (Kubota); DOL 695-697 (Nishihara); DOL 958-961 (Kniesel); and DOL 1386-1392 (Kniesel)) and subsequent administrative

depositions of these persons. Those reports of interviews, however, purport to set forth the interviewees' responses, but do not contain the questions that the interviewees answered. The reports which were disclosed state that "[i]n response to questioning, the [interviewee] provided the following information" (*see*, *e.g.*, DOL 551-556 (Saakvitne).) The disclosed reports are not Mr. Wen's contemporaneous handwritten notes of such interviews. Thus, without the production of the questions being answered, there are no indicia of reliability that the disclosed interview reports are accurate statements of the interviewees.

Items 27-28 and 35, EBSA September 28, 2017, "Memorandum Referring Case for Litigation and Exhibits" and EBSA Report of Investigation, appear to be the Report of Investigation and the cover sheet. As set forth in the EBSA Enforcement Manual, such forms contain facts to which Defendants are entitled and not able to otherwise obtain, especially given Mr. Saakvitne's death. Moreover, none of the 1,396 pages of exhibits being withheld (Item 28) are identified or described on the Second Supplemental Privilege Log and, therefore, Defendants and the Court have no basis on which to assess the assertion of privilege.

With respect to Items 29 through 38, none of these items are dated – and the Secretary fails to list any e-mails on the Second Supplemental Privilege Log that pertain to these Items which would indicate the dates thereof – or contain sufficient

information upon which Defendants and the Court are able to assess the Secretary's assertions of privilege. Moreover, these Items contain facts to which Defendants are entitled and are likely solely in the Secretary's possession. Moreover, Items 31-38 are internal EBSA documents, which were not provided to the Solicitor's Office. The work product privilege, however, applies only to the work of attorneys and those under their supervision for the purposes of providing legal advice to a client and therefore does not apply to these Items. The "deliberative process privilege" also does not apply for the same reason – and because there was no deliberation.

Defendants, therefore, respectfully submit this timely Motion to Compel, made prior to the expiration of the current September 4, 2020, discovery deadline. (*See* Rule 16 Scheduling Order, Dkt. 62, ¶ 12.)

B. *The Secretary agreed to and must produce information and documents with respect to the Saakvitne Investigations.*

In Defendants' Amended Requests for Production of Documents, Set One, to the Secretary of Labor, dated January 21, 2019, Defendants requested the production of documents relating to the Secretary's Saakvitne Investigations. (Johanson Decl., Ex. B.) In his February 25, 2019, responses thereto, the Secretary raised certain objections[4], but nonetheless <u>agreed</u> that he would produce all such

---

[4] The Secretary's February 25, 2019, response to Request for Production 2 (incorrectly labeled

documents notwithstanding his objections, but then the Secretary never did. Specifically, the Secretary's February 25, 2019, Responses stated that "<u>…the Secretary is producing all responsive, non-privileged documents and communications</u>". (*Id.*, Secretary's Response to RFP 2, incorrectly labeled "Response to Request No. 1" (emphasis supplied).)

The requested Saakvitne Investigations documents are relevant to the claims and defenses in this litigation. The Secretary sued Defendants and Mr. Saakvitne for allegedly allowing the B+K ESOP to pay more than "adequate consideration" for the shares of B+K common stock purchased December 14, 2012. ERISA, however, does not define what constitutes "adequate consideration" under the 29 U.S.C. § 1108(e) exception. The Secretary proposed in May 1988, but never enacted, regulations doing so. Those proposed regulations, to which some courts

---

"Response to Request No. 1) stated:

"The Secretary objects on *relevance* grounds to the extent that the Request asks for materials reflecting the Secretary's internal deliberations and processes in its investigation, because those materials will not show, one way or the other, whether Defendants violated ERISA. The Secretary objects to this Request to the extent it seeks documents created after the commencement of litigation because any such documents are protected by the work product doctrine, trial preparation privilege, and/or attorney-client privilege. The Secretary objects to the terms "all documents" and "any source" as overbroad and unduly burdensome and objects to the compound form of the Request. Finally, the Secretary objects to the scope of the Request to the extent that it asks for information related to any investigation of Mr. Saakvitne beyond the present matter.

Subject to and without waiving the foregoing objections, the Secretary is producing all responsive, non-privileged documents and communications. All documents attached to the Secretary's forthcoming production are responsive to this Request. The Secretary reserves the right to supplement his production should he discover additional responsive documents."

look for guidance, provide that "adequate" consideration must (1) reflect the stock's "fair market value", and (2) be "the product of a determination made by the fiduciary in good faith". Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632, 17,633 (proposed May 17, 1988) (to be codified at 29 C.F.R. pt. 2510). "[I]n practice, the 'fair market value' inquiry overlaps considerably with the 'good faith' inquiry." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618-19 (2d Cir. 2006) ("*Henry III*") (collecting cases).

Although courts often look to these proposed regulations for guidance, the focus of the adequate-consideration inquiry rests on the conduct of a fiduciary, as judged by ERISA's "prudent man" standard of care. (*See Perez v. Bruister*, 823 F.3d 250, 263 (5th Cir. 2016); *Henry III*, 445 F.3d at 619; *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002); *Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996).) Here, the Complaint alleges that an ESOP and ERISA fiduciary, like any other ERISA fiduciary, must "discharge his duties ... with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims". (Dkt. 1, ¶ 1, 36 (citing 29 U.S.C. § 1104(a)(1)(B)).)

Moreover, in *Brundle v. Wilmington Tr. N.A.*, 919 F.3d 763 (4th Cir. 2019), the Fourth Circuit Court of Appeals upheld the lower court's $29M judgment

against Wilmington Trust. (*See also Brundle v. Wilmington Tr. N.A.*, 241 F. Supp. 3d 610 (E.D. Va. 2017); *Brundle v. Wilmington Tr. N.A.*, 258 F. Supp. 3d 647 (E.D. Va. 2017).) In doing so, it discussed several factors, including the close business relationship between ESOP attorneys, trustees, independent appraisers, *etc.*, in the context of independence, a trustee's review of a valuation report and the negotiation of the purchase price (*Brundle*, 919 F.3d at 771); governmental investigations (*id*. at 775); control premiums (*id*. at 777-778); and the trustee's internal policies (*id*. at 779). In this case, these same factors relate to the Secretary's claims and/or Defendants' defenses. Moreover, Defendants here raised a defense under the applicable ERISA three-year statute of limitations. Accordingly, the requested Saakvitne Investigations documents are relevant to the claims and defenses in this litigation.

At the May 10, 2019, meet and confer, the Secretary's counsel claimed burdensomeness, and refused to honor his February 25, 2019, Response to First RFP 2, but the Secretary's counsel did agree to provide background regarding the Saakvitne Investigations to Defendants, to enable Defendants to possibly narrow their Request. Defendants' counsel confirmed this agreement in a May 11, 2019, confirming letter, stating:

> "With respect to the Secretary of Labor's investigations of Mr. Saakvitne, you stated that such investigations were not relevant to the pending litigation and that the proportionality requirement of Federal Rules of Civil Procedure 26 did not warrant such a production. To

resolve this dispute, however, you stated that there were seven such investigations, across different offices of the Employee Benefits Security Administration ('EBSA'), and that you would provide us with the identification of the ESOPs involved and when such investigations occurred so that we may determine which of the investigations and which documents therein are relevant to this litigation. I believe that you stated that you would do so by the end of May 2019, although you may be able to do so sooner. We will communicate with you the supplemental information and documentation that our clients will require in that respect (and any time-frame concerns that our clients have) after we receive and review the Secretary of Labor's preliminary production described above." (Johanson Decl., Ex. P.)

Despite agreeing to provide the Saakvitne Investigations documents in his February 25, 2019, Response to First RFP 2, and despite his subsequent agreement at the May 10, 2019, meet and confer to provide a summary of each investigation to enable Defendants to possibly narrow their document request, the Secretary never provided these documents and now refuses to provide either the agreed information or the documents.[5]

---

[5] In Defendants' counsel's June 9, 2019, letter to the Secretary, Defendants contested the Secretary's objections:

" … Moreover, during our last meet and confer telephone call, you stated that there were seven investigations of Mr. Saakvitne, across different offices of the Employee Benefits Security Administration ('EBSA'), and that you would provide us with the identification of the ESOPs involved and when such investigations occurred so that we may determine which of the investigations and which documents therein are relevant to this litigation. You stated that you would do so by the end of May 2019, although you may be able to do so sooner. Given that the Secretary did not provide such information otherwise, we expect to see such information in the Secretary's response to Mr. Bowers' Interrogatories.

… We are willing to discuss limiting the scope of the information which must be produced regarding the Saakvitne investigations, however, a good place to start that conversation would be for the Secretary to provide a list of the Saakvitne investigations, which

At the July 18, 2019, meet and confer, Defendants agreed to try again despite the Secretary's repeated reneging on his agreement to provide the Saakvitne Investigations documents. As discussed during that meet and confer, the Secretary had a decades-long relationship with Mr. Saakvitne, dating back to the Secretary's appointment of Mr. Saakvitne to 401(k) plans of the dot.com era. More recently, since at least 2006, the Secretary was routinely appointing Saakvitne as the trustee for orphan ERISA plans, including as recently as 2016 in *Perez v. Encorium Group, Inc.*, 2:15-cv-5365-TJS (E.D. Pa.)–four years after the 2012 B+K ESOP Transaction. Defendants are entitled to probe that relationship. If Mr. Saakvitne and his practice of reviewing ESOP and other employee benefit plans, transactions, *etc.*, were appropriate then, why aren't those same practices appropriate now and at the time of the 2012 ESOP Transaction? What does the Secretary contend has changed about Mr. Saakvitne's practices? If the Saakvitne Investigations resulted in no actions against Mr. Saakvitne and, therefore, his

---

describes (a) what was being investigated and the ESOP involved, (b) states the beginning and end dates of each investigation, (c) specifies whether each investigation is still ongoing, has been abandoned (closed) by the Secretary, or has been completed, and (d) states the result of each investigation."

In his June 21, 2019, letter, the Secretary reneged on his prior agreement: "With respect to EBSA's other investigations of Nicholas Saakvitne, upon further consideration, I do not believe it is necessary or appropriate to disclose the names of entities that are the subjects of investigations. However, if you can articulate a specific need for specific documents that are not privileged, we will consider producing them." (Johanson Decl., Ex. R.)

actions in those ESOP transactions were appropriate, what did he do differently in the 2012 ESOP Transaction?

Defendants acknowledge that District Courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive". (Fed. R. Civ. P. ("Rule") 26(b)(2)(C).) But the reality is that Mr. Saakvitne is deceased and the requested information and documents are only obtainable from the Secretary. The more convenient, less burdensome, and less expensive manner to obtain such relevant information is from the Secretary, which, as the parties discussed during the July 18, 2019, meet and confer, the Secretary has readily available in the form of internal case opening and similar routine records of the Saakvitne Investigations. Given that the Secretary's February 25, 2019, Response to First RFP 2 specifically agreed to provide these documents, notwithstanding his asserted objections, the Secretary has waived his objections, and therefore granting this Motion is just and proper. Moreover, the Secretary's failure to timely and effectively assert any governmental privileges should result in the waiver of such privileges. (*United States ex rel. Poehling v. Unitedhealth Grp., Inc.*, 2018 U.S. Dist. LEXIS 226072, *59, 2018 WL 8459926 (C.D. Cal. 2018) ("*Poehling*") (citing *Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 585, 262

U.S. App. D.C. 166 (D.C. Cir. 1987)("*The information provided by the DOJ -- consisting almost entirely of each document's issue date, its author and intended recipient, and the briefest of references to its subject matter -- will not do [to establish the deliberative process privilege*].'").)

III.   LEGAL DISCUSSION

Even had the Secretary not waived his objections to Request for Production 2, this Court should grant this Motion to Compel because the production of the requested discovery is proper under Rules 26 and 37 and the Secretary failed to adequately assert the claimed privileges of attorney-client privilege, work product privilege, governmental deliberative process privilege, and governmental investigative file privilege as to the withheld documents.

A. *This Court Should Grant This Motion to Compel Under Rules 26 and 37 Because the Secretary Inappropriately and Impermissibly Has Withheld Responsive Discovery.*

The scope of discovery permitted under the Rules is broad and applicable even against the Federal government. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." (Fed. R. Civ. P. 26(b)(1).) Under Rule 26, Defendants are entitled to any relevant discovery not otherwise protected.

The federal courts employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules so that parties may gain full knowledge of

the issues in the case, and the term "relevant" at the discovery stage is to be broadly construed. Discovery should ordinarily be allowed unless it is clear that the information sought has no possible bearing on the claims and defenses of the parties or otherwise on the subject matter of the action. (*See, e.g.*, *Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.,* 2001 WL 34079319 *2 (S.D. Fla. Nov. 1, 2001); *PharMerica, Inc. v. Health Prime, Inc*., 2008 WL 779329 (N.D. Ga. March 19, 2008).) As the Secretary concedes that the withheld documents are responsive and discoverable material, but asserts that such material is privileged, this Motion to Compel is proper under Rule 26.

Accordingly, Defendants have satisfied their burden pursuant to Rule 37 and this Court should compel the Secretary to produce its withheld documents where it fails to adequately claim privilege. Rule 37 provides that a party seeking discovery may move for an order to compel a discovery response where: "a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34". (Fed. R. Civ. P. 37(a)(3)(B)(iv).) Here, the Secretary first waived his objections (as discussed above), but, as discussed below, the Secretary subsequently inadequately asserted governmental and other privileges.

1. *The Secretary Failed to Adequately Assert the Claimed Privileges as Required by Rule 26.*

The Secretary failed to adequately assert privilege as to the withheld documents. "The starting point for determining whether to uphold or overrule a claim of privilege is Rule 26, which provides the parameters for when a party may withhold documents due to privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

(Fed. R. Civ. P. 26(b)(5)(A).) Importantly, the description required by Rule 26 must not be a blanket generic claim for privilege. (*U.S. v. White*, 950 F.2d 426, 430 (7th Cir. 1991); *Poehling*, *supra*.)

The Secretary's Second Supplemental Privilege Log, however, includes many such improper blanket statements of privilege. (Johanson Decl., Ex. E.) As noted above, Defendants have no opportunity to assess the Secretary's claimed privileges. Broad classifications and multiple general assertions of privilege as to large swaths of documents inherently lack descriptiveness. In order to invoke a privilege, the party asserting the privilege has the burden of establishing all of its elements. (*Poehling*, *supra*; *White*, *supra* at 430.) A claim of privilege cannot be a blanket claim, however, it must be made and established on a document-by-

document basis. (*Id.*) As detailed below, the Secretary failed to adequately support with sufficient descriptions the following privileges claimed in his privilege log: (a) the attorney client privilege, (b) the work product privilege, (c) the government investigative file privilege, and (d) the government deliberative process privilege. Therefore, this Court should grant this Motion to Compel.

2. *The Secretary's Assertions of Attorney-Client Privilege are Inadequate.*

The Secretary listed numerous transmissions and e-mails as subject to attorney-client privilege, however, the Secretary failed even to identify the individuals involved in such communications. The attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government. (*U.S. v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004); *Swidler & Berlin v. U.S.*, 524 U.S. 399, 141 (1998).) "The party asserting the [attorney-client] privilege bears the burden of proving each essential element." (*U.S. v. Ruehle*, 583 F.3d 600, 608 (9th Cir. 2009); *U.S. v. The Corporation*, 974 F.2d 1068, 1070 (9th Cir. 1992).) "The prerequisites necessary to the creation of the attorney-client privilege are: (1) legal advice must be sought, (2) from a professional legal advisor in his or her legal capacity, (3) the communications must relate to that legal advice, (4) they must be made in confidence, (5) by the client or the attorney, (6) the privilege is asserted by the client, (7) from disclosure by the client or the attorney,

and (8) the protection must not be waived." (*U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010).)

Even where the privilege might otherwise be proper, circulation of e-mails internally within an agency or between agencies can result in the loss of attorney-client privilege.

> The test . . . is whether the agency is able to demonstrate that the documents, and therefore the confidential information contained therein, were circulated no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication.' The purpose of the privilege is limited to protection of confidential facts. If facts have been made known to persons other than those who need to know them, there is nothing on which to base a conclusion that they are confidential.

(*Coastal States Gas Corp. v. Dep't of Energy*, 199 U.S. App. D.C. 272 (1980) (citing *Mead Data Central, Inc. v. U.S. Dep't of the Air Force*, 184 U.S. App. D.C. 350, 361 n.24 (1977).) Although evaluating privilege may on occasion be burdensome, this is no excuse for the utter and complete failure to properly assert privilege where the simplest solution is for the government to disclose the documents rather than continue on a course of nondisclosure. (*Id.* at 361.) The Secretary failed to satisfy this burden by refusing to identify any of the participants in various e-mails or provide the required description. Simply asserting that the communication "reveals content of attorney-client conversation" (Johanson Decl., Ex. E.) is a mere conclusion, not the description required by Rule 26. The

Secretary failed to provide adequate information to determine whether this privilege is properly asserted or has been waived through improper distribution throughout EBSA or the office of the Secretary. Therefore, Defendants request that this Court grant this Motion to Compel.

   3.   *The Secretary Inadequately Asserted the Work Product Doctrine.*

   The Secretary also failed to adequately describe documents that it alleges are subject to the work product doctrine. "The core of attorney work product consists of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." The Ninth Circuit has identified only two requirements for the work product protection to apply to documents: "(1) they must be 'prepared in anticipation of litigation or for trial,' and (2) they must be prepared 'by or for [the] party [seeking the protection] or by or for that . . . party's representative.'" (*U.S. v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 907 (9th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(3)) (citations omitted); *see also Menasha Corp. v. U.S. DOJ*, 707 F.3d 846, 847 (7th Cir. 2013).) "For the privilege to apply, the material sought must be: (1) a document or tangible things; (2) prepared in anticipation of litigation; and (3) prepared by or for a party, or by or for his representative." (*Martin v. Albany Bus. Journal*, 780 F. Supp. 927, 941 (N.D.N.Y. 1992).) The mere fact that an investigation was conducted does not by itself cloak the documents prepared by an attorney as privileged work product.

(*McLaughlin v. Miles Laboratories, Inc*., 124 F.R.D. 629, 630 (N.D. Ind. 1988) (citing *Binks Mfg. Co. v. Nat'l Presto Industries Inc*., 709 F.2d 1109, 1118 (7th Cir. 1983)).)

Here, one of the issues is whether EBSA was merely conducting a routine investigation or preparing for a lawsuit at the time particular documents were created. For example, in *Culinary Foods v. Raychem Corp*., 150 F.R.D. 122 (N.D. Ill. 1993), the court denied a motion to quash by the DOL because the investigative reports created by the United States Occupational Safety and Health Administration were created before the case was considered for litigation and, therefore, the reports were not protected by work produce privilege. (*Id.* at 130.) The court correctly reasoned that it was only following the investigation which revealed safety violations and where the employer refused to recognize or correct safety violations did the DOL typically commence suit. (*Id.*) The same reasoning applies here, where the Secretary initiated this lawsuit on April 27, 2018. (Dkt. 1.) By contrast, EBSA began its investigation four years earlier and then issued a subpoena to B+K in December 2014. It was not until almost three years later that EBSA, on September 28, 2017, sent a "Memorandum Referring Case for Litigation" through Crisanta Johnson to "Janet Herold and Danielle Jaberg". (Johanson Decl., Ex. E, Item 27.) The Secretary, however, offered no explanation as to how everything prior to the April 27, 2018, filing of this litigation or prior to

29

the September 28, 2017, referral for litigation could possibly be covered by the work product doctrine.

As in *Culinary Foods*, the Secretary here reaches too far in asserting that almost all materials prepared during an investigation by a governmental agency are subject to the work-product privilege — including 1,661 pages of the 1,717 pages of documents listed in his second supplemental privilege log. (*See* Johanson Decl., Ex. E.) Indeed, only a very small fraction of the Secretary's thousands of investigations result in the filing of a civil complaint by the Secretary. To adopt the Secretary's argument here would insulate the Federal government from the civil discovery rules entirely, where is especially egregious, where as here, the Federal agency possesses vital information that is only in the agency's possession, custody and control. The fact that, after the fact, the documents may later be used to support the Secretary's litigation is inapposite. "Anticipation of litigation" has been defined in the Ninth Circuit as preparation of a document "because of the prospect of litigation". (*U.S. v. Torf*, 357 F.3d 900, 908 (9th Cir. 2004).) The District of Columbia Circuit also has explained it as follows: "[A]t the very least some articulable claim, likely to lead to litigation, must have arisen, . . . so that the attorney's work could fairly, if generously, be characterized as 'in contemplation of litigation... .'" (*Coastal States Gas Corp. v. Department of Energy*, 199 U.S. App. D.C. 272, 617 F.2d 854, 865 (D.C. Cir. 1980)). "[T]he mere fact that

litigation does eventually ensue does not, by itself, cloak materials with work product immunity." (*National Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) (quoting *Binks Mfg. Co. v. National Presto Indus., Inc.*, 709 F.2d 1109, 1118 (7th Cir. 1983)).)

Accordingly, the Secretary failed to adequately assert the work-product privilege as to all documents prior to the April 27, 2018, initiation of this litigation and as to numerous other categories of alleged work product where no adequate description of the documents' nature is provided to assess when such documents were created with respect to the Secretary's litigation. The Secretary must produce such documents.

4. *The Secretary Inadequately Asserted Government Privileges Under the Principal of Executive Privilege.*

The Secretary likewise failed to adequately assert its claims as to "governmental investigative file" and "deliberative process" privilege. These two privileges are intertwined because they involve privileges that may be claimed by government agencies or executive branch entities. The Secretary listed 25 items, comprising 1,613 pages of documents on the Secretary's Second Supplemental Privilege Log, as subject to the investigative file privilege and/or the governmental deliberative process privilege. (Johanson Decl., Ex. E, Items 16-40.)

The Secretary did not, however, provide the required affidavit to assert any executive privilege. (Johanson Decl., ¶ 30.) Both the investigative file privilege

and the deliberative process privilege fall under the broad category of "executive privilege". (*See, e.g., Poehling, supra; Scott v. City of Peoria*, 280 F.R.D. 419, 427 n.1 (C.D. Ill. 2011); *Landry v. FDIC*, 204 F.3d 1125, 340 U.S. App. D.C. 237 (D.C. Cir. 2000).) "Executive privilege is an extraordinary assertion of power 'not to be lightly invoked.'" (*Cheney v. U.S. Dist. Court*, 542 U.S. 367, 389 (2004).) Executive privileges are not absolute and must yield to the interests of the party opposing the government's assertion of privilege even when they might otherwise be protected by such privilege. (*See, e.g., Wood v. Breier*, 54 F.R.D. 7, 12 (E.D. Wis. 1972) ("if there is a need for discovery to preclude prejudice and unfairness a conditional executive privilege cannot stand in the way of necessary discovery").)

As explained below, the Secretary wholly failed to establish that the withheld documents are protected under the investigative file or deliberative process privileges.

### 5. *The Secretary Inadequately Asserted the Deliberative Process Privilege.*

This litigation does not involve matters of "deliberative process". The deliberative process privilege protects only communications that are part of the decision-making process of a governmental agency. "[T]he deliberative process privilege permits the government to withhold documents that 'reflect advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and polices are formulated,'" (*Hongsermeier v.*

*Comm'r*, 621 F.3d 890, 904 (9th Cir. 2010) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S. Ct. 1504, 44 L. Ed. 2d 29 (1975) (brackets omitted)), so that agencies may "freely . . . explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." (*Lahr v. National Transp. Safety Bd.*, 569 F.3d 964, 979 (9th Cir. 2009) (internal quotation marks omitted).

To qualify for this privilege, the intra-agency communication must be both "predecisional" and "deliberative." (*Id.*; *Poehling*, supra at *48-49) "Predecisional" documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." (*Id.* (internal quotation marks omitted).) A document is part of the "deliberative process" if the disclosure of the materials "would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions". (*Id.* at 979-80 (internal quotation marks omitted).)

"As with all evidentiary privileges, the deliberative process privilege is narrowly construed ... ." (*Karnoski v. Trump*, 328 F. Supp. 3d 1156, 1161 (W.D. Wash. 2018)(internal quotation marks omitted); *see also N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (deliberative process privilege is "strictly confined within the narrowest possible limits consistent with the logic of its principles") (internal quotation marks omitted); *Thomas v. Cate*,

715 F. Supp. 2d 1012, 1044 (E.D. Cal. 2010) (deliberative process privilege "should be narrowly construed because confidentiality may impede full and fair discovery of the truth").)

Accordingly, it is widely accepted that this privilege protects opinions and deliberations, but generally not "facts and evidence". (*F.T.C. v. Warner Communications Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984) (citation omitted).) Factual material that "is so interwoven with the deliberative material that it is not severable", however, may be encompassed by the privilege. (*U.S. v. Fernandez*, 231 F.3d 1240, 1247 (9th Cir. 2000); *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374-75 (7th Cir. 2004)("[T]he deliberative process privilege typically does not justify the withholding of purely factual material, nor of documents reflecting an agency's final policy decisions, but it does apply to predecisional policy discussions, and to factual matters inextricably intertwined with such discussions")(internal citations omitted.) "The burden of establishing application of the deliberative process privilege is on the party asserting it." (*Thomas*, 715 F. Supp. 2d at 1019.)

The government must satisfy three procedural requirements and two substantive requirements for the privilege to apply.

The three procedural requirements are: (1) assertion of the privilege, *after personal consideration, by declaration or affidavit of the agency head with control over the requested document or by one to whom such authority has been delegated*, (2) a statement with particularity

> of what information is subject to the privilege, and (3) a statement of precise and certain reasons for maintaining the confidentiality of the requested document. The substantive requirements are that the documents must be (1) *pre-decisional, meaning prior to the adoption of an agency policy on the matter; and (2) deliberative, meaning that they make recommendations or express opinions on legal or policy matters for use in decision making.*

(*Confidential Informant 59-05071 v. U.S.*, 108 Fed. Cl. 121, 135 (2012) (internal citations omitted)(emphasis supplied).) Typically, the deliberative-process privilege covers memoranda and discussions within the Executive Branch leading up to the formulation of an official position. (*U.S. v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004); *see, e.g., NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975).)

> [I]t is not enough to assert . . . that a document is used by a decision-maker in the determination of policy. . . . Rather, to come within the [deliberative process] privilege . . . the document must be a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters. Put another way, pre-decisional materials are not exempt merely because they are pre-decisional; they must also be a part of the agency give-and-take – of the deliberative process – by which the decision itself is made.

(*Vaughn v. Rosen*, 173 U.S. App. D.C. 187, 1143-44 (1975) (discussing Exemption 5, 5 U.S.C.S. § 552(b)(5), of the Freedom of Information Act (FOIA), that mirrors deliberative process privilege in the civil discovery context); s*ee also, e.g., Stevens v. U.S. Dep't of Homeland Sec.*, No. 13 C 03382, 2014 U.S. Dist. LEXIS 157086, at *42 (N.D. Ill. Nov. 4, 2014) ("The Court cannot discern how the interview notes at issue in this case pertain to the adoption of any agency policy. The ... investigation involved an internal investigation ... and the interview notes were

used in the preparation of a final investigative summary. [The agency] never indicates how any agency policy was adopted or amended as a result of this investigation.").)

Here, the Secretary initially failed to produce to Defendants a statement of precise and certain reasons for evoking the privilege from EBSA or the DOL. (Johanson Decl., Ex. C, D.) Likewise, there was no "particularity" provided by the Secretary in his Second Supplemental Privilege Log. (*Id.*, Ex. E.) Moreover, there is no supporting declaration. (*Id.*, ¶ 30.) Thus the Secretary has not properly asserted any executive privilege here.

It also is also unknown what the Secretary or EBSA is "deliberating on" with respect to the instant litigation and what agency policies will be adopted in relation to this case. It appears to be the Secretary's position that the decision to sue is *de facto* a "policy" decision. Even if this Court finds that the applicable law supports this assertion (it does not), this protects only a small category of documents—namely, memoranda providing a recommendation or express opinion to supervising EBSA managers regarding the policy decision of "deciding to sue". As such, the Secretary failed to make even a minimal showing that the deliberative process privilege should apply here to any of the documents that it listed as subject to the deliberative process privilege. Thus this Court should overrule the deliberative process privilege improperly asserted by the Secretary.

Alternatively, even where it may otherwise apply, "[t]he deliberative process privilege is merely a qualified privilege. A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure". (*Warner*, 742 F.2d at 1161.) It is the requesting party's burden "to show that the privilege should be waived in the instant case". (*California Native Plant Soc. v. U.S. E.P.A.*, 251 F.R.D. 408, 415 (N.D. Cal. 2008)(citing *Chevron U.S.A. v. U.S.*, 80 Fed. Cl. 340, 355-57 (2008)).) "Among the factors to be considered in making this determination are: (1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." (*Id*.) "'Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.'" (*Desert Survivors v. U.S. Dep't of the Interior*, 231 F. Supp. 3d 368, 380 (N.D. Cal. 2017)(quoting *N. Pacifica, LLC*, 274 F. Supp. 2d at 1122).)

Here, Defendants have no alternative means of getting the necessary factual information in the various EBSA reports and files other than through the Secretary.

Based on the lack of information in the Secretary's Second Supplemental Privilege Log, this Court cannot assess that a privilege could properly apply because the Secretary repeatedly and improperly relied on the proverbial "kitchen sink" approach. Therefore, even if the deliberative process privilege could be applicable, Defendants are entitled to the factual data and files created by EBSA and the Secretary's failure to accurately assert privilege claims also should weigh in favor of Defendants.

6. *The Secretary Inadequately Asserted the Investigative File Privilege.*

The Secretary failed to satisfy his burden as to the investigative file privilege because he failed to properly support the claim of privilege, and because he has completed his investigation into the formation of the ESOP and commenced this civil lawsuit. As with the deliberative process privilege, a qualified common law privilege exists for law enforcement investigatory files. The Ninth Circuit has noted that the privilege is qualified, "contingent upon the competing interests of the requesting litigant and subject to disclosure especially where protective measures are taken". (*Kerr v. U.S. Dist. Court for Northern Dist. Of California*, 511 F.2d 192, 198 (9th Cir. 1975).) "The governmental privilege must be formally asserted and delineated in order to be raised properly." (*Kerr*, 511 F.2d at 198, citing *U.S. v. Reynolds*, 345 U.S. 1, 7-8, 73 S. Ct. 528, 97 L. Ed. 727 (1953).) "The claiming official must have seen and considered the contents of the documents and

himself have formed the view that on grounds of public interest they ought not to be produced and state with specificity the rationale of the claimed privilege." (*Id.* (quotations omitted).)

Defendants submit that a closed civil investigation where no criminal case in contemplated by the government does not require the extraordinary protection of the investigative file privilege. The major purpose of law enforcement privilege "is preventing the premature disclosure of information", rather than shielding investigative material after an investigation is complete. (*McPeek v. Ashcroft*, 202 F.R.D. 332, 336 (D.D.C. 2001).)

Here, the Secretary aggressively asserted that 25 withheld documents identified in his second supplemental privilege log fall under the government investigative file privilege. (Johanson Decl., Ex. E.) The Secretary failed, however, to make even a minimal showing that the investigative file privilege should apply, and, even if he had done so, the qualified privilege is overridden here because Defendants have no alternative means of accessing the necessary factual information contained in the various EBSA reports and files other than through the Secretary. Based on the information contained in the Secretary's Second Supplemental Privilege Log, it is difficult for Defendants to even assess what privileges should properly apply because the Secretary repeatedly used the proverbial "kitchen sink" approach. The Secretary failed describe how the

39

documents relate to any on-going investigation at the DOL or EBSA. There is no logical reason to protect "investigative files" merely because the government created them prior to the commencement of a civil lawsuit as part of an investigation. If that were the case, then the government would never have to provide investigative documents to litigants.

Moreover, because the investigative privilege is qualified, Defendants are entitled to disclosure even if this Court were to determine that the material is privileged (it is not). The courts have applied a number of factors seeking to weigh the public need for nondisclosure against a defendant's need for access to privileged information. (*Id*.) The claim of investigative file privilege as enunciated by *Tuite v. Henry*, 321 U.S. App. D.C. 248 (1996), requires an analysis of the following:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

(*Id*. at 1417 (applying these factors to determine if plaintiff lawyers could obtain taped attorney-client conversations from defendant DOJ).) The *Tuite* court also elaborated on a fundamental misunderstanding of the district court: "A principal problem with the District Court's opinion is the suggestion that, as a threshold matter, [the party opposing the assertion of privilege] carry the burden of showing that the information they seek cannot otherwise be elicited through discovery . . . it is clear that there is no such threshold requirement under the established case law." (*Id*. at 1418.) The *Tuite* court reversed and remanded the district's court denial of plaintiffs' request for the tapes held by the Department of Justice.

Here, the applicable factors favor Defendants in every respect. Factors 1 and 2 favor Defendants because there was no informant herein, nor has the informant privilege been invoked to shield any informants. Factor 3 favors Defendants because it seems highly unlikely that requiring the Secretary to provide the investigation documents to Defendants will chill investigations by EBSA or prosecutions by the Secretary. Factor 4 favors Defendants because they are specifically seeking factual information relevant to defenses and claims in this litigation, which may be included in the withheld documents. Factors 5 and 6 weigh in favor of Defendants because the Secretary stated that there are no pending criminal proceedings nor is any criminal investigation on-going. Factor 7 favors Defendants because this case does not concern interdepartmental disciplinary

proceedings. Factor 8 favors Defendants because they did not bring the lawsuit here. Factor 9 favors Defendants because there is no indication that the Secretary produced investigative information to another party and the Secretary and EBSA possess these documents exclusively in their custody.

Moreover, the Secretary is uniquely in possession of information that may indicate that the claims brought by the Secretary are barred by the statute of limitations in relation to the 2014 investigation. Such documents may be admissible under the Federal Rules of Evidence, as an admission against interest or otherwise. (*See, e.g.,* Fed. R. Evid. 803-804.)

In conclusion, in evaluating the totality of these factors, disclosure favors Defendants and the documents withheld under investigative file privilege must be produced.

On September 13, 2019, at 8:13 pm (P.D.T.), Defendants sent a final comprehensive letter to the Secretary summarizing the arguments that they have made in their Motion Compel and this Memorandum of Law in Support. The Secretary then in a hasty response made one last-ditch effort to cover his tracks of his defiant non-compliance with his discovery obligations under the Rules in an 11:03 pm (P.D.T.) e-mail in which the Secretary conveyed evasive, elusive, and/or non-responsive material to Defendants rather than comply with his discovery obligations herein. The Secretary clarified what documents he alleges that he

does not and stated once again his governmental privileges and relevance arguments that we have carefully addressed in this Motion to Compel. The Secretary did not change his privilege log. Defendants will save their reply in this respect to arguments that the Secretary makes, if any, in his Opposition to Defendants' Motion to Compel. That said, the Secretary's continuing relevance objections are interesting, in that the Secretary, the DOL and EBSA have standard forms that they routinely use in these ERISA investigations, but now argues that virtually none of those forms are relevant to this litigation. Query then why are they using these forms?

WHEREFORE, Defendants respectfully request that this Court overrule the Secretary's waived and improper assertion of privileges as waived, improperly asserted, or inadequately supported, grant their Motion to Compel, and order the Secretary to produce the withheld and redacted discovery.

DATED:  Honolulu, Hawai'i, September 14, 2019.

/s/ David R. Johanson
DAVID R. JOHANSON
DOUGLAS A. RUBEL
WILLIAM M. HARSTAD

Attorneys for Defendants
BRIAN J. BOWERS and DEXTER C. KUBOTA