# IN THE UNITED STATES DISTRICT COURT
# FOR HAWAI'I

|  |  |
|---|---|
| **EUGENE SCALIA,** Secretary of the United States Department of Labor<br><br>Plaintiff,<br><br>v.<br><br>**SHARON L. HERITAGE, as successor to NICHOLAS L. SAAKVITNE, Deceased; NICHOLAS L. SAAKVITNE, A LAW CORPORATION, a California corporation; BRIAN J. BOWERS, an individual; DEXTER C. KUBOTA, an individual; BOWERS + KUBOTA CONSULTING, INC. a corporation; BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN,**<br><br>Defendants. | Case No. 1:18 - cv - 155 |

### EXPERT REPORT AND DISCLOSURES OF GREGORY K. BROWN

November 19, 2020

I reserve the right to expand or modify these opinions as additional information becomes available.

November 19, 2020

_____
Gregory K. Brown

16

75236582.15

## Introduction

The following sets forth my opinions for purposes of the above captioned litigation, namely, *Eugene Scalia, Secretary of the United States Department of Labor ("Plaintiff") v. Sharon L. Heritage, as successor to Nicholas Saakvitne, Deceased, Nicholas Saakvitne, a Law Corporation, a California corporation, Brian J. Bowers, an individual, Dexter C. Kubota, an individual, Bowers + Kubota Consulting, Inc., a corporation, Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan (the "ESOP")* in the United States District Court, for the District of Hawaii, No. 1:18-cv-155 (this "Litigation"). Sharon L. Heritage, Nicholas Saakvitne, Nicholas Saakvitne, a Law Corporation. Brian Bowers, Dexter Kubota, and Bowers + Kubota Consulting, Inc. shall be referred to herein as the "Defendants. Bowers + Kubota Consulting, Inc. will be referred to herein as "B+KC" or the "Company."

## Allegations and Background

Plaintiff alleges that the Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA,") in a December 14, 2012, transaction by causing the ESOP to pay a purchase price in excess of fair market value for 100% of the company's capital stock (the "December 2012 ESOP Transaction" or the "Transaction.") Plaintiff also alleged that B+KC has failed to monitor the conduct of Nicholas L. Saakvitne, as the ESOP's trustee in the December 2012 ESOP Transaction.

The December 2012 ESOP Transaction involved the purchase by the ESOP of 100% of the Company's capital stock pursuant to an ESOP Stock Purchase Agreement in which the ESOP purchased all of the issued and outstanding shares (the "Shares") of the Company's capital stock from the Brian J. Bowers Trust dated December 22, 2010 and the Dexter C. Kubota Trust dated March 17, 2006 ("Sellers") for Forty Million and No/100 Dollars ($40,000,000). Sellers financed the entire amount of the Transaction through promissory notes issued to Sellers by the ESOP. The Transaction structure was relatively straightforward and did not involve senior bank financing or Seller warrants.

In connection with and prior to the Transaction, B+KC appointed Nicholas L. Saakvitne as the sole Trustee and independent fiduciary of the ESOP. and Mr. Saakvitne then selected Libra Valuation Associates, Inc. ("Libra") as the ESOP's independent appraiser and financial advisor. B+KC and Mr. Saakvitne executed an ESOP plan document and a separate ESOP Trust Agreement. B+KC, Mr. Saakvitne, and Sellers also executed an ESOP Stock Purchase Agreement among the Company, Sellers and the ESOP and ESOP Loan and Pledge Agreement for each Seller and the Company and the ESOP.

## Assignment and Compensation

Counsel for Defendants Mr. Brian J. Bowers and Mr. Dexter C. Kubota, David R. Johanson, Esq., Senior Partner of Hawkins Parnell & Young, LLP, has retained me to provide certain opinions as an expert concerning the Transaction in light of my 45-year career in designing transactions similar to the Transaction and representing corporations, selling shareholders, and Employee Retirement Income Security Act of 1974, as amended ("ERISA"), fiduciaries in similar transactions.

2

75236582.15

- "Information and Strategies for Dealing With the IRS and DOL on Qualified Retirement Plan Matters," <u>New York University Review of Employee Benefits and Executive Compensation 2010</u>, Chapter 11, Matthew Bender & Company, Inc.

- "Special Considerations in Designing and Operating an ESOP," <u>BNA Benefit Practitioners' Strategy Guide, BPRC</u>, July 29, 2011

- "Employee Stock Ownership Plans In Corporate Transactions," <u>Financier Worldwide</u>, October, 2011

- "Employer Stock Issues In Qualified Plans," <u>The Practical Tax Lawyer</u>, November 2011

- "Legal Update," <u>ESOP Report</u>, The ESOP Association, November 2011, March 2012, March 2013, May 2014, April 2015, August 2016

- "Where Are We Going With Fiduciary Indemnification?" <u>New York University Review of Employee Benefits and Executive Compensation 2012</u>, Chapter 8, Matthew Bender & Company, Inc.

- "10 Questions: Buying and Selling ESOP Companies," <u>Financier Worldwide</u>, August 2012

- "TalkingPoint: Outlook for ESOPs in 2013," <u>Financier Worldwide</u>, April 2013

- "Moench Presumption Marches Forward" <u>New York University Review of Employee Benefits and Executive Compensation</u> 2013, Chapter 15, Matthew Bender & Company, Inc.

### Documents Considered

1. Complaint filed in the U.S. District Court for the Division of Hawaii in this Litigation on April 27, 2013

2. Motion by Company, Brian J. Bowers and Dexter C. Kubota to Dismiss Complaint

3. Court's Order Denying Motion by Company, Brian J. Bowers and Dexter C. Kubota to Dismiss Complaint

4. Answer and Affirmative Defenses of Defendants Brian J. Bowers and Dexter C. Kubota

5. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan, Effective as of January 1, 2012 (RHYL 000212-000.312)

6. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Trust Agreement, dated December 11, 2012 (RHYL 000313-000.321)

5

7. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan Summary Plan Description (RHYL 000322-00352)

8. Bowers + Kubota Consulting, Inc. Resolution of Board of Directors by Unanimous Written Consent Without a Meeting, dated December 3, 2012 (RHYL 000353-000354)

9. Joint Action of the Directors and Shareholders of Bowers + Kubota Consulting, Inc. Effective December 10, 2012 (RHYL 000355-000358)

10. Amended and Restated Articles of Incorporation of Bowers + Kubota Consulting, Inc. (RHYL 000359-000365)

11. Amended and Restated Bylaws of Bowers + Kubota Consulting, Inc. (RHYL 000366-000379)

12. ESOP Stock Purchase Agreement, dated December 14, 2012 (RHYL 000380-000396)

13. ESOP to Seller Note – Bowers, December 14, 2012 (RHYL 000397-000398)

14. ESOP to Seller Note – Kubota, December 14, 2012 (RHYL 000399-000400)

15. ESOP to Seller Loan and Pledge Agreement – Bowers, dated December 14, 2012 (RHYL 000401-000409)

16. ESOP to Seller Loan and Pledge Agreement – Kubota, dated December 14, 2012 (RHYL 000410-000420)

17. Guaranty, dated December 14, 2012 (RHYL 000439-000444)

18. Libra Valuation Advisors, Inc. Engagement Letter with Nicholas L. Saakvitne and the Company, dated December 7, 2012 (RHYL 000466-000470)

19. Libra Valuation Advisors, Inc. Fair Market Value and Fairness Opinion dated December 14, 2012 (RHYL 000471-000474)

20. Draft Bowers + Kubota Consulting, Inc. Stock Appreciation Rights Plan (RHYL 000528-000545)

21. Brian J. Bowers' Employment Agreement with the Company dated December 14, 2012 (RHYL 000445-000454)

22. Dexter C. Kubota Employment Agreement with the Company dated December 14, 2012 (RHYL 000455-000464)

23. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Trust Written Consent of the Trustee dated February 21, 2013 (RHYL 000480-000482)

75236582.15

24. Joint Resolution of the Board of Directors and Shareholders of Bowers + Kubota Consulting, Inc. dated February 21, 2013 (RHYL 000491-000493)

25. February 15, 2013, Bowers + Kubota Consulting, Inc. Employee Stock Ownership Trust, Trustee Action Approving Amendment and Assumption of Loans and Loan Documents (RHYL 000494-000505)

26. Consent to Amendment and Assumption of Loan and Loan Documents and Assignment of Collateral – Bowers dated March 1, 2013 (RHYL 000506-000507)

27. Consent to Amendment and Assumption of Loan and Loan Documents and Assignment of Collateral – Kubota dated March 1, 2013 (RHYL 000508-000509)

28. ESOP Note – 2013, dated March 1, 2013 (RHYL 000510)

29. ESOP Loan and Pledge Agreement – 2013, dated March 1, 2013 (RHYL 000511-000520)

30. Joint Consent of Directors and Shareholders of Bowers + Kubota Consulting, Inc., dated September 24, 2012 (RHYL 000525-000527)

31. Deposition Transcript for Dexter C. Kubota, dated October 7, 2020 ("Kubota Dep.") and Exhibits

32. Deposition Transcript for Dawn Marugame, October 7, 2020 ("Marugame Deposition") and Exhibits

33. Deposition Transcript for Thomas Nishihara ("Nishihara Deposition"), September 29, 2020 and Exhibits

34. Deposition Transcript for Gary Kuba, October 5, 2020 ("Kuba Deposition") and Exhibits

35. Administrative Deposition Transcript for Gregory M. Hansen, February 23, 2018 ("Hansen Deposition") and Exhibits

36. Administrative Deposition Transcript for Gregory E. Kniesel, ASA, dated December 22, 2017 ("Kniesel 1st Deposition") and Litigation Department January 23, 2018 ("Kniesel 2nd Deposition") and Litigation Deposition, October 20, 2020 and Exhibits

37. Administrative Deposition Transcript for Brian J. Bowers, dated February 23, 2019 ("Bowers 1st Deposition") and Exhibits, and Litigation Deposition Transcript for Brian J. Bowers, dated October 13, 2020 ("Bowers 2nd Deposition")

38. Administrative Deposition Transcript for Nicholas L. Saakvitne, dated November 21, 2017 ("Saakvitne Deposition") and Exhibits

7

39. Libra Valuation Advisors, Inc. Valuation Report as of December 14, 2012, dated June 4, 2013 (DOL 001536-001595)

40. Form 5500 for the ESOP Plan Year 2012

41. Form 5500 for the ESOP Plan Year 2013

42. Form 5500 for the ESOP Plan Year 2014

43. Form 5500 for the ESOP Plan Year 2015

44. Form 5500 for the ESOP Plan Year 2016

45. Form 5500 for the ESOP Plan Year 2017

46. Form 5500 for the ESOP Plan Year 2018

47. URS non-binding initial indication of interest, dated December 3, 2011 (B+KC005141-005144)

48. GMK Consulting Valuation Advisory Service Fair Market Valuation for B+KC, dated May 8, 2012 (Bowers/Kubota 007186-007214)

49. E-mail chain among Gregory M. Hansen, Esq., Gregory E. Kniesel, ASA, Brian J. Bowers and Dexter C. Kubota, October 18, 2012 through October 30, 2012 (Bowers/Kubota 012745-012747)

50. Follow-Up Questions and Answers (between Gregory E. Kniesel, ASA and B+KC), dated November 15, 2012 (Bowers/Kubota 007608-007615)

51. E-mail chain among Gregory E. Kniesel, ASA, Brian J. Bowers and Gregory M. Hansen, Esq. from November 15, 2012, through November 18, 2012 (Bowers/Kubota 012710-012711)

52. E-mail from Gregory M. Hansen, Esq. to Nicholas L. Saakvitne, dated November 21, 2012 (DOL 005009)

53. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, December 11, 2012 (DOL 001463-001465)

54. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, dated December 11, 2012 (DOL 001494-001496)

55. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, dated December 11-12, 2012 (Bowers/Kubota 0182391-0182394)

8

75236582.15

56. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, dated December 11, 2012 (Bowers/Kubota 018235-018238)

57. E-mail chain among Brian J. Bowers, Gregory M. Hansen, Esq., Dexter C. Kubota and Thomas Nishihara, dated August 6 to 28, 2012 (Bowers/Kubota 018272-018274)

58. E-mail messages among Brian J. Bowers, Gregory M. Hansen, Esq. and Gary Kuba, dated June 19, 2012 to September 2, 2012 (DOL 001927-001930)

59. E-mail chain among Brian J. Bowers, Dexter C. Kubota and Thomas Nishihara, dated July 26, 2012 (B+KC 001922)

60. Email message from Gregory M. Hansen to Gary Kuba, dated August 31, 2012 (DOL 001926)

61. Email message from Brian J. Bowers to Gregory M. Hansen, dated September 12, 2012 (B+KC 002507)

62. Email messages between Gregory M. Hansen and Gary Kuba, dated October 8 and 13, 2012 (BK Exhibits 193 and 194 and Bowers/Kubota 012777)

63. Email messages from Gregory M. Hansen to Gary Kuba and Gregory E. Kniesel, dated October 17, 2012 (Bowers/Kubota 012734, 012776, and 012869)

64. Email message from Gregory E. Kniesel to Gregory M. Hansen and Brian J. Bowers, dated October 18, 2012 (Bowers/Kubota 012732)

65. Financial Statements and Valuation Analysis (110133050-110133075)

**Opinions**

Based on my review of the foregoing documents to date, my knowledge and my experience in advising and counseling many clients, including, but not limited to, plan sponsors, selling shareholders, trustees, plan committees, and independent fiduciaries, with respect to their employee stock ownership plan transactions, the following are my opinions:

1. It is quite common for individual sellers of employer stock to an employee stock ownership plan to arrange to have the plan sponsor engage an independent fiduciary and/or trustee on behalf of an ESOP to make the decision to purchase the employer stock. This is done to eliminate conflicts of interests that such sellers may have in a given transaction and to assure that the best interests of ESOP participants are served.

2. Where, as in this case, an ERISA independent fiduciary and trustee like Nicholas L. Saakvitne makes the decision regarding this ESOP to purchase company stock, it is (and at the time of this Transaction was) usual and customary that the independent fiduciary or trustee conduct due diligence with respect to the Transaction by:

9

75236582.15

- together with Libra Valuation Advisors, Inc., conducted an onsite visit to Company headquarters and interviewed senior management regarding business performance, prospects, backlog, quality of receivables, etc., and

- reviewed the ESOP plan document and the Transaction documents.

All of these actions reflected usual and customary practice by an ERISA independent fiduciary and trustee at the time of the Transaction.

5. In considering and evaluating the proposed Transaction, Nicholas L. Saakvitne noted that the purchase price ($40,000,000) was within the range of fair market value indicated by Libra Valuation Advisors, Inc., the terms of the financing were favorable and reasonable to the ESOP, and the interest rate on each ESOP Loan and Pledge Agreement was within an appropriate range.

The due diligence materials generated by Libra Valuation Advisors, Inc. with respect to this Transaction reflect a thorough, deliberate approach for the Trustee and independent fiduciary in evaluating the Transaction. These materials are indicative of usual and customary practices of an independent fiduciary and trustee at the time of the Transaction.

6. The Trustee, after reviewing the November 21, 2012, Valuation Report, and December 11, 2012, valuation schedules prepared by Gregory E. Kniesel, ASA, concluded that these materials were prepared in compliance with all relevant valuation guidelines. Nicholas L. Saakvitne also reviewed the control premium reflected in these preliminary Valuation Reports and concluded that its use was appropriate, and that a control premium was warranted given that the ESOP obtained control in fact of B+KC on December 14, 2012.

My experience at the time of this Transaction is that an independent trustee and fiduciary determines value based, in part, on the input of its independent appraiser and financial advisor, but also based on its own independent judgment, due diligence, and experience. It is apparent that the Trustee and independent fiduciary did so in this Transaction. In doing so, the Trustee and independent fiduciary exercised his discretion and acted in the manner consistent with that of an ERISA fiduciary in my experience.

The URS indication of interest letter from December 5, 2011, was, in my experience, a red herring to the Transaction inasmuch as it was a non-binding proposal with little or no due diligence done by URS and which was dismissed by the Company's Board of Directors and Sellers. Moreover, this letter states that it is not an offer and does not obligate URS to make an offer. This indication of interest was not based on financial information furnished by the Company (Bowers 2nd Deposition, 100:14-17, 22-25). Such proposals are all too common and of little or no value.

7. The analysis done by Libra Valuation Advisors, Inc. prior to its formal written engagement by Nicholas L. Saakvitne on behalf of the ESOP and the engagement of Nicholas L. Saakvitne by the Company and Libra's subsequent engagement was, in my experience at the time of the Transaction, not uncommon and does not appear to have compromised the independence of Messrs. Saakvitne or Kniesel for purposes of the Transaction. The Company had already reviewed the GMK valuation in May 2012 and the preliminary valuation analysis performed by Libra

11

75236582.15

11.     I note that the Board of Directors of the Company was unaware of any facts relevant to the Transaction that would have led them to conclude that completion of the Transaction would violate the fiduciary provisions of ERISA.  The B+KC Board of Directors did not know that the purchase price in the Transaction exceeded the fair market value of the Shares purchased by the ESOP.  To the contrary, it was not obvious to the B+KC Board of Directors that the fair market value of the Shares was less than $40 million, as valuation is a very subjective matter.  In fact, based on the GMK Consulting Valuation Report of May 9, 2012, the B+KC Board of Directors had reason to believe that the Transaction price of $40 million was within an acceptable range of fair market value and raised no "red" or "yellow" flags.  The B+KC Board of Directors and Sellers shad first-hand knowledge of the disciplined methodology used in developing the Company's projections and that the Company provided appropriate, accurate, and reasonable financial information and projections to Libra Valuation Advisors, Inc. and the Trustee and independent fiduciary.

12.     B+KC engaged Nicholas L. Saakvitne in order to remove the individual members of the B+KC Board of Directors and Seller individually from direct ERISA responsibility for the Transaction, which involved each of the B+KC Board of Directors' members as a Seller.  Thus, neither of the members of the B+KC Board of Directors could have participated in the Trustee's and independent fiduciary's alleged breach of its fiduciary duties under ERISA.  As aforementioned, and based upon my experience, the B+KC Board of Directors would not have acted consistently with the arm's–length structure of the Transaction by interfering with the independent trustee and fiduciary process involved in its negotiation of the purchase price and terms of the Transaction in their capacity as members of the Board of Directors of the Company.

13.     The Transaction included several elements which, based upon my experience, are consistent with a change in control of the Company:

(a) the ESOP became the 100% owner of the Company,

(b) the ESOP plan and Trust Agreement provided the Trustee and independent fiduciary with complete discretion as to the voting of the Shares, and

(c) the employment agreements for each of the Sellers froze their compensation for five years following the Transaction and provided that incentive bonuses would be conditioned upon Company performance in excess of EBITDA projections.

The fact that each Seller remained as an B+KC officer and Board member does not mean that control was not transferred to the ESOP in light of these developments, change for the sake of change is not relevant, particularly where B+KC performance did not make changes in management of the Board necessary or desirable.

14.     In my experience, U.S. Department of Labor ("DOL") investigations often times ask some providers, such as trustee and independent fiduciaries, what other ESOP transactions they were involved in during a specific period as a part of the DOL's regular investigative process to see if there is a trend of a certain structure, activity or otherwise, and for the purposes of issuing Subpoenas and obtaining additional information about a particular service provider's or professional fiduciary's alleged conduct that violates ERISA.

14

More recently, I have observed that the DOL has begun to focus their investigation function on the service providers and professional fiduciaries to ESOPs rather than the individual plan sponsors in what is called a "book of business" investigation. In a book of business investigation, the DOL issues a subpoena to a financial advisor or a trustee and independent fiduciary who is in the ESOP valuator or trustee business and requests documents, irrespective of any specific transaction, but which involve any transaction in which the service provider or professional fiduciary has been involved. The scope of the request typically covers a set timeframe, i.e. three years prior to current year and request production of documents that identify the following for each and every ESOP transaction in which the service provider or professional fiduciary was involved:

(a) the name, address, employer identification number and plan number of the ESOP;

(b) the date on which [service provider or professional fiduciary] was formally engaged to represent the ESOP with respect to the ESOP transaction;

(c) the date on which the closing took place for the ESOP transaction;

(d) the total amount paid by the ESOP or received by the ESOP;

(e) the face value of any notes, amount of cash or other consideration received by the seller(s) from any source relating to the ESOP transaction or pursuant to a redemption or similar agreement;

(f) whether the ESOP transaction included the issuance of warrants, options and/or stock appreciation rights, and the equity ownership percentage they represented on a fully-diluted basis;

(g) the percentage of issued and outstanding shares that was purchased or sold to increase or decrease the ESOP's ownership interest;

(h) the type of shares sold, i.e. common, preferred etc.;

(i) the name of the valuation firm [if not a valuation firm book of business investigation] retained to provide services to the ESOP;

(j) the names of any consultants that the plan sponsor retained to advise it on the purchase or sale of employer securities by the ESOP;

(k) whether [service provider or professional fiduciary, if a trustee] was retained to serve as a trustee for the ESOP after the ESOP transaction closed; and

(l) the capacity, role and/or authority exercised by [service provider or professional fiduciary] for each ESOP transaction.

15

**Exhibit A**

**Curriculum Vitae of
GREGORY K. BROWN, Partner
Polsinelli PC
150 North Riverside Plaza, Suite 3000
Chicago, IL 60606-1599
(312) 463-6335
(312) 893-2033 (Fax)
gbrown@polsinelli.com**

**Gregory K. Brown** focuses on the practice of Employee Benefits and Executive Compensation. He has experience in all aspects of employee benefits and executive compensation, including extensive work with employee stock ownership plans (ESOPs) and the Employee Retirement Income Security Act (ERISA); he is the author and co-author on numerous articles and is a frequent speaker on ESOPs and all areas of employee benefits and executive compensation. He has also served as an expert witness on various employee benefits and ESOP matters.

Greg is a member of the

American Bar Association,
The ESOP Association of America,
including its Legislative & Regulatory Advisory Committee,
The National Center for Employee Ownership,
Employee-Owned S Corporations of America,
including its Advisory Committee
and
American College of Employee Benefits Counsel

He is the emeritus Chair of the Subcommittee on ESOPs for the Employee Benefits Committee of the Section of Taxation of the American Bar Association; is a past member of The Board of Directors of The ESOP Association; is a past Chair of the ESOP Association Legislative & Regulatory Advisory Committee; is a past Chair of the Employee Benefits Section of the Illinois State Bar Association (past co-editor of the Employee Benefits Section); is a past Chairman of the Employee Benefits Committee of the Chicago Bar Association.

**Profiled:** is profiled in Marquis Who's Who in America (50th through 60th Ed.) and Who's Who in American Law (8th through 14th Ed.); is listed in The Best Lawyers in America (1995-2013); is listed in Chambers USA: America's Leading Lawyers for Business (2007-2014); is listed in Illinois Super Lawyers (2005-2013); recognized as one of "The Most Powerful Employment Attorneys in America (June 2012) by Human Resources Executive magazine; also recognized in 2009 through 2014 as one of the nation's "Top Employment Attorneys" by Human Resources Executive magazine.

**Education: J.D**., University of Illinois (1976); B.S., University of Kentucky (1973).

**Bar Membership**: Illinois.

75236582.15

He is the author of

- "Division of Retirement Plan Assets Upon Divorce", Journal of the American Academy of Matrimonial Lawyers, Vol. 3, page 33, 1987

- "Division of Retirement Plan Assets Upon Divorce," Illinois Institute for Continuing Legal Education Family Law Handbook, 1992, 1998, 2004, 2006, 2011

- "Revising QDROs After Blackston," Illinois Bar Journal, Vol. 83, August 1995

- "S Corporation ESOP Double Jeopardy: Sections 409A and 409(p)," New York University Review of Employee Benefits and Executive Compensation 2006, Chapter 7, Matthew Bender & Company, Inc.

- "What The Matrimonial Lawyer Needs To Know About Non-Qualified Deferred Compensation", Journal of the American Academy of Matrimonial Lawyers, Vol. 20, page 217, 2007

- "What The Matrimonial Lawyer Needs to Know About Non-ERISA Plans, Executive Compensation, and Other Related Plans," Journal of the American Academy of Matrimonial Lawyers, Vol. 26, page 601, 2014

- "Employer Stock Issues In Qualified Plans," The Practical Tax Lawyer, November 2011

He is the co-author of

- "A Financial Advisor Can Minimize the Risks in an ESOP Transaction," Illinois Bar Journal

- "Compensation Opportunities and Problems - The Economic Recovery Tax Act of 1981," Chicago Bar Records (September - October, 1981, Vol. 63, No.2)

- "Uses of Leveraged ESOPs in Corporate Transactions," New York Law Journal, September 15, 1985

- "Maintaining a Qualified Plan Loan Program in Light of New Regulations," Small Business Taxation, Jan./Feb. 1990

- "ESOPs" Bureau of National Affairs, Tax Management Portfolio, 354-4th (1987); 354-5th (1991); 354-7th (2004) and 354-8th (2010)

- "Using Deductible ESOP Dividends To Achieve Corporate Goals," Journal of Pension Planning & Compliance, Fall 1991

- "Use of 'Enterprise Value' When an ESOP Purchases Less Than a Majority of a Company's Outstanding Stock," Tax Management Compensation Planning Journal, June 5, 1992

- "Disposing of a Closely Held Business Through a Tax Deferred Sale to an ESOP," The Journal of Taxation, October 1992

2

75236582.15

- "Avoiding Problems with IRC §§409(n) and 4979A in IRC § 1042 Multi-Investor ESOP LBOs," Tax Management Compensation Planning Journal, Vol. 21, No.3 (March 5, 1993)

- "Internal Revenue Code §306 and ESOPs," Tax Management Compensation Planning Journal, September 3,1993, Vol. 21, No.9

- "The Kroy Decision: ESOP Advisers Must Do Their Homework," Mergers & Acquisitions, March/April 1994, Vol. 28, No.5

- "Kroy Decision-A Reality Check for Fiduciaries," Tax Management Compensation Planning Journal, July 1994, Vol. 22, No.9

- "Look Before You Leap: Risk Assessment in ESOP Transactions," Probate and Property Magazine, July/August, 1994

- "Employee Stock Ownership Plans After 20 Years," Tax Management Compensation Planning Journal, December 2, 1994

- "Employee Ownership in a Profit- Sharing/401 (k) Plan," National Center for Employee Ownership (Fall 1996)

- "ESOPs and Security Design: Common Stock, Super Common, or Convertible Preferred?" Journal of Pension Planning & Compliance (Summer 1997, Vol. 23, No.2)

- "Terminating an ESOP: Valuation and Fiduciary Issues," The Journal of Employee Ownership Law and Finance (Winter 1999, Vol. 11, No.1)

- "Remedies for Retaliatory Termination of ESOP Committee Members," The Journal of Employee Ownership Law and Finance (Summer 2002, Vol. 14, No.3)

- "The Benefits of Using Loans to Help an ESOP Buy Shares," American Banker, October 25,2002

- "Investment in Employee Stock Ownership Plans Clarified Through Recent Developments" Journal of Taxation of Investments (Summer 2003, Vol. 20, No.4)

- "An Update on Multi-Stage ESOP Transactions," The Journal of Employee Ownership Law and Finance (Fall 2003, Vol. 15, No.4)

- "Reaching an Optimal Level of Employee Ownership In a Profit Sharing Plan/401(k) Plan," Section 401(k) Plans and Employee Ownership, Fourth Edition, (Oakland, CA, NCEO 2003)

- "Fiduciary Hurdles in Selling an ESOP-Owned Company," New York University Review of Employee Benefits and Executive Compensation 2007, Chapter 19, Matthew Bender & Company, Inc.

3

- "New Challenges in Operating Defined Contribution Plans," <u>New York University Review of Employee Benefits and Executive Compensation 2008,</u> Chapter 15, Matthew Bender & Company, Inc.

- "Managing Risk in Your Defined Contribution Plan Company Stock Fund," <u>New York University Review of Employee Benefits and Executive Compensation 2009,</u> Chapter 8, Matthew Bender & Company, Inc.

- "Information and Strategies for Dealing With the IRS and DOL on Qualified Retirement Plan Matters," <u>New York University Review of Employee Benefits and Executive Compensation 2010,</u> Chapter 11, Matthew Bender & Company, Inc.

- "Special Considerations in Designing and Operating an ESOP," <u>BNA Benefit Practitioners' Strategy Guide, BPRC,</u> July 29,2011

- "Employee Stock Ownership Plans In Corporate Transactions," Financier Worldwide, October, 2011

- "Legal Update," <u>ESOP Report,</u> The ESOP Association, November 2011, March 2012, March 2013, May 2014

- "Where Are We Going With Fiduciary Indemnification?" <u>New York University Review of Employee Benefits and Executive Compensation</u> 2012, Chapter 8, Matthew Bender & Company, Inc.

- "10 Questions: Buying and Selling ESOP Companies," <u>Financier Worldwide,</u> August 2012

- "TalkingPoint: Outlook for ESOPs in 2013," <u>Financier Worldwide,</u> April 2013

- "Moench Presumption Marches Forward" <u>New York University Review of Employee Benefits and Executive Compensation</u> 2013, Chapter 15, Matthew Bender & Company, Inc.

He is also a contributing author to

- <u>Equity Based Compensation for Multinational Corporations,</u> Rodrick, The National Center for Employee Ownership (1998)

- The Handbook of Advanced Business Valuation, Reilly and Schweiss, McGraw-Hill (1999)

- Selling to an ESOP, Rodrick, The National Center for Employee Ownership (2000, 6th Ed.)

- Section 401(k) Plans and Employee Ownership, Rodrick, The National Center for Employee Ownership (2004, 4th Ed.)

- The Handbook of Employee Benefits, Rosenbloom, Dow Jones Irwin (2005)

Employee Stock Ownership Plans, Smiley and Gilbert, Prentice Hall Rosenfeld Launer Publications (New York, 2006).

4

75236582.15