

**Prepared in the Matter of:**

Eugene Scalia, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

SHARON L. Heritage as successor to Nicholas L. Saakvitne, Deceased; Nicholas L. Saakvitne, A Law Corporation, a California Corporation; Brian J. Bowers, an individual; Dexter C. Kubota, an individual; Bowers + Kubota Consulting, Inc., a corporation; Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan, Defendants.

Case No: 1.18-cv-00155-ACK-RLP

United States District Court

District of Hawaii

# Expert Report of

# Renee R. McMahon

**Confidential**

Ex. A

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                              Charles River Associates

- I evaluated B+K's WACC as of the Transaction date. My concluded WACC is 15.05%,[175] which approximates Mr. Sherman's concluded WACC (15.25%).[176]

- My evaluation of the size-adjusted LTM EBITDA multiples for the GPC method resulted in a size-adjusted multiple of 5.18x LTM EBITDA, which is higher than the multiple calculated by Mr. Sherman (5.0x[177]), primarily as a result of differences in the GPC market capitalizations used in my analyses as compared to those used by Mr. Sherman. The impact of my higher size-adjusted multiple, however, was partially offset by my decision not to incorporate a control premium into the GPC method results.

- My concluded GMAC-based multiple was 4.92x LTM EBITDA.[178] I note that this multiple is lower than that quantified by Mr. Sherman. Simply correcting for the fact that there was a duplicative transaction in Mr. Sherman's GMAC analysis (but holding all else constant) causes the median GMAC EBITDA multiple to decrease from 6.0x to approximately 5.8x.[179]

These and other adjustments are reflected in **Appendix C** and ultimately result in my concluded value of **$40.015 million**.


Respectfully submitted,


Renee McMahon, Vice President

Charles River Associates

November 19, 2020

---

[175] See **Appendix C**.

[176] See **Appendix C**. I note that LVA derived a WACC of 18%. See SAK000807 – 872 at SAK000841 – 842.

[177] See **Appendix C**.

[178] See **Appendix C**.

[179] See Sherman Report p. 71. More specifically, there are two transactions in Mr. Sherman's analysis with a closing date of May 3, 2010. These transactions are duplicates. It appears that these transactions were sourced from two separate databases, which reported somewhat different financial statistics regarding the transaction. Removing either version of this transaction causes the median multiple to approximate 5.8x.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                             Charles River Associates

## 1.   Introduction and Scope of Assignment

### 1.1.   Scope of Assignment

I have been retained by Sharon L. Heritage, as successor to Nicholas L. Saakvitne, Deceased, and Nicholas L. Saakvitne, A Law Corporation (collectively, "Saakvitne") by and through their counsel, Morgan, Lewis & Bockius, LLP, in the matter of *Eugene Scalia, Secretary of Labor, United States Department of Labor* ("DOL" or "Plaintiff") *v. SHARON L. HERITAGE as successor to NICHOLAS L. SAAKVITNE, Deceased; NICHOLAS L. SAAKVITNE, A LAW CORPORATION, a California Corporation; BRIAN J. BOWERS, an individual; DEXTER C. KUBOTA, an individual; BOWERS + KUBOTA CONSULTING, INC., a corporation; BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN* (collectively, the "Defendants")*,* Case 1:18-cv-00155-ACK-RLP pending in the United States District Court for the District of Hawaii.

The DOL's complaint dated April 27, 2018 (the "Complaint") centers around a December 14, 2012 transaction whereby the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan ("B+K ESOP") purchased all of the issued and outstanding stock of Bowers + Kubota Consulting, Inc. ("BKC") from Defendants Brian J. Bowers ("Bowers") and Dexter C. Kubota ("Kubota") for $40 million (the "Transaction").[1] The DOL asserts that the Transaction gave rise to various violations of the Employee Retirement Income Security Act ("ERISA"). With respect to Saakvitne, who served as the Trustee for the B+K ESOP in connection with the Transaction,[2] the DOL asserts violations of ERISA §§ 404(a)(1)(A), (B), and (D) (imprudence and disloyalty) and § 406(a)(1)(A) (prohibited transactions). The DOL's claims are described more fully in the Complaint, but relevant to this report are the DOL's assertions that Saakvitne allowed the B+K ESOP to purchase the shares of BKC for a price that exceeded fair market value, and that Saakvitne improperly relied on valuation work and a fairness opinion provided by Libra Valuation Associates ("LVA") in connection with the Transaction.

Related to these claims, I was specifically engaged to:

- Review, analyze, and assess the October 19, 2020 report submitted by one of the DOL's experts, Mr. Steven J. Sherman, ASA, CPA of Loop Capital

---

[1] BKC also had an affiliate, Bowers + Kubota Management, Inc. ("BKM"). As discussed in more detail later in this report, although ownership of BKM was not transferred in connection with the Transaction, it is my understanding that economic value continued to flow from BKM to BKC after the Transaction. See, e.g., LIBRA-DOL INV 004796 – 4803 at LIBRA-DOL INV 004799 and LIBRA-DOL INV 007198 – 7205 at LIBRA-DOL INV 007203. Also, in the years immediately preceding the Transaction, the financial results of BKC and BKM were presented on a combined basis. See, e.g., RHYL000588 – 679. As such, BKC and BKM are collectively referred to in this report as "B+K" or the "Company," and specific references to BKC or BKM are only made where it is necessary to distinguish between the two entities.

[2] Complaint at ¶ 7.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                               Charles River Associates

Financial Consulting Services, LLC (the "Sherman Report"), whereby Mr. Sherman provides an opinion regarding the value of the BKC shares sold in the Transaction; and

- Analyze the reasonableness of the $40 million purchase price paid by the B+K ESOP in connection with the Transaction.

## 1.2.  Qualifications

I am a Vice President in the Finance practice of Charles River Associates ("CRA"), a global consulting firm that offers economic, financial, and strategic expertise to major law firms, corporations, accounting firms, and governments around the world. I am based in the firm's Chicago office.

I have significant prior experience consulting with and advising clients in cases involving valuation, damages, causation and other financial and economic issues. My work has included, among other things, valuation analyses and damages assessments related to complex commercial disputes, and valuation analyses in the context of fraudulent transfer and other avoidance actions and related claims.

I hold a Bachelor's degree in Finance from the University of Illinois at Urbana-Champaign (high honors), and a Master of Business Administration degree from the University of Chicago Booth School of Business (honors). Prior to joining CRA in 2011, I held positions at LECG, LLC, and Navigant Consulting, Inc., where I provided similar services. A more comprehensive description of my experience is detailed in **Appendix A** to this report.

CRA is being compensated for my time spent on this matter at a billing rate of $650 per hour. Other CRA personnel who have assisted me in preparing this report are also being billed at customary hourly rates. CRA's compensation is independent of the outcome of the case.

## 1.3.  Documents and Information Relied Upon

I have prepared this report to express my opinions and the bases for those opinions in this matter. For purposes of preparing this report, I have reviewed and/or relied on certain documents and information produced in this litigation, deposition testimony provided in this litigation, legal filings submitted in connection with this matter, and certain independently compiled data and information.

The specific documents and information that I reviewed and/or relied upon in preparing this report are referenced herein and/or are summarized in **Appendix B** to this report. My opinions are based on the documents and information available to me as of the date of this report. I understand that discovery is ongoing. I reserve the right to review and analyze any information that becomes available subsequent to the submission of this report, and to supplement or modify this report if necessary on the basis of that review, or for other reasons as allowed by the Court.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020 Charles River Associates

**Table 10**

| Mr. Sherman's Concluded Value ($000s) [1] | |
|---|---:|
| | Value |
| Pre-Adjustment BEV | $ 26,620 |
| | |
| **Adjustments** | |
| Plus: Excess Cash | 1,890 |
| Plus: Marketable Securities | 3,439 |
| Plus: Investments in LLCs | 249 |
| **Total Adjustments** | $ 5,578 |
| | |
| **Fair Market Value of Equity (Controlling, Marketable)** | $ 32,198 |
| Less: Discount for Lack of Marketability (7%) | (2,254) |
| | |
| **Fair Market Value of Equity (Controlling, Non-Marketable)** | $ 29,944 |
| Less: Discount for Limited Control (10%) | (2,994) |
| | |
| **Fair Market Value of Equity (Limited Control, Non-Marketable)** | $ 26,950 |
| | |
| Total Number of Shares | 1,000 |
| | |
| **Fair Market Value of Equity on a per Share Basis** | $ 26.95 |
| | |
| **Notes:** | |
| [1] Slight rounding differences exist between this presentation and the Sherman Report. | |

## 5. Flaws in and Corrections to Mr. Sherman's Analysis

In this section, I identify flaws in Mr. Sherman's analysis and quantify the value implications of those flaws.

The flaws in Mr. Sherman's analysis fall into three major categories:

1. Mr. Sherman's calculations of B+K's cash flow projections are flawed as a result of his improper adjustments to B+K's post-Transaction engineering subconsultant expenses and bonus expenses. These expense adjustments impact Mr. Sherman's DCF-based valuation of B+K and also certain of his GPC and GMAC-based valuations.

2. Mr. Sherman's calculations of B+K's EBITDA on both a latest twelve months ("LTM") and next twelve months ("NTM") basis are flawed due to double-counting of bonuses and the failure to normalize historical results for management bonuses. These flaws impact Mr. Sherman's GPC and GMAC-based valuations.

3. The "limited control" discount applied by Mr. Sherman in concluding his ultimate value for B+K is inappropriate.

Each of these flaws is addressed in detail below.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                                                      Charles River Associates

## 5.1.    Flaws in Mr. Sherman's B+K Cash Flow Projections

Mr. Sherman makes two primary adjustments to the cash flow projections prepared by management and used by LVA in connection with LVA's Transaction-related valuation of B+K – engineering subconsultant expense and bonus expense. As discussed below, it is my opinion that Mr. Sherman's adjustments overstate both expense categories, causing his B+K value conclusion to be understated as of the Transaction date. Based on my review and analysis of both issues, I determined that alternative assumptions for both subconsultant expenses and bonuses are more reasonable. I also evaluate my revised inputs vis-à-vis B+K's total labor costs.

My analysis and conclusions are set forth in the following subsections.

### 5.1.1.    Mr. Sherman Overstates Subconsultants Expense

The B+K Projections used by LVA in connection with the Transaction were created by the Company (and, in particular, Bowers), and incorporated certain feedback from LVA.[110] In essence, the B+K Projections were an extrapolation of detailed one- to two-year projections created and maintained in the ordinary course of business by Bowers, Kubota, and other senior managers.[111] As noted previously, the B+K Projections estimated subconsultant expenses of $2 million annually over the 2013 through 2017 projection period.[112] Mr. Sherman observes that this projection for subconsultants equates to an average annual expense of 7.8% over the projection period, as compared to historical subconsultant expenses, which averaged 14.2% of revenue from 2008 through 2011. Mr. Sherman states that "[t]his is of particular note as the Company's salaries and wages remain constant at 34.7% of revenues over the forecast period as well."[113]

Mr. Sherman then adjusts the B+K Projections to include subconsultant expenses of 14.2%, consistent with the observed 2008 through 2011 average, stating that if "Management would argue that engineering consultant expenses would trend downward in the future, then salaries and wages would need to increase substantially."[114]

However, Mr. Sherman ignores management's attempts to normalize historical subconsultant expenses for unusual amounts that had occurred previously.

---

[110] See, e.g., LIBRA-DOL INV 004973 – 5002.

[111] Deposition of B. Bowers, October 14, 2020, pp. 18 – 24. Bowers' testimony also indicated that, for routine projection purposes, each client contract was projected out by month for one to two years, and estimates updated every 30-60 days to ensure they incorporated the latest information and expectations. I note also that the B+K Projections created by the Company were quite detailed (see, e.g., DOL 0005054.xlsx).

[112] See DOL 005054.xlsx. See also SAK006754 – 814 at SAK006810.

[113] Sherman Report at p. 24.

[114] Sherman Report at p. 25.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                        Charles River Associates

**Table 18**

| Corrected NTM EBITDA ($000s) | | | | |
|---|---|---|---|---|
| | Sherman Value | [1] | Revised Value | |
| LVA 2013 EBITDA Projection | $ 7,830 | | $ 7,830 | |
| | | | | |
| Less: Additional Subconsultant Expense | 1,332 | | - | |
| Less: Additional Bonus Expense | 1,027 | | 546 | |
| | | | | |
| **Revised NTM EBITDA** | $ 5,472 | | $ 7,284 | |

Notes/Sources:
[1] Sherman Report at Exhibit 2.

### 5.2.2.  Normalized LTM EBITDA

For purposes of calculating B+K's LTM EBITDA, Mr. Sherman started with year-to-date B+K actual financials as of August 31, 2012.[147] He then took the following steps to derive normalized or pro forma LTM financials for B+K as of August 2012:[148]

- Added an incremental bonus expense equal to 8% of the YTD August 2012 salaries, for a bonus expense of $1.53 million;[149]

- Estimated the results for September through December 2011 by taking a pro rata share of the actual 2011 accrual-based financial statements;

- Added the September through December 2011 results to the YTD August 2012 amount;

- Eliminated dividend and interest income and profit-sharing plan contributions from the LTM results (given that the profit-sharing plan was not going to continue post-Transaction).

As a result of this analysis, Mr. Sherman derived LTM EBITDA as of August 2012 of approximately $4.8 million.[150]

---

[147] RHYL000680 − RHYL000836 at RHYL000685. I note that these financials were prepared on an accrual basis by B+K's accountant, RHYL. B+K maintained its books on a cash basis, but annual statements were routinely prepared on an accrual basis beginning in 2011 (with retroactive accrual-based statements also prepared for 2010). See RHYL000549 − RHYL000587 at RHYL000550. In connection with the anticipated ESOP Transaction, B+K requested RHYL to prepare an interim set of accrual-based statements. See Deposition of B. Bowers, October 14, 2020, at pp. 15 − 19. While Mr. Sherman also references the availability of cash-based financials through November 30, 2012 as being available to LVA and at the time of the Transaction, it is relevant to note that the only information I have been able to identify (and the source that Mr. Sherman cites) is an aggregate expense estimate amount through November 2012. The line item detail in his report represents estimates of expense breakdowns, and Mr. Sherman does not explain how these estimates were derived. See Sherman Report at p. 74, footnote (9). As such, its utility is limited.

[148] See Sherman Report at Exhibit 7.

[149] See Sherman Report at Exhibit 7, footnote (8).

[150] See Sherman Report at Exhibit 7, footnote (6).

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                      Charles River Associates

However, Mr. Sherman's calculation of B+K's LTM EBITDA is flawed for two primary reasons:

1. Consistent with his cash flow analysis, Mr. Sherman fails to normalize the B+K's prior results to remove the impact of bonuses historically paid to Bowers and Kubota.

2. Mr. Sherman failed to recognize that the "Salaries and Wages" line item on the YTD August 2012 financials included bonuses paid YTD. Therefore, his addition of an incremental bonus amount equal to 8% of revenue for YTD August 2012 results in a doubling of typical bonus amounts.

Each of these errors is explained below.

*Mr. Sherman Failed to Exclude Historical Bonuses for Bowers and Kubota from Pro Forma LTM EBITDA*

As explained in the cash flow discussion above, Bowers and Kubota both received significant annual bonuses pre-Transaction, but those bonuses were not expected to continue post-Transaction. Rather, post-Transaction bonus payments to Bowers and Kubota were governed by the employment agreements they entered in connection with the Transaction, and those agreements specified bonuses only in the event that certain EBITDA targets were met (among other things).[151] As such, B+K's LTM EBITDA should also be normalized for these amounts for the same reason that profit sharing contributions were adjusted. Mr. Sherman failed to make this adjustment, and his LTM EBITDA is understated by approximately $900,000 (or 3.4% of estimated LTM revenue) as a result.[152]

*Mr. Sherman Inappropriately Double-Counted Bonus Expense in his LTM EBITDA Determination*

As part of his pro forma LTM EBITDA calculation, Mr. Sherman added a bonus expense equal to 8% of revenue as an additional expense in the YTD August 2012 B+K financials.[153] However, in doing so, Mr. Sherman failed to recognize that bonuses at B+K were paid semi-annually,[154] and the "Salaries and Wages" line item on the August 2012 YTD financials included bonuses paid YTD.

This is evidenced by the fact that management's projections include a detailed listing of monthly salaries for each of B+K employee for 2012.[155] While the August 31, 2012 financials indicate salary and wage expense totaling $6.626 million,[156] management

---

[151] See **Section 5.1.2.**

[152] See **Exhibit 7.0**.

[153] See **Exhibit 7.0**.

[154] See LIBRA-DOL INV 007198 – 7205 at LIBRA-DOL INV 007204.

[155] See DOL 005054.xlsx, tab "B+K REV12" at cells BF193:BR308.

[156] See RHYL000680 – 863 at RHYL000685.

---

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020 _____ Charles River Associates

*Properly Calculated Estimate of LTM EBITDA as of August 2012*

In the following table, I have summarized my calculation of LTM August 2012 EBITDA. This calculation corrects for the errors identified above but holds all else constant.[158]

**Table 20**

| Corrected LTM EBITDA ($000s) [1] | | | |
|---|---|---|---|
| | Full-Year 2011 | 1/1/2012 - 8/31/2012 | Sherman LTM Value |
| Total Revenue | $   21,616 | $   19,163 | $   26,368 |
| Salary & Wage Expense | 8,333 | 6,626 | 9,404 |
| Bonuses | 3,129 | 1,533 | 2,576 |
| Other Operating Expenses | 8,884 | 7,583 | 10,544 |
| Total Expenses | $   20,345 | $   15,742 | 22,524 |
| Operating Income | $   1,271 | $   3,420 | $   3,844 |
| Add: Depreciation | 210.555 | 122.279 | 192 |
| EBITDA | $   1,481 | $   3,543 | $   4,037 |
| Adjustments: | | | |
| Interest & Dividends | (162) | (111) | (165) |
| Profit Sharing Plan Contribution | 1,133 | 600 | 978 |
| Adjusted EBITDA | $   2,452 | $   4,032 | $   4,849 |
| Correction of Flaws in Sherman Calculation: | | | |
| Inclusion of Management Bonus | 1,520 | 630 | 1,137 |
| Double-Count of YTD Bonus Amounts | - | 1,533 | 1,533 |
| Revised Adjusted EBITDA | $   3,972 | $   6,195 | $   7,519 |
| Notes/Sources: | | | |
| [1] Exhibit 7.0. | | | |

The valuation implications of the corrected NTM and LTM EBITDA results are summarized in **Section 5.4**.

### 5.3.    Elimination of Mr. Sherman's "Limited Control" Discount

As summarized previously, Mr. Sherman asserts that Saakvitne / the B+K ESOP had a limited amount of actual control over B+K post-Transaction. Mr. Sherman uses this assertion as justification for a valuation discount of 10%.

In support of this conclusion, Mr. Sherman points to the fact that Bowers and Kubota maintained control over the company post-Transaction, including control of B+K's day-to-day operations, its strategy, and its Board of Directors. Mr. Sherman seems to

---

[158] I note that, given prior commentary regarding the fact that 2012 experienced higher than normal subconsultant expenses due to certain projects (see DOL005054.xlsx), a pro forma adjustment to the subconsultant expenses could also be justified for purposes of establishing a pro forma LTM EBITDA. However, given that such amounts could fluctuate year-to-year, I have not adjusted the subconsultant expenses for purposes of this analysis. Doing so would result in a higher LTM EBITDA estimate.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                              Charles River Associates

suggest that the control over B+K that was maintained by Bowers and Kubota in the wake of the Transactions was somehow detrimental to the B+K ESOP, and he asserts that Saakvitne, as Trustee, should have negotiated more control for the B+K ESOP in connection with the Transaction.[159]

Yet, Mr. Sherman apparently ignores several relevant facts. First, as Mr. Sherman acknowledges, Bowers and Kubota each signed five-year employment agreements with B+K as part of the Transaction, with one-year extension provisions at the conclusion of the initial five-year period.[160] These agreements evidence the value that Bowers and Kubota were perceived to contribute to B+K. The import of Bowers and Kubota to B+K is also confirmed by Mr. Sherman. For example, in his determination of B+K's WACC, and specifically its cost of equity, Mr. Sherman adds a 2% company-specific risk premium, justified in part due to the significant role Bowers and Kubota play in generating B+K's revenue – i.e., "Brian J. Bowers and Dexter C. Kubota are key business generators and thus the Company would be at risk if either departed."[161] Bowers' and Kubota's importance to B+K's ability to attract key talent and create value is exemplified by the fact that B+K was voted as one of the best places to work in Hawaii for multiple years. For example, B+K was awarded 1st place in 2011 and 2012 for the "Hawaii Best Places to Work" and 1st place for the 2011 and 2012 "National Civil Engineering Best Places to Work."[162]

Moreover, Mr. Sherman apparently ignores Saakvitne's deposition testimony confirming that he had the ability to modify the Board of Directors, and thus the ability to exert more direct influence over management, company strategy, etc. had he deemed it appropriate. As such, the fact that Saakvitne *elected not* to make changes to BKC's board or management immediately after the Transaction closed does not mean he did not have the *ability* to effect such changes. To the contrary, Saakvitne testified that he did have control to effect changes at BKC post-Transaction, by virtue of his ability to modify the Board of Directors, but that he chose to keep current management in place because of the success they continued to bring to the company.[163]

Given the above, Mr. Sherman's assertions regarding Saakvitne's lack of control appear to be entirely theoretical and unfounded. Instead, Mr. Sherman acknowledges Saakvitne's point – that he elected to leave management in place because the business was performing well under their leadership.

---

[159] See Sherman Report at pp. 35-36.

[160] RHYL000207 – 548 at RHYL000445 – 454 for Bowers and RHYL000455 – 464 for Kubota. I note that these agreements appeared to be in place in part to control compensation. See, e.g., LIBRA-DOL INV 005573 – 5577.

[161] See Sherman Report at p. 28.

[162] SAK000807 – 872 at SAK000821.

[163] See, e.g., Deposition of N. Saakvitne, November 21, 2017, pp. 235 – 239.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                    Charles River Associates

**Appendix A**

## Renee McMahon
### Vice President

MBA Finance, Honors
University of Chicago,
Booth School of Business

BS Finance, Highest Honors
University of Illinois at Urbana-Champaign

Renee McMahon is a Vice President in the Chicago office of Charles River Associates. Her career has focused on consulting with and advising clients primarily related to litigation and bankruptcy-based damages and business valuation analyses. Ms. McMahon has provided expert testimony related to valuation and economic damages issues. She also has significant experience with all aspects of related case work, including overall project planning, management and coordination, expert report drafting, deposition and trial preparation, review and assessment of other experts' reports, financial modeling and analysis (such as discounted cash flow projection models and solvency determinations), and research on economic, financial, accounting and legal issues.

Regarding bankruptcy, Ms. McMahon has been involved with numerous cases involving trustees' attempts to avoid pre-petition transfers of debtor property (or interests therein) pursuant to applicable fraudulent conveyance laws, including performing solvency analyses utilizing the three constructive avoidance tests – balance sheet solvency, ability to pay, and capital adequacy. She has also performed numerous valuation and related analyses for use in assessing reasonably equivalent value, extensive asset tracing analyses, and other damages-related assessments associated with adversary proceedings brought by bankruptcy trustees.

In connection with general damages and valuation issues, Ms. McMahon's work has spanned various types of disputes, including breach of contract and/or warranty, business merger and acquisition transactions (including appraisal actions), claims of unjust enrichment, professional malpractice, and claims of fraudulent and material misrepresentations. These projects have involved the creation and analysis of complex and integrated financial and cash flow models, the preparation of income and market-based valuation models, and the development and review of damages analyses, including those based on lost profits and/or lost business value theories of recovery.

Through her consulting work, Ms. McMahon has extensively analyzed the financial and operating characteristics of companies in a variety of industries, including, among others, retail, telecommunications, leasing, banking and financial services, franchising, fast food, automotive, manufacturing, securities, technology, and other consumer goods and services.

Prior to joining CRA, Ms. McMahon was a Director in the Finance and Valuation group at LECG, LLC. Prior to her time at LECG, she was a Senior Managing Consultant in the Valuation and Damages group at Peterson Consulting (a unit of Navigant Consulting, Inc.).

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                    Charles River Associates

**Appendix A**

## Prior Expert Retentions and Testimony

### *Reports and Testimony*

- *In Re: Greenpoint Tactical Income Fund LLC and GP Rare Earth Trading Account LLC, United States Bankruptcy Court for the Eastern District of Wisconsin, Chapter 11, Jointly Administered Under Case No. 19-29613.* Retained by the U.S. Securities and Exchange Commission to provide a report in connection with the SEC's objection to the Debtors' motion to sell certain of their assets pursuant to 11 U.S.C. § 363. Scope of work involved assessing whether certain prior appraisals of a subset of the subject assets complied with typical appraisal standards. Report issued on December 18, 2019.

- *BitClave PTD. LTD. v. Vasily Trofimchuk; Pavel Trofimchuk; Astra Inc. d/b/a Astra Studio; and Astra Studio, Ooo, Superior Court of the State of California, County of Santa Clara, Case No. 18CV328574.* Retained by BitClave as plaintiff / cross-defendant to (1) perform an analysis of certain transfers made from BitClave accounts in connection with BitClave's claims of, among other things, fraud and breach of fiduciary duty against the defendants, and (2) analyze certain financial aspects of the defendants' counter-claims against BitClave, including (among other things) alleged breach of contract and breach of fiduciary duty. Deposition on October 7, 2019. Trial testimony on October 29 and 30, 2019.

- *Sears, Roebuck and Company; Kmart Corporation; and Sears Brands Management Corporation v. IDEAL Industries, Inc., Circuit Court of Cook County, Illinois, County Department – Chancery Division, Case No. 17-CH-07881.* Retained by IDEAL as defendant to evaluate damages asserted by Sears in connection with Sears' allegation that IDEAL breached certain provisions of a supply agreement among the parties. Rebuttal Report issued on March 8, 2019. Deposition on April 8, 2019. Arbitration testimony on April 25, 2019.

- *Monette E. Saccameno v. Ocwen Loan Servicing, LLC; and U.S. Bank National Association, as Trustee for the C-Bass Mortgage Loan Asset-Based Certifications, Series 2007 RP1, United Stated District Court for the Northern District of Illinois, Eastern Division, Case No. 1:15-cv-01164.* Retained by Ocwen as defendant to evaluate any claims for damages by the plaintiff, and to evaluate the implications of certain loan modifications offered to the plaintiff. The dispute involved allegations of breach of contract, breach of fiduciary duty, and violations of the Fair Debt Collection Practices Act, the Illinois Consumer Fraud Act, and the Real Estate Settlement Procedures Act, as well as violations of a discharge injunction. Rebuttal Report issued on April 18, 2017.

- *Naturalock Solutions, LLC v. Baxter Healthcare Corporation, United States District Court for the Northern District of Illinois, Case No. 1:14-cv-10113.* Retained by Baxter as defendant / counterclaim plaintiff in a dispute regarding Baxter's alleged failure to exercise commercially reasonable efforts in connection with a license and development agreement between Baxter and Naturalock related to a medical device product. Naturalock also asserted breach of contract claims against Baxter. Rebuttal Report issued on February 28, 2017. Deposition on March 29, 2017.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                          Charles River Associates

**Appendix A**

- *The Gillette Company v. ShaveLogic, Inc., et al., Commonwealth of Massachusetts, Superior Court Department of the Trial Court, Civil Action No. 15-0149-BLS2.* Retained by ShaveLogic as defendant / counterclaim plaintiff in a dispute regarding Gillette's allegations that, among other things, ShaveLogic engaged in unfair and deceptive acts. Performed an assessment of damages related to ShaveLogic's counterclaims against Gillette, consisting of allegations that Gillette intentionally interfered with ShaveLogic's business relationships and engaged in unfair and deceptive acts and practices. Declaration submitted August 26, 2016. Deposition on November 4, 2016.

- *Orbitz Worldwide, LLC v. Kayak Software Corp, AAA Case No. 13 517 Y 02001 10 – Deposition and Arbitration Testimony.* Retained by Orbitz as plaintiff. Provided an expert report and testified at deposition and arbitration related to damages issues and the potential invocation of audit rights in connection with Kayak's alleged breach of a contract with Orbitz. Report issued on February 21, 2011. Deposition on April 5, 2011. Arbitration testimony in May 2011.

*Other Testifying Expert and/or Consulting Retentions*

- Retained by a post-bankruptcy litigation trust for a retail company to assess damages in an adversary proceeding involving, among other things, claims of breach of contract and unfair competition against a former business partner.

- Retained by a plaintiff to assess damages in a case in the insurance brokerage industry. The plaintiff alleged, among other things, breach of contract (including breach of non-competition and non-hire provisions of an employment agreement), trade secret misappropriation, and breach of fiduciary duty against a former employee and/or the employee's subsequent employer (matter settled).

- Retained by a law firm to evaluate the economic implications of professional negligence claims anticipated to be brought by a former client in the long-term healthcare industry (matter settled).

- Retained by a plaintiff to assess damages in a case alleging, among other things, the breach of restrictive covenant, non-competition and non-solicitation provisions of an employment agreement, and breach of fiduciary duties against a former employee / shareholder in the financial advisory industry. Analysis provided for mediation purposes (matter settled).

- Retained by a plaintiff in a breach of contract case to evaluate (for settlement negotiation purposes) the fair market value of a corporation's stock in connection with assessing whether or not the change of control provisions of certain employee stock grant and stock option agreements had been triggered (matter settled).

- Retained by a respondent / counterclaimant to assess damages in a litigation involving breach of contract claims in the gaming industry (matter settled).

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                      Charles River Associates

**Appendix A**

## Select Case Management Experience

Ms. McMahon has also provided significant consulting and expert witness support in cases involving valuation, damages, causation and other financial and economic issues. She has also assisted extensively with preparing counsel for depositions of other experts. Select examples of cases where Ms. McMahon has been significantly involved and/or served as the lead project manager include the following:

- Forensic accounting investigation and analysis of potential damages related to, among other things, assertions of professional negligence against a law firm, where the plaintiff – the Receiver of a group of large, failed investment funds – was asserting multiple billions of dollars in damages in connection with the alleged improper use of the funds' capital.

- Analysis of plaintiffs' expert's flawed causation and damages analysis in connection with a case involving, among other things, assertions of professional negligence against a large accounting firm.

- Preparation of a rebuttal expert report on damages in an international arbitration matter involving breach of contract claims related to a failed multi-billion-dollar acquisition attempt.

- Preparation of a rebuttal expert report in a multi-billion dollar fraudulent conveyance matter between two large telecommunications providers, requiring both the valuation of the debtor (plaintiff) prior to and after the acquisition of certain assets from a rival carrier to assess solvency, and the valuation of the assets purchased in the transaction in connection with an assessment of reasonably equivalent value.

- Detailed assessment of equity distributions resulting from various multi-level creditor recovery scenarios being evaluated by the Court-appointed Examiner in a large fraudulent conveyance matter in the media industry.

- Assessment of damages and assistance to counsel in preparing for mediation in a matter involving, among other things, breach of fiduciary duty claims brought by certain minority investors in connection with a series of recapitalization transactions preceding an IPO, whereby the investors alleged their ownership in the company was inappropriately diminished.

- Preparation of an expert report on damages in a breach of contract case related to a failed multi-million-dollar acquisition attempt in the consumer goods industry.

- Several cases involving the assessment of a plaintiff's damages related to the alleged raid of employees by a competitor in the insurance brokerage industry.

- On-site consultant on a team of experts advising on damages and related issues for a client negotiating a massive multi-billion-dollar settlement of numerous economic loss cases arising from an oil spill.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                                Charles River Associates

**Appendix A**

- International arbitration matter involving the preparation of a mediation memo on solvency and reasonably equivalent value considerations in the oil and gas industry.

- Preparation of a rebuttal report in connection with a $3 billion damage claim made in an accounting malpractice case in the telecommunications industry. Work involved a significant forensic accounting component, including detailed review of general ledger and cash records to trace funds flows and extraction of value.

- Fraudulent conveyance matter involving questions of solvency and reasonableness of consideration in connection with the failed leverage buyout of a convenience store chain.

- Preparation of a rebuttal expert report on solvency and fraudulent conveyance / reasonably equivalent value considerations in the precious metals industry.

## Other

- Panel Participant, "A Mix of Hot Topics and Best Practices for IL Litigation: Expert Witnesses," The Chicago Bar Association, February 20, 2020.

- Co-Presenter, "How to Effectively Use Expert Evidence in Class Action Cases LIVE Webcast," The Knowledge Group, June 5, 2019.

- *Illinois Legal Aid Online*
  - Board member: 2016 – Present
  - Treasurer: 2019 – Present
  - Member of Finance Committee: 2015 – Present
  - Member of Host Committee: 2015, 2016

- Active participant in CRA's pro bono efforts.

- Active alumna of the University of Chicago Booth School of Business.

- Provided a guest lecture at Northwestern University Law School regarding the roles and responsibilities of experts in commercial litigation.

- Member of the National Association of Certified Valuation Analysts, American Bankruptcy Institute, and American Bar Association.

**Appendix B**

The following documents and information have been relied on by Renee McMahon in connection with this matter.
All documents and information cited in the report of Renee McMahon dated November 19, 2020, and attached exhibits are incorporated herein by reference.

**Legal Filings & Correspondence:**

- Secretary of Labor's Complaint in case 1:18-cv-155, filed on April 27, 2018 in the United States District Court for the District of Hawaii
- Expert Report of Steven Sherman, ASA, CPA in case 1:18-cv-155, filed on October 19, 2020 in the United States District Court for the District of Hawaii
- Answer and Affirmative Defenses of Bowers and Kubota in case 1:18-cv-155-SOM-RLP, filed on February 1, 2019 in the United States District Court for the District of Hawaii
- Answer and Affirmative Defenses of Nominal Defendant Bowers + Kubota Consulting, Inc. in case 1:18-cv-155-ACK-RLP, filed on July 10, 2018 in the United States District Court for the District of Hawaii
- Answer and Affirmative Defenses of Saakvitne in case 1:18-cv-155-ACK-RLP, filed on July 10, 2018 in the United States District Court for the District of Hawaii
- Defendant B/K's Response to Secretary's Interrogatories, First Set, July 19, 2019
- Defendant B/K's Responses to Secretary's First Set of Requests for Production of Documents, February 25, 2019
- Defendant Bowers' Answers and Objections to Secretary's Second Set of Interrogatories, June 15, 2020
- Defendant Kubota's Answers and Objections to Secretary's Second Set of Interrogatories, June 15, 2020
- Defendant Bowers' Responses to Secretary's First Set of Requests for Production of Documents, February 25, 2019
- Defendant Bowers' Responses to Secretary's Interrogatories, First Set, June 17, 2019
- Defendant Kubota's Responses to Secretary's First Set of Requests for Production of Documents, February 25, 2019
- Defendant Kubota's Responses to Secretary's Interrogatories, First Set, June 17, 2019
- Defendant Heritage's Responses to Secretary's First Set of Requests for Production of Documents, August 19, 2019
- Defendant Heritage's Responses to Secretary's Interrogatories, Set One, August 19, 2019
- Defendant Saakvitne Law Corp.'s Responses to Secretary's First Set of Production of Documents, August 19, 2019
- Defendant Saakvitne Law Corp.'s Responses to Secretary's Interrogatories, Set One, August 19, 2019
- Defendant Bowers' Responses to Brian Bowers and Dexter Kubota's Requests For Production of documents, Set One
- Defendant Heritage's Responses to Secretary's First Set of Interrogatories
- Defendant Heritage's Revised Responses to Secretary's Request for Production of Documents
- Defendant Heritage's Supplemental Responses to Secretary's Interrogatories
- Defendant Saakvitne Law Corp.'s Responses to Brian Bowers and Dexter Kubota's Requests For Production of Documents, Set One
- Defendant Saakvitne Law Corp.'s Revised Responses to Secretary's Request for Production of Documents
- Defendant Saakvitne Law Corp.'s Supplemental Responses to Secretary's Interrogatories
- Secretary's Objections and Answers to Defendant Bowers' First Set of Interrogatories, May 28, 2019
- Secretary's Supplemental Responses to Defendant Bowers' First Set of Interrogatories, July 12, 2019
- Secretary's Responses to Defendants Bowers and Kubota's Second Set of Requests for Production of Documents, June 19, 2019
- Secretary's Responses and Objections to Defendant Kubota's First Set of Interrogatories, July 29, 2020
- Secretary's Responses to Defendant Bowers and Kubota's First Set of Requests for Admissions, July 29, 2020
- Secretary's Responses to Defendants Bowers and Kubota's Third Set of Requests For Production of Documents, July 29, 2020

**Depositions and Related Exhibits:**

- Deposition Transcript of Brian Bowers, February 22, 2018
- Deposition Transcript of Brian Bowers 30(b)(6), October 13, 2020
- Deposition Transcript of Brian Bowers, October 14, 2020
- Deposition Transcript of Dexter Kubota, October 9, 2020
- Deposition Transcript of Dawn Muragame, October 7, 2020
- Deposition Transcript of Paul Vafeeos, September 23, 2020
- Deposition Transcript of Thomas Niskhara, September 29, 2020
- Deposition Transcript of Nicholas Saakvitne, November 21, 2017
- Deposition Transcript of Gregory Kniesel, December 22, 2017 and January 23, 2018
- Deposition Transcript of Gregory Kniesel, October 20, 2020
- Deposition Transcript of Gary Kuba, October 5, 2020
- Deposition Transcript of Gregory Hansen, February 23, 2018
- Deposition Transcript of Ty Fukumoto, September 17, 2020
- Deposition Transcript of Mauricios Palacios, October 23, 2020
- Deposition Transcript of Harold Lalbeeq, October 29, 2020
- Deposition Transcript of Cristina Johnson, October 22, 2020
- Deposition Transcript of Miguel Parolas, September 16, 2020
- Deposition Transcript of Robert Prutiry, September 21, 2020

# Appendix B

## Articles and Third-Party Sources:

- "About – Bowers + Kubota," Bowers + Kubota, https://www.bowersandkubota.com/about/ (last accessed on November 17, 2020)
- "Case Lombardi & Petit…Gregory M. Hansen," Case Lombardi & Petit, https://caselombardi.com/ghansen.html (last accessed on November 17, 2020)
- "BISWorld - Architects in the US," IBIS World, August 2012 (last accessed on November 17, 2020)
- "IBISWorld -Engineering Services in the US," IBIS World, October, 2012 (last accessed on November 17, 2020)
- "Consumer Price Index: Total All Items for the United States," St. Louis Federal Reserve, https://fred.stlouisfed.org/series/CPALTT01USA659N (last accessed on November 19, 2020)
- "Inflation, Consumer Prices for the United States," St. Louis Federal Reserve, https://fred.stlouisfed.org/series/FPCPITOTLZGUSA (last accessed on November 19, 2020)
- "Moody's Seasoned Baa Corporate Bond Yield" St. Louis Federal Reserve, https://fred.stlouisfed.org/series/DBAA (last accessed on November 19, 2020)
- "Our Team – Bowers + Kubota," Bowers + Kubota, https://www.bowersandkubota.com/team/ (last accessed on November 17, 2020)
- Bloomberg database
- Capital IQ database
- Duff & Phelps Cost of Capital Navigator, https://dpcostofcapital.com/ (last accessed on November 19, 2020)
- Federal Reserve, https://www.federalreserve.gov/datadownload/Choose.aspx?rel=H15 (last access on November 19, 2020)
- AECOM Technology Corporation Form 10-K filed with the SEC on November 19, 2012 for the fiscal year ended September 30, 2012
- Jacobs Engineering Group, Inc. Form 10-K filed with the SEC on November 20, 2012 for the fiscal year ended September 30, 2012
- Fluor Corporation Form 10-Q filed with the SEC on November 1, 2012 for the quarter ended September 30, 2012
- Fluor Corporation Form 10-K filed with the SEC on February 22, 2012 for the year ended December 31, 2011
- MasTec, Inc. Form 10-Q filed with the SEC on November 1, 2012 for the quarter ended September 30, 2012
- MasTec, Inc. Form 10-K filed with the SEC on February 29, 2012 for the year ended December 31, 2012
- GENIVAR, Inc. Interim Consolidated Financial Statements for the quarter ended September 29, 2012
- GENIVAR, Inc. Consolidated Financial Statements for the year ended December 31, 2011
- Stantec, Inc. 2012 Third Quarter Report for the quarter ended September 30, 2012
- Stantec, Inc. Form 40-F filed with the SEC on February 23, 2012 for the year ended December 31, 2011
- Michael Baker Corporation Form 10-Q filed with the SEC on November 8, 2012 for the quarter ended September 30, 2012
- Michael Baker Corporation Form 10-K filed with the SEC on March 13, 2012 for the year ended December 31, 2011
- URS Corporation Form 10-Q filed with the SEC on November 6, 2012 for the quarter ended September 30, 2012
- URS Corporation Form 10-K filed with the SEC on February 27, 2012 for the year ended December 31, 2011
- Tutor Perini Corporation Form 10-Q filed with the SEC on November 2, 2012 for the quarter ended September 30, 2012
- Tutor Perini Corporation Form 10-K filed with the SEC on March 2, 2012 for the year ended December 31, 2011
- Tetra Tech, Inc. Form 10-K filed with the SEC on November 15, 2012 for the fiscal year ended September 30, 2012
- 29 U.S.C. § 1002(18)(b), ERISA § 3(18)(B)
- Internal Revenue Service ("IRS") Ruling 59-60
- Koller, Tim, Marc Goedhart, and David Wessels. Valuation: Measuring and Managing the Value of Companies, 4th Ed.
- Pratt, Shannon P. and Roger J. Grabowski. Cost of Capital: Applications and Examples, 3rd Ed. 2008
- Pratt, Shannon P. and Roger J. Grabowski. Cost of Capital: Applications and Examples, 3rd Ed.
- Damodaran, Aswath, "Estimating Risk Parameters," 1999. https://archive.nyu.edu/handle/2451/26789 (last accessed November 19, 2020)
- Pratt, Shannon P., Cost of Capital: Estimation and Applications, 2nd Ed.
- Pratt, Shannon and Alina Niculita, Valuing a Business: The Analysis and Appraisal of Closely Held Companies, 5th Ed.
- Hitchner, James R. Financial Valuation: Applications and Models, 2nd Ed.
- 2011 Ibbotson Cost of Capital Yearbook
- Hitchner, James R. Financial Valuation: Applications and Models, 2nd Ed. 2006
- Hood, L. Paul Jr. & Timothy Lee. A Reviewer's Handbook to Business Valuation: Practical Guidance to the Use and Abuse of Business Appraisal, 2011
- Mercer, Z. Christopher and Travis W. Harms. Business Valuation: An Integrated Theory, 2nd Ed. 2008
- Pratt, Shannon P. Business Valuation Discounts and Premiums, 2nd Ed., 2009, Wiley
- Bajaj, Mukesh and Denis, David J and Ferris, Stephen P. and Sarin, Atulya. "Firm Value and Marketability Discounts" (February 26, 2001). Available at SSRN: https://ssrn.com/abstract=262198 or http://dx.doi.org/10.2139/ssrn.262198

## Native Excel Documents:

- DOL005030.xlsx
- DOL005033.xlsx
- DOL005036.xlsx
- DOL005037.xlsx
- DOL005040.xlsx
- DOL005052.xlsx
- DOL005053.xlsx
- DOL005054.xlsx
- DOL005066.xlsx
- DOL005070.xlsx
- DOL005073.xlsx
- DOL005077.xlsx

**Appendix B**

**Bates Stamped Documents:**

- Bowen/Kubota 018956 - 19343
- B+KC000404 - 0461
- B+KC000641 - 0713
- B+KC000751 - 0817
- B+KC000846 - 0901
- B+KC000924 - 0976
- B+KC000998 - 1052
- B+KC001254 - 1259
- B+KC001260 - 1268
- B+KC001272 - 1277
- B+KC001290 - 1294
- B+KC001296 - 1300
- B+KC001301 - 1319
- B+KC002114
- B+KC002415 - 2419
- B+KC002421 - 2426
- B+KC002999 - 3001
- B+KC003034 - 3037
- B+KC003368 - 3370
- B+KC003405 - 3406
- B+KC003540 - 3542
- B+KC004803 - 4807
- B+KC004934 - 4945
- B+KC005130 - 05136
- B+KC005141 - 51544
- B+KC005145 - 5155
- B+KC005172 - 5182
- B+KC005202 - 5203

- B+KC005261 - 5262
- DOL001348 - 1853
- DOL001854 - 2227
- DOL008107 - 8115
- DOL001149 - 11750
- DOL006425-83
- LIBRA-DOL INV 004215 - 4216
- LIBRA-DOL INV 004552 - 4564
- LIBRA-DOL INV 004671 - 4760
- LIBRA-DOL INV 004786 - 4803
- LIBRA-DOL INV 004973 - 5002
- LIBRA-DOL INV 005566 - 5569
- LIBRA-DOL INV 005573 - 5577
- LIBRA-DOL INV 006306 - 6425
- LIBRA-DOL INV 007198 - 7205
- LIBRA-DOL INV 007203 - 7205
- LIBRA-DOL INV 007607 - 7617
- LIBRA-DOL INV 008450 - 8487
- LIBRA-DOL INV 009448 - 9455
- RHYL000001 - 0206
- RHYL000207 - 0548
- RHYL000549 - 0587
- RHYL000588 - 0679
- RHYL000680 - 0836
- RHYL000837 - 1013
- RHYL001014 - 1154
- RHYL001155 - 1490
- RHYL001491 - 1781

- RHYL001782 - 2120
- RHYL002121 - 2435
- RHYL002436 - 2855
- RHYL002856 - 3276
- RHYL003277 - 3558
- RHYL003559 - 3879
- SAK000393 - 0396
- SAK000398 - 0401
- SAK000402 - 0404
- SAK000407 - 0409
- SAK000807 - 0872
- SAK001296 - 1356
- SAK001365 - 1369
- SAK001552 - 1608
- SAK001933
- SAK002569 - 2517
- SAK002844 - 2866
- SAK002867 - 2878
- SAK003819 - 3831
- SAK004236 - 4292
- SAK004939 - 5001
- SAK006754 - 6814
- SAK000815 - 6870
- SAK006939 - 6996



# APPENDIX C

# Independent Valuation of 100% of the Equity of B+K as of December 14, 2012

**Confidential**

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                    Charles River Associates

## 1.      Independent Valuation of B+K - Conclusion

My independent determination of the value of B+K as of December 14, 2012 is **$40.015 million**, or **$40.02 per share**.

The basis for this opinion (as well as certain comparisons to the Sherman Report) are described in this Appendix.

## 2.      General Overview

### 2.1.    Company Overview

An overview of B+K (including both BKC and BKM) is provided in my main report. I also discuss certain events and other information relevant to the company in the report and provide an overview of B+K's historical financial performance.

In terms of additional background, B+K's work is primarily for government entities, including Federal, County and State (over 90% from 2007 through 2011).[1] As of the valuation date, the Company had over 100 employees[2] and had received accolades from local organizations for being employee-friendly. For example, B+K was awarded 1st place in 2011 and 2012 for the "Hawaii Best Places to Work" and 1st place for the 2011 and 2012 "National Civil Engineering Best Places to Work."[3]

The Company also appears to have been well-positioned in its market from a competitive perspective and had a history of successfully teaming with other companies for large-scale projects when appropriate.[4]

I have considered various economic and industry factors bearing on the outlook for B+K throughout my main report and this appendix as relevant to this valuation.

## 3.      Valuation of B+K

I am valuing 100% of the equity of B+K on a non-marketable, controlling basis.

Because B+K had no interest-bearing debt as of the valuation date, its equity value is equal to its total enterprise value ("TEV"), which is equal to the total value of the company's assets. Relevant inputs are addressed and analyzed below.

---

[1] See, e.g., DOL 005033.xlsx.

[2] See DOL 005054.xlsx.

[3] See, e.g., SAK000807 – 872 at SAK000821.

[4] See, e.g., SAK000807 – 872 at SAK000823 – 824.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                    Charles River Associates

### 3.1.  Valuation Date

I developed an independent valuation of B+K as of December 14, 2012, which was the date the ESOP Transaction closed.

### 3.2.  Standard of Value

ERISA requires that ESOPs pay no more than "adequate consideration" for the stock of a company, where "adequate consideration" is defined in this context as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary."[5]

"Fair market value" is generally defined as the price at which an asset would change hands between a hypothetical willing buyer and hypothetical willing seller, each with reasonable knowledge of the relevant facts, and neither under compulsion to transact.[6] My fair market valuation of B+K as of December 14, 2012 is based on information that was known (or knowable) as of that date.

### 3.3.  Premise of Value

Companies may be valued using either a going concern or liquidation premise of value. Going concern value is the value of the assets working in tandem for a specified purpose. Liquidation value is the total sale value of the discrete assets valued independently, the highest and best use assumed for each. The assets (or company) should be valued according to the premise that maximizes value. Economically viable companies typically generate value beyond the discrete values of their individual assets (in other words, the whole is greater than the sum of the parts). As such, the value of an economically viable company will generally be maximized by assuming a going concern premise. Here, I determined that it was appropriate to value B+K as a going concern.

### 3.4.  Valuation Approaches

There are three generally accepted valuation approaches, and I considered all three for purposes of valuing B+K's TEV (and ultimately its equity). Each is briefly described below.

1.  **The Income Approach:** The Income Approach values a subject company based on the cash flows the company is expected to generate prospectively. The Discounted Cash Flow (DCF) method is an implementation of the Income Approach where a company's debt-free, after-tax expected future cash flows are forecasted for future periods and then discounted to present value at an appropriate discount rate. Generally, annual projections are prepared for some discrete period of time, and a terminal value is used to estimate the value of

---

[5] See, e.g., 29 U.S.C. § 1002(18)(b), ERISA § 3(18)(B).

[6] See, e.g., Internal Revenue Service ("IRS") Ruling 59-60.

Eugene Scalia, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage as successor to Nicholas L. Saakvitne, et al.

November 19, 2020                                                              Charles River Associates

cash flows expected beyond the discrete projection period. I have valued B+K using a DCF method in this report.

2. **The Market Approach:** The Market Approach is a relative approach that establishes the value of a subject company based on observable values of guideline public companies (Guideline Public Company (GPC) method) and/or as reflected in other transactions where the transaction target presented business and risk characteristics similar to the subject company (the Guideline Merged and Acquired Company (GMAC) method).

More specifically, the GPC method looks to market-based TEVs of guideline publicly traded companies that are deemed sufficiently similar to the company being valued. The TEV for each guideline company is generally expressed as a multiple of certain financial metrics of that company (e.g., earnings before interest, taxes, depreciation and amortization, or EBITDA). The companies are evaluated relative to the subject company to identify possible differences (e.g., size, growth, etc.) and adjustments to the multiples are considered. A determination is then made regarding the multiple that should be applied to the corresponding financial metric of the subject company to derive an implied value.

The GMAC method uses the same concept, but rather than deriving TEV based on publicly traded stock prices, market values are observed from recent purchase and sale transactions for which information is publicly available, and where the target is comparable to the subject company.

In addition to the DCF method, B+K has been valued using both the GPC method and the GMAC method in this report.

3. **The Asset Approach:** The Asset Approach establishes the value of a subject company by quantifying the value of each of the company's discrete assets (often by considering replacement or reproduction cost) and aggregating those values. In circumstances of a successful operating company, such as B+K, the Asset Approach is not typically used, and I have not used it in this report.

## 4.    DCF Method

When using a DCF method to value a business, the TEV (the output of the analysis) is a function of various modeling inputs, including (at the highest level) projections of interim period cash flows, the discount rate (here, a weighted average cost of capital, or WACC), and a terminal value (incorporating a selected long-term growth rate). Each of these inputs is discussed in detail below as pertaining to my DCF-based valuation of B+K.

### 4.1.   Cash Flow Forecast

For purposes of a FMV assessment of a subject company's TEV, pre-debt service, after-tax cash flows are projected for a discrete future period. Projection horizons may