David R. Johanson        (*pro hac vice*)
Douglas A. Rubel        (*pro hac vice*)
HAWKINS PARNELL & YOUNG, LLP
1776 Second Street
Napa, California 94559
Telephone: (707) 299-2470
Facsimile: (707) 581-1704
Email: djohanson@hpylaw.com

William M. Harstad        (8942)
CARLSMITH BALL LLP
1001 Bishop Street, Suite 2100
Honolulu, HI 96813
Telephone: (808) 523-2500
Facsimile: (808) 523-0842
Email: wharstad@carlsmith.com

Attorneys for Defendants
BRIAN J. BOWERS and DEXTER C. KUBOTA

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>vs.<br><br>SHARON L. HERITAGE, as successor to Nicholas L. Saakvitne, Deceased, *et al.*,<br><br>Defendants. | Civil No. 1:18-cv-155-SOM-WRP<br><br>BRIAN J. BOWERS' AND DEXTER C. KUBOTA'S **MOTION IN LIMINE NO. 4**: MOTION TO EXCLUDE THE TESTIMONY OF MARCUS PIQUET; MEMORANDUM OF LAW IN SUPPORT THEREOF |

Brian J. Bowers and Dexter C. Kubota ("Mr. Bowers and Mr. Kubota") move in this Motion *In Limine* No. 4 (their "Motion") to exclude the testimony of Marcus R. Piquet (a lay person who is not qualified to be an expert with respect to the testimony that the Secretary of Labor (the "Secretary") seeks from him at trial.

In support of their Motion, Messrs. Bowers and Kubota submit the accompanying Memorandum of Law in Support Thereof, and supporting declaration with exhibits essential for this Court's determination of their Motion.

DATED:  Honolulu, Hawai'i, April 22, 2021.

/s/ David R. Johanson
DAVID R. JOHANSON
DOUGLAS A. RUBEL
WILLIAM M. HARSTAD

Attorneys for Defendants
BRIAN J. BOWERS and DEXTER C. KUBOTA

## Table of Contents

I.   Introduction ....................................................................................1

II.  Legal Standard .................................................................................3

III. Marcus Piquet's Testimony Regarding Valuation is Unreliable and Would Not Benefit the Trier of Fact (this Court) Because It Is Based Solely on Mr. Piquet's Own Lay Experience and Admitted Lack of Expertise.................8

IV.  Marcus Piquet's "Personal Document" and His Testimony Related to that Document is Wholly Unreliable and Will Not Assist the Trier of Fact because It Is Based on Assumptions That Have No Support In The Record. ........................................................................................14

V.   Conclusion......................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Abarca v. Merck & Co., Inc.*,
  No. 1:07-cv-0388 OWW DLB, 2010 U.S. Dist. LEXIS 119874
  (E.D. Cal. Nov. 9, 2010) ................................................................... 7

*Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031 (9th Cir. 2011) ........... 4

*Cloud v. Pfizer*, Inc., 198 F. Supp. 2d 1118 (D. Ariz. 2001) .................................... 3

*Cooper v. Brown*, 510 F.3d 870 (9th Cir. 2007) ........................................................ 4

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ........................... passim

*DePaepe v. General Motors Corp.*, 141 F.3d 715 (7th Cir. 1998) .......................... 9

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ......................................................... 8

*Greenwell v. Boatwright*, 184 F.3d 492 (6th Cir. 1999) ......................................... 15

*Guidroz-Brault v. Missouri Pac. RR. Co.*, 254 F.3d 825 (9th Cir. 2001) ....... 6, 7, 15

*Jinro Am. Inc. v. Secure Inv., Inc.*, 266 F.3d 993 (9th Cir. 2001) ........................... 3

*Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999) ............................. 5, 6, 7

*Loeffel Steel Products, Inc. v. Delta Brands, Inc.*,
  387 F. Supp. 2d 794 (N.D. Ill. 2005) .................................................. 10

*LuMetta v. United States Robotics, Inc.*, 824 F.2d 768 (9th Cir. 1987) ............. 5, 16

*Mukhtar v. California State University, Hayward*,
  299 F.3d 1053 (9th Cir. 2002) ...................................................... 4, 5, 6

*Pac. Info. Res., Inc. v. Simple Commc'ns*,
  No. C-07-4131 MMC, 2008 U.S. Dist. LEXIS 98943
  (N.D. Cal. Nov. 26, 2008) ..................................................................... 7

*Powell v. Tosh*, 942 F. Supp. 2d 678 (W.D. Ky 2013) ........................................... 10

*Rogers v. Raymark Indust., Inc.*, 922 F.2d 1426 (9th Cir. 1991) ............................ 3

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996).................................................... 5, 8, 14

*United States v. Cerna*,
  No. CR 08-0730 WHA, 2010 U.S. Dist. LEXIS 146687
  (N.D. Cal. Dec. 17, 2010) ..................................................................... 15

*United States v. Marabelles*, 724 F.2d 1374 (9th Cir. 1984)..................................... 8

*White v. Ford Motor Co.*, 312 F.3d 998 (9th Cir. 2002) ................................. 6, 8, 14

## Rules

Fed. R. Evid. 401 ........................................................................................ 3

Fed. R. Evid. 402 ........................................................................................ 3

Fed. R. Evid. 403 ..................................................................................... 2, 3

Fed. R. Evid. 702 ................................................................................. 4, 5, 14

## Treatises

29 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE,
  § 1433 at 252 (1997) ............................................................................. 5

**MEMORANDUM OF LAW IN SUPPORT OF BRIAN J. BOWERS' AND DEXTER C. KUBOTA'S MOTION *IN LIMINE* NO. 4:  MOTION TO EXCLUDE THE TESTIMONY OF MARCUS R. PIQUET**

## I.     Introduction

Plaintiff took the deposition of Marcus R. Piquet, CPA in this action on September 22, 2020 and on November 20, 2020, to ostensibly obtain testimony regarding the valuation of Bowers + Kubota Consulting, Inc. ("B+KC").   Mr. Piquet is not remotely qualified, however, to provide any trial testimony in this case that would assist the trier of fact in evaluating valuation of B+KC as of December 14, 2012.   The parties are expected to proffer designated expert testimony regarding the valuation of B+KC as of December 14, 2012, at trial.   Mr. Piquet acknowledged during his deposition that he is not qualified to discuss valuation and relied solely on his own, admittedly lay, experience as a certified public accountant.   (*See* Deposition Transcript of Marcus Piquet, dated September 22, 2020 ("Piquet Dep.") attached to the accompanying Declaration of David R. Johanson ("Johanson Dec.") as Exhibit 1, at 25:17-18, 63:2-10 and Piquet Dep., Confidential Portion ("Piquet Dep. Conf."), attached as to the Johanson Dec. as Exhibit 2, at 171:5-17; 172:8-20; 206:11-208:19.)   Because Mr. Piquet's testimony is based on inaccurate foundational facts and incorrect assumptions and inadequate valuation analysis, his testimony is unreliable.

Mr. Piquet has not been designated as an expert witness by any party to this case, and this Court should exclude his testimony under Federal Rule of Evidence 403 as the probative value of his testimony is substantially outweighed by the danger of misleading this Court and confusing the issues.

Compounding this problem is the fact that during Mr. Piquet's deposition, the Secretary essentially treated him as an expert witness, inquiring into issues of valuation and appraisal that Mr. Piquet freely admitted that he had no basis or expertise to opine upon.  (Piquet Dep. 25:17-18; 63:2-10; 66:23-67:17; Piquet Dep. Conf. 171:5-17; 172:8-20; 206:11-208:19.)   To the extent that the Secretary attempted to develop testimony from Mr. Piquet that is clearly expert in nature, this Court should exclude such testimony under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny.  Mr. Piquet exceeded the scope of his alleged "expertise" and provided analysis and conclusions based solely on unsupported and incorrect data. B+KC never asked Mr. Piquet to prepare any valuation analysis related to B+KC as of December 14, 2012.  Permitting this testimony from Mr. Piquet is inappropriate and should be excluded from trial. All of Mr. Piquet's other testimony that the Secretary intends to offer at trial is merely cumulative and this Court should exclude such trial testimony.

## II.   Legal Standard

In general, the relevance and probative value of a given witness' testimony under Federal Rules of Evidence ("FRE") 401, 402, and 403 must be considered in determining whether said testimony will assist the trier of fact.   *Jinro Am. Inc. v. Secure Inv., Inc.*, 266 F.3d 993, 1005-07 (9th Cir. 2001).   FRE Rule 403 is of particular importance with respect to weighing the value of Mr. Piquet's testimony: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

To the extent Plaintiff treated Mr. Piquet as an "expert" in issues of valuation and appraisal, these same rules of evidence must be considered.   *See Rogers v. Raymark Indust., Inc.*, 922 F.2d 1426, 1431 (9th Cir. 1991) (noting that it is "particularly appropriate for the trial judge carefully to weigh the potential for confusion in the balance when expert testimony is proffered" because "if what an expert has to say is instead tangential to the real issues, the jury may follow the 'expert' down the garden path and thus focus unduly on the expert's issues to the detriment of issues that are in fact controlling").   The Court in *Cloud v. Pfizer*, Inc., 198 F. Supp. 2d 1118, 1130 (D. Ariz. 2001) (citations omitted) noted:   "The trial court must ensure that the proposed expert testimony is 'relevant to the task at

hand' ... i.e., that it logically advances a material aspect of the proposing party's case. The standard for fit is higher than bare relevance."

Like other evidence, this Court has discretion under FRE Rule 403 to exclude proffered testimony that is expert in nature when its probative value is substantially outweighed by the danger of prejudice, confusing the issues, or wasting time. *See Alameda Books, Inc. v. City of Los Angeles*, 631 F.3d 1031, 1041 (9th Cir. 2011) (court "properly perceived" expert testimony would "confuse the issues" under Fed. R. Evid. 403).

Given that Plaintiff attempted to develop expert testimony out of Mr. Piquet, this Court also should consider FRE Rule 702, which "commands the primary focus for courts evaluating the admissibility of expert evidence". *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). FRE Rule 702 allows the admission of "scientific, technical, or other specialized knowledge" by a qualified expert if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case". Maintaining *Daubert*'s standards is "particularly important considering the aura of authority experts often exude[.]" *Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1063 (9th Cir. 2002). FRE Rule 702 empowers the court with an important "gate-keeping"

function to exclude expert testimony that fails to meet one of the threshold requirements. *Id.* (citations omitted).

A proffered expert must be qualified by knowledge, skill, experience, training or education. Fed. R. Evid. 702. A witness does not qualify as an expert if "his qualifications do not raise a reasonable expectation that the witness will assist the trier of fact". 29 CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE, § 1433 at 252 (1997); *see also LuMetta v. United States Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987) (holding trial court properly excluded expert testimony where expert was found to have only limited knowledge of the specific area in which their testimony was offered). The trial judge's obligation to ensure the reliability and relevance of purported expert testimony extends to all types of expert testimony, not just scientific testimony. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147-48 (1999). Courts in the Ninth Circuit have applied *Daubert* to exclude, for example, unreliable testimony of economic damages experts. *See, e.g., Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996).

When examining proffered expert testimony, this Court must assess whether the alleged expert's reasoning or methodology is valid and whether it can be properly applied to the facts in issue. *See Daubert*, 509 U.S. at 592-93. The goal of *Daubert* is "to ensure the reliability and relevancy of expert testimony" and to make certain that the expert "employs in the courtroom the same level of

intellectual rigor that characterizes the practice of an expert in the relevant field".  *Kumho Tire Co.*, 526 U.S. at 152.

The FRE Rule 702 inquiry under *Daubert* is necessarily "a flexible one" and courts have "broad latitude" in assessing reliability. *Mukhtar*, 299 F.3d at 1063. The "factors identified in *Daubert* may or may not be pertinent to assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony". *White v. Ford Motor Co.*, 312 F.3d 998, 1007 (9th Cir. 2002); *Kumho Tire*, 526 U.S. at 150 ("*Daubert* makes clear that the factors it mentions do not constitute a 'definitive checklist or test" but instead applicability of the factors "depends upon the particular circumstances of the particular case at issue.").

Of course, even if certain *Daubert* factors are satisfied, proposed testimony that is expert in nature must be sufficiently tied to or "fit" the specific facts of the case. *Daubert*, 509 U.S. at 591; *see also Kumho Tire*, 526 U.S. at 150 (explaining that "*Daubert* adds that the gatekeeping inquiry must be 'tied to the facts' of a particular 'case'") (citation omitted). An expert opinion is properly excluded when the witness' "assumption finds no support in the physical facts as described in the reports and other evidence in the record". *Guidroz-Brault*, 254 F.3d at 829-31 (excluding expert opinion based on pure speculation where there was no specific factual support to support "assumption that a visible gap in the rail, or other

evidence of a defect, was present to be seen if the crewman had been keeping a proper lookout"); *see also Kumho Tire*, 526 U.S. at 153-54 (affirming exclusion of expert testimony because "specific issue before the court was not the reasonableness in general of a tire expert's" methods "[r]ather it was the reasonableness of using such an approach…to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant") (emphasis in original); *Abarca v. Merck & Co., Inc.*, No. 1:07-cv-0388 OWW DLB, 2010 U.S. Dist. LEXIS 119874, at *26 (E.D. Cal. Nov. 9, 2010) (finding that "an expert's opinion may not be based on assumptions of fact without evidentiary support, or on speculative or conjectural factors"); *Pac. Info. Res., Inc. v. Simple Commc'ns*, No. C-07-4131 MMC, 2008 U.S. Dist. LEXIS 98943, at *5-6 (N.D. Cal. Nov. 26, 2008) (holding expert opinion inadmissible where it was based on unreliable methodology including expert's "pure judgment call" and "rough estimate" which were "dependent on the above-referenced assumptions, and there is no evidence in the record to support them").

Even if a witness is properly qualified as an expert, which Mr. Piquet is not, purported expert testimony should be excluded where there is "no factual basis for the assumption" upon which the expert bases his or her analysis, *Guidroz-Brault v. Missouri Pac. RR. Co.*, 254 F.3d 825, 830 (9th Cir. 2001), or where the "foundational facts establishing relevancy . . . are not sufficiently established",

*Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996).   A court should not admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

### III. Marcus Piquet's Testimony Regarding Valuation is Unreliable and Would Not Benefit the Trier of Fact (this Court) Because It Is Based Solely on Mr. Piquet's Own Lay Experience and Admitted Lack of Expertise.

As discussed above, a witness' testimony should not be permitted when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence". Fed. R. Evid. 403. To the extent that Plaintiff sought to develop Marcus Piquet as an "expert" in issues of valuation and appraisal, Mr. Piquet must be qualified as an expert in those fields.   "A layman, which is what an expert witness is when testifying outside of his area of expertise, ought not to be anointed with ersatz authority as a court-approved expert witness for what is essentially lay opinion." *White v. Ford Motor Co.*, 312 F.3d 998, 1008 (9th Cir. 2002) (noting that metallurgical expert did not rely on metallurgy expertise at all in testifying that spontaneous disengagement of a parking brake caused a rollaway).   Testimony that is expert in nature and that goes beyond the scope of a witness' qualifications is properly excluded. *United States v. Marabelles*, 724 F.2d 1374, 1381-1382 (9th Cir. 1984) (district court properly excluded expert qualified as to bank loans on the ground of lack of

reliability, where the expert sought to evaluate taxpayer's business operation and taxation and there was no evidence that the witness was an expert in these matters.); *see also DePaepe v. General Motors Corp.*, 141 F.3d 715, 720 (7th Cir. 1998) (experts "need analytically sound bases for their opinions. District courts must be careful to keep experts within their proper scope, lest apparently scientific testimony carry more weight with the jury than it deserves.").

Mr. Piquet readily acknowledged during his deposition in this matter that he is not remotely qualified to provide testimony regarding valuation that would be expert in nature and that would assist the trier of fact. He has no graduate degrees. (Piquet Dep. 25:17-18.) He has no professional certifications or licenses aside from being a CPA. (*Id.* 25:19-23.) His knowledge of ERISA is "primarily self-taught" and he has never served as a trustee. (*Id.* 34:9-15.) His firm provides transactional support to ESOPs "[o]nly in [a] limited consulting role", and does not engage in ESOP transaction design, due diligence, or negotiations. (*Id.* 35:2-14.) Mr. Piquet's firm's standard operating procedures do not cover accounting principles, due diligence reviews, setting up ESOP transactions, or best practices for valuing companies. (*Id.* 40:14-41:23.)

Given that Mr. Piquet is not an expert at valuing and appraising businesses for ESOP purposes, it comes to no surprise that he was never asked to provide such services to B+KC. (*Id.* 58:25-59:2; 63:2-4, 6-10; 67:11-14; 70:14-16, 18.) During

9

the 2012-13 period, Mr. Piquet did not provide any financial accounting services to B+KC. (*Id.* 57:15-25.) He did not review any valuation documents from B+KC before the December 14, 2012, B+KC ESOP transaction. (*Id.* 58:25-59:2.)

Tellingly, Mr. Piquet made clear that he never discusses the impact that forming an ESOP will have on the value of a company held by potential clients: "I would say no, because it didn't have an impact on the company's value, not for purposes of the transaction. <u>That's more of an expert witness question, so I shouldn't answer it</u>. I'll say no." (*Id.* 63:2-10 [emphasis added].) It is not surprising that courts reject the consideration of expert opinions by individuals who admit they are not experts on the topic of the opinion. *See, e.g., Powell v. Tosh,* 942 F. Supp. 2d 678, 709 (W.D. Ky 2013) ("Card's admitted lack of expertise in relation to this opinion unquestionably requires exclusion under Rule 702 and Daubert."); *Loeffel Steel Products, Inc. v. Delta Brands, Inc.,* 387 F. Supp. 2d 794, 811 (N.D. Ill. 2005) ("As one would expect given Mr. Dohmeyer's admitted lack of expertise in the steel/metals industry and the sources of the information on which he relied, the 1½ page discussion is superficial, generalized, and inexpert.").

During the time relevant to this matter, Mr. Piquet's firm did not give advice to potential clients about cash versus accrual accounting methods, and never reviewed valuation reports or balance sheets for accuracy. (Piquet Dep. 66:23-

67:17.)   Mr. Piquet made very clear that his work is separate from that of an independent appraiser who would be valuing a given business:

> "Q.   Are you familiar with discounted cash-flow
>
>       analysis?
>
> A.   Yes. Generally.
>
> Q.   So did it relate to any advice that you gave
>
>       potential clients during the relevant time period?
>
> A.   Only to the extent that we might say that
>
>       that would be an approach to valuation <u>that an appraiser</u>
>
>       <u>might use to value the business</u>.
>
> Q.   Why would you say that?
>
> A.   Because it's one of the more common
>
>       approaches <u>used by appraisers to value a business</u>."

(*Id.* 66:24-67:9.)  Piquet stated definitively that he is not an appraiser.  (*See* Piquet Deposition Transcript, Vol. 2, Confidential Portion, dated November 20 2020 ("Piquet Dep. Vol. 2 Conf."), attached to the Johanson Dec. as Exhibit 3, at 310:4-13.)  Mr. Piquet also testified, quite simply, that he has never advised clients or potential clients regarding the value of an ESOP sale.  (Piquet Dep. 70:14-16, 18.)

Years after the B+KC ESOP transaction closed, Mr. Piquet crafted a document "[f]or [his] own benefit ... for internal risk assessment purposes[.]"

11

(Piquet Dep. Conf. 165:8-166:8, and Ex. 4 to Johanson Dec. [Plaintiff's Ex. 508].) Mr. Piquet never discussed the document, or any subject matter discussed therein, with anyone, and never sent the document to anyone.  (Piquet Dep. Conf. 166:9-16.)  When asked whether it was fair to say, based on the information provided in this document that B+KC was forecasted to be "worth more than it actually was", Mr. Piquet demurred: "I'm probably not qualified to answer that question. I'm not an appraiser." (*Id.* 171:5-17 [emphasis added].)  Later in the deposition Mr. Piquet supplemented this response, however, only to the extent of his limited understanding "as a nonexpert, nonappraiser." (*Id.* 172:8-20.)  Piquet confirmed in the second session of his deposition (November 20, 2020)[1] that he prepared his personal spreadsheet solely in his "capacity" as a nonexpert and as a nonappraiser. (Piquet Dep. Vol. 2 Conf. 310:4-13.)  He did so to protect himself and his company against any liability related to the Secretary's Complaint in this matter.

Mr. Piquet stated his purpose in preparing this personal document was due to his concern about his potential involvement in the instant litigation, and he volunteered that "in all due respect, the Department [of Labor] has a reputation for frivolous litigation in this area". (*Id.* 172:21-173:8.)  Mr. Piquet readily

---

[1] The Secretary deposed Mr. Piquet for approximately seven hours on the first day of his deposition (September 22, 2020) over a period of in excess of ten hours and did not allow Messrs. Bowers and Kubota to ask any questions of Mr. Piquet on the first day of his deposition.

acknowledged that he has "no insight" into why some of the numbers in his personal document came out the way they did.  (*Id.* 206:11-208:19.)

> "THE WITNESS:  I can -- I can tell you,
>
>  Mr. Case, categorically, that when I created this
>
>  document, I didn't pass any judgment on why any of
>
>  this may be the case.
>
>     It was purely for purposes of determining,
>
>  is this lawsuit something I should be paying
>
>  attention to or not. I would have no insight as to
>
>  what happened and why."

(*Id.,* 208:12-19.)

Mr. Piquet acknowledged in the second session of his deposition, after he walked through a number of calculations related to actual versus projected B+KC revenue and EBITDA from 2013-2017, that the amounts in his spreadsheet did not support his earlier conclusion of a "huge miss".  (Piquet Dep. Vol. 2 Conf. 316:3-324:11.)   Piquet also acknowledged that he was unaware that B+KC used a substantial amount of independent contractors and passed those expenses on to its customers, which affected B+KC's EBITDA.  (*Id.* 335:2-18.)

Despite Mr. Piquet's admitted lack of expertise and investigation, the Secretary questioned him at length about the B+KC December 14, 2012, B+KC

ESOP transaction and his "personal document" created years after the fact, based entirely on his admittedly lay experience in matters of appraising ESOPs. This blatant speculation is precisely the type of testimony that presents the danger of misleading this Court into placing unjustified reliance on conclusions based on inadequately supported foundational facts. Mr. Piquet's testimony on this point "ought not to be anointed with ersatz authority" and should properly be excluded as unreliable and not remotely likely to assist the trier of fact. *White*, 312 F.3d at 1008-1009; *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996) ("Where foundational facts demonstrating relevancy ... are not sufficiently established, exclusion of proffered ... testimony is justified.").

IV.    **Marcus Piquet's "Personal Document" and His Testimony Related to that Document is Wholly Unreliable and Will Not Assist the Trier of Fact because It Is Based on Assumptions That Have No Support In The Record.**

As discussed above, the "personal document" prepared by Marcus Piquet solely for his own internal purposes has no bearing on the controversy before this Court. Mr. Piquet readily acknowledged that he has "no insight" into, and can only speculate as to, the reason his assumptions and calculations came out the way they did. (Piquet Dep. Conf. 206:11-208:19.) These sorts of unsupported assumptions are impermissible under *Daubert*.

Under FRE Rule 702, expert opinion must be based upon "sufficient facts or data". Where the facts provide no basis for an assumption, conclusions regarding

the assumption are properly excluded.  *Guidroz-Brault v. Missouri Pac. RR. Co.*, 254 F.3d 825, 830-831 (9th Cir. 2001) (experts' opinions properly excluded where the opinions were based on assumptions insufficiently supported by evidence in the record); *see also Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999) (expert testimony "inadmissible when the facts upon which the expert bases his testimony contradict the evidence.")

Mr. Piquet testified that he did not discuss his "personal document", or any of the information or conclusions contained therein, with anyone (including B+KC).  Accordingly, he did not discuss it with any of the actual expert valuation witnesses in this matter.  Had he done so, he may have had some inkling, though still a lay-person's inkling, as to why, for example, he listed certain information about EBITDA projections, the control premium and enterprise value.  (Piquet Dep. Conf. 214:5-215:21.)  He has none of this reasoning, however, and his "personal document" consists only of speculation completely unhelpful to the trier of fact. Mr. Piquet's purported opinion is nothing more than "argument masquerading as sworn evidence".  *United States v. Cerna*, No. CR 08-0730 WHA, 2010 U.S. Dist. LEXIS 146687, *56 (N.D. Cal. Dec. 17, 2010).  Mr. Piquet's admitted lack of expertise in valuing and appraising businesses and ESOP transactions, his complete divorce in qualification from the actual valuation experts in this case, and his reliance instead on his own unsupported assumptions all

warrant his exclusion from any further proceedings in this litigation.  *See LuMetta v. United States Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir. 1987) ("[W]here foundational facts demonstrating relevancy or qualification are not sufficiently established, exclusion of proffered expert testimony is justified.")

## V.     Conclusion

Plaintiff deposed Marcus R. Piquet, CPA in this matter ostensibly to provide testimony about valuation and appraisal that he is completely unqualified to speak about.

WHEREFORE, for the foregoing reasons, this Court should exclude entirely the testimony of Mr. Piquet from any proceedings in this matter, including at trial.

DATED:  Honolulu, Hawai'i, April 22, 2021

/s/ David R. Johanson
DAVID R. JOHANSON
DOUGLAS A. RUBEL
WILLIAM M. HARSTAD

Attorneys for
BRIAN J. BOWERS and DEXTER C. KUBOTA

16