# EXHIBIT "1"

Atkinson-Baker, Inc.
www.depo.com

```
 1                UNITED STATES DISTRICT COURT

 2                    DISTRICT OF HAWAII

 3                         -  -  -

 4   EUGENE SCALIA, Secretary of   )
     Labor, United States Department )   ┌────────────────────┐
 5   of Labor,                      )     │  CERTIFIED COPY    │
                                    )    └────────────────────┘
 6                 Plaintiff,       )  Case No.
                                    )  1:18-cv-00155-
 7          vs.                     )  SOM-WRP
                                    )
 8   SHARON L. HERITAGE, as successor)
     to Nicholas L. Saakvitne,      )
 9   Deceased; NICOLAS L. SAAKVITNE, )
     A LAW CORPORATION, a California )
10   corporation; BRIAN J. BOWERS, an)
     individual; DEXTER C. KUBOTA, an)
11   individual; BOWERS + KUBOTA    )
     CONSULTING, INC., a corporation;)
12   BOWERS + KUBOTA CONSULTING,     )
     INC., EMPLOYEE OWNERSHIP PLAN,  )
13                                  )
                  Defendants.        )
14   _____)

15

16

17      REMOTE VIDEOCONFERENCE 30(b)(6) DEPOSITION OF

18                    MARCUS PIQUET

19               LOS ANGELES, CALIFORNIA

20                 SEPTEMBER 22, 2020

21

22

23   ATKINSON-BAKER, INC.
     (800) 288-3376
24   www.depo.com
     REPORTED BY:  CLAUDIA R. GARCIA, CSR NO. 12812
25   FILE NO.:  AE05F72
```

```
 1              UNITED STATES DISTRICT COURT

 2                  DISTRICT OF HAWAII

 3                      - - -

 4   EUGENE SCALIA, Secretary of    )
     Labor, United States Department )
 5   of Labor,                      )
                                    )
 6              Plaintiff,          ) Case No.
                                    ) 1:18-cv-00155-
 7          vs.                     ) SOM-WRP
                                    )
 8   SHARON L. HERITAGE, as successor)
     to Nicholas L. Saakvitne,      )
 9   Deceased; NICOLAS L. SAAKVITNE, )
     A LAW CORPORATION, a California )
10   corporation; BRIAN J. BOWERS, an)
     individual; DEXTER C. KUBOTA, an)
11   individual; BOWERS + KUBOTA    )
     CONSULTING, INC., a corporation;)
12   BOWERS + KUBOTA CONSULTING,     )
     INC., EMPLOYEE OWNERSHIP PLAN,  )
13                                   )
                Defendants.          )
14   _____)

15

16

17

18

19

20          Remote Videoconference 30(b)(6) Deposition

21   of MARCUS PIQUET, taken on behalf of the Plaintiff,

22   commencing at 9:35 a.m., on Tuesday, September 22,

23   2020, before Claudia R. Garcia, Certified Shorthand

24   Reporter Number 12812.

25
```

```
 1                    A P P E A R A N C E S:

 2

 3   For Plaintiffs:

 4        DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR
          BY:  AUSTIN CASE, ESQ.
 5        2300 Main Street
          Suite 1190
 6        Kansas City, Missouri  64108
          816.285.7283
 7        816.285.7287 (Fax)
          case.austin@dol.gov
 8
               -- and --
 9
          DEPARTMENT OF LABOR, OFFICE OF SOLICITOR
10        BY:  JING ACOSTA, ESQ.
          230 South Dearborn Street
11        Suite 1086
          Chicago, Illinois  60604
12        312.353.1145
          acosta.jing@dol.gov
13
     For Defendants Sharon L. Heritage, successor to
14   Nicholas L. Saakvitne, Deceased; Nicholas L.
     Saakvitne, a Law Corporation:
15
          MORGAN LEWIS & BOCKIUS LLP
16        BY:  DONALD L. HAVERMANN, ESQ.
          1111 Pennsylvania Avenue NW
17        Washington, District of Columbia  20004
          202.739.5072
18        202.739.3001 (Fax)
          donald.havermann@morganlewis.com
19

20   For the Defendants Brian J. Bowers and Dexter C.
     Kubota:
21
          HAWKINS PARNELL & YOUNG LLP
22        BY:  DAVID R. JOHANSON, ESQ.
               ROB THOMPSON, ESQ.
23        1776 Second Street
          Napa, California 94559
24        707.299.2470
          707.581.1704 (Fax)
25        djohanson@hpylaw.com
```

Atkinson-Baker, Inc.
www.depo.com

```
 1
      For the Defendant Brian J. Bowers and Dexter C.
 2    Kubota:

 3         HAWKINS PARNELL & YOUNG LLP
           BY:  DOUGLAS A. RUBEL, ESQ.
 4         P.O. Box 1285
           Cary, North Carolina 27512-1285
 5         404.614.7517
           404.614.7500 (Fax)
 6         drubel@hpylaw.com

 7    For the Defendants Bowers + Kubota Consulting, Inc.:

 8         CLAY CHAPMAN IWAMURA PULICE & NERVELL
           TOPA FINANCIAL CENTER
 9         BY:  SCOTT I. BATTERMAN, ESQ.
           700 Bishop Street
10         Suite 2100
           Honolulu, Hawaii 96813
11         808.535.8410
           808.535.8444 (Fax)
12         sib@paclawteam.com

13    For the Witness:

14          PARKER MILLIKEN CLARK O'HARA & SAMUELIAN
            BY:  RICHARD ROBINS, ESQ.
15          555 South Flower Street
            30th Floor
16          Los Angeles, California  90071
            213.683.6573
17          rrobins@pmcos.com

18    Also Present:

19         James Klebes

20         Dorian Hanzich

21         Michael Wen

22         Marisa Kovacs

23


24


25
```

Atkinson-Baker, Inc.
www.depo.com

```
 1                    I N D E X

 2  WITNESS:  MARCUS PIQUET

 3  EXAMINATION                                    PAGE

 4  By Mr. Case                                       9

 5  Afternoon Session                                93

 6

 7

 8                  CONFIDENTIAL PORTIONS

 9                    Non-Confidential

10                      (1 - 156)

11                     (284 - 290)

12         Confidential Portions Bound Separately

13                     (157 - 283)

14

15
    E X H I B I T S:
16  (Confidential Exhibits are Bound Separately)

17  PLAINTIFF'S                                    PAGE

18  501 - Letter dated 10/17/2012 to Brian
           Bowers from Marcus Piquet, Bates
19         stamped DOL 001511 through -1518         105

20  505 - "Ambrose Advisors Basic ESOP
           Information"                              36
21
    508 - "Original Forecast EBITDA," Bates
22         stamped AMB_00000222
           (Confidential)                           165
23

24

25
```

30(b)(6) Marcus Piquet
September 22, 2020                                    5

Atkinson-Baker, Inc.
www.depo.com

```
 1                    I N D E X
                     (Continued)
 2

 3    E X H I B I T S:
      (Confidential Exhibits are Bound Under Separate
 4    Cover)

 5    PLAINTIFF'S                                  PAGE

 6    515 - Letter dated 12/5/2011 to Brian
            Bowers from Paul Vallone
 7          (Confidential)                         163

 8    516 - Memo dated 8/5/2013 to Brian Bowers
            on Nicholas L. Saakvitne letterhead,
 9          Bates stamped SAK000048 through -52
            (Confidential)                         160
10
      520 - "Bowers + Kubota ESOP:  Trustee
11          Meeting 12/3/12 Items for
            Discussion," Bates stamped
12          SAK000046
            (Confidential)                         225
13
      525 - "Preliminary Action Plan for
14          Complete Section 1042 Deferral for
            Both Sellers"
15          (Confidential)                         259

16    526 - "UBS Statement of Financial Condition"
            (Confidential)                         157
17
      527 - "UBS Statement of Financial Condition"
18          (Confidential)                         159

19    529 - "ESOP Stock Purchase Agreement,"
            Bates stamped AMB_00001374 through
20          -1415
            (Confidential)                         160
21
      531 - E-mail dated 12/5/2012 to Marcus R.
22          Piquet and others from Saaklaw@aol.com,
            Bates stamped AMB_00001646 through
23          -1648
            (Confidential)                         227
24

25
```

Atkinson-Baker, Inc.
www.depo.com

```
 1                         I N D E X
                          (Continued)
 2

 3    E X H I B I T S:
      (Confidential Exhibits are Bound Under Separate
 4    Cover)

 5    PLAINTIFF'S                                      PAGE

 6    534 - E-mail dated 12/5/2012 to Greg
            Hansen and others from Marcus R.
 7          Piquet, Bates stamped AMB_00001644
            and -1645                                   128
 8
      535 - E-mail dated 12/7/2012 to Greg
 9          Hansen and others from Marcus R.
            Piquet, Bates stamped AMB_00001654
10          through -1662
            (Confidential)                             245
11
      540 - E-mail dated 12/2/2012 to Brian
12          Bowers and others from Greg Hansen,
            Bates stamped AMB_00001975
13          (Confidential)                             236

14    545 - "Bowers + Kubota Consulting, Inc.,
            Employee Stock Ownership Plan,"
15          Bates stamped AMB_00002235
            (Confidential)                             216
16
      565 - E-mail dated 2/8/2013 to Greg Hansen
17          and others from Brian Bowers, Bates
            stamped AMB_00001305 and -1306
18          (Confidential)                             273

19    569 - E-mail dated 12/31/2012 to Dexter
            Kubota from Marcus Piquet, Bates
20          stamped AMB_00001334 through -1336
            (Confidential)                             271
21

22

23

24

25
```

Atkinson-Baker, Inc.
www.depo.com

```
 1                        I N D E X
                         (Continued)
 2

 3      QUESTIONS  INSTRUCTED  NOT  TO  ANSWER:

 4                           PAGE      LINE

 5                            56        19

 6                            63        22

 7                            64        10

 8                            67        18

 9                            68        10

10                            78        25

11                            97         7

12                           131         7

13                           192         2

14                           194        11

15                           195        10

16                           206        18

17                           229        17

18

19      INFORMATION  REQUESTED:

20                          (NONE)

21

22

23

24

25
```

Atkinson-Baker, Inc.
www.depo.com

1     LOS ANGELES, CALIFORNIA; TUESDAY, SEPTEMBER 22, 2020

2                          9:35 A.M.

3

4              THE COURT REPORTER:  My name is

5     Claudia Garcia, a California state-certified

6     shorthand reporter, and this deposition is being held

7     via videoconferencing equipment.  The witness and the

8     stenographer are not in the same room.  The witness

9     will be sworn in remotely pursuant to the agreement

10    of all parties.

11             Would you please agree to allow me to swear

12    in the witness remotely?

13             MR. CASE:  Yes.

14

15                      MARCUS PIQUET,

16         having been first duly sworn, was

17         examined and testified as follows:

18

19             THE WITNESS:  I do.

20             THE COURT REPORTER:  Please proceed.

21

22                      EXAMINATION

23    BY MR. CASE:

24        Q.   Good morning, Mr. Piquet.  How are you?

25        A.   I'm fine.  Thank you.

Atkinson-Baker, Inc.
www.depo.com

```
1    assume that you understood it; okay?
2          A.   Yes.
3          Q.   So Mr. Piquet, what is your address?
4          A.   Home address or business address?
5          Q.   Home address?
6          A.   20111 Athenon Avenue, Perris, California
7    92570.
8          Q.   And do you have -- I want to talk about your
9    educational experience.
10              What high school did you go to?
11         A.   Centennial High School, Corona, California.
12         Q.   And did you go to college?
13         A.   Yes.
14         Q.   And what are your degrees in?
15         A.   International relations and economic
16   development.
17         Q.   Do you have any graduate degrees?
18         A.   No.
19         Q.   Do you have any professional certifications
20   or licenses?
21         A.   Yes.  I'm a CPA.
22         Q.   Anything else?
23         A.   No.
24         Q.   Are you a member of any professional
25   organizations or associations?
```

Atkinson-Baker, Inc.
www.depo.com

1    words, I'm not preparing their tax returns.  I'm not

2    preparing any financial statements.  I'm not a CPA firm,

3    as you -- as it would be understood.

4         Q.   But you do give tax advice?

5         A.   Yes.

6         Q.   Do you have any familiarity with ERISA?

7              I'm sure you do?

8         A.   Yes.

9         Q.   Do you have any specific ERISA-related

10   training?

11        A.   Primarily self-taught, and then through trade

12   associations, and conferences, and continuing education,

13   things of that nature.

14        Q.   Have you ever served as a trustee?

15        A.   No.

16        Q.   Okay.  So I want to talk a little bit more

17   about the services provided by your firm.

18             Does your firm provide investment banking

19   services?

20        A.   I'm sorry.  Can you repeat the question?

21   Investment, what, services?

22        Q.   Banking services?

23        A.   No.  We have a -- an affiliated firm that I

24   am not an owner that does provide investment banking

25   services, but that is not my firm.  That would be

Atkinson-Baker, Inc.
www.depo.com

1    Ambrose Capital Partners.

2         Q.   Does your firm provide transactional support

3    to ESOPs?

4         A.   Only in the limited consulting role, the

5    objective being to become the third-party administrator

6    for a newly formed ESOP.  And to the extent we can

7    assist the other professionals in getting that done,

8    we're -- we're happy to do so.

9         Q.   Does your firm do ESOP transaction design?

10        A.   No.

11        Q.   Does your firm do ESOP due diligence?

12        A.   No.

13        Q.   Does your firm do ESOP negotiations?

14        A.   No.

15             MR. CASE:  Ms. Acosta, could you please put

16   Exhibit Number 505 on the screen.

17             MS. ACOSTA:  Do you want me to do it, or

18   Mr. Wen?

19             MR. CASE:  Oh, Mr. Wen joined us.  Great.

20             Mr. Wen, please.

21             MR. ROBINS:  So we don't need to open it

22   from our copy?

23             You'll do it?

24             MR. CASE:  Yes.  It should appear on the

25   screen once Mr. Wen puts it up.

```
 1    But the website that you have brought up mentions other

 2    services that are performed by affiliated firms.

 3              And so that is relevantly recent and -- since

 4    2015; okay?

 5         Q.   Okay.

 6         A.   So a portion of the current website that

 7    reflects what we do has not changed.

 8         Q.   Okay.  Great.  Yes.  I understand.  And

 9    we're -- we're most interested in -- in what your firm

10    does.  And so these items here in Bullet point 4 are

11    examples of things that your firm does; is that right?

12         A.   That's correct.  And has done for a very long

13    time.

14         Q.   Okay.  Great.  Does your firm have any

15    standard operating procedures?

16              MR. ROBINS:  Again, you're focused on 2009

17     to 2012?

18              MR. CASE:  Yes, sir.

19              MR. ROBINS:  Do you understand that?

20              THE WITNESS:  I do, yes.

21              At that time, I would say, yes, we do -- we

22     did.  Still do.

23     BY MR. CASE:

24         Q.   And do you still have a copy of those

25     procedures?
```

1    A.   I don't believe so from that time period.

2    Q.   So what kinds of things did the standard

3  operating procedures cover?

4    A.   They -- they consisted of -- I'm sorry -- did

5  someone else say something?

6         Okay.  They consisted of primarily review

7  procedures for quality assurance of our work product

8  related to third-party administration and recordkeeping.

9    Q.   Were there standard operating procedures

10 related to due diligence reviews?

11   A.   No.  Because we didn't do that, and we still

12 don't.

13   Q.   Were there any standard operating procedures

14 related to setting up an initial ESOP transaction?

15   A.   No.  Because we didn't do that, and we still

16 don't.

17   Q.   All right.  Do any of the standard operating

18 procedures relate to best practices for evaluations of

19 companies?

20   A.   No.  No.

21   Q.   Do any of the standard operating procedures

22 relate to accounting principles?

23   A.   No.

24   Q.   So maybe you could tell me with a little bit

25 more specificity what kinds of things were in the

Atkinson-Baker, Inc.
www.depo.com

```
 1    testimony.
 2              THE WITNESS:  So I won't be answering that
 3    question.
 4              MR. ROBINS:  If you want to ask him if he
 5    ever talked to anybody about it, turn it into
 6    something relevant, I'll let him answer that
 7    question.
 8              MR. CASE:  I understand what you're saying.
 9    You know, it's -- it's fine.  You're instructing the
10    witness not to answer the question, is what I
11    understand is happening; yeah?
12              MR. ROBINS:  Yeah.  He's not here as an
13    expert witness.
14    BY MR. CASE:
15        Q.    Did you provide any accounting services to
16    the company in 2012 or 2013?
17        A.    To Bowers + Kubota?
18        Q.    Yeah.
19        A.    Financial accounting as opposed to tax
20    accounting?
21        Q.    Any accounting services.
22        A.    I did talk to them about tax accounting
23    issues related to ESOP transactions.
24        Q.    But never financial accounting?
25        A.    No.
```

Atkinson-Baker, Inc.
www.depo.com

1    Q.   Were you aware that the company moved from

2  cash to accrual accounting before the transaction?

3         MR. BATTERMAN:  Objection.  Assumes facts

4   not in evidence.

5  BY MR. CASE:

6    Q.   Go ahead and answer.

7    A.   I don't believe so, no.

8    Q.   Do you know whether that was the case?

9         MR. ROBINS:  Objection.  Assumes facts not

10  in evidence.

11         MR. JOHANSON:  I join in Mr. Batterman's

12   objection in behalf of Mr. Bowers and Mr. Kubota.

13         THE WITNESS:  Can you restate -- or reask --

14   or repeat the question?

15         MR. ROBINS:  If the reporter would read the

16   question.

17         Ms. Garcia, could you read back the

18   question.

19         (The previous question was read back

20         by the court reporter as follows:

21           "QUESTION:  Do you know whether

22         that was the case?")

23         THE WITNESS:  I don't recall.

24  BY MR. CASE:

25    Q.   Did you review any valuation documents from

1    the company before the transaction?

2          A.    I don't believe so.

3          Q.    After the transaction?

4          A.    After, yes.  As part of our role as

5    third-party administrators, we have to adjust the value

6    of the stock to the appraised value, so yes.

7          Q.    When was the first time that you reviewed a

8    valuation document?

9          A.    I don't recall.  It would have been before

10   the first Form 5500 was filed for the plan.

11              MR. JOHANSON:  I object as to form.  Thanks.

12    BY MR. CASE:

13         Q.    How much earlier than that?

14         A.    I don't know with specificity.

15         Q.    More than a month?

16         A.    More than a month --

17              MR. JOHANSON:  Objection as to form --

18    objection as to form.

19              THE WITNESS:  Are you asking if I reviewed

20    the valuation -- this would be for 12/31/12 -- more

21    than a month before filing the 5500?

22    BY MR. CASE.

23         Q.    Exactly?

24         A.    I don't recall.

25         Q.    More than a week?

Atkinson-Baker, Inc.
www.depo.com

1   again.

2       Q.   Sure.  Did you discuss the impact that

3   forming an ESOP would have on the value of the company,

4   with potential clients?

5           MR. JOHANSON:  Objection.

6           THE WITNESS:  I would say no, because it

7   didn't have an impact on the company's value, not for

8   purposes of the transaction.  That's more of an

9   expert witness question, so I shouldn't answer it.

10  I'll say no.

11  BY MR. CASE:

12      Q.   Okay.  Did you ever discuss the difference

13  between fair market value and strategic value with any

14  potential clients before the date of the transaction?

15          MR. JOHANSON:  Objection as to form.

16          MR. ROBINS:  You're asking about the

17  relevant time period; correct?

18          MR. CASE:  Before the date of the

19  transaction.

20          THE WITNESS:  I would say yes, sure.

21  BY MR. CASE:

22      Q.   What's the difference?

23          THE WITNESS:  Expert witness question --

24  strategic value and fair market value?

25          MR. ROBINS:  Yeah.  No.  That's an expert

Atkinson-Baker, Inc.
www.depo.com

```
 1   BY MR. CASE:

 2       Q.   Do you remember what you said?

 3            MR. BATTERMAN:  Objection.  Asked and

 4   answered.

 5            (Video/audio interruption in proceedings.)

 6            THE WITNESS:  -- interest -- the instance

 7   that I can't tell you what I said.

 8   BY MR. CASE:

 9       Q.   Okay.  What kind of advice does your firm

10   give to potential clients regarding controlled

11   premiums?

12       A.   Again, back in the relevant period of 2009 to

13   2000- -- January 1, 2013, what do we -- what did we say

14   about controlled premiums?

15            Let me -- let me answer it this way.  It's a

16   hard question to answer because I didn't talk much about

17   control premiums.  The flip side, would there be a

18   discount for minority interest?  Probably.

19            And that is relevant when we're talking about

20   whether a subject wants to sell a minority interest to

21   an ESOP or a majority interest to an ESOP.  I don't know

22   if that answers your question, but --

23       Q.   Yeah.  Did -- what kind of advice would your

24   firm give to potential clients about cash or accrual

25   accounting methods?
```

Atkinson-Baker, Inc.
www.depo.com

 1          MR. BATTERMAN:  Objection.  Vague.  Lacks

 2     foundation.

 3          MR. JOHANSON:  Join.

 4          MR. ROBINS:  Yeah.  I'll -- I'll join in

 5     that also.

 6          THE WITNESS:  So no answer or?

 7          MR. ROBINS:  Did you give any advice during

 8     the relevant time period that you can recall?

 9          THE WITNESS:  Not that I recall.

10     BY MR. CASE:

11       Q.   Okay.  During the relevant time period, did

12     your company ever review a valuation report for

13     accuracy?

14       A.   No.

15       Q.   During the relevant time period, did your

16     company ever review a balance sheet for accuracy?

17       A.   No.

18       Q.   What's your understanding of discounted

19     cash-flow analysis?

20          MR. ROBINS:  I'm not going to let him answer

21     that question either.  That's calling for expert

22     testimony.

23     BY MR. CASE:

24       Q.   Are you familiar with discounted cash-flow

25     analysis?

1   lot of objecting and lots of breaks.  So we're -- I'm

2   going to move as quickly as I can.

3            I already told you why I asked those

4   questions.  I think that they're relevant to the

5   case, and I think they're relevant to his testimony.

6   But I understand why you've instructed him not to

7   answer, and I'll move on to -- to questions about the

8   case here shortly that are more specific to things he

9   saw, or did, or said.

10           MR. JOHANSON:  We object to everything that

11   Mr. Case just said.

12           Go ahead.

13   BY MR. CASE:

14       Q.   Mr. Piquet, can you tell me if you advised

15   clients or potential clients on the value of an ESOP

16   sale?

17           MR. JOHANSON:  Objection as to form.

18           THE WITNESS:  The answer is, no, I did not.

19   BY MR. CASE:

20       Q.   All right.  Did you ever discuss corporate

21   tax savings that could be generated from an ESOP sale?

22       A.   Yes.

23       Q.   What are those?

24           MR. ROBINS:  Are you asking what his

25   discussion was?  If he recalls a discussion, I'll let

Atkinson-Baker, Inc.
www.depo.com

```
 1              Mr. Case?
 2              MR. ROBINS:  We don't -- this is Mr. Robins
 3    again.  We don't need a copy of the transcript now.
 4    We'll probably order one at the end of the
 5    deposition -- actually, I would like to get the rough
 6    ASCII --
 7              MR. CASE:  I can't commit to a copy of the
 8    transcript now, but I'll certainly be in touch in the
 9    near future.
10              THE REPORTER:  Mr. Case, you automatically
11    get your certified copy.
12              MR. CASE:  Oh, okay.
13              MR. ROBINS:  Have you had stipulations in
14    prior depositions in terms of handling of the
15    deposition, and who's going to maintain the
16    transcript, and the time to make any sort of
17    corrections?
18              THE COURT REPORTER:  Mr. Robins, I'm sorry.
19    I won't agree to a stipulation.  We should go by Code
20    on the transcript.
21              MR. ROBINS:  Okay.
22              MR. HAVERMANN:  Mr. Havermann would like a
23    copy.  Thank you.
24              (Ending time 7:25 p.m.)
25
```

Atkinson-Baker, Inc.
www.depo.com

```
1   STATE OF CALIFORNIA        )
                               )   ss.
2   COUNTY OF LOS ANGELES      )

3

4          I, the undersigned, declare under penalty of

5   perjury that I have read the foregoing transcript,

6   and I have made any corrections, additions, or

7   deletions that I was desirous of making; that the

8   foregoing is a true and correct transcript of my

9   testimony contained therein.

10         EXECUTED this _____ day of _____,

11  2020, at _____, _____.
                     [City]                   [State]
12

13

14

15

16         _____
                   MARCUS PIQUET
17

18

19

20

21

22

23

24

25
```

Atkinson-Baker, Inc.
www.depo.com

```
 1                    REPORTER'S CERTIFICATE

 2

 3           I, CLAUDIA R. GARCIA, CSR No. 12812, a

 4     Certified Shorthand Reporter, certify;

 5           That the foregoing proceedings were taken

 6     remotely via videoconferencing equipment, at which

 7     time the witness was put under oath remotely by me;

 8           That the testimony of the witness, the

 9     questions propounded, and all the objections and

10     statements made at the time of examination were

11     recorded stenographically by me and were thereafter

12     transcribed;

13           That the foregoing is a true and correct

14     transcript of my shorthand notes so taken.

15           I further certify that I am not a relative

16     or employee of any attorney of the parties, nor

17     financially interested in the action.

18           Reading and signing was requested.

19           I declare under penalty of perjury under the

20     laws of California that the foregoing is true and

21     correct.

22           Dated this 6th day of October, 2020.

23

24           CLAUDIA R. GARCIA, C.S.R. 12812

25
```