# Exhibit "12"

IN THE UNITED STATES DISTRICT COURT
FOR HAWAI'I

| | |
|---|---|
| **EUGENE SCALIA,**<br>Secretary of the United States Department of Labor<br><br>Plaintiff,<br><br>v.<br><br>**SHARON L. HERITAGE, as successor to NICHOLAS L. SAAKVITNE, Deceased; NICHOLAS L. SAAKVITNE, A LAW CORPORATION, a California corporation; BRIAN J. BOWERS, an individual; DEXTER C. KUBOTA, an individual; BOWERS + KUBOTA CONSULTING, INC. a corporation; BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN,**<br><br>Defendants. | Case No. 1:18 - cv - 155 |

**GREGORY BROWN
REBUTTAL REPORT TO EXPERT REPORTS OF
MARK JOHNSON AND STEVEN J. SHERMAN**

November 19, 2020

**Introduction**

The following sets forth my rebuttals to the Expert Reports of Mark Johnson (the "Johnson Report") and Steve J. Sherman (the "Sherman Report") for purposes of the above captioned litigation, namely, Eugene Scalia, Secretary of the United States Department of Labor ("Plaintiff") v. Sharon L. Heritage, as successor to Nicholas Saakvitne, Deceased, Nicholas Saakvitne, a Law Corporation, a California corporation, Brian J. Bowers, an individual, Dexter C. Kubota, an individual, Bowers + Kubota Consulting, Inc., a corporation, Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan (the "ESOP"). Sharon L. Heritage, Nicholas Saakvitne, Nicholas Saakvitne, a Law Corporation. Brian Bowers, Dexter Kubota, Bowers + Kubota Consulting, Inc., shall be referred to herein as the "Defendants") in the United States District Court, for the District of Hawaii, No. 1:18-cv-155 (this "Litigation"). Bowers + Kubota Consulting, Inc. will be referred to herein as "B+KC" or the "Company." This Rebuttal Report is in addition to my Expert Report submitted on this date (the "Initial Report")

**Allegations and Background**

Plaintiff alleges that the Defendants breached their fiduciary duties under the Employee Retirement Income Security Act of 1974, as amended ("ERISA,") in a December 14, 2012, transaction by causing the ESOP to pay a purchase price in excess of fair market value for 100% of the company's capital stock (the "December 2012 ESOP Transaction" or the "Transaction.") Plaintiff also alleged that B+KC has failed to monitor the conduct of Nicholas L. Saakvitne, as the ESOP's trustee in the December 2012 ESOP Transaction.

The December 2012 ESOP Transaction involved the purchase by the ESOP of 100% of the Company's capital stock pursuant to an ESOP Stock Purchase Agreement in which the ESOP purchased all of the issued and outstanding shares (the "Shares") of the Company's capital stock from the Brian J. Bowers Trust dated December 22, 2010 and the Dexter C. Kubota Trust dated March 17, 2006 ("Sellers") for Forty Million and No/100 Dollars ($40,000,000). Sellers financed the entire amount of the Transaction through promissory notes issued to Sellers by the ESOP. The Transaction structure was relatively straightforward and did not involve senior bank financing or Seller warrants.

In connection with and prior to the Transaction, B+KC appointed Nicholas L. Saakvitne as the sole Trustee and independent fiduciary of the ESOP. and Mr. Saakvitne then selected Libra Valuation Associates, Inc. ("Libra") as the ESOP's independent appraiser and financial advisor. B+KC and Mr. Saakvitne executed an ESOP plan document and a separate ESOP Trust Agreement. B+KC, Mr. Saakvitne, and Sellers also executed an ESOP Stock Purchase Agreement among the Company, Sellers and the ESOP and ESOP Loan and Pledge Agreement for each Seller and the Company and the ESOP.

**Assignment and Compensation**

Counsel for Defendants, David R. Johanson, Esq., Senior Partner of Hawkins Parnell & Young LLP, has retained me to provide certain opinions as an expert concerning the Transaction.

My compensation for this assignment is at the hourly rate of $725. My compensation is not contingent upon my conclusions or the outcome of this Litigation.

2

## Summary of Qualifications and Experience

The opinions expressed are based on my 45 years of legal practice as an employee benefits, ERISA, and executive compensation lawyer (1976-2020), during which I have spent a majority of my practice time working on employee stock ownership transactions. In this respect, I have represented corporations and boards of directors, lenders, trustees, independent fiduciaries and plan committees (among others) in transactions structured in the same manner as the Transaction. I have acted as an expert witness in federal and state courts in matters involving ERISA, employee stock ownership plan transactions, executive employment agreements and executive deferred compensation plans and tax-qualified retirement plans. Attached hereto as Exhibit A is my curriculum vitae.

## Testimony During Last Four Years

I have testified at trial once during the last four years *Fish, et al. v. GreatBanc, et al.*, United States District Court for the Northern District of Illinois, Case No. 1:09-cv-01668.[1] I have testified five times at a deposition in the last four years in the cases of *Citizen Community Federal v. Silver, Friedman & Taft, LLP*, United States District Court for the Western District of Wisconsin, Case No. 12-cv-648, *Fish et al. v. GreatBanc, et al.*, and *Spear, et al. v. Fenkell, et al.*, United States Court for the Eastern District of Pennsylvania, Case No. 2:13-cv-02391, *Hugler v. Veronica Mueller, Roger Mueller, et al.*, United States Court for the Eastern District of Wisconsin, Milwaukee Division, Case No. 2:13-cv-01302, *Allen v. GreatBanc Trust Company, Northern District of Illinois, Eastern Division*, Case No. 1:15-cv-03053, *Innis v. Bankers Trust Company of South Dakota*, United States District Court for the Southern District of Iowa, Central Division, Case No. 4:16-cv-00650-RGE-SBJ, and *Brincefield et al. v. Studdard, et al.*, United States Court for the Eastern District of Virginia, Richmond Division, Case No. 3:17-cv-718-JAG.

## Publications During Last Ten Years

I have authored or co-authored the following publications during the last 10 years:

- Holland & Knight Legal Alerts

- "ESOPs" Bureau of National Affairs," Tax Management Portfolio, 354-4th (1987); 354-5th (1991); 354-7th (2004); and, 354-5th (2010)

- "Fiduciary Lessons from DOL's Win in Employee Stock Case," Law 360, September 9, 2019

- "Division of Retirement Plan Assets Upon Divorce," Illinois Institute for

---

[1] The court in this case entered judgment in favor of the defendants on all counts and stated in paragraph 350 of the decision as follows: Mr. Brown also gave the opinion that a monitoring fiduciary must balance its need to observe the trustee with the need to preserve the trustee's independence by not meddling with the trustee's fulfillment of its duties. (DX-776 at 13; Tr. 5218:17-5219:5.) This was particularly persuasive to the Court because requiring defendants to inject themselves into GreatBanc's decision-making process to satisfy ERISA's duty to monitor is contrary to the very reason an ESOP sponsor should hire an independent fiduciary.

3

Continuing Legal Education Family Law Handbook, 1992, 1998, 2004, 2006, 2011

- "Investment in Employee Stock Ownership Plans Clarified Through Recent Developments" Journal of Taxation of Investments (Summer 2003, Vol. 20, No. 4)

- "An Update on Multi-Stage ESOP Transactions," The Journal of Employee Ownership Law and Finance (Fall 2003, Vol. 15, No. 4)

- "Reaching an Optimal Level of Employee Ownership In a Profit Sharing Plan/401(k) Plan," Section 401(k) Plans and Employee Ownership, Fourth Edition, (Oakland, CA, NCEO 2003)

- Section 401(k) Plans and Employee Ownership, Rodrick, The National Center for Employee Ownership (2004, 4th Ed.)

- The Handbook of Employee Benefits, Rosenbloom, Dow Jones Irwin (2005)

- Employee Stock Ownership Plans, Smiley and Gilbert, Prentice Hall Rosenfeld Launer Publications (New York, 2006)

- "S Corporation ESOP Double Jeopardy: Sections 409A and 409(p)," New York University Review of Employee Benefits and Executive Compensation 2006, Chapter 7, Matthew Bender & Company, Inc.

- "What The Matrimonial Lawyer Needs To Know About Non-Qualified Deferred Compensation," Journal or the American Academy of Matrimonial Lawyers, Vol. 20, page 217, 2007

- "What The Matrimonial Lawyer Needs to Know About Non-ERISA Plans, Executive Compensation, and Other Related Plans," Journal of the American Academy of Matrimonial Lawyers, Vol. 26, page 601, 2014

- "Fiduciary Hurdles in Selling an ESOP-Owned Company," New York University Review of Employee Benefits and Executive Compensation 2007, Chapter 19, Matthew Bender & Company, Inc.

- "New Challenges in Operating Defined Contribution Plans," New York University Review of Employee Benefits and Executive Compensation 2008, Chapter IS, Matthew Bender & Company, Inc.

- "Managing Risk in Your Defined Contribution Plan Company Stock Fund," New York University Review of Employee Benefits and Executive Compensation 2009, Chapter 8, Matthew Bender & Company, Inc.

- "Information and Strategies for Dealing With the IRS and DOL on Qualified Retirement Plan Matters," New York University Review of Employee Benefits and Executive Compensation 2010, Chapter 11, Matthew Bender & Company, Inc.

4

- "Special Considerations in Designing and Operating an ESOP," <u>BNA Benefit Practitioners' Strategy Guide, BPRC</u>, July 29, 2011

- "Employee Stock Ownership Plans In Corporate Transactions," <u>Financier Worldwide</u>, October, 2011

- "Employer Stock Issues In Qualified Plans," <u>The Practical Tax Lawyer</u>, November 2011

- "Legal Update," <u>ESOP Report</u>, The ESOP Association, November 2011, March 2012, March 2013, May 2014, April 2015, August 2016

- "Where Are We Going With Fiduciary Indemnification?" <u>New York University Review of Employee Benefits and Executive Compensation 2012</u>, Chapter 8, Matthew Bender & Company, Inc.

- "10 Questions: Buying and Selling ESOP Companies," <u>Financier Worldwide</u>, August 2012

- "TalkingPoint: Outlook for ESOPs in 2013," <u>Financier Worldwide</u>, April 2013

- "Moench Presumption Marches Forward" <u>New York University Review of Employee Benefits and Executive Compensation</u> 2013, Chapter 15, Matthew Bender & Company, Inc.

### Documents Considered

1. Complaint filed in the U.S. District Court for the Division of Hawaii in this Litigation on April 27, 2013

2. Motion by Company, Brian J. Bowers and Dexter C. Kubota to Dismiss Complaint

3. Court's Order Denying Motion by Company, Brian J. Bowers and Dexter C. Kubota to Dismiss Complaint

4. Answer and Affirmative Defenses of Defendants Brian J. Bowers and Dexter C. Kubota

5. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan, Effective as of January 1, 2012 (RHYL 000212-000.312)

6. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Trust Agreement, dated December 11, 2012 (RHYL 000313-000.321)

7. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan Summary Plan Description (RHYL 000322-00352)

5

8. Bowers + Kubota Consulting, Inc. Resolution of Board of Directors by Unanimous Written Consent Without a Meeting, dated December 3, 2012 (RHYL 000353-000354)

9. Joint Action of the Directors and Shareholders of Bowers + Kubota Consulting, Inc. Effective December 10, 2012 (RHYL 000355-000358)

10. Amended and Restated Articles of Incorporation of Bowers + Kubota Consulting, Inc. (RHYL 000359-000365)

11. Amended and Restated Bylaws of Bowers + Kubota Consulting, Inc. (RHYL 000366-000379)

12. ESOP Stock Purchase Agreement, dated December 14, 2012 (RHYL 000380-000396)

13. ESOP to Seller Note – Bowers, December 14, 2012 (RHYL 000397-000398)

14. ESOP to Seller Note – Kubota, December 14, 2012 (RHYL 000399-000400)

15. ESOP to Seller Loan and Pledge Agreement – Bowers, dated December 14, 2012 (RHYL 000401-000409)

16. ESOP to Seller Loan and Pledge Agreement – Kubota, dated December 14, 2012 (RHYL 000410-000420)

17. Guaranty, dated December 14, 2012 (RHYL 000439-000444)

18. Libra Valuation Advisors, Inc. Engagement Letter with Nicholas L. Saakvitne and the Company, dated December 7, 2012 (RHYL 000466-000470)

19. Libra Valuation Advisors, Inc. Fair Market Value and Fairness Opinion dated December 14, 2012 (RHYL 000471-000474)

20. Draft Bowers + Kubota Consulting, Inc. Stock Appreciation Rights Plan (RHYL 000528-000545)

21. Brian J. Bowers' Employment Agreement with the Company dated December 14, 2012 (RHYL 000445-000454)

22. Dexter C. Kubota Employment Agreement with the Company dated December 14, 2012 (RHYL 000455-000464)

23. Bowers + Kubota Consulting, Inc. Employee Stock Ownership Trust Written Consent of the Trustee dated February 21, 2013 (RHYL 000480-000482)

24. Joint Resolution of the Board of Directors and Shareholders of Bowers + Kubota Consulting, Inc. dated February 21, 2013 (RHYL 000491-000493)

25. February 15, 2013, Bowers + Kubota Consulting, Inc. Employee Stock Ownership Trust, Trustee Action Approving Amendment and Assumption of Loans and Loan Documents (RHYL 000494-000505)

26. Consent to Amendment and Assumption of Loan and Loan Documents and Assignment of Collateral – Bowers dated March 1, 2013 (RHYL 000506-000507)

27. Consent to Amendment and Assumption of Loan and Loan Documents and Assignment of Collateral – Kubota dated March 1, 2013 (RHYL 000508-000509)

28. ESOP Note – 2013, dated March 1, 2013 (RHYL 000510)

29. ESOP Loan and Pledge Agreement – 2013, dated March 1, 2013 (RHYL 000511-000520)

30. Joint Consent of Directors and Shareholders of Bowers + Kubota Consulting, Inc., dated September 24, 2012 (RHYL 000525-000527)

31. Deposition Transcript for Dexter C. Kubota, dated October 7, 2020 ("Kubota Dep.") and Exhibits

32. Deposition Transcript for Dawn Marugame, October 7, 2020 ("Marugame Deposition") and Exhibits

33. Deposition Transcript for Thomas Nishihara ("Nishihara Deposition"), September 29, 2020 and Exhibits

34. Deposition Transcript for Gary Kuba, October 5, 2020 ("Kuba Deposition") and Exhibits

35. Administrative Deposition Transcript for Gregory M. Hansen, February 23, 2018 ("Hansen Deposition") and Exhibits

36. Administrative Deposition Transcript for Gregory E. Kniesel, ASA, dated December 22, 2017 ("Kniesel 1st Deposition") and Litigation Department January 23, 2018 ("Kniesel 2nd Deposition") and Litigation Deposition, October 20, 2020 and Exhibits

37. Administrative Deposition Transcript for Brian J. Bowers, dated February 23, 2019 ("Bowers 1st Deposition") and Exhibits, and Litigation Deposition Transcript for Brian J. Bowers, dated October 13, 2020 ("Bowers 2nd Deposition")

38. Administrative Deposition Transcript for Nicholas L. Saakvitne, dated November 21, 2017 ("Saakvitne Deposition") and Exhibits

39. Libra Valuation Advisors, Inc. Valuation Report as of December 14, 2012, dated June 4, 2013 (DOL 001536-001595)

7

40. Form 5500 for the ESOP Plan Year 2012

41. Form 5500 for the ESOP Plan Year 2013

42. Form 5500 for the ESOP Plan Year 2014

43. Form 5500 for the ESOP Plan Year 2015

44. Form 5500 for the ESOP Plan Year 2016

45. Form 5500 for the ESOP Plan Year 2017

46. Form 5500 for the ESOP Plan Year 2018

47. URS non-binding initial indication of interest, dated December 3, 2011 (B+KC005141-005144)

48. GMK Consulting Valuation Advisory Service Fair Market Valuation for B+KC, dated May 8, 2012 (Bowers/Kubota 007186-007214)

49. E-mail chain among Gregory M. Hansen, Esq., Gregory E. Kniesel, ASA, Brian J. Bowers and Dexter C. Kubota, October 18, 2012 through October 30, 2012 (Bowers/Kubota 012745-012747)

50. Follow-Up Questions and Answers (between Gregory E. Kniesel, ASA and B+KC), dated November 15, 2012 (Bowers/Kubota 007608-007615)

51. E-mail chain among Gregory E. Kniesel, ASA, Brian J. Bowers and Gregory M. Hansen, Esq. from November 15, 2012, through November 18, 2012 (Bowers/Kubota 012710-012711)

52. E-mail from Gregory M. Hansen, Esq. to Nicholas L. Saakvitne, dated November 21, 2012 (DOL 005009)

53. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, December 11, 2012 (DOL 001463-001465)

54. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, dated December 11, 2012 (DOL 001494-001496)

55. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, dated December 11-12, 2012 (Bowers/Kubota 0182391-0182394)

56. E-mail chain among Gregory M. Hansen, Esq., Brian J. Bowers, Dexter C. Kubota and Nicholas L. Saakvitne, dated December 11, 2012 (Bowers/Kubota 018235-018238)

8

57. E-mail chain among Brian J. Bowers, Gregory M. Hansen, Esq., Dexter C. Kubota and Thomas Nishihara, dated August 6 to 28, 2012 (Bowers/Kubota 018272-018274)

58. E-mail messages among Brian J. Bowers, Gregory M. Hansen, Esq. and Gary Kuba, dated June 19, 2012 to September 2, 2012 (DOL 001927-001930)

59. E-mail chain among Brian J. Bowers, Dexter C. Kubota and Thomas Nishihara, dated July 26, 2012 (B+KC 001922)

60. Email message from Gregory M. Hansen to Gary Kuba, dated August 31, 2012 (DOL 001926)

61. Email message from Brian J. Bowers to Gregory M. Hansen, dated September 12, 2012 (B+KC 002507)

62. Email messages between Gregory M. Hansen and Gary Kuba, dated October 8 and 13, 2012 (BK Exhibits 193 and 194 and Bowers/Kubota 012777)

63. Email messages from Gregory M. Hansen to Gary Kuba and Gregory E. Kniesel, dated October 17, 2012 (Bowers/Kubota 012734, 012776, and 012869)

64. Email message from Gregory E. Kniesel to Gregory M. Hansen and Brian J. Bowers, dated October 18, 2012 (Bowers/Kubota 012732)

65. Financial Statements and Valuation Analysis (110133050-110133075)

66. Plaintiff's Expert Report, Mark Johnson, PhD, October 19, 2020 (the "Johnson Report")

67. Expert Report of Steven J. Sherman, ASA, CPA, October 19, 2020 (the "Sherman Report")

**Opinions**

I continue to hold the opinions expressed in my Initial Report and I have formed additional opinions based on my review and analysis of the Johnson Report and the Sherman Report. My additional opinions are as follows:

**I. Johnson Report**

1. Contrary to Mr. Johnson's claims, there is a wide range of reasonable due diligence, and the Trustee's due diligence in connection with the December 2012 ESOP Transaction fell within this range. Based on my experience and my review of the record in this case, the Trustee and Libra conducted due diligence over a period beginning with Libra's receipt of financial information from the Company and continuing through the Trustee's engagement and review of the transaction and Libra's analysis and opinions prior the closing; these actions were consistent

9

with industry practice and sufficient for a buyer to make a well-informed and reasonable decision about the structure and the valuation of the December 2012 ESOP Transaction.

2. Contrary to Mr. Johnson's opinions, the Trustee and Libra conducted a sufficient and thorough evaluation of the Company's business operations, including the Trustee's on-site interview of Company senior management.

3. The extent of due diligence necessary for a particular transaction depends upon transaction-specific and contextual factors. What is necessary for one transaction should not be used as a benchmark to evaluate the reasonableness of the due diligence conducted in another transaction. This is because of a variety of transaction-specific factors (transaction structure, prior dealings among the parties, sophistication of the parties, time available and objectives of due diligence). That is, different buyers are situated differently, have different objectives and funding sources, among other transaction-specific factors. As aforementioned, the transaction structure was relatively straightforward and did not involve senior bank financing, Seller warrants or a lengthy investor rights agreement. A more complicated transaction structure would have required more due diligence because of issues arising under that structure.

4. Based on my review of Mr. Johnson's credentials and opinions, it does not appear that he is experienced in employee stock ownership transactions, either as a party, fiduciary or advisor.

5. The Johnson Report comments on lack of control do not take into account the fact that the ESOP purchased all of the outstanding stock of the Company, the Trustee has under the terms of the ESOP and the ESOP Trust Agreement unfettered voting discretion for the Shares held by the ESOP and that the employment agreements for each of Bowers and Kubota freeze their base pay for 5 years and provide that incentive bonuses are conditioned upon Company performance in excess of EBITDA projections.

6. As explained in my Initial Report, the Trustee did not bid against itself in the negotiation of the transaction price and terms. The Trustee was concerned with both the price and the interest rate on the Seller Notes. On a $40 million transaction, each 1% interest reduction translates to $400,000 annually.

7. The emphasis placed in the Johnson Report on the URS non-binding indication of interest letter from December 2011 (a year before the Transaction) is inappropriate. Moreover, that letter states that it is not an offer and does not obligate URS to make an offer. That letter was not based on any financial due diligence by URS; the Company did not furnish any financial information to URS in connection with the letter. Based on my experience, many privately-held companies receive such letters and either immediately or ultimately disregard such letters and move on as the Company did in this instance.

8. The Johnson Report largely ignores the existence of the GMK valuation delivered to the Company in May 2012. That report reflects a range of value of the Company that is consistent with the Libra valuation conclusions, and is of far more relevance than the URS letter described above.

9. The Johnson Report concludes that the Board of Directors of the Company were fiduciaries with respect to all aspects of the December 2012 Transaction. This disregards the engagement of the Trustee to independently evaluate and close the transaction and thereby remove the Board of Directors from conflicts-of-interest as Sellers in the Transaction. The Board of Directors had no power or authority to act on behalf of the ESOP in the Transaction or to direct the Trustee to do so.

## II. Sherman Report

1. The Sherman Report is not based on interviews of Company management. Such interviews are an important part of the process for delicately moving through a proposed ESOP transaction. The Libra Report was based on such interviews in its investigation process, which enabled Libra and the Trustee to assess quantitative factors in a contemporaneous manner and to assess qualitative risks facing the Company at the time of the December 2012 ESOP Transaction. Accordingly, the Sherman Report does not reflect such a process.

2. The Sherman Report comments on lack of control do not take into account the fact that the ESOP purchased all of the outstanding stock of the Company, the Trustee has under the terms of the ESOP and the ESOP Trust Agreement unfettered voting discretion for the Shares held by the ESOP and that the employment agreements for each of Bowers and Kubota freeze their base pay for 5 years and provide that incentive bonuses are conditioned upon the Company's performance in excess of EBITDA projections.

3. The emphasis placed in the Sherman Report on the URS non-binding indication of interest letter from December 2011 (a year before the Transaction) is inappropriate. Moreover, this letter states that it is not an offer and does not obligate URS to make an offer. That letter was not based on any financial due diligence by URS; the Company did not furnish any financial information to URS in connection with the letter. Based on my experience, many privately-held companies receive such letters and either immediately or ultimately disregard such letters and move on as the Company did in this instance.

4. The Sherman Report states, in essence, that the ESOP Trustee should have advocated more vigorously on behalf of the ESOP with respect to the negotiations on the terms of the transactions and that it is common practice to seek Board of Director representation to the ESOP through the Trustee or through Director approved members. This is more of a prudence opinion than a valuation opinion and, based on my experience as of December 2012 such a negotiation stance was not yet a common practice. I note however, that the ESOP Trustee had unfettered discretions to vote the Shares held by the ESOP and could appoint or remove the members of the Board at its discretion. Moreover, the employment agreements for each of Bowers and Kubota provided for a freeze of their base compensation for 5 years.

5. The Sherman Report further states that the ESOP Trustee should have effectuated more influence for the ESOP onto the operations of the Company via the amended and restated Articles of Incorporation and the Company Bylaws. Again, this is a prudence opinion, not a valuation opinion and few, if any, ESOP trustees seek to exert influence or control over Company operations and generally leave that to management after the Board sets corporate policy and objectives.

11

I reserve the right to expand or modify these opinions as additional information becomes available.

November 19, 2020

_Gregory K Brown_

Gregory K. Brown

**Exhibit A**

Curriculum Vitae of
GREGORY K. BROWN, Partner
Polsinelli PC
150 North Riverside Plaza, Suite 3000
Chicago, IL 60606-1599
(312) 463-6335
(312) 893-2033 (Fax)
gbrown@polsinelli.com

**Gregory K. Brown** focuses on the practice of Employee Benefits and Executive Compensation. He has experience in all aspects of employee benefits and executive compensation, including extensive work with employee stock ownership plans (ESOPs) and the Employee Retirement Income Security Act (ERISA); he is the author and co-author on numerous articles and is a frequent speaker on ESOPs and all areas of employee benefits and executive compensation. He has also served as an expert witness on various employee benefits and ESOP matters.

Greg is a member of the

American Bar Association,
The ESOP Association of America,
including its Legislative & Regulatory Advisory Committee,
The National Center for Employee Ownership,
Employee-Owned S Corporations of America,
including its Advisory Committee
and
American College of Employee Benefits Counsel

He is the emeritus Chair of the Subcommittee on ESOPs for the Employee Benefits Committee of the Section of Taxation of the American Bar Association; is a past member of The Board of Directors of The ESOP Association; is a past Chair of the ESOP Association Legislative & Regulatory Advisory Committee; is a past Chair of the Employee Benefits Section of the Illinois State Bar Association (past co-editor of the Employee Benefits Section); is a past Chairman of the Employee Benefits Committee of the Chicago Bar Association.

**Profiled:** is profiled in Marquis Who's Who in America (50th through 60th Ed.) and Who's Who in American Law (8th through 14th Ed.); is listed in The Best Lawyers in America (1995-2013); is listed in Chambers USA: America's Leading Lawyers for Business (2007-2014); is listed in Illinois Super Lawyers (2005-2013); recognized as one of "The Most Powerful Employment Attorneys in America (June 2012) by Human Resources Executive magazine; also recognized in 2009 through 2014 as one of the nation's "Top Employment Attorneys" by Human Resources Executive magazine.

**Education: J.D**., University of Illinois (1976); B.S., University of Kentucky (1973).

**Bar Membership**: Illinois.

He is the author of

75463277.6

- "Division of Retirement Plan Assets Upon Divorce", <u>Journal of the American Academy of Matrimonial Lawyers,</u> Vol. 3, page 33, 1987

- "Division of Retirement Plan Assets Upon Divorce," <u>Illinois Institute for Continuing Legal Education Family Law Handbook,</u> 1992, 1998, 2004, 2006, 2011

- "Revising QDROs After Blackston," <u>Illinois Bar Journal,</u> Vol. 83, August 1995

- "S Corporation ESOP Double Jeopardy: Sections 409A and 409(p)," <u>New York University Review of Employee Benefits and Executive Compensation 2006,</u> Chapter 7, Matthew Bender & Company, Inc.

- "What The Matrimonial Lawyer Needs To Know About Non-Qualified Deferred Compensation", <u>Journal of the American Academy of Matrimonial Lawyers,</u> Vol. 20, page 217, 2007

- "What The Matrimonial Lawyer Needs to Know About Non-ERISA Plans, Executive Compensation, and Other Related Plans," <u>Journal of the American Academy of Matrimonial Lawyers,</u> Vol. 26, page 601, 2014

- "Employer Stock Issues In Qualified Plans," <u>The Practical Tax Lawyer,</u> November 2011

He is the co-author of

- "A Financial Advisor Can Minimize the Risks in an ESOP Transaction," <u>Illinois Bar Journal</u>

- "Compensation Opportunities and Problems - The Economic Recovery Tax Act of 1981," <u>Chicago Bar Records</u> (September - October, 1981, Vol. 63, No.2)

- "Uses of Leveraged ESOPs in Corporate Transactions," <u>New York Law Journal,</u> September 15, 1985

- "Maintaining a Qualified Plan Loan Program in Light of New Regulations," <u>Small Business Taxation,</u> Jan./Feb. 1990

- "ESOPs" Bureau of National Affairs, <u>Tax Management Portfolio,</u> 354-4th (1987); 354-5th (1991); 354-7th (2004) and 354-8th (2010)

- "Using Deductible ESOP Dividends To Achieve Corporate Goals," <u>Journal of Pension Planning & Compliance,</u> Fall 1991

- "Use of 'Enterprise Value' When an ESOP Purchases Less Than a Majority of a Company's Outstanding Stock," <u>Tax Management Compensation Planning Journal,</u> June 5, 1992

- "Disposing of a Closely Held Business Through a Tax Deferred Sale to an ESOP," <u>The Journal of Taxation,</u> October 1992

75463277.6

- "Avoiding Problems with IRC §§409(n) and 4979A in IRC § 1042 Multi-Investor ESOP LBOs," Tax Management Compensation Planning Journal, Vol. 21, No.3 (March 5, 1993)

- "Internal Revenue Code §306 and ESOPs," Tax Management Compensation Planning Journal, September 3,1993, Vol. 21, No.9

- "The Kroy Decision: ESOP Advisers Must Do Their Homework," Mergers & Acquisitions, March/April 1994, Vol. 28, No.5

- "Kroy Decision-A Reality Check for Fiduciaries," Tax Management Compensation Planning Journal, July 1994, Vol. 22, No.9

- "Look Before You Leap: Risk Assessment in ESOP Transactions," Probate and Property Magazine, July/August, 1994

- "Employee Stock Ownership Plans After 20 Years," Tax Management Compensation Planning Journal, December 2, 1994

- "Employee Ownership in a Profit- Sharing/401 (k) Plan," National Center for Employee Ownership (Fall 1996)

- "ESOPs and Security Design: Common Stock, Super Common, or Convertible Preferred?" Journal of Pension Planning & Compliance (Summer 1997, Vol. 23, No.2)

- "Terminating an ESOP: Valuation and Fiduciary Issues," The Journal of Employee Ownership Law and Finance (Winter 1999, Vol. 11, No.1)

- "Remedies for Retaliatory Termination of ESOP Committee Members," The Journal of Employee Ownership Law and Finance (Summer 2002, Vol. 14, No.3)

- "The Benefits of Using Loans to Help an ESOP Buy Shares," American Banker, October 25,2002

- "Investment in Employee Stock Ownership Plans Clarified Through Recent Developments" Journal of Taxation of Investments (Summer 2003, Vol. 20, No.4)

- "An Update on Multi-Stage ESOP Transactions," The Journal of Employee Ownership Law and Finance (Fall 2003, Vol. 15, No.4)

- "Reaching an Optimal Level of Employee Ownership In a Profit Sharing Plan/401(k) Plan," Section 401(k) Plans and Employee Ownership, Fourth Edition, (Oakland, CA, NCEO 2003)

- "Fiduciary Hurdles in Selling an ESOP-Owned Company," New York University Review of Employee Benefits and Executive Compensation 2007, Chapter 19, Matthew Bender & Company, Inc.

3

75463277.6

- "New Challenges in Operating Defined Contribution Plans," <u>New York University Review of Employee Benefits and Executive Compensation 2008,</u> Chapter 15, Matthew Bender & Company, Inc.

- "Managing Risk in Your Defined Contribution Plan Company Stock Fund," <u>New York University Review of Employee Benefits and Executive Compensation 2009,</u> Chapter 8, Matthew Bender & Company, Inc.

- "Information and Strategies for Dealing With the IRS and DOL on Qualified Retirement Plan Matters," <u>New York University Review of Employee Benefits and Executive Compensation 2010,</u> Chapter 11, Matthew Bender & Company, Inc.

- "Special Considerations in Designing and Operating an ESOP," <u>BNA Benefit Practitioners' Strategy Guide, BPRC,</u> July 29, 2011

- "Employee Stock Ownership Plans In Corporate Transactions," Financier Worldwide, October, 2011

- "Legal Update," <u>ESOP Report,</u> The ESOP Association, November 2011, March 2012, March 2013, May 2014

- "Where Are We Going With Fiduciary Indemnification?" <u>New York University Review of Employee Benefits and Executive Compensation</u> 2012, Chapter 8, Matthew Bender & Company, Inc.

- "10 Questions: Buying and Selling ESOP Companies," <u>Financier Worldwide,</u> August 2012

- "TalkingPoint: Outlook for ESOPs in 2013," <u>Financier Worldwide,</u> April 2013

- "Moench Presumption Marches Forward" <u>New York University Review of Employee Benefits and Executive Compensation</u> 2013, Chapter 15, Matthew Bender & Company, Inc.

He is also a contributing author to

- <u>Equity Based Compensation for Multinational Corporations,</u> Rodrick, The National Center for Employee Ownership (1998)

- The Handbook of Advanced Business Valuation, Reilly and Schweiss, McGraw-Hill (1999)

- Selling to an ESOP, Rodrick, The National Center for Employee Ownership (2000, 6th Ed.)

- Section 401(k) Plans and Employee Ownership, Rodrick, The National Center for Employee Ownership (2004, 4th Ed.)

- The Handbook of Employee Benefits, Rosenbloom, Dow Jones Irwin (2005)

Employee Stock Ownership Plans, Smiley and Gilbert, Prentice Hall Rosenfeld Launer Publications (New York, 2006)

4

75463277.6