David R. Johanson        (*pro hac vice*)
Douglas A. Rubel        (*pro hac vice*)
HAWKINS PARNELL & YOUNG, LLP
1776 Second Street
Napa, California 94559
Telephone: (707) 299-2470
Facsimile: (707) 581-1704
Email: djohanson@hpylaw.com

William M. Harstad        (8942)
CARLSMITH BALL LLP
1001 Bishop Street, Suite 2100
Honolulu, HI 96813
Telephone: (808) 523-2500
Facsimile: (808) 523-0842
Email: wharstad@carlsmith.com

Attorneys for
BRIAN J. BOWERS and DEXTER C. KUBOTA

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>    Plaintiff,<br><br>    vs.<br><br>SHARON L. HERITAGE, as successor to Nicholas L. Saakvitne, Deceased, *et al.*,<br><br>    Defendants. | Civil No. 1:18-cv-155-SOM-WRP<br><br>BRIAN J. BOWERS' AND DEXTER C. KUBOTA'S **MOTION IN LIMINE NO. 7**: MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PLAINTIFF'S EXPERT MARK JOHNSON; MEMORANDUM OF LAW IN SUPPORT THEREOF |

Brian J. Bowers and Dexter C. Kubota ("Mr. Bowers and Mr. Kubota")

bring this Motion *in Limine* No. 7 (this "Motion") to move this Court to exercise

its gatekeeping function and exclude the designated expert testimony of the Secretary of Labor's (the "Secretary's") prudence expert witness, Mark Johnson, because his testimony does not satisfy the standards of admissibility under Federal Rule of Evidence 702.

In support of this Motion, Mr. Bowers and Mr. Kubota submit the accompanying Memorandum of Law, and supporting declaration with exhibits essential for this Court's determination of this Motion.

DATED:  Honolulu, Hawai'i, April 27, 2021.

/s/ David R. Johanson
DAVID R. JOHANSON
DOUGLAS A. RUBEL
WILLIAM M. HARSTAD

Attorneys for Defendants
BRIAN J. BOWERS AND DEXTER C. KUBOTA

# TABLE OF CONTENTS

I.  Background ............................................................................................................ 5

II. Legal Standard ..................................................................................................... 8

   A.  Johnson Lacks the Necessary Qualifications to Render Opinions in this Case Because He has No Experience with ESOPs Other than as an Expert for the Secretary ...................................................................................10

     1.  Johnson's Educational Background ............................................................. 11

     2.  Johnson's Prior ERISA Experience ........................................................... 12

     3.  ERISA Benefits Consulting, Inc .................................................................. 13

   B.  Even if Johnson Is Admitted to Address Prudence Issues, his Valuation Opinions Must be Excluded ...........................................................................18

   C.  Johnson Failed to Adequately Review the Discovery Record ......................18

   D.  Johnson's Opinions are Impermissible Legal Conclusions and Such Opinions Do Not Make Any Fact More or Less Probable ...........................20

III. Conclusion ........................................................................................................ 26

# TABLE OF AUTHORITIES

## Cases

*Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1999)................................................... 20

*Avila v. Willits Environmental Remediation Trust*,
   633 F.3d 828 (9th Cir. 2011)....................................................................... 15, 16

*BNY Mellon, N.A. v. Affordable Holdings, Inc.*,
   No. 09-cv-226, 2011 WL 2746301 (N.D. Miss. July 12, 2011) ......................... 19

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993) .......... passim

*Envy Hawaii LLC v. Volvo Car USA LLC*,
   No. 17-cv-00040 HG-RT, 2019 U.S. Dist. LEXIS 206319 ................................. 8

*Estate of Barabin v. Asten Johnson, Inc.,* 740 F.3d 457 (9th Cir. 2014)................. 8

*Estate of Sowell v. United States*, 198 F.3d 169 (5th Cir. 1999) ........................... 20

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ........................................................ 9

*General Electric Co. v. Joiner*,
   522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) ........................... 25

*Greene v. Drobocky*,
   No. 1:12-cv-00078-TBR, 2014 WL 3955288 (W.D. Ky. Aug. 13, 2014).......... 21

*Guidroz-Brault v. Missouri Pac. RR. Co.*, 254 F.3d 825 (9th Cir. 2001)................. 9

*Halbach v. Great-West Life & Annuity Ins. Co.*,
   No. 4:05-cv-02399 ERW, 2007 WL 2108454 (E.D. Mo. July 18, 2007) .......... 21

*In re Touch Am. Holdings, Inc., ERISA Litig.*,
   No. 02-cv-106-BU-SHE, 2007 WL 4790799 (D. Mont. Feb. 1, 2007) ............. 21

*Johnson v. Evangelical Lutheran Church in Am.*,
   No. 11-00023 MJD, 2013 WL 1249151 (D. Minn. Mar. 26, 2013) ................... 20

*Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999)......................................... 7, 8

*Nalbandian v. Lockheed Martin Corp.*,
  No. 10-CV-1242-LHK, 2011 WL 3881473 (N.D. Cal. Sept. 1, 2011) .............. 21

*Perez v. Mueller*,
  No. 13-C-1302, 2014 WL 2050606 (E.D. Wis. May 19, 2014) ..................... 5, 14

*Pledger v. Reliance Trust Co.*,
  No. 1:15-cv-4444-MHC, 2019 U.S. Dist. LEXIS 45668
  (N.D. Ga. Feb. 25, 2019) ................................................................................. 22

*Powell v. Tosh*, 942 F. Supp. 2d 678 (W.D. Ky 2013) .......................................... 10

*Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir. 2001) .......... 15

*Rengifo v. Hartford Life & Acc. Ins. Co.*,
  No. 8:09-cv-1725-T-17MAP, 2010 WL 5253137
  (M.D. Fla. Dec. 13, 2010) ............................................................................... 21

*Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992) ................................................. 20

*Scalia v. Reliance Trust Co.*,
  No. 17-cv-4540, 2021 U.S. Dist. LEXIS 38705
  (D. Minn. Mar. 2, 2021) .......................................................................... 14, 15, 22

*Stewart Title Insurance Company v. Credit Suisse*,
  No. 1:11-cv-227-BLW, 2015 U.S. Dist. LEXIS 91493
  (D. Idaho July 13, 2015) ............................................................................... 15, 16

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996).......................................................... 9

*United States v. Hook*, 195 F.3d 299 (7th Cir. 1999) ............................................ 24

*Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232 (S.D. Iowa 2010) ..................... 21

**Statutes**

29 U.S.C. § 1104(a)(1)(B) ................................................................................. 22, 23

29 U.S.C. § 1108(e) ............................................................................................... 12

**Rules**

Fed. R. Evid. 402 .................................................................................. 19

Fed. R. Evid. 702 ........................................................................ 7, 8, 9, 19

Fed. R. Evid. 704(a) .......................................................................... 19

**Treatises**

4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence
    § 702.02[3] (2001) ........................................................................ 8

**MEMORANDUM OF LAW IN SUPPORT OF BRIAN J. BOWERS' AND DEXTER C. KUBOTA'S MOTION IN LIMINE NO. 7:  MOTION TO EXCLUDE THE EXPERT TESTIMONY OF PLAINTIFFS' EXPERT WITNESS MARK JOHNSON**

Brian J. Bowers and Dexter C. Kubota submit the following Memorandum of Law in Support of their Motion in Limine No. 7:  Motion to Exclude the Expert Testimony of the Secretary's expert Mark Johnson ("Johnson").

## I.     Background

The Secretary hired Johnson of ERISA Benefits Consulting, Inc. ("Johnson") to offer "opinions on whether or not the decision of the B+KC ESOP's independent fiduciary and sole trustee, Nicholas L. Saakvitne ("Saakvitne") to have the B+KC ESOP purchase 100% of the B+KC common stock, on December 14, 2012 (the "ESOP Transaction"), was prudent under ERISA and to rebut the expert reports of Gregory K. Brown, Mr. Bowers' and Mr. Kubota's prudence expert, and Howard L. Kaplan, the prudence expert for the 'Saakvitne Defendants' (Sharon L. Heritage and Nicholas L. Saakvitne, A Law Corporation)".

Johnson's testimony and reports, however, will not aid this Court in making such a determination. Johnson does not have sufficient education, training or experience to provide expert testimony regarding ESOPs or the prudence of ESOP fiduciaries.  He has never been a fiduciary of an ESOP.  Deposition Transcript of Mark Johnson, February 4, 2021 ("Johnson Transcript") at 20:21-22, attached as

Exhibit "1" to the accompanying Declaration of David R. Johanson ("Johanson Dec.").[1] He has never advised an ESOP plan sponsor in implementing as ESOP. Id., at 20:24-21:1.  He has never advised as ERISA fiduciary in deciding to enter into an ESOP stock purchase agreement.  Id., 19:9-10.  He has never served as an advisor to any particular ESOP transaction.  Id., 22:6-8. He has never participated in or advised on a transaction regarding what constitutes prudence in an ESOP transactional matter.  Id., 23:4-9.  Johnson has never been involved in a transaction where shares of company stock were sold to an ESOP trust.  Id., 19:9-11; 23:4-9.  Johnson has no experience that would allow him to testify as what the duties are of directors or independent trustees in connection with such a sale.  Id.  Johnson has no knowledge of the process that is followed when stock is sold to an ESOP.  Id.  Johnson purports to render an opinion as to the propriety of a control premium in valuing the shares of Bowers + Kubota Consulting, Inc. ("B+KC"), however, he has never been involved in a transaction that required him to understand whether a plan has acquired control of a company.  Id. at 23:4-9.

---

[1] All references to the Johnson Transcript herein are included in Exhibit 1 to the Johanson Declaration.  Because Johnson refused to answer most questions without referring to his reports (which are not proposed exhibits herein) and to present a fuller picture of Johnson's background and testimony, attached as Exhibits "2" and "3" is a copy of the relevant excerpts of Johnson's deposition transcripts in *Perez v. Mueller*, No. 2:13-cv-1302 (E.D. Wis.) ("Perez Transcript") and *Scalia v. Reliance Trust Co.*, No. 0:17-cv-4540 (D. Minn.) ("Reliance Transcript"), respectively.

Moreover, Johnson testified that he has no knowledge of industry standards of care followed by ESOP fiduciaries in 2012 when the B+KC ESOP transaction at issue took place. In fact, Johnson testified that he does not think that industry standards are even relevant. *Id*. at 161:1-3; *see also Reliance* Dep. at 85:1-5. He does not conduct any research on whether it was typical for companies to hire an independent trustee for such situations. *See Reliance* Dep., at 91:7-24. Johnson does not believe that "industry practice" is relevant to his opinions, and he does not believe that industry practice is a factor in determining whether a fiduciary has acted with the prudence that a prudent person acting in a like capacity and familiar with such matters would use. *See id*. at 140:13-141:21. Johnson's opinion, therefore, goes only to his personal opinion of prudence as of today, not to industry standards, or the prevailing standard at the time, and his opinion goes to the ultimate legal question and infringes upon the role of this Court. Johnson purports to provide the legal standard with respect to prudence and then opines, based upon an inadequate review of the discovery record, that Mr. Saakvitne was not prudent in his conduct as the independent fiduciary and trustee of the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan and Trust (the "ESOP" or the "B+KC ESOP"), and that Mr. Bowers and Mr. Kubota were not "prudent" in their ERISA fiduciary monitoring duties as appointing members of the B+KC board of directors.

Johnson is a professional witness. His only employment is to provide expert testimony. His testimony has been partially or completely excluded in at least seven prior cases as reviewed below. This Court should join those courts in excluding Johnson's testimony.

## II.     Legal Standard

Federal Rule of Evidence ("FRE") 702 provides that:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702. FRE 702 has been amended in response to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993), and in response to the many cases applying *Daubert,* including *Kumho Tire Co. v. Carmichael,* 526 U.S. 137 (1999). In *Daubert,* the Court charged trial judges with the responsibility of acting as gatekeepers to exclude unreliable expert testimony, and the Court in *Kumho*

clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science. *See Kumho,* 526 U.S. at 155-156. These standards were summarized recently in *Envy Hawaii LLC v. Volvo Car USA LLC*, No. 17-cv-00040 HG-RT, 2019 U.S. Dist. LEXIS 206319 (D. Haw. Nov. 26, 2019):

> The Ninth Circuit Court of Appeals has explained that expert testimony is relevant if the evidence logically advances a material aspect of the party's case. *Estate of Barabin v. Asten Johnson, Inc.,* 740 F.3d 457, 463-64 (9th Cir. 2014). The Court considers if an expert's testimony has a reliable basis in the knowledge and experience of the relevant discipline. *Kumho*, 526 U.S. at 149.

*Id*. at *3-4.

The proposed expert testimony must satisfy three prerequisites in order to be admitted under FRE 702. 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 702.02[3] (2001). First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. *Id*. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. *Id*. Third, "the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires . . . ." *Id.*; *see also Daubert*, 509 U.S. at 591.

The basis for the third prerequisite lies in the recent amendment of Rule 702, which adds the following language to the former rule: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles

and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. The language of the amendment codifies *Daubert* and its progeny. *Id.*, Comm. Note.

Expert testimony should be excluded where (i) there is "no factual basis for the assumption" upon which the expert bases his or her analysis, *Guidroz-Brault v. Missouri Pac. RR. Co.*, 254 F.3d 825, 830 (9th Cir. 2001), or (ii) where the "foundational facts establishing relevancy ... are not sufficiently established", *Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1996). A court should not admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**A.      Johnson Lacks the Necessary Qualifications to Render Opinions in this Case Because He Has No Experience with ESOPs Other Than as an Expert for the Secretary**

Johnson's lack of involvement with closely-held companies dealing with ESOP matters clearly demonstrates that his opinions are not relevant to this case. He has no educational background or ERISA experience in ESOP transactions and his sole experience in ESOP matters has been as an expert for the Secretary in this case and in two other ESOP cases. *See* Johnson Report at Exhibit II (CV), attached to the accompanying Declaration of David R Johanson ("Johanson Dec.") as Ex.

4[2]; *see generally* Johnson Dep.; *Reliance* Dep. at 176-177.   Johnson does not

consider himself an ESOP expert on what elements give an ESOP control of a

company, *Reliance* Dep. at 235, yet provides an opinion as to whether the ESOP

obtained control.   In reality, he has no expertise with respect to ESOPs whatsoever.

*See, e.g., Powell v. Tosh,* 942 F. Supp. 2d 678, 709 (W.D. Ky 2013) ("Card's

admitted lack of expertise in relation to this opinion unquestionably requires

exclusion under Rule 702 and Daubert.").   This admission of Johnson's lack of

qualifications alone merits the basis for his exclusion as an expert in this dispute.

Johnson is, therefore, accordingly not qualified to assist this Court in deciding the

ultimate issues of fact in this case.

### 1.   Johnson's Educational Background.

Johnson has no formal training concerning ESOPs. Johnson received a

bachelor's degree in history in 1971.   Johnson Report at Exhibit II (CV).   He

received an M.A. in mass communication and a Ph.D. in communication studies in

1973 and 1976, respectively. *Id*. Johnson received a law degree in 1983. *Id*.;

Johnson Dep. at 14:11-12.

Johnson did not recall receiving any training during any of his coursework

regarding the subject of ESOPs. Johnson testified that he attends a program

---

[2] All references to the Johnson Report herein are provided in Exhibit 4 of the Johanson Dec.

sponsored by the Southwest Benefits Association, the Internal Revenue Service (the "IRS") and the U.S. Department of Labor (the "DOL"), at which there are presentations regarding ESOPs.  Johnson Dep. at 10:8-23.

### 2.    Johnson's Prior ERISA Experience.

Johnson's corporate career did not involve any involvement with either ESOPs or ESOP transactions. It involved employment at Southwestern Bell Corporation and American Airlines, where he had experience administering ERISA benefits plans.  He worked at Southwestern Bell Corporation as an attorney from 1983 to 1987. Johnson Report at Exhibit II (CV). From 1987 to 2003, Johnson was employed at American Airlines in a variety of roles, including Benefits Compliance Counsel and Managing Director of Benefits Compliance & Pensions. *Id*. American Airlines did not have an ESOP while Johnson worked there. *Id*. One of Johnson's responsibilities at American Airlines was to participate in annual plan valuations, but these did not involve the valuation of company stock. *Id*. In summary, from the time of his graduation from law school in 1983 until he started his own consulting company, ERISA Benefits Consulting, Inc. ("EBC") in 2003, Johnson had no experience with ESOPs or ESOP transactions. Johnson did address non-ESOP retirement plans that were governed by ERISA during his tenure at Southwestern Bell Corporation and American Airlines. He also worked with medical and group insurance plans governed by ERISA during his

employment. While the general legal standards regarding fiduciary responsibility under ERISA apply to all types of employee benefit plans, including ESOPs, Johnson's opinions as an expert do not address these legal standards but rather factual opinions. He has no experience with factual issues arising with respect to ESOPs other as an expert witness for a single client, the Secretary.  Johnson has no experience with the specialized fiduciary responsibility standards under ERISA that supplement the general legal standards regarding fiduciary responsibility, including the central standard relevant to this case regarding the mandate that an ESOP trustee cannot acquire shares of company stock for an ESOP for greater than adequate consideration.  ERISA Section 408(e), 29 U.S.C. § 1108(e). *See generally* Johnson Dep.; Reliance Dep.; Perez Dep.

### 3.     ERISA Benefits Consulting, Inc.

Johnson founded EBC in 2003.  He is the only person affiliated with EBC and has no employees or other people working with him. Johnson Dep., 61:25-62:1. EBC is a one-person consulting company, and a good share of that consulting work involves expert testimony.  Johnson Dep., 62:22-63:5.

Johnson's experience at EBC includes "[b]enefits, pension and 401(k) expert testimony & consulting, professional education, advice and research on benefit plan design, operation, interpretation and compliance, litigation support, labor relations." Johnson Report, at Exhibit II (CV). Essentially, Johnson is a

professional witness.

Johnson's lack of experience and familiarity with ESOPs did not materially change after he started EBC.  Johnson has never been involved in any transactions in which an ESOP plan or trust has purchased shares of company stock.  Johnson Transcript at 19:9-11, 20:24-21:1, 22:6-8, 23:4-9.  He is not a member of any of the professional ESOP organizations that virtually every professional involved in the ESOP community joins, such as The ESOP Association and The National Center for Employee Ownership. *Id*. at 9:10-10:3. Johnson lists numerous publications that he has authored, all of which are published on an online forum called HGExperts.com. Johnson Report at Exhibit II, pp. 3-8. None are published in a trade publication, academic journal, or professional association publication, and none have been peer reviewed.

Out of approximately 120 articles authored by Johnson that are listed on his CV, only four mention ESOPs.  Only one of these discusses ESOPs in any depth: *Supreme Court to Hear ERISA Case on Moench Presumption of Prudence*, which discusses the U.S. Supreme Court case *Fifth Third Bancorp v. Dudenhoeffer*.  The other three articles only mention ESOPs tangentially. Johnson has never contributed to any scholarly journals and he has never been asked to review any ERISA-related articles or journals.  Johnson Report at Exhibit II, pp. 3-8.

Johnson was deposed in two previous cases involving an ESOP, *Perez v.*

*Mueller* and *Scalia v. Reliance Trust Co.*  Both involved the sale of company stock to an ESOP, and, like in this case, the Secretary retained Johnson both of these cases.  Both of these cases, like this case, were brought by the Secretary alleging that a purchase of the stock by an ESOP was for more than fair market value. *Perez v. Mueller*, No. 13-C-1302, 2014 WL 2050606 at *1 (E.D. Wis. May 19, 2014); *Scalia v. Reliance Trust Co.*, No. 17-cv-4540, 2021 U.S. Dist. LEXIS 38705 (D. Minn. Mar. 21, 2021). The *Mueller* court did not address whether Johnson was qualified to testify as an expert in an ESOP case before the case settled. Johnson was deposed in *Reliance Trust* (the case is set for trial in September 2021).  In *Reliance Trust*, Johnson's opinions were challenged "on the grounds that he: (1) lacks the necessary qualifications to testify as to the duty of prudence of ESOP fiduciaries; (2) failed to adequately review the evidentiary record; (3) offers opinions that embrace the ultimate issue in this case and thus invade the province of the Court; (4) fails to identify the correct standard for evaluating prudence; and (5) failed to identify the correct standard for evaluating the Directors' duty to monitor Reliance.  *Reliance Trust*, 2021 U.S. Dist. LEXIS 38705 at *16.  The Court rejected this challenge.  *Id.* at *18.  The only other case involving ESOPs in which Johnson was involved was the *In re Enron Corporate Securities Derivative & ERISA Litigation*, in which he did not testify at all and was not qualified as an expert.  Johnson's CV includes a section on "Featured Cases".

Johnson Report at Exhibit II (CV). None of those cases, other than *Mueller, Reliance Trust* and *In re Enron*, involve ESOPs. The conclusion of the District Court in *Reliance Trust* was in error, and should not be followed by this Court.

The Court in *Reliance Trust* viewed Dr. Johnson as qualified by experience, stating:

> Defendants contend that Johnson is unqualified to render an expert opinion in this case because he has no—or at most, very limited—professional experience with ESOPs. ... Specifically, Defendants note that Johnson's only prior professional experience relating to ESOPs specifically was supplying expert testimony in one prior case. (Id.) The DOL responds that the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, and so Johnson's professional experience makes him well qualified to offer opinions in this case.  ... The Court agrees with DOL and finds that Johnson's education, training, and experience are sufficient to qualify him as an expert in this case.

Id. at *16-17.  Such an approach is contrary to the approach taken by the Ninth Circuit and would allow any medical doctor to testify on any medical issue, any scientist to testify on any scientific issue and any engineer to testify on any engineering issue.  The Ninth Circuit has cautioned about the limitations of the general rule that lack of specialization goes to the weight, not admissibility, of an expert opinion, stating that "lack of specialization may go to weight only 'as long as an expert stays within the reasonable confines of his subject area'".  *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828, 839 (9th Cir. 2011) (*citing Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969-70 (10th Cir. 2001).

The application of *Avila's* holding in *Stewart Title Insurance Company v. Credit Suisse*, No. 1:11-cv-227-BLW, 2015 U.S. Dist. LEXIS 91493 (D. Idaho July 13, 2015), bears great similarity to the current case.  In *Stewart Title*, an expert was proposed who, like Johnson, was an attorney with many years of experience. The court stated:

> Thompson is an attorney with over 30 years of experience who has, over the last decade, spent about 80% of his time on insurance coverage and bad faith issues.  *See* Thompson Deposition (Dkt. No. 279-2) at pp. 10-11.  He works primarily on issues arising with auto, health, property and casualty insurance policies.  *Id.* at p. 11.  He has consulted "on a couple of title insurance cases by attorneys in other firms" who inquired about "general concepts of insurance law."  *Id.* at p. 15.  But he has never represented any party to a title insurance bad faith case, has never represented an insured seeking coverage or benefits under a title insurance policy, and has never published or presented any material concerning title insurance.  *Id.*  He admits that title insurance is "not part of my regular practice."  *Id.* at p. 10-11.

> Nevertheless, Thompson testified that he is qualified to give expert opinions on title insurance industry practices and standards.  *See* Thompson Deposition (Dkt. No. 279-2) at p. 16.  The Court disagrees. Thompson has no experience in the title insurance industry with either its practices or standards.  Stewart Title argues that any differences between title insurance and general insurance go the weight of Thompson's opinions not to their admissibility.  But *Avila* requires that the expert stay within the bounds of his expertise.  Thompson cannot testify as to title insurance industry practices and standards because he has no experience with them.  The Court will therefore exclude any testimony from Thompson regarding title insurance industry practices and standards.

Id. at *28.  Like the expert in *Stewart Title*, *Avila*, 633 F.3d 828, 839, compels the conclusion that Johnson is not within the bounds of his expertise in testifying

regarding ESOP transactions. His non-ESOP experience in ERISA does not permit him to testimony as the ESOP transaction practices and standards because he has no experience with them.

### B.     Even if Johnson Is Admitted to Address Prudence Issues, his Valuation Opinions Must be Excluded

Johnson has no experience or expertise as a valuation expert. Johnson Transcript at 22:16-18.  Nevertheless, he has attempted to opine regarding a series of valuation issues that he is not qualified to address, including whether a control premium is appropriate or not (Johnson Report at 2, 17), whether the ESOP obtained control of B+KC upon the purchase of 100% of its shares of company stock (*id.* at 8-10), whether ERISA requires that a full appraisal report be provided at the time of a transaction as opposed to a fair market value opinion letter (*id.* at 1, 13, 18),[3] and the use of accrual method accounting in an appraisal process (*id.* at 2, 17, 18).  At a minimum, this Court must exclude these opinions that are outside the bounds of any expertise of Johnson.

### C.     Johnson Failed to Adequately Review the Discovery Record

Johnson's report set forth a series of conclusory opinions, without discovery record citation, that have no basis in the facts that he states that he has reviewed. Johnson Report at 18-19. Johnson fails entirely to connect the facts that he has

---

[3] Contrast with *Reliance*, where Johnson testified that a fairness opinion would be relevant to his opinion.  *Reliance* Dep. at 115:15-19.

reviewed to his conclusory opinions. Furthermore, Johnson's report relies extensively on the Nicholas L. Saakvitne, November 21, 2017, administrative deposition transcript that Mr. Bowers and Mr. Kubota have requested be excluded from evidence in their Motion *in Limine* No. 2 [Dkt. 419]. Johnson purports to reference the preliminary non-binding indication of interest issued by URS to B+KC as presenting a purchase price of $15 million when even the Secretary's purported valuation expert (Steven J. Sherman) describes the URS indication of interest as in the range of $20-24 million. *See* excerpts from Rebuttal Expert Report of Steven J. Sherman, dated December 18, 2020, at p. 15 n.27 and n.29, attached to the Johanson Dec. as Ex. 6

Johnson's failure to adequately review the discovery record and to substitute a biased and careless conclusion is clearly evidenced by the five places in his initial report that he opines that Saakvitne bid against himself. *See* Johnson Report at pp. 2, 15, 16, 18 and 19. Johnson even emphasizes in bold face type this alleged lack of prudence by Saakvitne, suggesting this to be of critical importance to his views. *Id.* at p. 2, 16 and 19. Indeed, Johnson's statements regarding Saakvitne bidding against himself parrot the allegations in paragraphs 24-28 of the Complaint that fail to recognize the differences in the time zones that Saakvitne and Bowers were in at the time of the ESOP transaction negotiations in December of 2012. [Dkt. 1 at ¶¶ 24-28.] Johnson's deposition testimony confirms his

19

inadequate review of the negotiation process.   Johnson Dep. at 167:1-170:12.
Johnson either engaged in the same misreading of the time stamps of the relevant
e-mails and offer and counteroffers that occurred in the Secretary's drafting of the
Complaint or simply relied solely on the Complaint for his record facts.   The
record is undisputed that Saakvitne was in California (Pacific time) and Mr.
Bowers was in Hawai'i (a significant time difference) at the time of the B+KC
ESOP purchase negotiations and that the negotiations progressed without
Saakvitne negotiating against himself.   *Id*.   Irrespective of whether this Court
views this error as evidence of an inadequate review or of bias by Johnson, it is
clear that Johnson does not provide this Court with the necessary degree of
reliability for his testimony to be of assistance to this Court in making the ultimate
legal determinations in this case.

### D.     Johnson's Opinions are Impermissible Legal Conclusions and Such Opinions Do Not Make Any Fact More or Less Probable.

Under *Daubert* and FRE 402, Johnson's reports and proposed testimony
must be relevant to be admissible.   Expert testimony is "relevant if it helps the trier
of fact to understand the evidence or to determine a fact at issue."   Fed. R. Evid.
702 (emphasis added).   Neither FRE 702 nor FRE 704(a) allows an expert to offer
legal conclusions.   Legal conclusions from experts are inadmissible because they
do not help the trier of fact.   In utilizing their discretion, the Court must ensure that

an expert does not testify as to the governing law of the case.  As stated in *BNY Mellon, N.A. v. Affordable Holdings, Inc.*, No. 09-cv-226, 2011 WL 2746301 at *1 (N.D. Miss. July 12, 2011):

> Federal Courts have consistently held that legal opinions are not a proper subject of expert testimony because they do not assist the trier of fact in understanding the evidence, instead merely telling the trier of fact what result to reach.  *Estate of Sowell v. United States*, 198 F.3d 169, 171-72 (5th Cir. 1999) (forbidding expert testimony as to whether a fiduciary was "acting reasonably"); *Askanase v. Fatjo*, 130 F.3d 657, 672-73 (5th Cir. 1999) (holding that the trial court properly excluded expert legal opinions as to whether defendants breached various fiduciary duties); *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (noting that expert testimony must bring to the trier of facts more than the lawyers can offer in argument).  Lawyers experts cannot opine as to what law governs an issue.

The Courts are clear that legal conclusions provided by experts are not admissible nor are they relevant.  *Daubert*, 509 U.S. at 587.  In this case, Johnson's proposed testimony and reports are inadmissible because they offer legal conclusions.

Johnson's testimony has been partially or completely excluded in at least seven cases because the court concluded that it would not be helpful to the factfinder.  The repeated rejection of Johnson's testimony by a series of different federal district courts citing generally uniform reasons for his exclusion presents a clear warning signal to this Court to scrutinize the admissibility of his opinions. *See Johnson v. Evangelical Lutheran Church in Am.*, No. 11-00023 MJD, 2013 WL 1249151, at *5 (D. Minn. Mar. 26, 2013) (Johnson's report was "not helpful to

the Court because it consists solely of inappropriate plan interpretation and legal conclusions" and "fails to identify or apply any methodology."). *See also Greene v. Drobocky*, No. 1:12-cv-00078-TBR, 2014 WL 3955288, at *3 (W.D. Ky. Aug. 13, 2014) (excluding the "vast majority" of Johnson's testimony and opinions because they were "legal conclusions" as to "whether Defendants' purported actions are violations of ERISA"); *Nalbandian v. Lockheed Martin Corp.*, No. 10-cv-1242-LHK, 2011 WL 3881473, at *5 (N.D. Cal. Sept. 1, 2011) (declining to rely on Johnson's report because it was "largely limited to a review the [sic] factual record and legal conclusions regarding interpretation of the Plan, functioning at best as supplemental briefing for the Plaintiffs"); *Rengifo v. Hartford Life & Acc. Ins. Co.*, No. 8:09-cv-1725-T-17MAP, 2010 WL 5253137, at *9 (M.D. Fla. Dec. 13, 2010) (declining to consider Johnson's affidavit because it consisted of legal conclusions); *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 238 (S.D. Iowa 2010) (finding that the report was "riddled with legal conclusions" and determining that it would "parse Johnson's expert report and his deposition testimony, disregarding all conclusory legal statements while considering the underlying observations and reasoning"); *Halbach v. Great-West Life & Annuity Ins. Co.*, No. 4:05-cv-02399 ERW, 2007 WL 2108454, at *4 (E.D. Mo. July 18, 2007) (excluding Johnson's testimony and report based on a finding that expert testimony was not needed to explain the ordinary meaning of the terms of the plan

at issue); and *In re Touch Am. Holdings, Inc., ERISA Litig.*, No. 02-cv-106-BU-SHE, 2007 WL 4790799, at *1 (D. Mont. Feb. 1, 2007) (summarily granting motion to strike Johnson's report and testimony).  *Cf. Scalia v. Reliance Trust Co.*, No. 17-cv-4540, 2021 U.S. Dist. LEXIS 38705 (D. Minn. Mar. 2, 2021) (concluding that the Johnson opinions were not legal conclusions).

The *Reliance Trust* opinion denying the motion to disqualify Johnson cited to *Pledger v. Reliance Trust Co*., No. 1:15-cv-4444-MHC, 2019 U.S. Dist. LEXIS 45668, at *29 (N.D. Ga. Feb. 25, 2019) ("No doubt Defendants will illustrate to the Court ... how [the expert's] best practices differ from alleged industry practice. These purported flaws, however, do not make [the expert] opinion inadmissible."). Because in this case Johnson has affirmatively stated in this case that he does not think that industry standards are even relevant (Johnson Rebuttal Report at 2), Johnson's opinions do not satisfy the standards found in *Reliance Trust* to be merely flawed but admissible.  This Court should hold Johnson's opinions to be inadmissible.

ERISA provides that an ERISA fiduciary "shall discharge his duties … solely in the interest of the participants and beneficiaries" and must act "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in

the conduct of an enterprise of a like character with the like aims".  ERISA Section 404, 29 U.S.C. § 1104(a)(1)(B).

Under ERISA § 1104(a)(1)(B), a fiduciary must act with "care, skill and prudence … then prevailing that a prudent man acting in a like capacity and familiar with such matters would use".  *Id*.  Acting contrary to the prudence standards would be a breach of such ERISA fiduciary duties under ERISA Section 1104(a)(1)(B).  In his reports, Johnson states that the process followed by Mr. Bowers and Mr. Kubota with respect to their ERISA fiduciary monitoring responsibilities was flawed and not procedurally prudent.  *See* Johnson Report, at 18-19.  Yet, in deposition, Johnson relied solely upon his reports and refused to answer questions.  For example, when asked, "do you have any opinions whether Mr. Bowers violated ERISA at all", Johnson replied, "I don't offer legal opinions and I would have to read my report.  It's — my views on that issue are stated in my report".  *See* Johnson Dep. 68:6-11.  In his initial report, however, Johnson provides a legal opinion:  "[f]ocusing on the process and what was known or knowable on December 14, 2012 the decision to have the B+K ESOP purchase 100% ownership of B+K Consulting for $40 million was not prudent".  Johnson Report at p. 8.  Johnson believes that Mr. Bowers and Mr. Kubota breached their ERISA fiduciary duties because, according to him, they breached their prudence

obligation as a fiduciary and failed to monitor Saakvitne and to question certain of Saakvitne's actions.  *Id*. at pp. 18-19.

Johnson's opinions regarding Mr. Bowers' and Mr. Kubota's alleged violation of prudence, however, require an application of the undisputed facts to the law.   Johnson's testimony and reports espouse his opinions regarding the applicable law.  *See Bona v. Barasch*, 2003 U.S. Dist. LEXIS 8760.  In *Bona*, the Court excluded an ERISA expert's testimony because it "simply offers a legal opinion" as to whether certain documents "constitute *per se* violations of ERISA". *Id*.  Because Johnson's testimony offers a legal opinion as to whether certain documents purport to establish that Mr. Bowers and Mr. Kubota violated the prudence standard required by ERISA, it is likewise inadmissible.  *See*, *e.g.*, *United States v. Hook*, 195 F.3d 299 (7th Cir. 1999) (stating that ERISA expert testimony that a plan was not governed by ERISA was properly excluded).

Indeed, Johnson's interpretation of the relevant law, his application of the facts provided to him by Plaintiff's counsel and his conclusions as to Mr. Bowers' and Mr. Kubota's alleged breach of fiduciary status and compliance with ERISA do nothing more than, "tell the trier of fact how to decide the ultimate issue". Indeed, Johnson's report veers into issues not even before this Court. Johnson contends that Mr. Bowers and Mr. Kubota did not properly vet Mr. Saakvitne (Johnson Report, at 18, Section iv, ¶ 1), whereas the Secretary's Complaint does

not assert that such vetting violated ERISA.  Expert testimony must be sufficiently tied to the facts of case that it will aid the trier of fact in resolving factual dispute. *Daubert*, 509 U.S. at 592-93.

The mere fact that Johnson states that his method is valid simply because it comes from his years of experience does not require this Court to admit opinion evidence based on Johnson's methodology.  *General Electric Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) (stating that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to exiting data only by the unproven statements of an expert").

## III.   Conclusion

Johnson's testimony is not helpful to this Court and does not satisfy the standards of admissibility under FRE 702.

WHEREFORE, Mr. Bowers and Mr. Kubota respectfully request that this Court to grant their Motion in Limine No. 7:  Motion to Exclude the Testimony of Mark Johnson, and prohibit him from offering expert testimony in this case.

DATED:  Honolulu, Hawai'i, April 27, 2021.

/s/ David R. Johanson
DAVID R. JOHANSON
DOUGLAS A. RUBEL
WILLIAM M. HARSTAD

Attorneys for Defendants
BRIAN J. BOWERS AND DEXTER C. KUBOTA