CHRISTINE Z. HERI
Regional Solicitor
RUBEN R. CHAPA
Counsel for ERISA
U.S. Department of Labor
Office of the Solicitor
230 S. Dearborn St., Suite 844
Chicago, Illinois 60604
T: (312) 353-6993| F: (312) 353-1145
Chapa.ruben@dol.gov
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

MARTIN J. WALSH,[1] Secretary of
Labor, United States Department of
Labor,

     Plaintiff,

v.

SHARON L. HERITAGE, as successor
to Nicholas L. Saakvitne, Deceased;
NICHOLAS L. SAAKVITNE, A LAW
CORPORATION, a California
corporation; BRIAN J. BOWERS, an
individual; DEXTER C. KUBOTA, an
individual; BOWERS + KUBOTA
CONSULTING, INC., a corporation;
BOWERS + KUBOTA
CONSULTING, INC. EMPLOYEE
STOCK OWNERSHIP PLAN,

     Defendants.

CASE NO. 1:18-cv-00155-SOM-WRP

**SECRETARY OF LABOR'S
RESPONSE IN OPPOSITION TO
DEFENDANTS BRIAN J. BOWERS'
AND DEXTER C. KUBOTA'S
MOTION IN LIMINE NO. 4 TO
EXCLUDE TESTIMONY OF
MARCUS R. PIQUET**

---

[1] By operation of law, Martin J. Walsh, Secretary of Labor, is substituted for
former Acting Secretary of Labor Milton Al Stewart. Fed. R. Civ. P. 25(d).

Table of Contents

I.     BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    LEGAL STANDARD. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

     A. Personal Knowledge and Relevance . . . . . . . . . . . . . . . . . . . . . 5

     B. Lay Opinion Testimony. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     A.  Piquet's testimony Provides Relevant Information Regarding The ESOP and the ESOP Transaction. . . . . . . . . . . . . . . . . . . . . 11

     B. Piquet's Personal Notes Regarding the ESOP Transaction Constitutes Permissible Lay Witness Opinion Testimony . . . . . . 13

     C. Piquest's Testimony is not being Offered as Expert Testimony. . 14

IV.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Table of Authorities

## **Cases**

Cator v. Herrgott & Wilson, Inc.,
    609 F.Supp. 12, 16 (N.D. Cal. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Chao v. Hall Holding,
    285 F.3d 415, 431 (6th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Cleveland v. Groceryworks.com, LLC,
    200 F. Supp. 3d 924, 949 (N.D. Cal. 2016). . . . . . . . . . . . . . . . . . . . . . .9

Cmty. Assoc. for Restoration of the Environ., Inc. v Cow Palace, LLC
    80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015) . . . . . . . . . . . . . . . . . . . .6

Donovan v. Bierwirth,
    680 F.2d 263, 272 (2d Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Donovan v. Walton,
    609 F.Supp. 1221, 127 n. 10 (S.D. Fla. 1985). . . . . . . . . . . . . . . . . . . . .16

EEOC v. Farmer Bros. Co.,
    31 F.3d 891, 898 (9th Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

First Annapolis Bancorp., Inc. v. United States,
    72 Fed. Cl. 204, 207 (Fed. Cl. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . .10

Fresenius Med'l Care Holdings, Inc. v. Baxters, Int'l, Inc.,
    No. C 03-1431 SBA, 2006 WL 1330002,
    at *3 (N.D. Cal. May 15, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.
    669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009). . . . . . . . . . . . . . . . . . . . .7

Howard v. Shay,
    100 F.3d 1484, 1489 (9th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Joshua David Mellberg LLC v. Will,
 386 F. Supp. 3d 1098, 1102 (D. Ariz. 2019). . . . . . . . . . . . . . . . . . . . . .8, 9

L.A. Times Commc'ns, LLC v. Dep't of Army,
 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006). . . . . . . . . . . . . . . . . . . . . .8

Lativafter Liquidating Trust v. Clear Channel Commc'ns,
 345 F. App'x 46, 51 (6th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . .9, 10

Lightning Lube, Inc. v. Witco Corp.,
 4 F.3d 1153, 1175 (3d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 10, 11

Luce v. United States,
 469 U.S. 38 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Lyondell Chem. Co. v. Occidental Chem. Corp.,
 608 F.3d 284, 295 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Martin v. Feilen,
 965 F.2d 660, 670-71 (8th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 16

M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc. Inc.,
 681 F.2d 930, 932 (4th Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Nationwide Transport Finance v. Cass Information Sys., Inc.,
 523 F.3d 1051, 1058 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . .7

Old Chief v. U.S.,
 519 U.S. 172 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

Ryan Development Co. v. Indiana Lumbermens Mut. Ins. Co.,
 No. 09-1264-EFM, 2011 WK 5080309, at *5 (D. Kan. Oct. 25, 2011). . 10

Skolnik v. Lehman Bros. Bank, FSB,
 No. SACV 12-1197 JGB 2014 WL 12927314, at *5
 (C.D. Cal. Apr. 2, 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

State v. Brown,
 836 S.W. 2d 530, 549 (Tenn. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . .7

Stuart v. UNUM Life Ins. Co. of Am.,
    217 F.3d 1145, 1155 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Teen-Ed, Inc. v. Kimball Intern., Inc.,
    620 F.2d 299, 404 (3d Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 10

United States v. Crawford,
    239 F.3d 1086, 1091 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Cruz-Garcia,
    344 F.3d 951, 956 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

United States v. Denberg,
    212 F.3d 987, 993 (7th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . .11, 12

United States v. Freeman
    498 F.3d 893, 905 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

United States v. Gadson,
    763 F.3d 1189, 1209 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . .8

United States v. Joy
    192 F.3d 761, 767 (7th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

United States v. Miguel,
    87 F. App'x 67, 68-69 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . .6

United States v. Oaxaca
    569 F.2d 518, 526 (9th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Preston,
    873 F.3d 829, 837 (9th Cir. 2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

United States v. Sinclair
    109 F.3d 1527, 1536 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . .6

United States v. Starnes,
    583 F.3d 196, 215 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

United States v. Thompson
    559 F.2d 552, 553-54 (9th Cir. 1977). . . . . . . . . . . . . . . . . . . . . . . . . . . .7

## **Rules**

Federal Rule of Evidence 402. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 11

Federal Rule of Evidence 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .passim

Federal Rule of Evidence 601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Federal Rule of Evidence 602. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 6

Federal Rule of Evidence 701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 7, 8,13

Federal Rule of Evidence 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5, 7

Federal Rule of Evidence 703. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

## **Statutes**

28 U.S.C.App., p. 860. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

29 U.S.C. Section 1104(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Secretary"), files this response in opposition to Defendants Brian J. Bowers' and Dexter C. Kubota's ("Defendants") Motion *in Limine* No. 4 to Exclude Testimony from Marcus R. Piquet ("Piquet"). Contrary to Defendants' assertions in their MIL No. 4, the Secretary is not eliciting expert testimony from Piquet. The Secretary is eliciting testimony from Piquet based on his personal knowledge regarding his background and the number of years he provided services as the third party administrator for the Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan ("ESOP"). A part of his testimony touches on his personal notes of the ESOP purchase that occurred on December 14, 2012 ("ESOP Transaction"). Govt. Exhibit A, Piquet Depn Tr. 174. Defendants claims that his testimony constitutes expert testimony is equivalent to saying any service provider who provides long standing service to an ERISA plan cannot testify to his observations. His testimony is based on personal knowledge and the information he was given during his long-standing service to the ESOP. Therefore, for the reasons discussed below, this Court should deny Defendants' MIL No. 4 to exclude Piquet's testimony.

## I.      BACKGROUND

On April 27, 2018, the Secretary filed this action alleging that Defendants, along with Nicholas L. Saakvitne ("Saakvitne"), breached their fiduciary duties and engaged in a prohibited transaction when they caused the ESOP to pay $40 million, which was more than fair market value, for Company stock on December 14, 2012. ECF No. 1. In support of his allegations, the Secretary argues that Defendants orchestrated a scheme to sell their shares of Company stock to the ESOP for the inflated price of $40 million after failing to secure an offer of that magnitude from private buyer URS. *See* ECF No. 353.

Defendant Bowers retained Piquet in early to mid October 2012 to provide services to the ESOP.  DOL Exhibit 501.  Piquet is a certified public accountant. He worked both as an accountant and for American ESOP Advisors, LLC (later changing to Ambrose ESOP Advisors, LLC) from 2001 through at least 2020. Govt. Exhibit A, Piquet Dep. Tr. p. 26-27.  Piquet consulted with Defendant Bowers and Defendant Kubota since 2012.  He was involved with the ESOP since its inception.  Through Ambrose he provides third party administration, tax advice, consulting, and record-keeping services to ESOPs. Govt. Exhibit A, Piquet Dep. Tr. p. 27, 34.  At Ambrose he worked as a plan administrator, manager, and then became an owner.  Govt. Exhibit A, Piquet Dep. Tr. p. 29.  He is familiar with ERISA. Govt. Exhibit A, Piquet Dep. Tr. p. 29.  He was accustomed to consulting with clients prior to the formation of ESOPs.  Govt. Exhibit A, Piquet Dep. Tr. p.

42-43.  Given that Piquet has a multi-disciplinary background and his firm has a

CPA background, from 2008 through 2013 Ambrose helped its clients with

leveraged ESOP transactions.  Govt. Exhibit A, Piquet Dep. Tr. p. 44.  He provided

tax accounting services to B+K.  Govt. Exhibit A, Piquet Dep. Tr. p. 57. He

discussed corporate tax savings that could be generated through an ESOP sale with

B+K.  Govt. Exhibit A, Piquet Dep. Tr. p. 70.

Specifically with respect to B+K he was retained to provide a number of

services to the ESOP. DOL Exhibit 501.  The retention agreement signed by Piquet

and Defendant Bowers identified that the firm's public accounting and auditing

background set it apart from others.  DOL Exhibit 501 at DOL 001512.  It also

provides a number of services that require intimate understanding of the ESOPs he

serviced.  DOL Exhibit 501 at DOL 001513.  Piquet first became involved in the

ESOP in early to mid October 2012.  Govt. Exhibit A, Piquet Dep. Tr. p. 114.

Piquet confirmed that he worked with the ESOP's valuation professional in order

to adjust the value of the stock account.  Govt. Exhibit A, Piquet Dep. Tr. p. 112-

13. He also confirmed that he worked with B+K's valuation professional in order

to ensure that his firm would meet its requirements.  Govt. Exhibit A, Piquet Dep.

Tr. p. 113. He also identified his discussions with Defendant Kubota and consulted

with BK regarding paying a dividend.  Govt. Exhibit A, Piquet Dep. Tr. p. 116.  In

his role prior to the ESOP transaction he reviewed B+K financial data, closing

transaction documents. Govt. Exhibit A, Piquet Dep. Tr. p. 117, 124. Post

transaction Piquet's firm prepared the Annual 5500 for the ESOP, which consisted

essentially of preparing the tax return for the ESOP. Govt. Exhibit A, Piquet Dep.

Tr. p. 125.

Also post transaction Piquet reviewed the transaction and the financial

performance of B+K post transaction. DOL Exhibit 508; Govt. Exhibit A, Piquet

Dep. Tr. p. 166. He performed this review for internal risk assessment purposes

and to determine whether there were any valuation issues. Govt. Exhibit A, Piquet

Dep. Tr. p. 166. Piquet's personal notes show actual financial performance versus

projected performance. Govt. Exhibit A, Piquet Dep. Tr. p. 168. His personal

notes relied on hard figures. Govt. Exhibit A, Piquet Dep. Tr. p. 174. Defendant

Bowers and Kubota's argument calling into question Piquet's personal notes is

based on providing Piquet with assumptions that parse the financial figures in a

manner that it claims increases the value of B+K. ECF 449 at 18. In describing

one of the approaches for valuing company stock Piquet said that the discounted

cash flow ("DCF") method is a "simple concept". Govt. Exhibit A, Piquet Dep.

Tr. p. 183. Piquet acknowledged that he had seen over 100 analysis using the DCF

approach. Govt. Exhibit A, Piquet Dep. Tr. p. 192-93. Similarly, Piquet

acknowledged his understanding of control premiums was that the approach

selected by Libra Valuation Advisors ("LVA"), the appraiser retained to identify

fair market value for the ESOP transaction, already included a control premium, therefore, adding an additional control premium incorrectly increased the value. Govt. Exhibit A, Piquet Dep. Tr. p. 191.

## II.   LEGAL STANDARD

### A. Personal Knowledge and Relevance

Federal Rule of Evidence 601 provides that "[E]very person is competent to be a witness unless these rules provide otherwise."  The Federal Rules of Evidence permit witnesses to testify as to their personal knowledge of the facts of the case, or to provide opinion testimony as a lay or expert witness.  Fed. R. Evid. 602, 701, 702.  A competent witness with personal knowledge providing relevant testimony should be permitted to testify, assuming the probative value of the witness's testimony is not outweighed by dangers such as unfair prejudice or confusion of the issues.  Fed. R. Evid. 403, 601, 602.

Federal Rule of Evidence 402 clearly provides that "relevant evidence is admissible" except in very limited circumstances.  Setting aside all other concerns, courts have excluded relevant testimony when "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, consuming the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403. However, Rule

5

403 "has a limited role, if any, in a bench trial," particularly with respect to the dangers of unfair prejudice and misleading the jury. *Cmty. Assoc. for Restoration of the Environ., Inc. v. Cow Palace, LLC*, 80 F. Supp. 3d 1180, 1216 (E.D. Wash. 2015) (*citing EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 898 (9th Cir.1994)); *see also Skolnik v. Lehman Bros. Bank, FSB*, No. SACV 12-1197 JGB, 2014 WL 12927314, at *5 (C.D. Cal. Apr. 2, 2014) (unpublished) ("Because this will be a bench trial, it is much less likely that that evidence will be unfairly prejudicial or confuse the issues, and it will not mislead a jury."). Rule 403 does not preclude the introduction of cumulative evidence; exclusion is permitted only if such evidence has "little incremental value." *United States v. Miguel*, 87 F. App'x 67, 68-69 (9th Cir. 2004) (unpublished).

Generally, a witness must have personal knowledge of a matter to testify. Fed. R. Evid. 602. Testimony should only be excluded if, in the trial court's discretion, "the witness could not have actually perceived or observed that which he testifies to." *United States v. Sinclair*, 109 F.3d 1527, 1536 (10th Cir. 1997) (*citing M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930, 932 (4th Cir. 1982)). Personal knowledge need not be based only on first-hand observation, but may also arise from a witness's position in a company and review of certain policies, procedures, or reports. *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1155 (9th Cir. 2000) (Vice President of Corporate Services had

6

sufficient personal knowledge of company procedures to testify the company contributed to ERISA plan); *United States v. Thompson*, 559 F.2d 552, 553-54 (9th Cir. 1977) (manager of restaurant had personal knowledge to testify about restaurant's normal procedures). "Personal knowledge includes opinions and inferences grounded in observations and experience." *Great Am. Assur. Co. v. Liberty Surplus Ins. Corp.*, 669 F. Supp. 2d 1084, 1089 (N.D. Cal. 2009) (*citing United States v. Joy*, 192 F.3d 761, 767 (7th Cir. 1999)).

B. **Lay Opinion Testimony**

Lay opinion testimony is permitted if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge with the scope of Rule 702." Fed. R. Evid. 701. Lay witness testimony "results from a process of reasoning familiar in everyday life" rather than that "mastered only by specialists in the field." Fed. R. Evid. 701 advisory committee's note to 2000 amendment (*citing State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). The admissibility of lay opinion testimony lies within the trial court's "sound discretion" and will only be overturned if it constitutes a clear abuse of discretion. *Nationwide Transport Finance v. Cass Information Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

Lay opinion must be based on the lay witness's direct perception of an event. *United States v. Freeman*, 498 F.3d 893, 905 (9th Cir. 2007); *United States v. Oaxaca*, 569 F.2d 518, 526 (9th Cir. 1978), *overruled on other grounds by Luce v. United States*, 469 U.S. 38 (1984). However, the witness need not be "personally present or involved in every interaction that he or she is testifying to." *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1102 (D. Ariz. 2019) (*citing United States v. Gadson*, 763 F.3d 1189, 1209 (9th Cir. 2014)); *see also Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1175 (3d Cir. 1993) (reliance on report prepared by an outsider did not render testimony beyond the scope of Rule 701).

In contrast, an expert witness may not only testify to perceived facts or data, but what is made known to them and may answer hypothetical questions. *Teen-Ed, Inc. v. Kimball Intern., Inc.*, 620 F.2d 399, 404 (3d Cir. 1980) (*citing* Fed. R. Evid. 703 and advisory committee notes); *see also United States v. Preston*, 873 F.3d 829, 837 (9th Cir. 2017) (therapist not proffered as expert witness could not give general opinions about sexual abuse, only lay opinion as to her treatment of victim).

"Courts may allow lay witnesses to testify to opinions based on a combination of their personal observations regarding the incident in question and their specialized knowledge obtained through their vocation." *L.A. Times*

8

*Commc'ns, LLC v. Dep't of Army*, 442 F. Supp. 2d 880, 887 (C.D. Cal. 2006) (*citing United States v. Crawford*, 239 F.3d 1086, 1091 (9th Cir. 2001)). "[W]hen a witness testifies to institutional operations and practices based on personal knowledge that the witness has accrued over several years of employment, the witness usually is providing lay testimony not subject to the rule governing admission of expert testimony." *Cleveland v. Groceryworks.com, LLC*, 200 F. Supp. 3d 924, 949 (N.D. Cal. 2016). However, the distinction between expert and lay opinion must be carefully considered in light of a witness's personal knowledge and experience versus specialized explanations or interpretations requiring expertise. For instance, a lay witness's opinions and observations regarding a heart lung machine he helped design in the course of his employment were properly considered by the district court; but that same witness's opinions as to the applicability of a patent to that machine and whether certain components were well known in the industry were excluded as improper expert testimony. *Fresenius Med'l Care Holdings, Inc. v. Baxter, Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1330002, at *3 (N.D. Cal. May 15, 2006) (unpublished).

Several courts have permitted lay opinions as to valuation or losses of a company based on personal knowledge and the lay witness's relationship to the business. *See, e.g., Lativafter Liquidating Trust v. Clear Channel Commc'ns*, 345 F. App'x 46, 51 (6th Cir. 2009) (unpublished) (investor and board member of

9

company was permitted to testify regarding lay opinion of projected value); *First Annapolis Bancorp., Inc. v. United States*, 72 Fed. Cl. 204, 207 (Fed. Cl. 2006) ("While lay witness opinion testimony is more restricted than expert testimony, a lay witness accountant may testify on the basis of facts or data perceived in his role as an accountant based on his personal knowledge of the company."); *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d at 1174-75 (permitting owner to testify to calculation of future profits based on knowledge of the business); *Teen-Ed, Inc.*, 620 F.2d at 403-04 (permitting lay opinion testimony of company's longstanding accountant as to loss of profits); *Ryan Development Co. v. Indiana Lumbermens Mut. Ins. Co.*, No. 09-1264-EFM, 2011 WL 5080309, at *5 (D. Kan. Oct. 25, 2011) (lay opinion evidence admissible where accountants had personal knowledge of the business and "did not testify as to special accounting procedures or complicated, specialized methods used to calculate the loss," but rather applied "simple mathematical equations" and "straightforward calculations").

In *Lativafter*, a venture capitalist who invested in Eon Streams, Inc. ("Eon") and served on its board was permitted to testify as a lay witness in a breach of contract action as to Eon's projected value had the breach of contract not occurred. 345 F. App'x at 50. As an investor, the venture capitalist "investigated Eon's financials, retaining a market research firm to verify Eon's market potential." *Id.* As a board member, the venture capitalist received "monthly financial reports,

10

including income statements, balance sheets, and cash flow statements." *Id.*

Although not qualified or disclosed as an expert, the court permitted the opinion

testimony based on the venture capitalist's "personal, particularized knowledge" of

Eon's value baas a result of his personal review of Eon's finances. *Id.* at 51.

### III.   ARGUMENT

#### A. Piquet's testimony Provides Relevant Information Regarding the ESOP and the ESOP Transaction.

As a service provider to the ESOP since 2012, Piquet provides relevant

testimony regarding his involvement in the ESOP transaction and providing

services to the ESOP.  His testimony is all based on personal knowledge and

reasonable belief.  His testimony reflects:  his background (Govt. Exhibit A, Piquet

Depn Tr. 28-29); his work (*Id.* at 33-34); and his personal knowledge regarding

B+K (*Id.* at 57, 70-72, 75, 107, 111, 117, 124-125, 165-174).  This relevant

testimony reflects what occurred both before and after the ESOP transaction and

why Piquet believed, based on the financial data he was given by B+K, that the

financial projections were not accurate.

Excluding testimony from an eyewitness is contrary to the purpose of

admitting relevant evidence pursuant to Fed. R. Evid. 402.    Rule 403 favors the

admissibility of relevant evidence. Exclusion of relevant evidence under Rule 403

is employed sparingly as it is an extraordinary remedy. *U.S. v. Denberg*, 212 F.3d

11

987, 993 (7th Cir. 2000) ("In 'weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission.'")   The burden is on the objecting party to show that the evidence should be excluded. *Lyondell Chem. Co. v. Occidental Chem. Corp.*, 608 F.3d 284, 295 (5th Cir. 2010).

Defendant Bowers and Kubota fail to meet their burden of establishing that Piquet's testimony should be excluded.  Defendants do not dispute that Piquet's testimony is relevant instead they argue that his testimony is prejudicial (ECF 449 at 8), that the Secretary "attempted to develop expert testimony out of Mr. Piquet" (ECF 449 at 9), and question the reliability of Piquet's testimony (ECF 449 at 19).

Defendants fail to meet their burden of establishing that the testimony is substantially outweighed by unfair prejudice.  First, as this is not a jury trial Defendants arguments that the evidence would confuse the court lacks merit. The court has a broad spectrum of experience in sifting through information to determine what if any weight it will give to evidence.  Second, since all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered, prejudice which calls for exclusion is given a more specialized meaning: an undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror. *United States v. Starnes*, 583 F.3d 196, 215 (3d Cir.2009) ('[U]nfair

prejudice does not simply mean damage to the opponent's cause.' (citation and internal quotation marks omitted)).") It must always be remembered that unfair prejudice is what Rule 403 is meant to guard against, that is, prejudice 'based on something other than [the evidence's] persuasive weight.' *United States v. Cruz—Garcia*, 344 F.3d 951, 956 (9th Cir.2003). '"Unfair prejudice" refers to "the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. U.S.*, 519 U.S. 172(1997)); Advisory Committee's Notes on Fed. Rule Evid. 403, 28 U.S.C.App. p. 860 ('Unfair prejudice' within its context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.").

Defendants point to no indicia that would lead the court to provide undue weight to Piquet's testimony. Therefore, there are no grounds to believe that Piquet's testimony would be given undue weight.

### B. Piquet's Personal Notes Regarding the ESOP transaction Constitutes Permissible Lay Witness Opinion Testimony

Defendants also fail to establish that Fed. R. Evid. 701 would preclude the entry of Piquet's testimony regarding his personal notes of the ESOP transaction. In 2018, for his own purposes Piquet reviewed the ESOP Transaction and the annual financial records provided by B+K for years thereafter, and created an excel

spreadsheet documenting his review.  DOL  Exhibit 508.  Contrary to Defendants' claims, determining the value of a company is not rocket science.  While a number of companies and individuals earn a living off of valuing a variety of items it does not mean that a lay person cannot review the transaction.  Especially for a person that is a certified public accountant and has consulted on ESOP transactions for a number of years. While Defendant Bowers and Kubota take issue with Piquet not having any "graduate degrees", one of Defendant Bowers and Kubota's valuation experts, Kenneth Pia, also lacks any graduate degrees.    ECF 449 at 14; Govt. Exhibit B, Kenneth Pia deposition transcript at 12.  As part of their business both Piquet and Pia are certified public accountants and have reviewed valuations of companies.  Therefore, Defendant Bowers and Kubota's concerns about Piquet not having a graduate degree should not diminish his ability to testify regarding B+K's value, because if it did the Court would have to consider whether Pia is qualified to testify.

### C. Piquet's Testimony is not being Offered as Expert Testimony

Defendant Bowers and Kubota do not argue that the Secretary is offering Piquet as an expert instead they argue that the questions that were asked in the deposition were questions for an expert.  ECF 449 at 8.  The deposition transcript contradicts Defendant Bowers and Kubota's claim.  All if not most of the questions the Secretary asked Piquet elicited information related to his background (Govt.

14

Exhibit A, Piquet Depn Tr. 28-29), his work (*Id.* at 33-34), and his personal

knowledge regarding B+K (*Id.* at 57, 70-72, 75, 107, 111, 117, 124-125, 165-174).

Interestingly enough, it was Defendant Bowers and Kubota's deposition

questioning of Piquet that followed the path of eliciting expert testimony.  ECF

449 at 18.  They asked Piquet to make new assumptions, not based on his personal

knowledge, regarding the data he had reviewed earlier, and based on those

assumptions reach a conclusion. Govt. Exhibit A, Piquet Tr. 317-319. These

questions essentially consisted of giving Piquet hypotheticals to answer.

Defendants asked Piquet to rely on a document created by LVA, post transaction,

which argues revenues were increased by more than $7 million.  Govt. Exhibit A,

Piquet Tr. 317-319. In another instance Defendants Bowers and Kubota introduced

an issue that Piquet had no personal knowledge of and expected him to revise his

testimony.  ECF 449 at 18.  Asking witnesses to base their testimony on

assumptions instead of personal knowledge is typically only done when

questioning an expert witness.

Defendant Bowers and Kubota's claim is further undercut by the fact that no

party has named Piquet as an expert and his background and testimony speak for

itself.

Further, at its core Defendant Bowers and Kubota's argument, that only an

expert could opine on the value of a company, is contradicted by the statute and the

case law.  ERISA Section 404(a)(1)(B), 29 U.S.C. Section 1104(a)(1)(B), requires that a fiduciary "shall discharge his duties with respect to a plan…with the care, skill, prudence, and diligence under the circumstances then prevailing that  a prudent **man** acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Emphasis added.*  This standard does not require a "prudent expert".  Further, courts have consistently held that the fiduciary cannot retain an expert and then hide behind the expert's opinion.  *Howard v. Shay,* 100 F.3d 1484, 1489 (9th Cir.1996) ("independent expert advice is not a 'whitewash.'") (citing *Donovan v. Bierwirth,* 680 F.2d 263, 272 (2d Cir.1982); *Chao v. Hall Holding,* 285 F.3d 415, 431 (6th Cir. 2002); *Martin v. Feilen,* 965 F.2d 660, 670–71 (8th Cir.1992); *Donovan v. Walton,* 609 F.Supp. 1221, 1227 n. 10 (S.D.Fla.1985); *Cator v. Herrgott & Wilson, Inc.,* 609 F.Supp. 12, 16 (N.D.Cal.1984)).[2]  Therefore, a fiduciary has to make the determination as to whether the price they are offering, on behalf of the ESOP, to purchase the shareholders stock is no more than fair market value.  Since the fiduciary in most instances is not an expert on determining value of a company and

---

[2] The Ninth Circuit promulgated three requirements, for a fiduciary of an ESOP when relying upon expert advice:  The fiduciary must (1) investigate the expert's qualifications ... (2) provide the expert with complete and accurate information ... and (3) make certain that reliance on the expert's advice is reasonably justified under the circumstances.  *Howard,* 100 F.3d at 1489.

makes such a determination, Piquet can also testify to this issue.  Thus, Defendants have failed to meet their burden of establishing Fed. R. Evid. 403 warrants exclusion of Piquet's testimony.

Therefore, Defendants inference that Piquet's testimony rises to the level of expert testimony lacks merit.


## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Defendants' MIL No. 4 and allow Piquet's testimony.


Dated: April 29, 2021                           Respectfully submitted,

                                                **ELENA S. GOLDSTEIN**
                                                Deputy Solicitor of Labor

                                                **CHRISTINE Z. HERI**
                                                Regional Solicitor


                                                /s/ Ruben R. Chapa
                                                **RUBEN R. CHAPA**
                                                ERISA Counsel


                                                Attorneys for **MARTIN J. WALSH**,
                                                Secretary of Labor, United States
                                                Department of Labor, Plaintiff