David R. Johanson        (*pro hac vice*)
Douglas A. Rubel        (*pro hac vice*)
HAWKINS PARNELL & YOUNG, LLP
1776 Second Street
Napa, California 94559
Telephone: (707) 299-2470
Facsimile: (707) 581-1704
Email: djohanson@hpylaw.com
E-mail: drubel@hpylaw.com

William M. Harstad        (8942)
CARLSMITH BALL LLP
1001 Bishop Street, Suite 2100
Honolulu, HI 96813
Telephone: (808) 523-2500
Facsimile: (808) 523-0842
Email: wharstad@carlsmith.com

Attorneys for BRIAN J. BOWERS and DEXTER C. KUBOTA and BOWERS + KUBOTA CONSULTING, INC.

Scott I. Batterman  (5017)
CLAY CHAPMAN IWAMURA PULICE & NERVELL
Topa Financial Center
700 Bishop Street, Suite 2100
Honolulu, Hawaii 96813
Telephone: (808) 535-8400
E-mail: sib@paclawteam.com

Attorneys for BOWERS + KUBOTA CONSULTING, INC. and BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>Plaintiff,<br><br>vs.<br><br>BRIAN J. BOWERS, an individual; et al.,<br><br>Defendants. | Civil No. 1:18-cv-155-SOM-WRP<br><br>**DEFENDANTS BOWERS + KUBOTA CONSULTING, INC.'S, BRIAN J. BOWERS', AND DEXTER C. KUBOTA'S OBJECTION TO AND APPEAL OF THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR ELIGIBILITY TO RECEIVE ATTORNEYS' FEES AND NON-TAXABLE COSTS FROM THE U.S. GOVERNMENT [ECF 684]** |

Defendants[1] Brian J. Bowers, Dexter C. Kubota and Bowers + Kubota

Consulting, Inc. (the "Company") object to the Magistrate Judge's Findings and

Recommendation to Deny Defendants' Motion for Attorneys' Fees and Non-

Taxable Costs [ECF 684, the "Recommendations"], as follows:

---

[1] The term "Defendants" refers to the "Remaining Defendants" as defined in this Court's "Post-Trial Findings of Fact and Conclusions of Law; Order Directing Entry of Judgment in Favor of Remaining Defendants", dated September 17, 2021 [ECF 657], and the Judgment [ECF 658] as all Defendants other than the "Saakvitne Defendants" (Sharon L. Heritage and the Saakvitne Law Corporation).

# TABLE OF CONTENTS

I.  Introduction .................................................................................................... 1

II.  Standard of Review ......................................................................................... 2

III.  Background ..................................................................................................... 3

   A.  EAJA ........................................................................................................ 3

   B.  Steven J. Sherman and the Government's Valuation Analyses ........................ 6

   C.  Mark Johnson and the Government's Prudence Analysis ............................... 14

   D.  The URS Non-Binding Indication of Interest ...................................... 15

   E.  The Government's False Accusations that Mr. Saakvitne Bid Against Himself ....................................................................................................... 16

   F.  The Government's Sanctioned Conduct During Discovery ............................ 18

   G.  The Government's Investigation .................................................................. 19

   H.  The Saakvitne Administrative Deposition and the Government's Other ERISA Claims ............................................................................................ 21

IV.  Legal Discussion ............................................................................................ 22

   A.  The Government Was Not Substantially Justified in Bringing This Case .... 22

   B.  The Government Acted in Bad Faith ............................................................ 24

   C.  The Defendants Are Prevailing Parties ........................................................ 26

   D.  The Company Meets the EAJA "Net Worth" Financial Standards ................ 27

V.  Conclusion ..................................................................................................... 28

# TABLE OF AUTHORITIES

## Cases

*American Pacific Concrete Pipe Co. v. NLRB*,
788 F.2d 586 (9th Cir. 1986)................................................................. 27

*Ardestani v. I.N.S.*,
502 U.S. 129, 112 S. Ct. 515, 116 L. Ed. 2d 496 (1991) .................................... 5

*Berger v. United States*,
295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 2d 1314 (1935) ....................................... 13

*Broaddus v. U.S. Army Corps of Eng'rs*,
380 F.3d 162 (4th Cir. 2004)................................................................ 27

*Brown v. Sullivan*, 916 F.2d 492 (9th Cir. 1990) ................................................. 25

*Buckhannon Board & Care Home, Inc. v. West Virginia Department
of Health & Human Resources*, 532 U.S. 598, 121 S. Ct. 1835,
149 L.Ed.2d 855 (2001) .................................................................... 27

*Comm'r v. Jean*, 496 U.S. 154 (1990) ........................................................... 5

*Fink v. Gomez*, 239 F.3d 989 (9th Cir. 2001) ..................................................... 25

*Freeport-McMoRan Oil & Gas Co. v. FERC*,
962 F.2d 45, 47, 295 U.S. App. D.C. 236 (D.C. Cir. 1992)............................... 14

*Gate Guard Servs., L.P. v. Perez*, No. V-10-91, 2014 U.S. Dist. LEXIS 48859
(S.D. Tex. Apr. 9, 2014), rev'd on other grounds, *Gate Guard Servs., L.P. v.
Perez*, 792 F.3d 554, 555 (5th Cir. 2015)........................................... 27

*Gonzales v. Free Speech Coalition*, 408 F.3d 613 (9th Cir. 2005)................. 22, 23

*Gutierrez v. Barnhart*, 274 F.3d 1255 (9th Cir. 2001) ........................................ 23

*Ibrahim v. United States Dep't of Homeland Sec.*,
912 F.3d 1147 (9th Cir. 2019)...................................................5, 20, 25

*Kali v. Bowen*, 854 F.2d 329 (9th Cir. 1988) ..................................................... 23

*Li v. Keisler*, 505 F.3d 913 (9th Cir. 2007)....................................................... 6

*Natchez Coca-Cola Bottling Co. v. NLRB*, 750 F.2d 1350 (5th Cir. 1985) ........... 20

*Phil Smidt & Son v. NLRB*, 810 F.2d 638 (7th Cir. 1987).................................... 20

*Pierce v. Underwood*, 487 U.S. 552 (1988)....................................................... 22

*Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644 (9th Cir. 1997) .............. 24

*Rawlings v. Heckler*, 725 F.2d 1192 (9th Cir. 1984)............................................ 25

*Rodriguez v. United States*, 542 F.3d 704 (9th Cir. 2016) .................................... 25

*Silverman v. Ehrlich Beer Co.*, 687 F. Supp. 67 (S.D.N.Y. 1987) ........................ 21

*United States v. 515 Granby, LLC*, 736 F.3d 309 (4th Cir. 2013)........................ 20

*United States v. Cochran*,
2016 U.S. Dist. LEXIS 27148 (E.D.N.C. Mar. 3, 2016)............................. 20, 21
*United States v. Manchester Farming P'ship*, 315 F.3d 1176 (9th Cir. 2003) ...... 25
*United States v. Marolf*, 277 F.3d 1156 (9th Cir. 2002)........................................ 22
*United States v. Rubin*, 97 F.3d 373 (9th Cir. 1996) ............................................ 22
*United States v. Thouvenot, Wade & Moercschen, Inc.*,
596 F.3d 378 (7th Cir. 2010)............................................................................ 24
*Yonemoto v. McDonald*, No. 11-cv-00533-JMS-RLP, 2016 U.S. Dist. LEXIS
66988, 2016 WL 2944650 (D. Haw. May 20, 2016), adopting report and
recommendation, No. 11-cv-00533-JMS-RLP, 2016 WL 7131847
(D. Haw. Feb. 19, 2016), *aff'd sub nom.*, *Yonemoto v. Shulkin*,
725 F. App'x 482 (9th Cir. 2018)........................................................................ 2

## Statutes

28 U.S.C. § 2412.................................................................................................. 1, 3
28 U.S.C. § 2412(b) ....................................................................................1, 3, 4, 27
28 U.S.C. § 2412(d) ...................................................................................... passim
28 U.S.C. § 2412(d)(1)(A) ......................................................................................... 4
28 U.S.C. § 2412(d)(2)(A) ......................................................................................... 5
28 U.S.C. § 2412(d)(2)(B) ....................................................................................... 27
29 U.S.C. § 1132(l) .................................................................................................... 7

## Other Authorities

Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980) .............................. 5

## Rules

Fed. R. Civ. P. 54(d)(2).............................................................................................. 3
Local Rule 54.2.......................................................................................................... 1

## Regulations

29 CFR § 2570.81 ...................................................................................................... 7

## Trial Exhibits

Defense Ex. 264 (Government Second Supplemental Initial Disclosures).............. 7
Joint Ex. 47 (LVA Appraisial Report as of December 14. 2012).......................... 11
Joint Ex. 49 (LVA Appraisal Report as of December 31, 2012)............................ 8

Trial Declarations

ECF No. 604 (Trial Declaration of Mark Johnson)................................................ 17
ECF No. 635 (Amd. Sherman Trial Declaration) ................................................ 16
ECF No. 636 (Amd. M. Johnson Trial Declaration) ...................................... 14, 16
ECF No. 639 (Amd. Kubota Trial Declaration)................................................ 16
ECF No. 641 (Amd. Kniesel Trial Declaration) ................................................ 16
ECF No. 648 (Second Amd. Trial Declaration of Gregory K. Brown) ................ 17

Pleadings

ECF No. 195 (Magistrate Judge's Order Granting Motion for
    Attorney's Fees and Expenses)....................................................... 18, 19
ECF No. 237 (District Judge's Order Granting Attorneys' Fees and Expenses) ... 18,
    19
ECF No. 30 (Government Opposition to Company Motion to Dismiss).............. 27
ECF No. 300 (Letter Brief re Prunty Deposition) .................................... 18
ECF No. 301 (B+KC Letter Brief re Prunty Deposition)................................ 18
ECF No. 302 (Letter Brief re Paredes Deposition) .................................... 18
ECF No. 303 (B+KC Letter Brief re Paredes Deposition)............................. 18
ECF No. 307 (Order as to Letter Briefs Filed on October 29, 2020)................... 18
ECF No. 308 (Letter Brief re C. Johnson Deposition) ............................... 18
ECF No. 309 (Letter Brief re Palacios Deposition) .................................... 18
ECF No. 310 (B+KC Letter Brief re C. Johnson Deposition)............................. 18
ECF No. 311 (B+KC Letter Brief re Palacios Deposition) ............................ 18
ECF No. 313 (Order as to Letter Briefs Filed on November 3, 2020)................. 18
ECF No. 412 (Order on Motions for Summary Judgment) ........................... 24, 26
ECF No. 432 (Government Motion in Limine to Exclude
    McMahon Expert Report) ........................................................... 12
ECF No. 467-4 (Johnson Expert Report, dated October 19, 2020) ................ 16, 17
ECF No. 521-4 (Sherman Expert Rebuttal Report) ..................................... 9
ECF No. 622 (Declaration of Ian C. Rusk)........................................... 11, 12
ECF No. 650 (Declaration of Kenneth J. Pia)........................................ 11
ECF No. 655 (Secretary's Proposed Findings of Fact)................................ 15, 16
ECF No. 657 (Post-Trial Findings of Fact and Conclusions of Law;
    Order Directing Entry of Judgment in Favor of Remaining Defendants) ... passim
ECF No. 658 (Judgment) .......................................................... 3
ECF No. 660-1 (Memorandum in Support of Defendants' Bill of Costs).......... 2, 26

ECF No. 664 (Order Setting Briefing Schedule for Motion for
 Attorneys' Fees and Non-Taxable Costs) ................................................ 1

ECF No. 669 (Memorandum of Law in Support of Defendants'
 Eligibility to Recover Attorneys' Fees and Non-Taxable Costs)...........1, 2, 26, 27

ECF No. 670 (Bowers Declaration in Support of Eligibility to
 Recover Attorneys' Fees and Non-Taxable Costs) ........................................ 1, 27

ECF No. 671 (Kubota Declaration in Support of Eligibility to
 Recover Attorneys' Fees and Non-Taxable Costs) ........................................ 1, 27

ECF No. 672 (Iwamoto Declaration in Support of Eligibility to
 Recover Attorneys' Fees and Non-Taxable Costs) ........................................ 1, 27

ECF No. 673 (Johanson Declaration in Support of Eligibility to
 Recover Attorneys' Fees and Non-Taxable Costs) .................................... passim

ECF No. 674 (Defendants' Reply to Government's Objections
 to Bill of Costs) .............................................................................. 2, 26

ECF No. 676 (Iwamoto Declaration in Support of Eligibility to
 Recover Attorneys' Fees and Non-Taxable Costs) ........................................ 2, 27

ECF No. 677 (Reply in Support of Eligibility to Recover
 Attorneys' Fees and Costs)...........................................................2, 26, 27, 28

ECF No. 682 (Magistrate Judge's Findings and Recommendation to
 Grant in Part and Deny in Part Defendants' Bill of Costs)............................ 1, 26

ECF No. 683 (Government Objection to Magistrate Judge's
 Award of Bill of Costs).................................................................... 1, 2

ECF No. 684 (Magistrate Judge's Findings and Recommendation to Deny
 Attorneys' Fees and Costs).......................................................... passim

ECF No. 685 (Defendants' Opposition to Government's Objection to
 Magistrate Judge's Recommendation to Award Bill of Costs)...................... 2, 26

Trial Transcripts

Day 1 Trial Transcript, ECF No. 628 .................................................. 15
Day 3 Trial Transcript, ECF No. 630 .......................................... 14, 17
Day 4 Trial Transcript, ECF No. 631 .......................................... 14, 21
Day 5 Trial Transcript, ECF No. 632 .................................................. 16

## I.     Introduction

Defendants respectfully submit that the Magistrate Judge erred in recommending to deny their Memorandum in Support of Eligibility for Attorneys' Fees and Non-Taxable Costs [ECF 669-673, the "Motion"] under the Equal Access to Justice Act, 24 U.S.C. § 2412 ("EAJA").  [ECF 684.][2]

The Magistrate Judge erroneously determined that Defendants are not entitled to attorneys' fees and non-taxable costs under EAJA, 28 U.S.C. § 2412(b), because the U.S. Government (the "Government") allegedly did not act in bad faith, or under EAJA, 24 U.S.C. § 2412(d), because the Government allegedly did not act without substantial justification.  [ECF 684.]The Magistrate Judge also failed to address and rule that the Company satisfied the EAJA "net worth" requirements under 28 U.S.C. § 2412(d).

This Objection is one of two objections presently before this Court.  The Government objected to the Magistrate Judge's Findings and Recommendation to Grant in Part and Deny in Part Defendants' Bill of Costs [ECF 682].  [ECF 683.] The Magistrate Judge found that the Government had not challenged the Company's entitlement to costs as a "prevailing party".  [ECF 682, at 3, PageID

---

[2] The Magistrate Judge bifurcated this "motion for attorneys' fees and costs", first setting a briefing schedule to determine whether Defendants are eligible to recover attorneys' fees and non-taxable costs under any rule or statute, and, if eligible, would thereafter set a briefing schedule regarding the amount of any attorneys' fees and non-taxable costs that Defendants are entitled to recover from the Government.  [ECF 664.]

24103.]  The Government objected to that award and included in its objection its argument that Defendants were not prevailing parties, arguing that it had done so in the context of this Motion.  [ECF 683.]  Defendants fully briefed this issue in their briefing in support of the Bill of Costs [ECF 660-1, 674], their Opposition to the Government's Objection to the Magistrate Judge's award of the Bill of Costs [ECF 685], and in their briefings in support of the Motion [ECF 669, 676 , 677].  Because the Magistrate Judge failed to rule on those arguments, they are incorporated by this reference herein. *See* Sections IV.C. and IV.D. below.

Defendants respectfully request this Court to review this matter *de novo*, overrule the Magistrate Judge, grant the Motion concluding that Defendants are eligible to recover attorneys' fees and costs from the Government, and set a briefing schedule regarding the amount of such attorneys' fees and costs to be awarded.

## II.    Standard of Review

This Court's review of the Recommendations is *de novo*.  This Court reviews this "matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered".  *Yonemoto v. McDonald*, No. 11-cv-00533-JMS-RLP, 2016 U.S. Dist. LEXIS 66988, *6 (D. Haw. May 20, 2016), *aff'd sub nom.*, *Yonemoto v. Shulkin*, 725 F. App'x 482 (9th Cir. 2018)(citations omitted); *Estate of Conners by Meredith v. O''Connor*, 6 F.3d 656 (9th Cir. 1993).

III.   **Background**

A.   **EAJA**

After a five-day trial on June 21-25, 2021, this Court entered Judgment in favor of the Defendants [ECF 657-658.]   They thus were EAJA "prevailing parties" herein.   Upon this legal issue the parties disagree.   The Magistrate Judge did not address this issue in the Recommendations.[3]

The parties and the Magistrate Judge do agree, however, that because this Court's entry of Judgment was against the Government, the right of Defendants to recover attorneys' fees and non-taxable costs is dependent upon a waiver of the Government's sovereign immunity under the EAJA, 28 U.S.C. § 2412, which sets forth two separate grounds upon which Defendants may recover attorneys' fees and non-taxable costs from the Government in this action, namely, 28 U.S.C. § 2412(b) and 28 U.S.C. § 2412(d).

The first ground for relief, 28 U.S.C. § 2412(b), is based upon the Government's bad faith in bringing this action in the first place and in going to trial.   As applicable here, 28 U.S.C. § 2412(b) provides that this Court shall award "reasonable attorneys' fees and expenses", unless expressly prohibited by statute,

---

[3] The Magistrate Judge also did not address the parties' disagreement over the Company's qualification under EAJA—its EAJA "net worth" of less than $7M. Defendants' arguments are summarized below and incorporated by this reference herein.

3

to the prevailing party in a civil action brought by the Government to the same extent that any other party would be liable under the common law.

The second ground for relief, 28 U.S.C. § 2412(d), is based upon the Government's lack of substantial justification for bringing this action and going to trial. As applicable here, 28 U.S.C. § 2412(d)(1)(A) provides that this Court shall award "fees and other expenses", unless expressly prohibited by statute, to the prevailing party incurred by that party except when this Court expressly finds that the Government's position "was substantially justified or that special circumstances make an award unjust".

The parties and the Magistrate Judge agree that there is no express statutory prohibition on an award of attorneys' fees and expenses to the prevailing parties in this action brought by the Government.

Finally, the parties and the Magistrate Judge agree that "bad faith" or "lack of substantial justification" are appropriate bases on which to award attorneys' fees and non-taxable costs under 28 U.S.C. § 2412(b) and 28 U.S.C.§ 2412(d), respectively.

These two EAJA provisions apply different requirements for Defendants' eligibility to recover attorneys' fees and non-taxable costs from the Government, and provide for different consequences. "Bad faith" under 24 U.S.C. § 2412(b) would permit the recovery of "reasonable attorneys' fees and expenses" with no

statutory limitation on the hourly rate of attorneys' fees sought or the applicable expenses. "Lack of substantial justification" under 28 U.S.C. § 2412(d) would permit recovery of "fees and expenses" at a statutorily-reduced hourly rate of $125 plus a cost of living adjustment and specifically include reasonable expenses of expert witnesses. [28 U.S.C. § 2412(d)(2)(A).]

Under both of these provisions, the same underlying Government conduct establishes both lack of substantial justification and bad faith. Here, Defendants respectfully submit that the totality of the Government's conduct establishes that it acted with a lack of substantial justification and in bad faith.

"The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority." *Ibrahim v. United States Dep't of Homeland Sec.*, 912 F.3d 1147, 1166-1167 (9th Cir. 2019)(quoting *Ardestani v. I.N.S.*, 502 U.S. 129, 138 (1991)); *see also Comm'r v. Jean*, 496 U.S. 154, 163 (1990)("[T]he specific purpose of the EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions."). Congress specifically intended the EAJA to deter unreasonable agency conduct. *Jean*, 496 U.S. at 163 n.11 (quoting the statement of purpose for the EAJA, Pub. L. No. 96-481, §§ 201-08, 94 Stat. 2321, 2325-30 (1980)). The policy behind EAJA "is to encourage litigants to vindicate

5

their rights where any level of the adjudicating agency has made some error in law or fact and has thereby forced the litigant to seek relief from a federal court". *Li v. Keisler*, 505 F.3d 913, 919 (9th Cir. 2007). "[W]e have consistently held that regardless of the government's conduct in the federal court proceedings, unreasonable agency action at any level entitles the litigant to EAJA fees." *Id*.

Here, the Government conducted a three-year investigation, over-pleaded conspiracy-style ERISA violations, developed no evidence in support of its claims, and yet proceeded to trial. Such governmental conduct was unreasonable and unjustified.

### B.     Steven J. Sherman and the Government's Valuation Analyses

The most compelling element in support of this Court finding a lack of substantial justification and bad faith is the Government's willfully ignoring the material issues with the valuation opinions of their expert witness, Steven J. Sherman. The ESOP's alleged overpayment for Company stock was the single issue from which all of the Government's claims of ERISA violations arose. At various times in this litigation, the Government took conflicting positions and contended that the ESOP overpaid by varying amounts, namely:

- the Government's investigators and their supervisors first prepared in 2017 a draft voluntary compliance letter in which, the Defendants believe

based upon other discovery responses, the Government was going to

demand at least $20,000,000 in alleged damages;[4]

- in April, 2018, weeks prior to the Government's filing of this lawsuit, the

  Government demanded "upwards of $18,000,000" in damages;

- In its First and Second Supplemental Initial Disclosures, the Government

  claimed that the ESOP overpaid by $16,280,000.  [Defense Ex. 264, p.

  12.]

- At trial, the Government's expert witness, Steven J. Sherman, opined that

  the ESOP overpaid by $13,050,000.

With respect to Sherman, in the face of the glaring errors in Sherman's

valuation work and report, not only pointed out by this Court, but pointed out well

prior by Defendants, as early as November 19, 2020, the Government proceeded to

trial without a "credible challenge to the actual sales price" and a total lack of

evidence in this respect.  [ECF 657, at 41 and 65, PageID 23664 and 23688.]

Indeed, this case never should have been brought or gone to trial.  The

Government failed to objectively review the evidence in its possession during and

following its over three-year investigation (December 2014 through April 28,

2018) and instead, in overly-aggressive fashion, relied upon "red flags" that did not

exist (such as the December 5, 2011, URS non-binding indication of interest, and

---

[4] EBSA did not send a voluntary compliance letter to the Defendants and instead
referred to the matter to litigation.

the alleged failure of then-ESOP Trustee Saakvitne to devote adequate time to reviewing and implementing the valuation process) and improperly relied on the fatally flawed opinion of their valuation expert, Sherman, whose opinion this Court rejected because his "calculation rested on errors".  [ECF 657, at 2, PageID 23625.]

Specifically, this Court found Sherman's calculation of the Company's EBITDA unreliable as he should have taken into account relevant circumstances identified by Defendants' expert, Ian Rusk, which established that Sherman's dismissal of Bowers' and Kubota's detailed financial projections was in error.  [*Id.*, at 32, PageID 23655.]  This Court noted that "Sherman should have known that his 'corrected' EBITDA was too low because the actual EBITDA as of December 31, 2012, was $7,047,000."  [*Id.* (citing Joint Ex. 49 at DOL 000138).]

This Court concluded that "Sherman significantly and unreasonably undervalued the Company.  Not only does this render his ultimate valuation unreliable, it also undermines the usefulness of his critique of LVA's valuation." [*Id.* at 35,PageID 23658.]  To that end, this Court identified a series of clear deficiencies with Sherman's opinions:

1.      "[H]e he appears to have ignored the Uniform Standards of Professional Appraisal Practice ("USPAP") in appraising the Company. According to Kenneth J. Pia, an expert witness for the defense, application of

USPAP was mandatory.  Pia says that Sherman's failure to follow USPAP 'introduced substantial errors' into Sherman's analysis." [*Id*. at 35-36, PageID 23658-23659 (internal citations omitted).]

2.     Sherman failed to interview management, and/or coordinate with counsel for the Government to ask the necessary questions during their depositions.  [*Id*. at 36-37, PageID 23659-23660.]  In fact, in his Rebuttal Report, Sherman stated that he did not interview management because the U.S. Department of Labor ("DOL") said that was not possible.  [*See* ECF 521-4, at 4, PageID 15900.]  The Secretary failed to provide any evidence that DOL ever asked Defendants to interview Company management.  This was a clear attempt by DOL to obstruct the truth during the discovery process.

3.     Sherman erred in how he treated subconsultant fees, and that error could have been avoided by questioning Company management.  Sherman erroneously treated those pass-through subconsultant fees as Company expenses, which Sherman then deducted in calculating the Company's value.  This error was pointed out by Defendants expert, Ken Pia as one reason that Sherman reached an erroneously low Company value.  [*Id*. (internal citations omitted).]

4.     "Sherman appears to have proceeded without the benefit of information that would have helped him to avoid the error concerning subconsultant fees.  Sherman conceded that he treated $10.521 million as

9

subconsultant expenses, which he deducted in determining the value of the

Company as of December 14, 2012. *This was a notable error.*" [*Id*. at 37, PageID

23660 (emphasis supplied)(internal citations omitted).]

   5. "Sherman's reliance on matters occurring after the sale to apply the

limited control discount appears to the court to have contravened the appraisal

standards limiting the facts to be considered. As a result, Sherman improperly

decreased the value of the Company by $2,994,000." [*Id*. at 38, PageID 23661.]

   6. "Sherman's erroneous treatment of subconsultant fees and his

consideration of after-the-sale developments to calculate a 'limited control'

discount amounted to an undervaluation of $13,515,000 ($10,521,000 +

$2,994,000).  If this amount were added to Sherman's value of $26,900,000, the

total would be $40,415,000.  In short, Sherman does not credibly undermine

LVA's valuation as of December 14, 2012." [*Id*.]

   These many errors by Mr. Sherman were not revealed for the first time at

trial.  These errors were self-evident from the applicable financial documentation

itself and from Bowers' and Kubota's deposition testimony, would have been

learned from an interview with Company management, and were highlighted

during Mr. Sherman's deposition and during expert discovery by the experts for

Defendants, Kenneth J. Pia and Ian C. Rusk.  The Government simply ignored and

intentionally obscured these objective facts readily available during discovery.

In addition, there were no less than four valuations of the Company that, independent of one another, established that the ESOP did not pay more than adequate consideration for the Company's stock:

1.      Gregory E. Kniesel, ASA of LVA determined a total fair market value of the Company of $40,150,000, for a per share value of $40.15 for each of the million shares. [*Id.* at 31, PageID 23654 (citing Joint Ex. 47 at DOL 000246 and internal Exhibit 16, DOL 000267).]

2.      Ken Pia, a CPA with more than thirty (30) years of experience, opined that the fair market value of the Company on December 14, 2012, was $43.20 million, or $43.20 per share.  [*Id.*, at 40, PageID 23663 (citing Decl. of Kenneth J. Pia ¶ 10, ECF 650, PageID 23238).]  Accordingly, Pia opined that Kniesel's conclusions of the fair market value range of the Company "were within a reasonable range".  [*Id.* (citing Pia Declaration, ¶ 16, ECF 650, PageID #23240).]

3.      Ian C. Rusk, a professional business appraiser, "testified that the fair market value of a nonmarketable controlling interest in the Company as of December 14, 2012, was $43,050,000 or $43.05 per share.  *See* Rusk Decl., ¶ 11, ECF No. 622, PageID #20154.  Rusk reasoned that the fair market value of the Company on a controlling interest basis was $44,600,000, but that there was a potential for dilution of the Company's stock.  He, therefore, deducted 3.5 percent,

or $1,550,000, leading to a value of $43,050,000.  *See* Rusk Decl., ¶¶ 16-17, ECF No. 622, PageID #20155-56." [ECF 657 at 41, PageID 23664.]

4.    The Government and Sherman also were both aware, well in advance of trial, of the expert valuation opinion of Renee McMahon, an expert retained by the Saakvitne parties.  [*See* ECF 432 (Government Motion in Limine to Exclude McMahon Expert Report); ECF 673, Johanson Declaration, ¶ 4, PageID 23931.] In her Expert Report, McMahon concluded that Mr. Sherman provided a flawed analysis of certain inputs, particularly bonus compensation and subconsultant expenses, a flawed "limited control discount", and, correcting for such errors, concluded that the Company had a fair market value of $40.015 million as of December of 2012.  [*Id.*, ¶ 5, PageID 23932.]

In short, both Sherman and the Government were well aware of the significant flaws in Sherman's valuation analysis long before trial and nevertheless advanced a case entirely upon Mr. Sherman's woefully flawed opinions.

The Government failed to objectively analyze Sherman's opinions, both on their own, and in light of specific opinions of qualified experts who clearly and plainly exposed Sherman's errors and the consequence thereof to his conclusions.

An award of attorneys' fees and expenses is thus appropriate because (i) the Government is able to satisfy the award, (ii) this lawsuit was unjustified, and (iii) such an award might, to some degree, cause the Government to take a more

objective approach before instituting suits which have such significant adverse impact upon the lives of a relatively small but successful business and on the lives of hardworking individuals whose industry has resulted in gain for themselves and their employees.

These very same reasons support a claim for attorneys' fees and non-taxable costs to the Company.  As this Court found, the Government came to court without a "credible challenge to the actual sales price".[5]  [*Id.*]  This Court succinctly summarized the Government's actions, stating: "when the Government filed this lawsuit, it took on the burden of proving that its suspicions were reflected in fact. What has happened in the trial of this case is that the Government failed to carry that burden, not for want of effort but for what appears to be a want of evidence." [*Id.*, at 65, PageID 23688.][6]  With all due respect to the Magistrate Judge,

---

[5] If such a challenge to the purchase price was not capable of being believed, it was frivolous.  If it was frivolous, it lacked substantial justification *and* was brought in bad faith.

[6] Defendants understand this Court's determination here as similar to the admonition in *Berger v. United States*, 295 U.S. 78, 88, 55 S. Ct. 629, 79 L. Ed. 2d 1314 (1935):  "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. … *He may prosecute with earnestness and vigor—indeed, he should do so.  But while he may strike hard blows, he is not at liberty to strike foul ones.*"  (Emphasis supplied.)

This applies equally to the prosecution of civil matters.  *Freeport-McMoRan Oil & Gas Co. v. FERC*, 962 F.2d 45, 47, 295 U.S. App. D.C. 236 (D.C. Cir. 1992)

Defendants respectfully submit that the Magistrate Judge misunderstood and falsely applied this in the Recommendations.

### C.     Mark Johnson and the Government's Prudence Analysis

The analysis of the Government's prudence expert witness, Mark Johnson, was equally flawed.  Johnson baldly concluded that the underlying transaction was not prudent because Mr. Saakvitne "rushed" his analysis (despite the Government knowing that Saakvitne did not testify that he felt rushed [Day 4 Trial Transcript, ECF No. 631, at 4-114:4-19]).  As this Court found, however, Johnson "did not detail what kind of review another trustee might have done. Instead, he simply concluded, 'Rather than taking the time to properly supervise and evaluate the process, [Saakvitne] seemed proud of bringing the transaction to conclusion based [on] a tight and entirely artificial time frame.'"  [ECF 657, at 28, PageID 23651 (citing Johnson Decl. ¶ 22(f), ECF 636, PageID # 21340; Johnson Test., ECF No. 630, PageID # 3-138 (stating that Saakvitne only spent 28 hours working on the transaction, but not quantifying whether 28 hours is more or less than one would expect based on comparably complex transactions).]  "This is insufficient to meet the Government's burden."  [ECF 657, at 28, PageID 23651.]

---

(emphasis supplied)(citing American Bar Association's Model Code of Professional Responsibility EC-7-14 (1981)("government lawyers in a civil action or administrative proceeding" "have the responsibility to seek justice, and *should refrain from instituting or continuing litigation that is obviously unfair*".)).

**D.     The URS Non-Binding Indication of Interest**

Similarly, the Government and its experts relied heavily on the URS non-binding indication of interest (the "URS IOI"), despite it having "little relevance to the actual value of the Company":  "An individual who makes an offer of $15,000 for a used luxury car with a Blue Book value of $40,000 does not, by virtue of making a 'lowball' offer that is never accepted, tend to establish that the car is worth only $15,000".  [ECF 657, at 13, PageID 23634.]

The Government's actions in pursuing the URS IOI also is demonstrated by the Government's stubborn refusal to properly characterize the amount of the URS IOI.  As this Court found:  "The Government ignores the actual 'cash and debt on the Company's balance sheet' that the URS non-binding indication of interest expressly acknowledged should be considered.  *See* ECF 655, Government's Proposed Findings of Fact and Conclusions of Law, PageID #23541 (characterizing URS's preliminary nonbinding indication of interest as being for $15 million)."  [ECF  657, at 12, PageID 23635.]  This Court duly noted that the Company had $7 million in cash and more than $7 million in working capital, and that "[h]ad this been added to the $15 million cited in URS's indication of interest, the dollar amount would have risen to about $29 million to $30 million".  [ECF 657, at 12, PageID 23635 (citing Bowers Test., ECF 628; Kubota Test., ECF 628;

Amd. Kubota Decl. ¶ 28, ECF 639; Amd. Trial Decl. of Gregory E. Kniesel ¶ 57, ECF 641.

The Government intentionally chose to ignore that element of the URS IOI and repeated at trial the $15 million amount extensively as the Company's alleged "fair market value" as of December 14, 2012,  including in closing [ECF 632, Day 5 Trial Transcript, at 5-150:28-151:3] and in his post-trial proposed findings of fact [ECF 673, Johanson Declaration, ¶ 21, PageID 23935-23936, citing ECF 635 (Amd. Sherman Trial Declaration), ECF 636 (Amd. M. Johnson Trial Declaration), ECF 655 (Government's Proposed Finding of Fact and Conclusions of Law), which also demonstrates its continuing lack of substantial justification and bad faith in pursuing this case.  The Government also repeatedly ignored that the URS IOI specifically stated that it "was not an offer".

### E.   The Government's False Accusations that Mr. Saakvitne Bid Against Himself

In the Complaint, the Government falsely alleged that, in negotiating the subject transaction with Bowers, Mr. Saakvitne allegedly bid against himself [ECF 1, ¶¶ 24-28, PageID 12-13; ECF 673, Johanson Declaration, ¶ 9, PageID 23933.] The Government's prudence expert, Mark Johnson, recklessly parroted these allegations no fewer than five times in his initial report in bold face type [ECF 467-4, at pp. 2, 15-16, 18-19, PageID 11917, 11922-11923, 11925-11926; ECF 673,

16

Johanson Declaration, ¶ 10, PageID 23933], suggesting Saakvitne's alleged lack of prudence to be of critical importance to Johnson's views.  [*Id*.]  When faced with the facts establishing that their conclusion was incorrect, both in the Expert Report of Gregory K. Brown and during the Johnson deposition, neither the Government nor Johnson ever acknowledged the error or amended the Complaint or Johnson's expert opinions.  [ECF 673, Johanson Declaration, ¶ 11, PageID 23933.]  The Government and Johnson both maintained this fiction, forcing Defendants to prepare to address this issue right up to the point that the Government and Johnson submitted Johnson's Trial Declaration at trial, which ignored the issue, hoping his error would simply go away [ECF 604, Trial Declaration of Mark Johnson; ECF 673, Johanson Declaration, ¶ 12, PageID 23933.]  Even when Defendants cross-examined Johnson at trial, Johnson still refused to admit that his opinion was wrong, only being "open to the possibility of the chronology proposed by the defense, is correct, but I cannot figure it out".  [ECF 630, Day 3 Trial Transcript, at 3-141:8-11.]  Yet, Johnson acknowledged that the opinion so predominantly set forth in his expert report was not included in his trial declaration.  [*Id*., at 3-141:12-14.]

The facts of this factual issue were clear and unequivocal that Mr. Saakvitne did not bid against himself.  [ECF 648, Second Amended Trial Declaration of Gregory K. Brown, Page ID 23200-23201, ¶ 39.]  Yet, neither the Government nor

Johnson ever corrected the record or admitted that they were wrong, forcing

Defendants to defend this assertion from the date of the Complaint right up to the

moment Johnson testified, and then he simply dropped it.

### F.    The Government's Sanctioned Conduct During Discovery

During discovery, this Court sanctioned the Government.  [ECF 195, 237.]

The Government refused to produce documents and improperly instructed

witnesses not to answer questions during depositions.  [ECF 673, Johanson

Declaration, ¶ 6, PageID 23932.]  The Government's failure to provide documents

required Defendants to engage in extensive and costly motions practice that

ultimately resulted in $140,000 plus of sanctions being imposed on the

Government.  [*Id*; ECF 195, 237.]  Notwithstanding the sanctions motions, the

Government continued to interfere in discovery, specifically by improperly

instructing witnesses not to answer questions at depositions.  [ECF 673, Johanson

Declaration, ¶ 7, PageID 23932.]  This resulted in motions to allow Defendants to

re-depose certain witnesses.  [*Id*.; ECF 300-303, and 308-311.]  In response, the

Magistrate Judge ordered witnesses to be made available for additional

questioning.  [ECF 307; ECF 313; ECF 673, Johanson Declaration, ¶ 8, PageID

23933.]  The Magistrate Judge's finding that "Defendants contributed to

complicating discovery proceedings in this matter" [ECF 684 at 7, PageId 24154],

ignores that only the Secretary was sanctioned for discovery abuses and lacked

substantial justification for such discovery conduct and this Court required the

Government to produce multiple witnesses to supplemental depositions.  [ECF

195, 237.]

### G.     The Government's Investigation

Defendants noted to the Magistrate Judge, and note here, that the

Government did not initiate its underlying over three-year investigation on a

complaint made to the Government by an ESOP participant or an ESOP service

provider or any evidence of misconduct.  The Government instead originated its

investigation because the Government investigators (Miguel Paredes and Michael

Wen) apparently wanted to find a case to investigate in Hawai'i.  Defendants

highlighted this to the Magistrate Judge because it demonstrates that *only* the

Government believed any alleged conduct to violate ERISA and *only* the

Government concluded that a "prohibited transaction" occurred under ERISA, not

as the Magistrate Judge determined because this Court noted that the initiation of

such investigation "appear[ed] entirely warranted" [ECF 684, at 6-7, PageID

24153-24154 (citing ECF 657 at 65)].  The Government's decision to proceed to

litigation and trial without evidence sufficient to support the causes of action,

during its investigation, not the decision to initiate the investigation, constitutes a

lack of substantial justification and bad faith.  As this Court noted, the Government

rushed to trial without a "credible challenge to the actual sales price", and with

"what appears to be a want of evidence".  [ECF No. 657, at 41 and 65, PageID 23664, 23688.]

Indeed, the reasonableness of the Government's pre-suit investigation is worthy of consideration even if reasonable in its initiation.  An unreasonable pre-suit position can weigh heavily in favor of an award of attorneys' fees where the unreasonable position "force[s]" or "substantially alter[s] the course of the litigation".  *See United States v. Cochran*, 2016 U.S. Dist. LEXIS 27148, *7-9 (E.D.N.C. Mar. 3, 2016)(quoting *United States v. 515 Granby, LLC*, 736 F.3d 309, 316-17 (4th Cir. 2013)(case generally cited with approval in *Ibrahim, supra*). Courts may consider an award of attorneys' fees under the EAJA in circumstances where the prosecuting agency arguably failed to perform a reasonable pre-suit investigation, thus conceivably rendering the prosecuting agency's case without a basis in fact.  *Id*. (citing *Phil Smidt & Son v. NLRB*, 810 F.2d 638 (7th Cir. 1987); *Natchez Coca-Cola Bottling Co. v. NLRB*, 750 F.2d 1350 (5th Cir. 1985).  In *Phil Smidt*, for example, the Seventh Circuit awarded attorneys' fees where the NLRB's General Counsel performed a deficient pre-suit investigation.  810 F.2d at 643. That award was made in the face of the egregious circumstances in which the agency, in backpay litigation, failed to corroborate its only witness' testimony with objective, documentary evidence that flatly contradicted the witness' assertion that she had no income during the period that was the subject of the suit.  *Id*. at 642-43.

Here, similarly, there was ample documentary evidence contradicting the central tenet of the Government's case, its flawed valuation analysis and the false "red-flag" URS analysis.  *See also Silverman v. Ehrlich Beer Co.*, 687 F. Supp. 67 (S.D.N.Y. 1987) (awarding fees where government's case constituted a "total failure of proof").

## H.   The Saakvitne Administrative Deposition and the Government's Other ERISA Claims

The Government's bad faith and lack of substantial justification also is demonstrated in the Government's recklessly pleading of a conspiracy between Saakvitne, Bowers, Kubota, and even Hansen, and the total lack of evidence of any such conspiracy in support of its "knowing participation" and "co-fiduciary liability" claims (the Government abandoned its "concealment" claim at trial).  As this Court appropriately noted by analogy, in the context of the Government's repeated and misplaced arguments at trial with respect to introducing the Saakvitne Administrative Deposition, the Government had no evidence that Bowers and Kubota knew Saakvitne "punched somebody" and the Saakvitne Administrative Deposition Transcript would not prove otherwise [Day 4 Trial Transcript, ECF 631, at 4-113:19-24].  Moreover, the Government admitted that Saakvitne did not testify that he felt rushed in his analysis [*id.*, at 4-114:4-19].  The Saakvitne Administrative Deposition Transcript was a wholly inappropriate vehicle for

21

attempting to prove the Government's claims against Defendants, and the Government knew that Defendants did not have knowledge of any such alleged Saakvitne actions.

## IV.   Legal Discussion

### A.   The Government Was Not Substantially Justified in Bringing This Case

The Government's position herein was not "substantially justified." "Substantially justified means justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).  A substantially justified position must have a reasonable basis in both law and fact.  *Id*.  Put another way, "substantially justified" means there is a dispute over which reasonable minds could differ. *Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005); *United States v. Marolf*, 277 F.3d 1156, 1161 (9th Cir. 2002); *United States v. Rubin*, 97 F.3d 373, 376 (9th Cir. 1996).  In making this determination, this Court looks to both the Government's position during the litigation and to "the action or failure to act by the agency upon which the civil action is based".  *Id*. (quoting 28 U.S.C. § 2412(d)(1)(B)).  This Court "must focus on two questions:  first, whether the government was substantially justified in taking its original action; and second, whether the government was substantially justified in defending the validity of the

action in court." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir.

2001)(quoting *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988)). A finding that

either the Government's underlying conduct or its litigation position was not

substantially justified is sufficient to support an attorneys' fee award under the

EAJA. The Government bears the burden to show that its position was

substantially justified. *Id*. at 1258.

Here, as set forth above, the Government had no credible evidence to

support its claims at trial. [ECF 657, at 41 and 65, PageID 23664, 23688.]

Contrary to the Magistrate Judge's determination that Defendants' rely upon

hindsight and "do not persuasively point to any finding or conclusion that the

Government's position in this case was wholly unreasonable based upon well-

settled law" [ECF 684, at 13, PageID 24160, citing *Gonzales*, 408 F.3d at 620],

Defendants respectfully submit that the Magistrate Judge erred in failing to analyze

the reasonableness of the Government's position *at the time of the litigation and

trial*, and misconstrues the Government's lack of credible facts. That the

Government's lack of credible facts at trial was sufficient to overcome the motions

to dismiss and motions for summary judgment herein speaks to the standards and

burdens of those types of motions, not the Government's utter failure of proof at

trial or the credibility of the evidence. Moreover, the Magistrate Judge's citation to

*United States v. Thouvenot, Wade & Moercschen, Inc.*, 596 F.3d 378, 381-82 (7th

Cir. 2010), for the proposition that a government case strong enough to survive

such motions is substantially justified, is misplaced.  First, the Ninth Circuit has

not yet adopted the burden shifting framework for attorneys' fee awards under the

EAJA used by the Seventh Circuit.  Moreover, this Court's decision on the motions

for summary judgment actually dismissed Governmental claims against

Defendants for alleged improper indemnification under ERISA.  [ECF 412, at 48-

55, PageID 9172-9179.]  The Government did not wholly survive those motions in

that respect.  Furthermore, as trial demonstrated, the Government's evidence in

support of its positions in those motions was not credible.

The Government did not have a reasonable basis in law *and* fact to bring any

of the claims that it brought here.  Reasonable minds cannot differ on this.  Indeed,

the Government did not appeal this Court's Judgment.  There are no objective

indicia of reasonableness to support the Government's positions at trial.

Accordingly, the Government acted without substantial justification.

### B.    The Government Acted in Bad Faith

"A finding of bad faith is warranted where an attorney knowingly or

recklessly raises a frivolous argument, or argues a meritorious claim for the

purpose of harassing an opponent."  *Primus Auto. Fin. Servs., Inc. v. Batarse,* 115

F.3d 644, 649 (9th Cir. 1997)(internal quotation marks and citation omitted).

"Mere recklessness does not alone constitute bad faith; rather, an award of

attorneys' fees is justified when reckless conduct is combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2016)(internal quotation marks omitted)(quoting *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001)).  "A frivolous case is one that is groundless .. with little prospect of success; often brought to embarrass or annoy the defendant.  This case is frivolous when the Government's position was "foreclosed by binding precedent or so obviously wrong as to be frivolous" *United States v. Manchester Farming P'ship*, 315 F.3d 1176, 1183 (9th Cir. 2003); *see also Rodriguez*, *supra*.  The Ninth Circuit has long established that to make a bad faith determination, it must review the totality of the government's conduct.  *Brown v. Sullivan*, 916 F.2d 492, 496 (9th Cir. 1990); *see also Rawlings v. Heckler*, 725 F.2d 1192, 1196 (9th Cir. 1984).  That said, "it is unnecessary to find that every aspect of a case is litigated by a party in bad faith in order to find bad faith by that party".  *Ibrahim*, 912 F.3d at 1180-1181.

Defendants respectfully submit that the Government's arguments listed above were made knowingly and recklessly and were frivolous.  As set forth above, the Government knew that its facts were insufficient to support its claims.  This was readily apparent from the fact of the URS IOI documentation.  This was readily apparent from the Government's ever-changing valuations and determinations of overpayment (from $20M down to $13.05M).  This was readily

apparent from the Government's control over its own expert witnesses' opinions

and the facts upon which its expert witnesses relied.  Defendants respectfully

submit that reasonable minds cannot differ on this.

### C.     The Defendants Are Prevailing Parties

As noted above, with respect to the Defendants' Bill of Costs, the Magistrate

Judge determined that Defendants were prevailing parties on the basis of the

Government's failure to challenge Defendants' entitlement to costs as a prevailing

party.  [ECF 682, at 3, PageID 24103.]  The Magistrate Judge did not address those

arguments in his Recommendations.  [ECF 684.] The Government had not

challenged the Company's entitlement to costs as a "prevailing party".  [*Id*., at 3,

PageID 24103.]

For the sake of this Court's convenience, Defendants will not repeat here all

of those arguments, and incorporate them by this reference.  [ECF 660-1, 669, 674,

677, 685 ].

Defendants note that the Company was legally required to indemnify

Messrs. Bowers and Kubota and advance reasonable attorneys' fees and expenses

for their defense.  This Court acknowledged this obligation in its Order on

Summary Judgment.  [ECF 412, at p. 49 n.5.]  This Court's Judgment provided the

"judicial imprimatur" that materially altered the legal relationship of the parties in

favor of the Company.  The Government demanded considerable relief from the

Company[7] that this Court rejected.  Accordingly, the Company is entitled to

recover all of the attorneys' fees and costs incurred by it in defense of this

litigation, including those advanced for the defense of Messrs. Bowers and Kubota

from the Government pursuant to 28 U.S.C. § 2412(b).  *Buckhannon Board &*

*Care Home, Inc. v. West Virginia Department of Health & Human Resources*, 532

U.S. 598, 605, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001).

### D. The Company Meets the EAJA "Net Worth" Financial Standards

The Company qualifies under the financial standards to be applied under 28

U.S.C. § 2412(d), namely, that it is a "party" under 28 U.S.C. § 2412(d)(2)(B) with

a EAJA "net worth" of less than $7M at the time this action was filed.  [ECF 676,

at ¶ 19, PageID 24017-24018; ECF 677, at 20-25, PageID 24068-24073.]

Defendants incorporate by reference their arguments and evidence in support

[ECF 669-673, 676, 677].  Defendants note here that the Government's contention

that the EAJA requires fully audited financial statements has been consistently

rejected.  *See*, *e.g.*, *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 167 (4th

Cir. 2004); *Gate Guard Servs., L.P. v. Perez*, No. V-10-91, 2014 U.S. Dist. LEXIS

48859 (S.D. Tex. Apr. 9, 2014)(imposing greater sanctions for the Government's

---

[7] *See* Government's many arguments in opposition to the Company's motion to dismiss [ECF 30, at 3, PageID 324, and at 4, PageID 325], which this Court relied upon in denying that motion.

bad faith under 28 U.S.C. § 2412(b) instead of lesser award under 28 U.S.C. § 2412(d)).  [ECF 677, at 20-25, PageID 24068-24073.]

## V.      Conclusion

WHEREFORE, Defendants respectfully request this Court to overrule the Magistrate Judge, grant their Motion for Attorneys' Fees and Non-Taxable Costs, and set a briefing schedule regarding the amount of such attorneys' fees and costs to be awarded.

DATED:  Honolulu, Hawai'i, December 29, 2021.

/s/ David R. Johanson
DAVID R. JOHANSON
DOUGLAS A. RUBEL
WILLIAM M. HARSTAD

*Attorneys for* BRIAN J. BOWERS *and* DEXTER C. KUBOTA *and* BOWERS + KUBOTA CONSULTING, INC.

and

/s/ Scott I. Batterman
Scott I. Batterman

*Attorneys for* BOWERS + KUBOTA CONSULTING, INC. *and* BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN AND TRUST