CHRISTINE Z. HERI
Regional Solicitor
RUBEN R. CHAPA
Counsel for ERISA
JING ACOSTA
Trial Attorney
ELISABETH NOLTE
Trial Attorney
U.S. Department of Labor
Office of the Solicitor
230 S. Dearborn St., Suite 844
Chicago, Illinois 60604
T: (312) 353-1145 | F: (312) 353-5698
Acosta.Jing@dol.gov
Nolte.Elisabeth.P@dol.gov
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAII

| | |
|---|---|
| MARTIN J. WALSH, Secretary of Labor, United States Department of Labor,<br><br>     Plaintiff,<br><br>v.<br><br>BRIAN J. BOWERS, an individual; DEXTER C. KUBOTA, an individual; BOWERS + KUBOTA CONSULTING, INC., a corporation; BOWERS + KUBOTA CONSULTING, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>     Defendants. | CASE NO. 1:18-cv-00155-SOM-WRP<br><br>**SECRETARY OF LABOR'S RESPONSE TO DEFENDANTS' OBJECTIONS TO AND APPEAL OF MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY DEFENDANTS' MOTION FOR ELIGIBILITY TO RECEIVE ATTORNEYS' FEES AND NON-TAXABLE COSTS [ECF NO. 684]** |

# TABLE OF CONTENTS

## I.    Contents

II.  LEGAL STANDARD ...................................................................................1

III.  ARGUMENT...........................................................................................4

A.  Defendants Are Not Entitled to Fees and Expenses Under EAJA Because None of Them are Both a Prevailing Party and a Party that Incurred Fees and Nontaxable Expenses ................................................................................4

B.  Defendants Are Not Entitled to Fees and Expenses Under EAJA § 2412(b) Because They Fail to Show the Common Law Bad Faith Exception Applies.......7

C.  Defendants Are Not Entitled to Fees and Expenses Under EAJA § 2412(d). 16

1.  Defendants fail to establish B+K meets the net worth requirements under EAJA § 2412(d)(2)(B)...................................................................17

2.  The Secretary Established His Position Was Substantially Justified..........20

IV.  CONCLUSION ........................................................................................25

# TABLE OF AUTHORITIES

## Cases

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975) ............7

*Am. Pac. Concrete Pipe Co., Inc. v. NLRB*, 788 F.2d 586, 591 (9th Cir. 1986) ....17, 19

*Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751 (9th Cir. 1986) ..............8, 9

*Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 166-67 (4th Cir. 2004) ....18

*Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990).................................... 8, 9, 16

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 603 (2001)..................................................................................5

*Castillo v. Colvin*, No. 14-cv-03140-JCS, 2016 WL 5680162, at *4 (N.D. Cal. Oct. 3, 2016) ..............................................................................................9

*Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990)............................................21

i

*Cont'l Web Press, Inc. v. NLRB,* 767 F.2d 321, 323 (7th Cir.1985)......................18

*De Allende v. Baker*, 891 F.2d 7, 12 (1st Cir. 1989) ...............................21

*Espinoza-Gutierrez v. Smith*, 94 F.3d 1270, 1279 (9th Cir. 1996)...........................2

*Estate of Woll by Woll v. United States*, 44 F.3d 464, 470 (7th Cir. 1994).............17

*Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995).........................................20

*FTC v. Freecom Commc'n, Inc.*, 401 F.3d 1192 (10th Cir. 2005) ...........................2

*Gonzales v. Free Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005) .......... 23, 24

*Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001) ........................... 20, 21

*Ibrahim v. U.S. Dep't of Homeland Sec.*, 912 F.3d 1147, 1180 (9th Cir. 2019) ........................................................................................................................... passim

*Impresa Construzioni Geom. Domenico Garufi v. United States*, 89 Fed.Cl. 449 (2009)........................................................................................................17

*Info. Scis. Corp. v. United States*, 86 Fed.Cl. 269, 280 (2009)..........................17

*Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991) ....................................... 3, 17

*Mantle Ranches, Inc. v. U.S. Park Serv.*, 993 F.Supp. 1335, 1336 (D. Colo. 1998) .......................................................................................................... 17, 18, 19

*Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1332 (11th Cir. 2001) .............2

*Mester Mfg. Co. v. U.S. Immigration & Naturalization Serv.*, 900 F.2d 201, 204 (9th Cir. 1990)..........................................................................................22

*Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002)....................................5

*Phil Smidt & Son v. NLRB*, 810 F.2d 638 (7th Cir. 1987).......................................14

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988)....................................................20

*Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008) .................. 8, 12, 16

*Scarborough v. Principi*, 541 U.S. 401, 414 (2004)...............................................21

*United States v. Raddatz*, 447 U.S. 667, 674 (1980) ................................................2

*United States v. Standard Oil Co.*, 603 F.2d 100, 103 (9th Cir. 1979) ....................8

*United States v. Thouvenot, Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010) ....................................................................................................... 23, 24

*United States v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981) ..................................2

## Statutes

28 U.S.C. § 636(b)(1)................................................................................................2

28 U.S.C. § 2412……………….................…………………………………passim

Plaintiff, Martin J. Walsh, Secretary of Labor, United States Department of Labor ("Secretary"), pursuant to the Court's Order [ECF No. 687], files this Response to Defendants Bowers + Kubota Consulting, Inc.'s ("B+K"), Brian J. Bowers', and Dexter C. Kubota's (collectively, "Defendants") Objection to and Appeal of the Magistrate Judge's Findings and Recommendation to Deny Defendants' Motion for Eligibility to Receive Attorneys' Fees and Nontaxable Costs from the U.S. Government ("Defendants' Objection") [ECF No. 688]. After the parties fully briefed the issues of whether any of the Defendants were eligible to recover any attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, on December 8, 2021, Magistrate Judge Porter ("Magistrate") issued his Findings and Recommendation to Deny Defendants' Motion for Attorneys' Fees and Non-Taxable Costs ("Recommended Decision") [ECF No. 684]. For the reasons discussed below, this Court should adopt the Magistrate's Recommended Decision and find that none of the Defendants are eligible to recover any attorneys' fees and expenses from the Secretary.

## II.    LEGAL STANDARD

If a party files specific written objections to a Magistrate's proposed findings and recommendations, the District Court must "make a *de novo* determination of those portions of the report or specified findings or recommendations to which

1

objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667, 674 (1980); *United States v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981).

EAJA provides two separate paths for recovering attorneys' fees and expenses from the government under § 2412(b) and § 2412(d). First, section 2412(b) provides, in relevant part:

> [A] court may "award reasonable fees and expenses of attorneys . . . to the *prevailing party* in any civil action brought by or against the United States or any agency or any official of the United States . . . The United States shall be liable for such fees and expenses *to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.*

28 U.S.C. § 2412(b) (emphasis added). Fees awarded under § 2412(b) are entirely discretionary. *Mar. Mgmt., Inc. v. United States*, 242 F.3d 1326, 1332 (11th Cir. 2001). In order to recover fees and expenses under this section, each Defendant first needs to demonstrate they are a "prevailing party," and it is the "prevailing party" that incurred those fees and expenses.  28 U.S.C. § 2412(b). Once that threshold is met, a prevailing party then has the initial burden of establishing it is entitled to a fee award under § 2412(b). *FTC v. Freecom Commc'n, Inc.*, 401 F.3d 1192 (10th Cir. 2005) (citing *Espinoza-Gutierrez v. Smith*, 94 F.3d 1270, 1279 (9th Cir. 1996)). A prevailing party is only entitled to obtain a fee award under § 2412(b) when it establishes it meets the narrow bad faith exception under the

common law or establishes it is entitled to a fee award under any other statute.

Defendants fail to establish a fee award is appropriate under either theory.

Second, § 2412(d) provides in relevant part:

> [A] court shall award to a *prevailing party* other than the United States fees and other expenses . . . *incurred by that party* in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, *unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.*

28 U.S.C. § 2412(d)(1)(A) (emphasis added). To be entitled to fees and expenses under § 2412(d), each Defendant must again show that it is a "prevailing party" that incurred those fees and expenses. Once that threshold is met, the prevailing party must show that it is "eligible to receive an award under this subsection." 28 U.S.C. § 2412(d)(1)(B). As relevant here, an eligible party is a corporation, "the net worth of which did not exceed $7,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). The party seeking fees carries the burden of proving eligibility under § 2412(d). *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991). Even if a party satisfies all of the eligibility requirements under § 2412(d), a fee award is still impermissible if "the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A).[1]

---

[1] Even if Defendants could show they are eligible for recovery under EAJA, the facts and circumstances of this case indicate that a fee award would not further the intent of EAJA. Defendants have demonstrated there were no financial concerns

## III.   ARGUMENT

### A. Defendants Are Not Entitled to Fees and Expenses Under EAJA Because None of Them are Both a Prevailing Party and a Party that Incurred Fees and Nontaxable Expenses

To be eligible to recover attorneys' fees and expenses under EAJA, a party must establish that it was a "prevailing party" and that it "incurred" fees and expenses. *See* 28 U.S.C. §§ 2412(b), (d). In this case, none of the Defendants meet both of these requirements—Defendants Bowers and Kubota did not incur any fees or expenses,[2] and B+K is not a prevailing party.[3] Here, no prevailing party

_____

deterring their ability to defend against this action. Defendants allegedly incurred nearly $5 million in attorneys' fees and expenses. For example, Defendants sent multiple partners from the same law firm to over 25 depositions taken in this matter, and prolonged multiple depositions by recalling the Secretary's personnel for a second day of testimony. *See* ECF Nos. 300, 302, 308, 309. The Court stated during trial, it was "highly unusual" for Defendants to need "six trial attorneys for the entire duration of trial." ECF No. 632 at PageID #21159-60. Despite paying for multiple partners to be present at each deposition and six trial attorneys to be present during each day of trial, almost all of the questioning at depositions and at trial was completed by only one Senior Partner, David Johanson.

[2] In their Objection, Defendants do not specifically challenge the Secretary's contention that Defendants Bowers and Kubota did not incur any fees or expenses in this litigation. Therefore, the Secretary will only incorporate by reference his previous arguments on this issue, ECF No. 675 at PageID #23981-84.

[3] Contrary to Defendants' assertions, although the Magistrate did not consider the issue of whether B+K was a prevailing party in his Recommended Decision, the Secretary timely raised this argument in his Opposition to Defendants' Memorandum in Support of their Eligibility to Recovery Attorneys' Fees and Nontaxable Costs. ECF No. 675.  Moreover, the threshold determination is a prerequisite for EAJA's waiver of sovereign immunity. *See Resol Tr. Corp. V. Miramon*, 935 F. Supp. 838, 841 (E.D. La. 1996) (finding that sovereign immunity "is a jurisdictional prerequisite which may be asserted at any stage of the proceedings" and is not subject to waiver)

incurred any fees or expenses in this litigation because only B+K incurred fees and B+K was not a prevailing party. Therefore, on this basis alone, this Court should find that Defendants are not eligible to recover any attorneys' fees and expenses.

B+K is not a prevailing party in this action because the Secretary did not allege any claims against B+K or seek any direct relief from B+K. A prevailing party is one who has been "awarded some relief by the court." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Servs.*, 532 U.S. 598, 603 (2001). A party is said to prevail when it achieves a "material alteration of the legal relationship of the parties" through either an enforceable judgment on the merits or a court-ordered consent decree. *Id.* at 604. The Ninth Circuit has adopted the *Buckhannon* standard for purposes of determining the prevailing party under EAJA. *Perez-Arellano v. Smith*, 279 F.3d 791, 794 (9th Cir. 2002). In this case, B+K cannot be considered a prevailing party because it was not awarded any relief by the Court and did not obtain any material alteration in its legal relationship with the parties. In order to be awarded relief or obtain a material alteration in its legal relationship, B+K must have succeeded on some claim. In this case, the Secretary did not allege any claims against B+K on which it could have succeeded. Instead, the Secretary named B+K in this action as a Rule 19(a) party "solely to assure that complete relief can be granted." ECF No. 1, ¶ 12 (PageID #6). The Secretary also named the B+K Employee Stock Ownership Plan ("B+K ESOP") as a Rule 19(a)

party in this matter. ECF No. 1. Throughout litigation in this matter, B+K fully acknowledged its status as a "nominal" defendant and conceded that it has no interest in the litigation. *See e.g.*, ECF No. 26-1 at PageID #312; ECF No. 33 at PageID #362. In addition, this Court explicitly ruled the Secretary's joinder of B+K as a Rule 19(a) party was proper, even though no claims were asserted against B+K and B+K conceded it does not claim any interest relating to the subject matter of this action. ECF No. 47 at PageID #464. Therefore, to find that B+K is now a prevailing party contradicts this Court's previous rulings as well as B+K's litigation position throughout this matter.

Even though the Court's Post-Trial Findings of Fact and Conclusions of Law states that judgment is entered for the "Remaining Defendants," the text and substance of the Court's decision did not find in favor of B+K or the B+K ESOP on any claims. ECF No. 657. Instead, the Court's decision was limited to finding that the Secretary failed to establish that Defendants Bowers and Kubota violated ERISA. *Id.* The Court's denial of the relief sought by the Secretary against Defendants Bowers and Kubota does not confer prevailing party status on B+K, whose sole purpose as a Rule 19(a) party is to facilitate complete relief, if granted. Without any claims over which to prevail, B+K cannot be considered a "prevailing party," and therefore, B+K is not eligible to recover any fees or expenses under any section of EAJA.

6

**B. Defendants Are Not Entitled to Fees and Expenses Under EAJA § 2412(b) Because They Fail to Show the Common Law Bad Faith Exception Applies.**

Even assuming, *arguendo*, Defendant B+K is a prevailing party, Defendants' request for attorneys' fees and expenses under § 2412(b) should be denied because Defendants fail to establish a basis in common law for such an award. Section 2412(b) permits a court to award to a prevailing party reasonable attorneys' fees and expenses "to the same extent that any other party would be liable under the common law . . . ." 28 U.S.C. § 2412(b). The common law bad faith exception is the only basis Defendants cite for their entitlement to fees under § 2412(b).[4] As the Magistrate properly found, Defendants fall far short of meeting their burden of showing the Secretary acted in bad faith.

The general rule in federal courts and under common law is that litigants are responsible for their own attorneys' fees and expenses. *E.g. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975). However, common law provides for a "narrow" bad faith exception to this general rule, allowing a court to award fees against a party based on "vexatious, wanton, or oppressive conduct." *Brown v. Sullivan*, 916 F.2d 492, 495 (9th Cir. 1990); *see also Ibrahim v. U.S.*

---

[4] Defendants initially asserted § 2412(b) allows them to recover fees and expenses from the Secretary based on ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). The Magistrate properly found ERISA does not support an award of fees in this case [ECF No. 684, PageID #24151-53], and Defendants do not object to that finding.

7

*Dep't of Homeland Sec.*, 912 F.3d 1147, 1180 (9th Cir. 2019); *Rodriguez v. United States*, 542 F.3d 704, 709 (9th Cir. 2008). An award of attorneys' fees and expenses under the bad faith exception is a penalty that "can be imposed only in exceptional cases and for dominating reasons of justice." *Brown*, 916 F.2d at 495 (quoting *Beaudry Motor Co. v. Abko Props., Inc.*, 780 F.2d 751 (9th Cir. 1986) and *United States v. Standard Oil Co.*, 603 F.2d 100, 103 (9th Cir. 1979)).

The standard for proving bad faith is stringent. The losing party must "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Ibrahim*, 912 F.3d at 1180; *Rodriguez*, 542 F.3d at 709.

> Mere recklessness does not alone constitute bad faith; rather, an award of attorney's fees is justified when reckless conduct is combined with an additional factor such as frivolousness, harassment, or an improper purpose. A frivolous case is one that is groundless with little prospect of success; often brought to embarrass or annoy the defendant. The case is frivolous when the government's position was foreclosed by binding precedent or so obviously wrong as to be frivolous.

*Rodriguez*, 542 F.3d at 709-10 (citation and internal quotations omitted). Bad faith may also be shown if a party "disregard[s] the judicial process." *Ibrahim*, 912 F.3d at 1181 (citing *Brown*, 916 F.2d at 496). It is not enough for the losing party's conduct to be unreasonable. *Brown*, 916 F.2d 495; *Castillo v. Colvin*, No. 14-cv-03140-JCS, 2016 WL 5680162, at *4 (N.D. Cal. Oct. 3, 2016) ("Conduct may be

8

'unreasonable' and yet fall short of the bad faith necessary for awarding market rate fees.").

First, Defendants misguidedly claim the Secretary's reliance on his prudence expert, valuation expert, and the URS letter show his bad faith. The Secretary presented this evidence, among other testimonial and documentary evidence, to support his claims, and Defendants presented three expert witnesses and proffered hundreds of exhibits in rebuttal. To resolve these claims, the Court examined the conflicting evidence and made factual findings resolving the conflicting evidence based on which party bore the burden of proof. *See, e.g.*, ECF No. 657, PageID #23651 ("Faced with these dueling opinions, this court turns to examining who bears the burden of proving either a deficiency in Saakvitne's performance as the ESOP trustee, or Saakvitne's satisfactory performance. It is the Government, as plaintiff, that must prove Saakvitne's failings."). While the Court ultimately found the Secretary's evidence was insufficient to prove his claims, a resolution in favor of one party over the other does not equate to bad faith. If that were the case, bad faith would be shown against all losing parties. Defendants' argument conflates bad faith with the merits of the case. Moreover, the Court's decision acknowledges the Secretary's position regarding certain factual disputes was justified. *See* ECF No. 657, PageID #23652 ("This Court is not, however, suggesting that the Government was acting on a mere whim in questioning Saakvitne's reliance on a

9

valuation provided by the very appraiser who had previously provided a preliminary fair market value to the Board of Trustees of the proposed [B+K ESOP] before Saakvitne became the ESOP trustee."), PageID #23687-88 ("[T]he Government's concerns are understandable. . . . That the Government had suspicions and opened an investigation appears entirely warranted. . . . What has happened in the trial of this case is that the Government failed to carry that burden . . . ."). The viability of the Secretary's claims and his supporting evidence is further demonstrated by the Court rejecting Defendants' motions to dismiss and motion for summary judgment. The Magistrate therefore properly concluded that the Secretary's focus on his experts and the URS letter does not suggest bad faith.

Related to their argument regarding the Secretary's valuation expert, Defendants' claim that the Secretary's varying requests for loss restoration indicate bad faith or lack of substantial justification under EAJA lack merit. Defendants fail to acknowledge their actions caused the varying loss restoration figures. Defendants consistently and improperly withheld information both during discovery and in violation of the Court's pretrial orders, which impacted the Secretary's ability to calculate loss restoration. During discovery Defendants refused to provide all responsive documents. For example Defendants refused to provide an unredacted copy of the URS December 5, 2011 indication of interest letter. This document was only obtained because the Secretary issued a third-party

subpoena to URS on February 5, 2020. Once it was received it showed the actual dollar amount that the URS letter identified as a purchase price. Although the pretrial order required exchange of exhibits well before the commencement of trial, Defendants failed to provide the 2020 B+K valuation until the second day of trial. Because of Defendants' failure, at trial the Court sustained the Secretary's objection to exclude Defendants' Trial Ex. 417.[5] As the Defendant had all of the information and failed to comply with the discovery rules, including properly supplementing discovery requests as required pursuant to Fed. R. Civ. P. 26(e), it caused the amount of the loss restoration to change. Moreover, the fact that the Secretary made multiple efforts to refine his assessment of loss restoration reflects the Secretary carefully examined his factual position and support for his claims.

Second, Defendants point to the Secretary's decision not to pursue at the trial an allegation in the Complaint related to the timing of the offers between the ESOP trustee and Defendants Bowers and Kubota. They misrepresent the issue as "clear and unequivocal" [see ECF No. ], but the timestamps on the emails between the trustee and selling shareholders initially created the impression Saakvitne

---

[5] MR. CHAPA: So the 2018, they probably provided us the 20 -- in 20 -- they received the 2017 in 2018, and that's what they provided us, and that's all we have.
THE COURT: Okay. Well, if it wasn't produced earlier, and I understand, I'm not saying, you know, why did you withhold it? I understand this document was created this month, but I have a problem with springing documents on parties like this. So objection sustained. I'm not receiving this document. What was the number of this document? Four
MR. HARSTAD: Defendants' Exhibit 417.
Trial Tr. p. 2-176 l. 11-21.

11

submitted two bids without receiving a counter-offer from the selling shareholders. The Secretary was therefore justified in alleging this in his Complaint, and his prudence expert reasonably mentioned it in his initial expert report, which the Secretary did not submit into evidence. In fact, as the Magistrate noted, Defendants' own expert acknowledged the potential for confusion given the time stamps. *See* ECF No. 684, PageID #24154-55; ECF No. 648 ¶ 39, PageID #23200-01. When further discovery casted some doubt on the Secretary's initial conclusion about the timestamps, the Secretary decided not to pursue that allegation. Bad faith would have resulted from the Secretary making an argument he believed might be meritless. *See Ibrahim*, 912 F.3d at 1180; *Rodriguez*, 542 F.3d at 709. The Secretary therefore took the correct and appropriate approach by declining to pursue at trial an allegation he came to believe may be unsupported. There was no need to "correct the record" or "admit" wrongdoing as Defendants suggest, because the Secretary's initial conclusion from the timestamps was not admitted into the record nor has it been proven wrong.

Third, Defendants attempt to paint the parties' discovery disputes as caused solely by the Secretary, ignores their own problematic conduct during discovery. Defendants point to the discovery sanctions against the Secretary, but they misstate both the amount of the discovery sanctions and that it has any bearing on their EAJA request. While Defendants claim the Court ordered

12

"$140,000" in sanctions (ECF No. 688, PageID #24239), this Court's order "reduces the fee award to $63,509.25." *See* ECF 237, PageID #5494. Further, the Court held the Secretary did *not* act in bad faith with respect to the discovery dispute and upheld all of the privileges the Secretary asserted which undercuts Defendants assertions that the Secretary's conduct warrants EAJA fees. *Id.* PageID #5494, 5499. Defendants also ignore that the parties' discovery disputes were largely generated by their improper and unsuccessful attempts to elicit information they claimed to be relevant to their statute of limitations defense. Even after the Court had delineated the proper scope of discovery on that issue, Defendants repeatedly sought information the Court already deemed outside the scope of discovery and were denied by the Court. *See, e.g.*, ECF Nos. 275, 276, 307, 313, 333, 377, 403, 423. The Court specifically noted in its decision "considerable time and effort was spent" on Defendants' statute of limitations defense. ECF No. 657, PageID #23695. Defendants also gloss over their own impropriety during discovery, including actions expressly labeled as misconduct by the Magistrate. *See* ECF No. 682, PageID #24110; ECF No. 523-1 at 182:15-21, PageID #16035.

Fourth, Defendants seem to believe that the manner in which the Secretary conducted the pre-litigation investigation was improper, despite the utter lack of evidence supporting their contention. Defendants analogize this case to *Phil Smidt & Son v. NLRB*, 810 F.2d 638 (7th Cir. 1987), in which the agency's conclusion

13

regarding an individual's lack of earnings was contradicted by tax returns obtained

during the investigation showing the individual did have earnings. However,

Defendants point to no evidence that the Secretary's investigation uncovered

evidence refuting the Secretary's findings. Instead, they rely on the bare assertion

that "there was ample evidence contradicting the central tenet of the Government's

case." *See* ECF No. 688, PageID #24235. Such vague and unsupported statements

are wholly insufficient to cast doubt on the propriety of the Secretary's

investigation, let alone the good faith actions of the Secretary. Moreover, as

discussed below, the Secretary has established substantial justification for his

investigation, and such justification was acknowledged by the Court. *See* ECF No.

657, PageID #23687-88 ("That the Government had suspicions and opened an

investigation appears entirely warranted.").

Finally, Defendants erroneously allege that bad faith is shown by the

Secretary alleging Defendants are liable as co-fiduciaries and knowing participants

to a prohibited transaction, and seeking to admit the ESOP trustee's administrative

deposition transcript. Besides the trustee's administrative deposition transcript, the

Secretary's allegations of co-fiduciary and knowing participant liability were

supported by documentary and testimonial evidence, which showed, among other

things, the limitations of the GMK Restricted Use Report and the trustee's reliance

on an allegedly conflicted appraiser. *See* ECF No. 657, PageID #23638 ("Given the

14

limited scope of GMK's valuation, this Court accords it little weight in determining the value of the Company. The Company sent GMK's final valuation report to URS. This had clearly not been contemplated by GMK, which had been hired to produce a valuation for internal use only."), PageID #23651 ("The Court is not, however, suggesting that the Government was acting on a mere whim in questioning Saakvitne's reliance on a valuation provided by the very appraiser who had previously provided a preliminary fair market value to the Board of Trustees of the Proposed [B+K ESOP] before Saakvitne became the ESOP trustee."). Just because the Court did not decide in the Secretary's favor on those claims does not mean the Secretary was unjustified in bringing those claims. With regard to the trustee's administrative deposition transcript, Defendants argue it was an "inappropriate vehicle" for proving the Secretary's claims, but fail to show why the Secretary seeking to admit that transcript was improper. The issue of its admission was extensively briefed and argued before the Court before the Court made its ruling, demonstrating that the Secretary's position was not baseless. Moreover, Defendants' bare assertion that the Secretary "knew that Defendants did not have knowledge of any such alleged Saakvitne actions" is wholly unsupported, with Defendants failing to cite any evidence or even explain this contention.

In sum, Defendants' assertions of bad faith amount to the Court's credibility determinations on disputed facts and unsubstantiated general claims regarding the

Secretary's knowledge. This falls far short of Defendants' burden of proving the Secretary knowingly or recklessly advanced frivolous claims, brought a meritless case for the purpose of harassing Defendants, or disregarded the judicial process. *See Ibrahim*, 912 F.3d at 1180-81; *Rodriguez*, 542 F.3d at 709. Defendants have not demonstrated the Secretary's position was unwinnable, motivated by improper purpose, foreclosed by binding precedent, or obviously wrong. *Id.* at 709-710. To the contrary, as discussed below, the Secretary's position was substantially justified, though ultimately unsuccessful. This is a far cry from the "exceptional" circumstances in which fees may be awarded under the common law bad faith exception. *Brown*, 916 F.2d at 495. Because Defendants fail to prove the Secretary acted in bad faith, the Court should deny Defendants' request for fees and expenses under § 2412(b).

### C. Defendants Are Not Entitled to Fees and Expenses Under EAJA § 2412(d).

Further, even if the Court finds Defendants were prevailing parties that incurred fees and expenses, an award of attorneys' fees and expenses under EAJA § 2412(d) should be denied. To be entitled to fees and expenses under § 2412(d), as relevant here, the prevailing party must show that it was a corporation with a "net worth . . . which did not exceed $7,000,000 at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B). Moreover, even when the prevailing party meets the net worth requirements, a fee award is still impermissible if "the position of the

16

United States was substantially justified." 28 U.S.C. § 2412(d)(1)(A). Here, Defendants fail to meet their burden of showing B+K is eligible for an award under § 2412(d), and the Secretary has shown his position in the litigation was substantially justified.

      1.  <u>Defendants fail to establish B+K meets the net worth requirements under EAJA § 2412(d)(2)(B).</u>

A party seeking to recover fees under § 2412(d) of EAJA has the burden of establishing it is a party that meets the net worth limitations set forth in that section. *Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991); *Estate of Woll by Woll v. United States*, 44 F.3d 464, 470 (7th Cir. 1994); *Pate v. United States*, 982 F.2d 457, 459 (10th Cir. 1993); *Mantle Ranches, Inc. v. U.S. Park Serv.*, 993 F.Supp. 1335, 1336 (D. Colo. 1998). Under § 2412(d), a party must establish its net worth "at the time the civil action was filed." 28 U.S.C. § 2412(d)(2)(B); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 89 Fed.Cl. 449 (2009) (citing *Info. Scis. Corp. v. United States*, 86 Fed.Cl. 269, 280 (2009)) (rejecting net worth information describing company's financial position five months prior to the filing of the complaint). In addition, courts require that the net worth be determined using generally accepted accounting principles ("GAAP"). *Am. Pac. Concrete Pipe Co., Inc. v. NLRB*, 788 F.2d 586, 591 (9th Cir. 1986); *Cont'l Web Press, Inc. v. NLRB,* 767 F.2d 321, 323 (7th Cir.1985); *Broaddus v. U.S. Army Corps of Eng'rs*, 380 F.3d 162, 166-67 (4th Cir. 2004); *Mantle*

17

*Ranches,* F.Supp. 1335 at 1338 (finding the failure to submit information consistent with GAAP is fatal to an EAJA application).

B+K is not EAJA eligible because Defendants fail to (1) provide evidence establishing B+K's net worth at the time the Complaint was filed, and (2) establish B+K's net worth using GAAP. First, Defendants do not provide any evidence regarding B+K's net worth at the time the Secretary filed his Complaint in this matter, which was April 27, 2018. *See* ECF No. 1. Instead, Defendants rely on B+K's outside CPA Thomas Nishihara's end-of-year compiled financial statements as of December 31, 2017, four months before the Complaint was filed, and December 31, 2018, eight months after the Complaint was filed.[6] *See* ECF No. 676, 676-1, 676-2, 676-3, 676-4. Defendants do not provide any financial information that would allow the Court to calculate B+K's net worth as of April 27, 2018, as required by § 2412(d)(2)(B). Therefore, Defendants have failed to meet their burden of establishing their eligibility to recover fees under § 2412(d).

Second, Defendants' net worth calculation relies on end-of-year compiled financial statements that do not adhere to GAAP and are therefore not reliable. *See Am. Pac. Concrete Pipe*, 788 F.2d at 592; *Mantle Ranches,* F.Supp. 1335 at 1338. The compiled financial statements state on their face that the accountant does "not

---

[6] Defendants also rely on the valuation report as of December 31, 2017, prepared by Libra Valuation Advisors, which the Secretary addressed in his Response in Opposition. *See* ECF No. 675 at 20-21, PageID #23995-96.

audit or review the financial statements" and does not "verify the accuracy or completeness of the information provided by management," and therefore does not "provide any form of assurance on these financial statements." *See* ECF Nos. 676-2, 672-4. In addition, the financial statements provide that management "has elected to omit substantially all the disclosures and the statement of cash flows **required by accounting principles generally accepted** in the United States of America." *Id.* (emphasis added). Not only do the financial statements explicitly disavow any responsibility for the accuracy of the financial statements, the financial statements also acknowledge that they do not contain the disclosures and statement of cash flows required by GAAP. ECF Nos. 676-2, 676-4; *see also* ECF 681-1 ¶¶ 5-8. Therefore, Nishihara has no basis for his assertions that the financial statements contained in ECF Nos. 676-2 and 676-4 are prepared in accordance with GAAP, given that he cannot confirm the accuracy of the underlying financial information provided by management. ECF No. 681-1 ¶ 8. Moreover, Nishihara does not state whether he followed any standards for certified public accountants, such as the SSARS, GAAS, SSAE, or SSFS, or whether he followed any financial reporting framework in arriving at his opinions that ECF Nos. 676-2 and 676-4 are in accordance with GAAP. ECF No. 681-1 ¶¶ 9-11. Therefore, because there is no evidence the financial statements contained in ECF Nos. 676-2 and 676-4 are in accordance with GAAP, the financial statements cannot be relied on for

determining B+K's net worth. ECF No. 681-1 ¶ 12. As such, this Court should find Defendants fail to establish B+K's net worth falls below the statutory limit in § 2412(d)(2)(B).

2. <u>The Secretary Established His Position Was Substantially Justified.</u>

Finally, even assuming *arguendo* that the Company qualifies as an eligible "prevailing party" under § 2412(d)(2)(B), Defendants are not entitled to attorneys' fees and expenses because the Secretary's position in the investigation and litigation was substantially justified. Under EAJA, substantially justified means "justified to a degree that could satisfy the reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see also Flores v. Shalala*, 49 F.3d 562, 569 (9th Cir. 1995) ("In this circuit, we apply a reasonableness standard in determining whether the government's position was substantially justified for purposes of the EAJA."). A substantially justified position is one that has "a reasonable basis both in law and fact." *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). The fact that the government lost "does not raise a presumption that its position was not substantially justified." *Ibrahim*, 912 F.3d 1168.

Because Defendants raised an allegation that the Secretary's position was not substantially justified, the Secretary has the burden of establishing substantial justification for his position. *See Scarborough v. Principi*, 541 U.S. 401, 414 (2004); *Ibrahim*, 912 F.3d at 1168. To meet this burden, the Secretary need only

20

show his position was substantially justified based on a preponderance of the evidence. *See De Allende v. Baker*, 891 F.2d 7, 12 (1st Cir. 1989). In evaluating whether the government's position was substantially justified, the Court should evaluate the case as an inclusive whole. *See Comm'r, I.N.S. v. Jean*, 496 U.S. 154, 161-62 (1990); *Gutierrez*, 274 F.3d at 1258-59 (finding the appropriate inquiry is whether the government's position "was, *as a whole*, substantially justified.").

The Secretary's initial investigation and its position throughout the litigation was reasonably grounded in fact and law. With regard to the investigation, the evidence shows the Senior Investigator came across the B+K Form 5500 for 2012, along with other entities' Forms 5500, while running a query of Hawaii-based leveraged ESOP transactions over a certain value. ECF No. 643-4, PageID #21034-37. When the B+K 2012 Form 5500 revealed the B+K ESOP had purchased the B+K stock for $40 million in a fully-leveraged transaction, the Senior Investigator sought additional documents and opened the investigation. *Id.*; ECF No. 364-8; ECF No. 364-9. Notably, this Court acknowledged the reasonableness of the Secretary's conduct, stating, "That the Government had suspicions and opened an investigation appears entirely warranted." ECF No. 657, PageID #23688. Moreover, as discussed above, nothing in the record casts any doubt on the propriety of the Secretary's investigation of the ESOP transaction.

The Secretary's position during the litigation is likewise reasonable given the evidence and established law. Defendants argue that the Secretary's reliance on its valuation expert, prudence expert, and the URS letter was unjustified because the Court found those items less credible or probative than other evidence. Although the Court ultimately found the Secretary's experts and the URS letter less credible than other evidence, this does not mean the Secretary's reliance on that evidence was improper. *See Mester Mfg. Co. v. U.S. Immigration & Naturalization Serv.*, 900 F.2d 201, 204 (9th Cir. 1990) ("The fact that an ALJ might make an adverse finding on a credibility issue does not, in and of itself, deprive the government's position of a basis in fact."). To the contrary, both the Secretary and Defendants produced conflicting evidence in support of their positions, the Court acknowledged its decision came down to which party bore the burden of proof. ECF No. 657, PageID #23651 ("Faced with these dueling opinions, this court turns to examining who bears the burden of proving either a deficiency in Saakvitne's performance as the ESOP trustee, or Saakvitne's satisfactory performance. It is the Government, as plaintiff, that must prove Saakvitne's failings."), 23678 ("In analyzing the Government's assertions about breaches of fiduciary duty, this court keeps firmly in mind the Government's burden."). As the Magistrate Judge aptly stated, "That the District Court ultimately

sided with Defendants and their experts does not negate the Government's claim

that its position was substantially justified." ECF No. 684, PageID #24158-59.

Moreover, the Secretary produced evidence beyond the expert opinions and

URS letter to support its position in the litigation. This Court expressly stated the

Secretary's concerns about the ESOP transaction "are understandable" and

summarized some of the facts that warranted the Secretary's position:

> The Government was looking at a high sale price that had been shared
> ahead of time with the ESOP trustee. But knowing what a seller wants
> does not make a buyer complicit in wrongdoing. The Government was
> also faced with an appraiser who had initially been dealing with the
> sellers who were forming the ESOP, then transferred its services to the
> trustee, ultimately providing an appraisal in a fairly short time that was
> fairly close to the limited valuation set by GMK. For his part, the trustee
> documented only about 30 hours of work.

ECF No. 657, PageID #23687-88. Thus, it is clear that the Secretary's position was

supported by evidence the Court acknowledged as credible and concerning.

The reasonableness of the Secretary's position is further evidenced by the

fact that it was factually and legally sound enough to overcome two motions to

dismiss and a motion for summary judgment on all issues. *See Gonzales v. Free

Speech Coalition*, 408 F.3d 613, 618 (9th Cir. 2005); *United States v. Thouvenot,

Wade & Moerschen, Inc.*, 596 F.3d 378, 382 (7th Cir. 2010) ("[T]here is a

presumption that a government case strong enough to survive both a motion to

dismiss and a motion for summary judgment is substantially justified."). Citing

*Gonzales* and *Thouvenot, Wade & Moerschen, Inc.*, The Magistrate appropriately

found, "[T]hat the Secretary survived motions to dismiss and summary judgment in the course of the proceedings supports finding his position at each stage of the litigation was substantially justified." ECF No. 684, PageID #24160-61. Defendants argue the Magistrate's citation to *Thouvenot, Wade & Moerschen, Inc.* was misplaced because "the Ninth Circuit has not yet adopted the burden shifting framework for attorneys' fee award under the EAJA used by the Seventh Circuit." ECF No. 688, PageID#24238. This argument misunderstands the nature of the presumption and ignores the Ninth Circuit's *Gonzales* decision, in which the Ninth Circuit found the district court erred by "declin[ing] to award any presumption of reasonableness" from the government's earlier successes with its position. *See* 408 F.3d at 619. Further, the Seventh Circuit's reasoning applies regardless of any formal presumption: because the Secretary's complaint would have been dismissed if it appeared to lack a substantial basis, and Defendants' motion for summary judgment would have been granted if no reasonable fact finder could find for the Secretary, the fact that the Secretary succeeded in these motions supports a conclusion his case had a reasonable basis in law and fact. *See Thouvenot, Wade & Moerschen, Inc.*, 569 F.3d at 382. Moreover, Defendants' attempt to distinguish *Thouvenot, Wade & Moerschen, Inc.* because the Court "dismissed Governmental claims against Defendants for alleged improper indemnification" is simply incorrect. The Court's decision on summary judgment only dismissed

24

indemnification claims that were either not against the remaining Defendants or related to a document under which Defendants had not sought indemnification. *See* ECF No. 412, PageID #9173 ("Because Count IX does not appear to assert a claim against Bowers or Kubota, it makes no sense to award summary judgment to [them] on that claim."), 9174 (dismissing the portion of Count IX regarding the ESOP stock purchase agreement because Defendants Bowers and Kubota have never sought indemnification under that document). The Court expressly left open for adjudication the question of whether other indemnification provisions are void. *Id.*, PageID #9174.

Because the totality of the Secretary's conduct demonstrates his investigation and litigation of this case has a reasonable basis in law and fact, the Secretary has met his burden of showing his position in the litigation was substantially justified. Accordingly, even if the Court finds Defendants eligible for fees under § 2412(d), their request for fees and expenses must be denied because the Secretary's position was substantially justified.

## IV.   CONCLUSION

For the foregoing reasons, the Secretary respectfully requests this Court find that none of the Defendants are entitled to recover any fees, costs, and expenses under EAJA.

Dated: January 12, 2022

Respectfully submitted,

**SEEMA NANDA**
Solicitor of Labor

**CHRISTINE Z. HERI**
Regional Solicitor

**RUBEN R. CHAPA**
ERISA Counsel

/s/ Elisabeth Nolte
**ELISABETH NOLTE**
Trial Attorney

/s/Jing Acosta
**JING ACOSTA**
Trial Attorney

Attorneys for **MARTIN J. WALSH**,
Secretary of Labor, United States
Department of Labor, Plaintiff